# EXHIBIT E

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

OFFICE OF THE ATTORNEY GENERAL,                )
DEPARTMENT OF LEGAL AFFAIRS                     )    CASE NO: *2015-CA-2714*
STATE OF FLORIDA                                )
                                                )
          Plaintiff,                           )
                                                )
                                                )
    v.                                          )
                                                )
EDUCATION MANAGEMENT CORPORATION;               )
EDUCATION MANAGEMENT HOLDINGS, LLC;             )
EDUCATION MANAGEMENT HOLDINGS II                )
    LLC;                                        )
EDUCATION MANAGEMENT LLC;                       )
EDUCATION MANAGEMENT II LLC;                    )
ARGOSY UNIVERSITY OF CALIFORNIA LLC;            )
ARGOSY UNIVERSITY OF FLORIDA, INC.;             )
ARGOSY EDUCATION GROUP, INC. (D/B/A             )
    ARGOSY UNIVERSITY, TAMPA);                  )
THE UNIVERSITY OF SARASOTA, INC.;               )
THE ART INSTITUTE OF PITTSBURGH, LLC;           )
THE ART INSTITUTE OF FORT LAUDERDALE,           )
    INC.;                                       )
THE ART INSTITUTE OF JACKSONVILLE, INC.;        )
THE ART INSTITUTES INTERNATIONAL II LLC;        )
ART INSTITUTE OF ORLANDO, INC.;                 )
THE ART INSTITUTE OF TAMPA, INC.;               )
AIT RESTAURANT, INC.;                           )
MIAMI INTERNATIONAL UNIVERSITY OF ART           )
    & DESIGN, INC.;                             )
SOUTH UNIVERSITY, LLC;                          )
SOUTH UNIVERSITY OF FLORIDA, INC. (D/B/A        )
    SOUTH UNIVERSITY, ORLANDO, SOUTH            )
    UNIVERSITY, TAMPA, AND SOUTH                )
    UNIVERSITY, WEST PALM BEACH);               )
BROWN MACKIE EDUCATION II, LLC;                 )
BROWN MACKIE COLLEGE – MIAMI., INC.;            )
BROWN MACKIE COLLEGE – MIAMI NORTH              )
    LLC;                                        )
                                                )
          Defendants.                          )
                                                )

## **CONSENT JUDGMENT**

This Consent Judgment is entered into between Plaintiff, Office of the Attorney General, Department of Legal Affairs, State of Florida (hereinafter referred to as the "Attorney General" or "Department"), and defendants Education Management Corporation; Education Management Holdings LLC; Education Management Holdings II LLC; Education Management LLC; Education Management II LLC; Argosy University of California LLC; Argosy University Of Florida, Inc.; Argosy Education Group, Inc. (d/b/a Argosy University, Tampa); The University Of Sarasota, Inc.; The Art Institute Of Pittsburgh, LLC; The Art Institute Of Fort Lauderdale, Inc.; The Art Institute Of Jacksonville, Inc.; The Art Institutes International II, LLC; Art Institute Of Orlando, Inc.; The Art Institute Of Tampa, Inc.; AIT Restaurant, Inc.; Miami International University of Art & Design, Inc.; South University, LLC; South University Of Florida, Inc. (d/b/a South University, Orlando; South University, Tampa; and South University, West Palm Beach); Brown Mackie Education II, LLC; Brown Mackie College – Miami, Inc.; and Brown Mackie College – Miami North LLC, including, except as otherwise provided herein, all of their respective subsidiaries, affiliates, successors, and assigns (collectively, "EDMC" or "Defendants," and, together with the Department, the "Parties").

This Consent Judgment resolves the Department's concerns regarding EDMC's compliance with the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II (hereinafter referred to as "FDUTPA"), and particularly with respect to EDMC's recruitment and enrollment practices relating to its post-secondary educational offering.

2

## I.    PARTIES

1.    The State is acting as *parens patriae* through its Attorney General with its office located at 107 W. Gaines Street, Tallahassee, Florida 32399.

2.    Education Management Corporation is a Pennsylvania corporation with corporate headquarters at Pittsburgh, Pennsylvania. Argosy University Of California LLC, a California limited liability company, South University, LLC, a Georgia limited liability company, Brown Mackie Education II LLC, a Delaware limited liability company, The Art Institutes International II LLC, a Pennsylvania limited liability company; Education Management Holdings LLC, a Delaware limited liability company; Education Management Holdings II LLC, a Delaware limited liability company; Education Management LLC, a Delaware limited liability company; Education Management II LLC, a Delaware limited liability company; Argosy University Of Florida, Inc., a Florida corporation; Argosy Education Group, Inc. (d/b/a Argosy University, Tampa), an Illinois corporation; The University Of Sarasota, Inc.; The Art Institute Of Pittsburgh, LLC, a Pennsylvania limited liability company; The Art Institute Of Fort Lauderdale, Inc., a Florida corporation; The Art Institute Of Jacksonville; Art Institute Of Orlando, Inc., a Florida corporation; The Art Institute Of Tampa, Inc., a Florida corporation; AIT Restaurant, Inc., a Florida corporation; Miami International University of Art & Design, Inc., a Florida corporation; South University Of Florida, Inc. (d/b/a South University, Orlando; South University, Tampa; and South University, West Palm Beach), a Florida corporation; Brown Mackie College, Miami, Inc., a Florida corporation; and Brown Mackie College, Miami North LLC, a Florida limited liability company, are wholly-owned, indirect subsidiaries of Education Management Corporation.

## II.    COORDINATION WITH OTHER ACTIONS
## BY OTHER STATES ATTORNEYS GENERAL

3.     The Parties acknowledge that this Consent Judgment is being filed

simultaneously with similar judgments in the States of Alabama, Arizona, Arkansas,

Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas,

Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, New

Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon,

Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia,

Washington, West Virginia, and Wyoming and the District of Columbia. The Parties

intend to coordinate implementation of the terms of this Consent Judgment with those

referenced above.

## III.    DEFINITIONS

Whenever the terms listed below are used in this Consent Judgment, the following

definitions shall apply:

4.     "**Abusive Recruitment Methods**" means the intentional exploitation of a

Prospective Student's fears, anxieties, or insecurities, or any method intentionally

calculated to place unreasonable pressure on a Student to enroll in an EDMC school.

5.     "**Administrator**" shall have the meaning set forth in paragraphs 34 through

38 below.

6.     "**Admissions Representative**" means any natural person employed by

EDMC who has substantial responsibility for encouraging Prospective Students to apply or

enroll in a Program of Study or recruiting Prospective Students, including, but not limited

to, assisting Prospective Students with the application process and informing Prospective

Students about Programs of Study at EDMC's schools, including but not limited to

4

employees with job titles such as "student success advisors" and "admissions representatives.

7.      **"Anticipated Total Direct Cost"** means the estimated cost of tuition, fees, books, supplies, and equipment to complete a Program of Study.

8.      **"Attorneys General"** means the Attorneys General of Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Mississippi, Missouri, Montana, Nebraska, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia and Wyoming.

9.      **"CIP Code"** means the six-digit U.S. Department of Education Classification of Instructional Program ("CIP") code identified for a particular Program of Study.

10.     **"CIP to SOC Crosswalk"** means the crosswalk developed by the National Center for Educational Statistics and the Bureau of Labor Statistics relating CIP Codes to Standard Occupational Classification ("SOC") codes and available at http://nces.ed.gov/ipeds/cipcode/resources.aspx or its successor site.

11.     **"Clearly and Conspicuously"** or **"Clear and Conspicuous,"** when referring to a statement or disclosure, means that such statement or disclosure is made in such size, color, contrast, location, and duration that it is readily noticeable, readable, and understandable. A statement may not contradict or be inconsistent with any other information with which it is presented. If a statement modifies, explains, or clarifies other information with which it is presented, it must be presented in proximity to the information

5

it modifies, in a manner that is likely to be noticed, readable, and understandable, and it must not be obscured in any manner.

12.    "**Completer,**" only for purposes of calculating a Job Placement Rate in accordance with this Consent Judgment, means a Student who is no longer enrolled in a Program of Study and who has either completed the time allowed or attempted the maximum allowable number of credits for the Program of Study but who did not accomplish the requirements for graduation, such as:

(a)    achieving the necessary grade point average;

(b)    attaining required competencies or speed skills; or,

(c)    satisfying non-academic requirements, including but not limited to paying outstanding financial obligations.

13.    "**Core Skills**" means skills that are necessary to receive a diploma or degree in a Student's field of study, such that failure to master these skills will result in no diploma or degree being awarded. "Core Skills" are specific to the Program of Study and are not taught in general education courses or generally taught across all fields of study, and are not the same as basic skills, which are skills that are necessary for success in a Student's field of study, but which the Student should possess upon entry into a Program of Study. Core Skills do not include generic skills such as "collaboration," "team work," and "communication," and for bachelor's degree programs, Core Skills do not include skills taught in 100-level courses unless the skill is refined and specifically identified in upper-level courses.

6

14.    **"Cost of Attendance"** means cost of attendance as defined in the Federal

Higher Education Act of 1965, § 472, 20 U.S.C.A. § 108711, or as that statute may be

amended.

15.    **"Do Not Call Registry"** means the national registry established by the

Federal Communications Commission and the Federal Trade Commission, and the state

registry established by the Florida Department of Agriculture and Consumer Services that

prohibits the initiation of outbound telephone calls, with certain statutory exemptions, to

registered consumers.

16.    **"Effective Date"** means January 1, 2016.

17.    **"Electronic Financial Impact Platform"** means an interactive,

internet-based program that produces a personalized disclosure for a Prospective Student

of the financial impact of pursuing a particular Program of Study and incurring a specific

amount of debt. The platform shall permit Prospective Students to input and/or adjust

fields to customize the resulting disclosure, including but not limited to the fields that

pertain to sources of funding (*i.e.*, scholarships, grants, student contributions, federal loans,

and private loans) and post-graduation expenses, and shall generate a customized

disclosure for the Prospective Student that shows estimates of (a) the Prospective Student's

Anticipated Total Direct Costs in pursuing the Program of Study, (b) the Prospective

Student's Cost of Attendance, including each component thereof, (c) the Prospective

Student's total debt at the time of repayment and the corresponding monthly loan payments

over a term of years based on current interest rate information, (d) the Prospective

Student's income if he/she successfully graduates from the Program of Study, and (e) the

Prospective Student's post-graduation expenses, including personal financial obligations

such as rent or mortgage payments, car payments, child care expenses, utilities, and the like. The Electronic Financial Impact Platform shall also provide information about the Program of Study, including Program Completion Rates, Median Debt for Completers, and Program Cohort Default Rate.

18.    **"Enrollment Agreement"** shall mean the document executed by a Prospective Student that sets forth certain terms and conditions of the Prospective Student's enrollment in a Program of Study.

19.    **"Executive Committee"** shall refer to the Attorneys General of the States of Connecticut, Illinois, Iowa, Kentucky, Oregon, and Pennsylvania.

20.    **"Former Employee"** means any person who was employed by EDMC on or after the Effective Date and who is no longer employed by EDMC.

21.    **"Good Cause"** means: (a) a material and substantial breach of the terms of this Consent Judgment by the Administrator, including the failure to comply with the terms and limitations of this Consent Judgment, (b) any act of dishonesty, misappropriation, embezzlement, intentional fraud, or similar conduct, (c) any intentional act of bias or prejudice in favor or against either party or Students by the Administrator, or (d) conduct by the Administrator that demonstrates unfitness to serve in any administrative capacity. Good Cause shall not include disagreements with the decisions of the Administrator pursuant to this Consent Judgment, unless there is a clear pattern in the Administrator's decisions that demonstrates or shows that the Administrator has not been acting as an independent third party in rendering decisions.

22.    **"Graduate,"** only for purposes of calculating a Job Placement Rate in accordance with this Consent Judgment, means a Student who has accomplished all of the

8

requirements of graduation from a Program of Study, such as, for example, achieving the necessary grade point average, successfully passing all required courses and meeting all clinical, internship, and externship requirements, and satisfying all non-academic requirements.

23.    "**Job Placement Rate**" means the job placement rate calculated in accordance with this Consent Judgment and is a numeric rate calculated by dividing the total number of placed Graduate/Completers by the total number of Graduate/Completers who do not qualify for exclusion from the calculation as set out below.  EDMC shall count a Graduate/Completer as placed or excluded for purposes of calculating a Job Placement Rate in accordance with this Consent Judgment only where EDMC is able to successfully contact a Graduate/Completer or employer to verify employment or exclusion and possesses at the time it is calculating the Job Placement Rate the documentation required below.

(a)    For purposes of calculating the Job Placement Rate in accordance with this Consent Judgment, the Job Placement Rates shall be calculated from the total of Graduates/Completers between July 1, 20XX and June 30, 20XX, and shall be calculated for each Program of Study at the campus level.

(b)    In calculating Job Placement Rates in accordance with this Consent Judgment, EDMC shall assess whether the Student has been placed within six (6) months of the later of (i) the end of the month in which the Student becomes a Graduate/Completer or (ii) if a license or certification is required for the relevant occupation, the date on which the results of the first licensing or certification exam for which the Graduate/Completer was eligible to sit become available; *provided*,

9

*however*, that such six (6) month period shall be extended for up to sixty (60) days to permit Students who accepted employment prior to the expiration of such six (6) month period to satisfy the minimum employment threshold set forth in paragraph 69(a)(5) and (a)(6), in which case the Graduate/Completer shall be excluded from the current reporting cohort and included in the next reporting cohort.

    (c)     In calculating a Job Placement Rate in accordance with this Consent Judgment, a Graduate/Completer may be excluded from the total number of Graduates/Completers (*i.e.*, the denominator) if EDMC obtains written documentation that the Graduate/Completer:

        (i)     has a medical condition or disability that results in the Graduate/Completer's inability to work or the Graduate/Completer is not available for employment because the Graduate/Completer has a parent, child, or spouse who has a medical condition that requires the care of the Graduate/Completer;

        (ii)     is engaged in full time active military duty;

        (iii)     is enrolled at least half-time in an additional program of post-secondary education;

        (iv)     is deceased;

        (v)     is not eligible for placement in the United States because of visa restrictions;

        (vi)     is a spouse or dependent of military personnel who have moved due to military transfer orders;

        (vii)     is incarcerated; or

(viii)    qualifies for any other job placement rate calculation

exclusion that the U.S. Department of Education adopts subsequent

to the Effective Date, unless the Attorneys General determine in

their reasonable judgment within thirty (30) days of being notified

by EDMC of the adoption of such waiver that recognizing the

waiver for purposes of calculating the Job Placement Rate would be

contrary to the interests of Prospective Students; *provided, however*,

that EDMC shall have the right to apply to the Court for a ruling as

to whether any such determination by the Attorneys General was

reasonable under the circumstances.

(d)    Where EDMC excludes a Graduate/Completer from the total

number of Graduate/Completers for the purposes of calculating the Job Placement

Rate, EDMC shall not count that Graduate/Completer as "placed."

24.    "**Median Earnings for Completers**" means the earnings calculated

according to the definitions and method provided by the U.S. Department of Education in

34 CFR 668.413(b)(8) and as that regulation may be amended or recodified.

25.    "**Median Debt for Completers**" includes Title IV loans, institutional

loans, private loans, credit, or unpaid balances extended by or on behalf of the EDMC

school to Students, as provided in 34 CFR 668.404(d)(1). Median Debt for Completers is

the median debt for Students who completed the program during the most recent award

year and is determined according to the definitions and method provided in 34 CFR

668.413(b)(4) and as that regulation may be amended or recodified. Until such time as the

U.S. Department of Education commences calculation of the median debt according to

11

such definitions and methodology, EDMC itself shall make a good faith effort to calculate the Median Debt for Completers according to the definitions and methodology provided in 34 CFR 668.413(b)(4).

26.    **"Program Cohort Default Rate"** means the program cohort default rate determined according to 34 CFR 668.413(b)(13) and as that regulation may be amended or recodified. Until such time as the U.S. Department of Education commences calculation of the program cohort default rate as provided in 34 CFR 668.413(b)(13), EDMC shall make a good faith effort to determine the Program Cohort Default Rate using the methodology required by 34 CFR 668.413(b)(13).

27.    **"Program Completion Rate"** means the program completion rate for full-time Students calculated according to the definitions and method provided by the U.S. Department of Education in 34 CFR 668.413 and as that regulation may be amended or recodified. Until such time as the U.S. Department of Education commences calculation of program completion rates according to such definitions and methodology, EDMC itself shall make a good faith effort to calculate the Program Completion Rate for full-time Students who complete the program within 150% of the length of the program according to the definitions and methodology provided in 34 CFR 668.413.

28.    **"Program of Study"** shall mean a series of courses, seminar, or other educational program offered at an EDMC school in the United States, for which EDMC charges tuition and/or fees, which is designed to lead toward a degree, certificate, diploma, or other indication of completion, and which (a) is eligible for Title IV funding, (b) involves more than 25 contact hours in a credit bearing course, (c) is designed to make a Student eligible to sit for any state or national certification or licensing examination, or (d)

is designed to prepare a Student for another series of courses, seminar, or other educational program that is eligible for Title IV funding. Notwithstanding anything in the foregoing sentence to the contrary, non-credit courses or programs offered for personal enrichment, *i.e.*, hobby courses, that are not Title-IV eligible, courses that are not taken for the purpose of ultimately obtaining a degree, certificate, diploma, or other indication of completion, and review courses that are designed to assist with a Student's preparation for a state or national certification or licensing exam for which the Student is already eligible to sit, shall not be Programs of Study.

29.    **"Prospective Student"** means any natural person who is being recruited for a Program of Study and/or pursuing enrollment at an EDMC school in a Program of Study.

30.    **"Student"** means any natural person who is or was enrolled at an EDMC school in a Program of Study.

31.    **"Student Financial Services Representative"** means any natural person employed by EDMC who has substantial responsibility for assisting or advising Students and Prospective Students with respect to financial aid matters.

32.    **"Third-Party Lead Vendor"** means any third-party vendor (whether a person, corporation, partnership, or other type of entity) that is directly retained and authorized by EDMC to provide Prospective Student inquiries to EDMC.

33.    **"Transferability of Credits Disclosure"** means a disclosure with respect to the transferability of credits earned at EDMC schools. For regionally accredited schools, each such disclosure shall state: "Course credits are not guaranteed to transfer to other schools." For all other schools, each such disclosure shall state: "Course credits will likely not transfer to other schools. Degrees will likely not be honored by other schools."

13

EDMC shall be permitted to make such reasonable changes to the Transferability of Credits Disclosure that are approved by the Administrator in consultation with the Attorneys General.

## IV.    ENJOINED CONDUCT

Pursuant to  the statutory authority set forth under the FDUTPA and Section 501.207, Florida Statutes, EDMC is hereby enjoined as follows:

## ADMINISTRATOR PROVISIONS

### Appointment of an Administrator

34.     Thomas J. Perrelli, Esq. is appointed as the Administrator to oversee EDMC's compliance with the provisions of this Consent Judgment, effective as of the Effective Date.  The Administrator may act directly or through staff, agents, employees, contractors, and representatives in overseeing EDMC's compliance with the terms of this Consent Judgment.

35.     Within sixty (60) days of the Effective Date, the Attorneys General, EDMC, and the Administrator shall agree on a proposed work plan and contract that shall include all reasonable and necessary costs of the Administrator.  If the Administrator, the Attorneys General, and EDMC fail to reach agreement within that time, the Attorneys General shall determine a fair and reasonable work plan and contract in consultation with EDMC and the Administrator.

36.     In the event of any dispute arising over the Administrator's performance or the reasonableness of the Administrator's costs and fees, either EDMC or the Attorneys General may request that the issue be submitted to the Iowa Attorney General, with the issue to be resolved in accordance with the provisions of EDMC's consent judgment with the State of Iowa.

37.     The Administrator may be dismissed for any reason by agreement of the
Parties. In the event the Parties do not agree to the dismissal of the Administrator, either
the Attorneys General or EDMC may submit the question of the Administrator's dismissal
to the Iowa Attorney General, with the issue to be resolved in accordance with the
provisions of EDMC's consent judgment with the State of Iowa.

38.     The Administrator shall be appointed for a term of three (3) years, to run
from the Effective Date. If the Administrator is dismissed or leaves the position for any
reason before the end of the term, another Administrator shall be appointed by agreement
of EDMC and the Attorneys General to serve the remainder of the term.

**Costs of the Administrator**

39.     EDMC shall pay the reasonable and necessary fees and costs of the
Administrator. Reasonable and necessary fees and costs shall be limited to those set out in
the Administrator's contract, but in no event shall the Administrator's fees exceed
$1,000,000.00 per year.

**Powers and Duties of the Administrator**

40.     The Administrator shall independently review EDMC's compliance with
the terms of this Consent Judgment in accordance with the work plan referenced in
paragraph 35. In furtherance of this purpose, and without limiting the power of the
Administrator to review any relevant matter within the scope of this Consent Judgment, the
Administrator shall be permitted to:

(a)     observe Admissions Representative and Student Financial Services
Representative training sessions;

(b)     monitor telephone calls and meetings between Admissions
Representatives or Student Financial Services Representatives, on the one hand,

15

and Students or Prospective Students, on the other; the Administrator shall not be permitted to participate in such calls or attend such meetings, but it is expressly understood that the Administrator may utilize "mystery shoppers"; a "mystery shopper" is a person hired to pose as a Prospective Student and collect information regarding an Admissions Representative's or Student Financial Service Representative's compliance with this Consent Judgment;

    (c)    review transcripts, recordings, and/or reports related to any telephone call or meeting with Prospective Students;

    (d)    review materials used to train Admissions Representatives and Student Financial Services Representatives;

    (e)    review complaints made to EDMC, its accreditors, the Attorneys General, the Better Business Bureau, or any state or federal governmental body, after the Effective Date of this Consent Judgment, which potentially concern or relate to any of EDMC's recruitment, admissions, Student financial aid, or career services practices;

    (f)    receive and review complaints concerning EDMC referred by the United States of America, acting through the United States Department of Justice and on behalf of the U.S. Department of Education (collectively, for purposes of this subparagraph and paragraph 50, the "United States"), the States of California, Florida, Illinois, Indiana, and Minnesota (collectively, the "Intervened States"), and the Commonwealth of Massachusetts, the District of Columbia, and the States of Kentucky, Montana, New Jersey, New Mexico, New York, and Tennessee (collectively, the "Non-Intervened States");

(g)     review EDMC's advertisements, marketing materials, websites, catalogs, enrollment agreements, disclosures, and other public-facing media to verify compliance with this Consent Judgment;

(h)     review documents, data, and information related to EDMC's calculation of any job placement rate;

(i)     monitor EDMC's compliance practices with respect to the conduct of Third-Party Lead Vendors;

(j)     review documents in the possession of EDMC or reasonably accessible to EDMC related to the conduct of Third-Party Lead Vendors;

(k)     review communications with Students and Prospective Students in the possession of EDMC or reasonably accessible to EDMC related to Student recruitment, admissions, financial aid, or career services;

(l)     monitor EDMC's compliance with its refund policy;

(m)     monitor EDMC's compliance with data reporting requirements imposed by this Consent Judgment;

(n)     monitor EDMC's complaint resolution practices;

(o)     review reports related to EDMC's audit of Third-Party Lead Vendors;

(p)     review EDMC's institutional and programmatic accreditation status to verify compliance with this Consent Judgment;

(q)     review EDMC's records to verify EDMC's compliance with its obligation to forgo efforts to collect outstanding debt from certain Students pursuant to paragraphs 120 and 121 of this Consent Judgment;

17

(r)    have reasonable access to books, records, other documents, and staff sufficient to insure implementation of and compliance with this Consent Judgment; and

(s)    have reasonable access to employees and Former Employees of EDMC as the Administrator deems necessary to insure implementation of and compliance with this Consent Judgment; reasonable access for purposes of this subparagraph includes disclosing the identity of any current employee or Former Employee if the identity is requested by the Administrator and can be determined by EDMC; reasonable access to current employees shall include providing appropriate times and locations for staff interviews; and reasonable access to Former Employees shall include providing the most recent contact information available;

*provided, however*, that this Consent Judgment shall not effectuate a waiver of the attorney-client privilege or the attorney-work-product doctrine, and the Administrator shall not have the right to demand access to documents or information protected by the attorney-client privilege or the attorney-work-product doctrine.

41.    The Administrator shall make a good faith effort to leverage EDMC's existing compliance mechanisms when reviewing EDMC's compliance with this Consent Judgment.

42.    The Administrator shall make a good faith effort to perform his or her duties in a manner designed to cause minimal disruption to EDMC's activities. In this regard, EDMC shall designate senior officials within the Office of the Chief Compliance Officer (or any office subsequently organized to succeed to the duties of the foregoing office) to

serve as the primary points of contact for the Administrator in order to facilitate the Administrator's access to documents, materials, or staff necessary to review EDMC's compliance with this Consent Judgment. The Administrator shall communicate any request for documents, materials, or access to staff to the designated contacts, unless otherwise instructed. For the avoidance of doubt, nothing in this paragraph shall be interpreted to prohibit the Administrator from speaking with a current or Former Employee of EDMC.

43.    If at any time the Administrator believes that there is undue delay, resistance, interference, limitation, or denial of access to any records or to any employee or Former Employee deemed necessary by the Administrator to implement or review compliance with this Consent Judgment, the Administrator may meet and confer with the designated EDMC officials referenced in paragraph 42. If the Administrator cannot resolve such limitation or denial, it shall be immediately reported to the Attorneys General.

44.    Nothing in this Consent Judgment shall limit the ability of the Administrator to communicate at any time with the Attorneys General regarding EDMC's conduct or to provide documents or information to the Attorneys General.

**Oversight and Compliance**

45.    The Administrator and the designated EDMC officials referenced in paragraph 42 shall meet on a quarterly basis, or more frequently if the Administrator deems reasonably necessary, in order to discuss any facts, matters, issues, or concerns that may arise in the administration of this Consent Judgment or that may come to the attention of the Administrator. The purpose of these meetings is to permit EDMC to confer with the Administrator and address issues and concerns as they arise. In addition, the Administrator

19

may in his discretion and on reasonable advance notice invite the EDMC officials

referenced in paragraph 42 and the Attorneys General to meet and confer to the extent he

deems it reasonably necessary for the administration of this Consent Judgment.

46.    The Administrator shall issue a report (hereinafter "Annual Report") to the

Attorneys General and to EDMC within nine (9) months after the Effective Date and every

twelve (12) months thereafter for the duration of the Administrator's term. The

Administrator may make more frequent reports as deemed reasonably necessary or upon

request of the Attorneys General. All written reports requested by the Attorneys General

shall be provided to EDMC prior to their presentation to the Attorneys General. The

Administrator and EDMC shall meet and confer to discuss all written reports and Annual

Reports prior to their presentation to the Attorneys General. As part of this conferral

process, the Administrator shall in good faith consider all reasonable modifications to the

report proposed by EDMC. Upon request, the Attorneys General shall be granted access to

the draft reports.

47.    The Annual Report shall include:

(a)    a description of the methodology and review procedures used;

(b)    an evaluation of whether EDMC is in compliance with the

provisions of this Consent Judgment, together with a description of the underlying

basis for that evaluation; and

(c)    a description of any practice which the Administrator believes may

constitute a deceptive or unfair practice (as those terms are commonly understood

in the context of consumer protection laws).

48.     The Administrator's reports (including the Annual Reports) shall identify only practices or patterns of noncompliance by EDMC, if any, and are not intended to identify isolated incidents, unless the Administrator determines that such incidents are indicative of EDMC's substantial non-compliance with the Consent Judgment.

49.     If, at the conclusion of the Administrator's three-year term, the Attorneys General determine in good faith and in consultation with the Administrator that justifiable cause exists, the Administrator's engagement shall be extended for an additional term of up to two (2) years, subject to the right of EDMC to commence legal proceedings for the purpose of challenging the decision of the Attorneys General and to seek preliminary and permanent injunctive relief with respect thereto.  For purposes of this paragraph, "justifiable cause" means a failure by EDMC to achieve and maintain substantial compliance with the substantive provisions of the Consent Judgment.

**Use of the Administrator's Reports**

50.     The Administrator's reports (including the Annual Reports) and testimony may be used by the Attorneys General or EDMC in any action or proceeding relating (a) to this Consent Judgment or (b) to any EDMC conduct reported by the Administrator to the Attorneys General, and the reports shall be admissible into evidence in any such action or proceeding. In addition, the United States, the Intervened States, and the Non-Intervened States shall have whatever rights to receive and/or use reports or other information provided by the Administrator to the Attorneys General that may be created in any settlement agreement that is subsequently executed by and between the United States, the Intervened States, and the Non-Intervened States and EDMC. For the avoidance of doubt, the Parties do not intend for the Administrator's reports (including the Annual Reports) to be admissible in any action or proceeding other than an action or proceeding described in

21

the preceding sentences. No action or lack of action by the Attorneys General regarding information received from the Administrator regarding EDMC's conduct shall be considered affirmation, acceptance, or ratification of that conduct by the Attorneys General, and the Attorneys General reserve the right to act at any time regarding information provided to them by the Administrator.

**Confidentiality**

51.    The Administrator shall keep confidential any information, documents, and reports obtained or produced in the course of the Administrator's duties from any and all individuals, entities, regulators, government officials, or any other third party that is not a party to this Consent Judgment. Nothing in the preceding sentence shall limit the ability of the Administrator to make any disclosure compelled by law.

52.    It is understood that any document, information, or report shared with the Attorneys General pursuant to this Consent Judgment (including reports created by the Administrator pursuant to paragraphs 46 and 116) is subject to Chapter 119, Florida Statutes. Nevertheless, the Attorneys General recognize that some or all of such documents, information, or reports may be confidential and/or exempt from disclosure pursuant to § 119.071, Florida Statutes, or other applicable state or federal laws. In the event that the Attorneys General (or any of them) receive a request to disclose a document, information, or report, and the Attorneys General (or any of them) determine that the requested document, information, or report is not confidential pursuant to applicable law and is subject to disclosure, or if the Attorneys General (or any of them) are compelled to produce the material pursuant to a court or administrative order, the relevant Attorney(s) General shall provide notice to EDMC ten (10) business days prior to disclosing the document, information, or report to any third party, or any lesser period required under

22

state law. Notwithstanding the above requirements, the Attorneys General may share any document, information, or report subject to this paragraph with any other local, state, or federal agency empowered to investigate or prosecute any laws, regulations, or rules. Subject to the foregoing, unless required under applicable state law, the Attorneys General shall not release to the public any confidential document or information provided by EDMC pursuant to this Consent Judgment.

53.     The Administrator shall create a summary public version of each Annual Report created pursuant to paragraph 46 of this Consent Judgment. The summary public version of each Annual Report shall exclude all information that the Administrator determines, in consultation with EDMC, to be the proprietary information of EDMC.

**Miscellaneous Administrator Provisions**

54.     Non Retaliation Clause: EDMC shall not intimidate, harass, threaten, or penalize any employee or Former Employee for his or her cooperation with or assistance to the Administrator relating to the Administrator's Powers and Duties to ensure implementation of and compliance with this Consent Judgment.

55.     Compliance Hotline: It is understood that EDMC is operating a compliance hotline, which permits employees to lodge concerns with EDMC anonymously. EDMC shall continue to maintain this hotline or a reasonable equivalent. EDMC shall provide the Administrator access to any complaints or reports made through this hotline (whether made anonymously or not).

**REQUIRED DISCLOSURES**

**General Disclosures**

56.     Before obtaining signed Enrollment Agreements, EDMC shall Clearly and Conspicuously disclose to Prospective Students a "Single-Page Disclosure Sheet" that

23

conforms as to form to the sample disclosure sheet attached as Exhibit B hereto and contains the following information:

    (a)    the Anticipated Total Direct Cost for the Program of Study at the prospective campus; *provided, however*, that this provision shall not be interpreted to restrict EDMC's ability to change tuition, fees, or expenses;

    (b)    the Median Debt for Completers for the Program of Study for the most recent reporting period;

    (c)    the Program Cohort Default Rate for the most recent reporting period;

    (d)    the Program Completion Rate for the most recent reporting period;

    (e)    the Transferability of Credits Disclosure;

    (f)    the Median Earnings for Completers for the Program of Study for the most recent reporting period, if available; and

    (g)    the Job Placement Rate Disclosure for the Program of Study at the prospective campus for the most recent reporting period, if available.

57.    Specifically, EDMC shall Clearly and Conspicuously disclose the Single-Page Disclosure Sheet for the Program of Study in which the Prospective Student is seeking to enroll prior to a Prospective Student's execution of the Enrollment Agreement in the following ways: (1) by Clearly and Conspicuously disclosing the Single-Page Disclosure Sheet during the application process, prior to the Prospective Student's submission of a completed application; and (2) by Clearly and Conspicuously disclosing and discussing with the Prospective Student the Single-Page Disclosure Sheet when a representative of an EDMC school reviews or discusses with a Prospective Student a

24

completed FAFSA and/or financial plan. When the requirements of subparagraphs (1) and/or (2) are performed at an in-person meeting with the Prospective Student, in addition to any other method of Clear and Conspicuous disclosure, EDMC shall also provide the Prospective Student with a printed copy of the Single-Page Disclosure Sheet; *provided, however,* that EDMC shall not be required to provide multiple printed copies of the Single-Page Disclosure Sheet to a Prospective Student who attends more than one in-person meeting. Additionally, except where the Prospective Student has not provided EDMC with an email address, EDMC shall also email the Single-Page Disclosure Sheet to the Prospective Student prior to the execution of the Enrollment Agreement.

58.     Before an already-enrolled Student begins a new Program of Study, EDMC shall Clearly and Conspicuously disclose to the Student the Single-Page Disclosure Sheet for that Program of Study. Additionally, except where the Student has not provided EDMC with an email address, EDMC shall also email the Single-Page Disclosure Sheet to the Student prior to that Student enrolling in the new Program of Study.

59.     EDMC shall be permitted to make such reasonable changes to the Single-Page Disclosure Sheet and to the form and timing of the disclosure of the Single-Page Disclosure Sheet as are approved by the Administrator in consultation with the Attorneys General.

60.     EDMC may calculate and disclose to Students and Prospective Students, in materials other than the Single-Page Disclosure Sheet, information with respect to the income earned by EDMC's graduates in reporting periods as to which the Median Earnings for Completers is not available, provided that such information is not false, misleading, or deceptive.

61.     If an EDMC school elects to disclose that it has articulation agreements for the transferal of credits to other schools, then, in addition to the foregoing, the EDMC school shall also Clearly and Conspicuously: (a) list any school(s) with articulation agreements with that EDMC school, (b) list the classes for which the receiving school allows credits to transfer, (c) disclose any conditions upon the acceptance of transferred credits, and (d) disclose that credits are accepted by the receiving school for elective credit only, if that is the case.

**Job Placement Rate Disclosures**

62.     For any Program of Study at an EDMC school that is required to calculate or provide a job placement rate by any accreditor or any federal, state, or local law, rule, or judgment, EDMC shall calculate a Job Placement Rate for such Program of Study in accordance with this Consent Judgment, and such rate shall be disclosed on the Single-Page Disclosure Sheet described in paragraph 56. If an EDMC school voluntarily calculates a job placement rate for any Program of Study offered at an EDMC campus, it must calculate the Job Placement Rate in accordance with this Consent Judgment for that Program of Study and also calculate a Job Placement Rate in accordance with this Consent Judgment for all Programs of Study that are offered at that same EDMC campus, and such rates shall be disclosed on the Single-Page Disclosure Sheet described in paragraph 56. For purposes of this paragraph, all online offerings of each one of EDMC's schools shall be considered a "campus." Notwithstanding the foregoing, EDMC shall not be required to calculate Job Placement Rates for (a) any Program of Study that EDMC is teaching out (*i.e.*, that is not accepting new Students) or (b) Graduates/Completers of Western State College of Law.

63.     If EDMC does not calculate a job placement rate for a Program of Study,

26

and it is not required to calculate a Job Placement Rate by this Consent Judgment, then EDMC shall disclose to Prospective Students on the Single Page Disclosure Sheet that: "[EDMC school] does not calculate a job placement rate for students who completed this program."

64.     EDMC shall not make any claims or representations to Prospective Students about the likelihood of such Prospective Students obtaining employment after completing a Program of Study if it does not calculate and disclose a Job Placement Rate in accordance with this Consent Judgment.

65.     The Job Placement Rate calculated in accordance with this Consent Judgment shall be disclosed on the U.S. Department of Education's Gainful Employment Program Disclosure Template, which is the disclosure form issued by the Secretary of the U.S. Department of Education for Gainful Employment Programs, as well as at the time(s) and in the manner(s) provided herein. Moreover, with respect to job placement rates that EDMC calculates after the Effective Date, EDMC shall not report and/or disclose any job placement rate other than the Job Placement Rate calculated in accordance with this Consent Judgment, except as permitted by paragraph 69(e) or as may be required by a government entity or accreditor. EDMC must comply with any state regulations in addition to the requirements of this Consent Judgment.

66.     Notwithstanding anything to the contrary in this Consent Judgment, EDMC shall not be required to disclose a Program Completion Rate, a Program Cohort Default Rate, a Median Debt for Completers, or a Job Placement Rate for any Program of Study at a location with fewer than ten (10) Students or Graduates/Completers, as applicable, in that program.

27

67. Notwithstanding anything to the contrary in this Consent Judgment, EDMC shall not be required to calculate a Job Placement Rate for new Programs of Study that have not had any Completers or Graduates. A Program of Study is not "new" for purposes of this paragraph if the same campus at which the Program of Study is offered previously offered a program of substantially similar subject matter, content, length, and ending credential. For the avoidance of doubt, a Program of Study will be "new" for purposes of Job Placement Rate calculations if any governmental entity or any relevant accreditor considers the Program of Study substantially different from a prior Program of Study in terms of subject matter, content, length, or ending credential.

68. If EDMC relies on a third party for verifying and/or calculating Job Placement Rates, EDMC shall enter into a contract with such third party pursuant to which the third party shall agree to adhere to the requirements of this Consent Judgment concerning calculation and/or verification of Job Placement Rates (to the extent applicable) and require the third party to provide any requested information regarding the calculation and/or verification of Job Placement Rates to the Administrator. EDMC shall monitor such third party's compliance with these requirements.

69. EDMC shall deem an individual as "placed" only if the Graduate or Completer meets the below conditions of "employed" or "self-employed."

(a) Employed. The individual shall be deemed "employed" if each of the following six (6) requirements are met:

(1) The position is in the field of study or a related field of study. The position shall be considered to be in the field of study or a related field of study if it meets one of the following criteria:

28

(i)    the position is included on the list of job titles for the Graduate's/Completer's Program of Study published by the school and is included in the most recent CIP to SOC Crosswalk for the applicable CIP Code; *provided, however*, that it is understood that in an instance where a Graduate/Completer's actual job title is not listed on the CIP to SOC Crosswalk, EDMC may include the job as a placement under this provision if the job title the Graduate/Completer obtained is listed as a "Lay Title" on the O*Net Code Connector for an SOC job title that is linked to the Graduate/Completer's Program CIP per the CIP to SOC Crosswalk, regardless of any job level within the Graduate/Completer's title (*e.g.*, Registered Nurse 1, Registered Nurse 2, etc.), and the job description by the employer for the job title the Graduate/Completer obtained predominantly matches the job description, tasks, and work activities for the SOC job title that is linked to the CIP for the Graduate/Completer's program; or

(ii)    the position requires the Graduate/Completer to use, during a majority of the time while at work, the Core Skills listed in the school's published program and course descriptions expected to have been taught in the Student's program; and (x) the written job description requires education beyond a high school diploma or provides that a postsecondary credential is preferred, (y) the position is one as a supervisor or manager, or (z) the

29

Graduate/Completer or the employer certifies in writing that the education received by the Graduate/Completer provided a benefit or advantage to the Graduate/Completer in obtaining the position.

(2)     The position is a permanent position (*i.e.*, there is no planned end date) or a temporary position that the Graduate/Completer expects to maintain for a minimum of one hundred and eighty (180) days;

(3)     The position is a paid position;

(4)     The position requires at least twenty (20) work hours per week;

(5)     The Graduate/Completer has worked in the position for a minimum of thirty (30) days; and

(6)     EDMC has verified the employment after the Graduate/Completer has worked in the position for a minimum of thirty (30) days by: (i) speaking to either the employer or an agent of the employer to confirm employment, (ii) contacting the Graduate/Completer directly, (iii) receiving an email from the Graduate/Completer, or (iv) the Graduate/Completer's employer provides employment information about the Graduate/Completer by email or other written confirmation, or on-line.

(b)     Self-Employed. The individual shall be deemed placed as "self-employed" if each of the following four (4) requirements is met:

(1)     The position is in the field of study or a related field of study. The position shall be considered to be in the field of study or a related field of study if it meets one of the following criteria:

30

(i)     the position is included on the list of job titles for the Graduate's/Completer's Program of Study published by the school and is included in the most recent CIP to SOC Crosswalk for the applicable CIP Code; *provided, however*, that it is understood that in an instance where a Graduate/Completer's actual job title is not listed on the CIP to SOC Crosswalk, EDMC may include the job as a placement under this provision if the job title the Graduate/Completer obtained is listed as a "Lay Title" on the O*Net Code Connector for an SOC job title that is linked to the Graduate/Completer's Program CIP per the CIP to SOC Crosswalk and the job description by the employer for the job title the Graduate/Completer obtained matches the job description, tasks, and work activities for the SOC job title that is linked to the CIP for the Graduate/Completer's program; or

(ii)     the position requires the Graduate/Completer to use, during a majority of the time while at work, the Core Skills listed in the school's published program and course descriptions expected to have been taught in the Student's program; and the Graduate/Completer certifies in writing that the education received by the Graduate/Completer provided a benefit or advantage to the Graduate/Completer in performing the tasks entailed in such self-employment;

31

(2)     The Graduate/Completer has received some compensation in return for services provided in connection with the self-employment;

(3)     In the case of grant-funded or similar employment, the position is anticipated to employ the Graduate/Completer for a period of no less than three (3) months; and

(4)     EDMC has verified the self-employment and the Graduate/Completer has either (a) completed at least 135 hours of work (including, for example, time devoted to marketing or other unpaid preparatory or developmental work) in connection with the Graduate/Completer's self-employment or (b) received no less than $4,500.00 in compensation, over a period of no more than ninety (90) days, in return for services provided in connection with the self-employment, provided that EDMC has obtained written verification directly from the Graduate/Completer that includes: (i) an attestation that s/he is self-employed with a description of the nature of the self-employment and (ii) the number of hours worked and/or amount of compensation earned.

(c)     Federal Work/Study positions at EDMC or any affiliated school shall not be counted as "employment" or "self-employment."

(d)     Continuing Employment.

(1)     Graduates/Completers continuing employment in a position that was held prior to enrolling in the Program of Study shall not be deemed "placed" unless:

(i)     the requirements of subsections (a)(1) through (a)(6)

of this paragraph are met; and

(ii)     completing the Program of Study enabled the

Graduate/Completer to maintain the position, or the

Graduate/Completer earned a promotion or an increase in pay as a

result of completing the Program of Study.

(2)     If a Graduate/Completer continuing in a pre-enrollment

position enrolled in the Program of Study pursuant to an "established

employer educational assistance program," and the conditions of subsection

(d)(1)(ii) of this paragraph are not satisfied, then the Graduate/Completer

shall be excluded from the Job Placement Rate calculation. (The term

"established employer educational assistance program" shall mean a

program evidenced in writing in which an employer pays 50% or more of

the cost of tuition for its employee to attend a Program of Study to gain

skills related to the employee's current position with the employer.)

(e)     EDMC's first calculation of the Job Placement Rate in accordance

with the provisions of this Consent Judgment will be for the cohort of Graduates

and Completers from July 1, 2015 through June 30, 2016. EDMC has represented

that prior to the execution of this Consent Judgment it collected job placement

information for some or all of the Graduates/Completers in the July 1, 2013 through

June 30, 2014 and July 1, 2014 through June 30, 2015 cohorts (for purposes of this

subparagraph, the "Interim Cohorts"). It is understood that any job placement rate

calculation made by EDMC with respect to the Interim Cohorts shall comply with

the conditions and limitations provided in paragraph 23(c) and (d), except for job
placement rates required by a government entity or accreditor. Additionally,
whenever disclosing a job placement rate with respect to the Interim Cohorts that
was calculated pursuant to EDMC's own methodology, EDMC shall Clearly and
Conspicuously disclose, if applicable, that the rate calculated pursuant to EDMC's
methodology includes as placements employment positions that
Graduates/Completers had obtained prior to enrolling in the Program of
Study. EDMC shall not calculate and disclose any job placement rates with respect
to the Interim Cohorts except in accordance with this subparagraph or as may be
required by any accreditor or government entity.

70.     EDMC shall implement a protocol for performance checks of those
employees responsible for verifying, calculating, and/or disclosing job placement rates.
Such performance checks shall be designed to provide a reliable assessment of the
accuracy of disclosed job placement rates and compliance by EDMC's employees, agents,
and/or contractors with the verification, calculation, and disclosure of job placement rates.
The performance checks shall be carried out regularly by EDMC's compliance department
or an independent third party, if used. If the school obtains placement data by contacting
employers and Completer/Graduates, the information should be documented in writing,
including, to the extent practicable, the name of the employer, name of the Student, address
and telephone number of Student and employer, title of employment, duties of
employment, length of employment, hours worked, the name and title of the person(s)
providing the information to EDMC, the name and title of the person(s) at EDMC who

34

received and recorded the information, and the date the information was provided. EDMC shall maintain a copy of the above information for a period no less than three (3) years.

## Electronic Financial Impact Platform Disclosures

71.     Prior to enrolling in a Program of Study, a Prospective Student must generate a personalized disclosure using the Electronic Financial Impact Platform; *provided, however*, that Prospective Students who are ineligible for federal student aid or who are not borrowing funds to finance their education shall be exempt from this requirement. For the avoidance of doubt, in the event that a Student chooses to revisit the Electronic Financial Impact Platform after enrolling in a Program of Study, EDMC shall not have any additional obligations to that Student under this paragraph.

72.     EDMC shall undertake reasonable efforts to provide feedback to the Consumer Financial Protection Bureau ("CFPB") with regard to any preliminary versions of the Electronic Financial Impact Platform that the CFPB presents to EDMC. Once the CFPB has provided a ready-to-implement version of its Electronic Financial Impact Platform to EDMC, EDMC shall have sixty (60) days to determine whether it will use the CFPB's Electronic Financial Impact Platform.

73.     If EDMC determines not to use an Electronic Financial Impact Platform that is developed by the Consumer Financial Protection Bureau, EDMC and the Administrator, in consultation with the Attorneys General, shall work in good faith to establish the content, operation, and presentation of the Electronic Financial Impact Platform and the form of the disclosure required by paragraph 71, and EDMC must thereafter present any material changes to the content, operation, or presentation of the Electronic Financial Impact Platform to the Administrator, in consultation with the Attorneys General, for approval prior to use.

35

## MISREPRESENTATIONS, PROHIBITIONS, AND REQUIRED CONDUCT

74.    In connection with the recruitment of any Prospective Students, Defendants are prohibited from:

   (a)    making any false, deceptive, or misleading statements;

   (b)    omitting any material fact;

   (c)    engaging in unfair practices (as that term is commonly understood in the context of consumer protection laws);

   (d)    using any Abusive Recruitment Methods to persuade a Student to enroll or remain enrolled at an EDMC school; and

   (e)    making any representation inconsistent with required Disclosures of the U.S. Department of Education found in Title 34 of the Code of Federal Regulations Chapter 668 as such regulations may be amended or recodified.

75.    In connection with any communication with Students or Prospective Students, Defendants shall not:

   (a)    make a false, misleading, or deceptive statement about any governmental (federal, state, or other) approval related to a Program of Study;

   (b)    represent that a "recommendation" is required for acceptance into a Program of Study or that an Admissions Representative must recommend the Student for acceptance prior to admission unless such recommendation is an independent requirement for admission and is expressly stated in the catalog; or

   (c)    provide inaccurate statistics regarding any statistic required to be disclosed by this Consent Judgment or by the U.S. Department of Education in Title 34 of the Code of Federal Regulation Chapter 668.

36

76.     In connection with any communication with Students or Prospective Students, Defendants shall not make any false, deceptive, or misleading statements or guarantees concerning Student outcomes by:

(a)     misrepresenting that Students will be assured program completion or graduation;

(b)     misrepresenting that Students will be assured a job or employment following graduation; or

(c)     misrepresenting how many of the Student's credits will transfer in or out of the school, or representing to the Student that any credits obtained while attending the school are transferable (unless EDMC receives written assurance from another school or transfer of credits is assured through an articulation agreement or is required by state law).

77.     In connection with any communication with Students or Prospective Students concerning financial aid, Defendants shall not:

(a)     make any false, deceptive, or misleading statements concerning whether a Student will receive financial aid or any particular amount of financial aid;

(b)     purport to guarantee a Student particular military or veteran benefit without proper documentation on file; or

(c)     imply that financial aid or military funding will cover the entire costs of tuition, the costs of books or supplies, or the costs of attending a Program of Study, including living expenses, if such is not the case.

Notwithstanding the prohibitions contained in subparagraphs (a) through (c), EDMC and

37

its representatives are permitted to provide good-faith estimates to Students and Prospective Students about the amount of financial aid they may be expected to receive.

78.     Defendants shall not make express or implied false, deceptive, or misleading claims to Prospective Students with regard to the likelihood of obtaining employment as a result of enrolling, including, but not limited to misrepresenting:

(a)     the percentage, rate, or portion of Students who obtain employment following the completion of a Program of Study;

(b)     the annual starting salary for persons employed in a given field;

(c)     the annual starting salary of Graduates employed in a given field; and

(d)     the annual starting salary of Graduates.

79.     Defendants shall not make any express or implied false, deceptive, or misleading claims that Program Completion Rates, job placement rates, or annual salaries that are generally applicable to EDMC are equivalent to those for a specific Program of Study or that school-wide rates for a Program of Study are equivalent to those for a specific campus.

80.     Defendants shall not make express or implied false, deceptive, or misleading claims to Students or Prospective Students with regard to the ability to obtain a license or certification from a third party as a result of enrolling in a Program of Study, including but not limited to misrepresenting:

(a)     whether the Program of Study will qualify a Student to sit for a licensure exam, if any;

(b)     the types of licensure exams Students are eligible to sit for;

38

(c)    the states where completion of the Program of Study will qualify a
Student to take an exam or attain immediate authorization to work in the field of
study;

(d)    the passage rates of Graduates from that Program of Study;

(e)    the states where completion of the Program of Study will not qualify
a Student to sit for a licensure exam or attain immediate authorization to work in the
field of study; and

(f)    the states where a Student may be qualified to work within a
profession if the Student must meet other requirements to be employed in such
states.

81.    Defendants shall not make express or implied false, deceptive, or
misleading claims to Prospective Students with regard to the academic standing of its
programs and faculty including, but not limited to misrepresenting:

(a)    the transferability, or lack thereof, of any credits, including but not
limited to any credits for which the Student wishes to receive credit from an EDMC
school and for all credits from an EDMC school for which the Student may wish to
receive credit from another school;

(b)    the accreditation and the name of the accrediting organization(s);

(c)    the Student/faculty ratio;

(d)    the percentage of faculty holding advance degrees in the program;

(e)    the names and academic qualifications of all full-time faculty
members;

39

(f)     the course credits and any requirements for satisfactorily

completing a Program of Study, such as clinicals, internships, and externships; and

(g)     the Program Completion Rates for each of its offered Programs of

Study.

82.     Defendants shall not make express or implied false or misleading claims to

Prospective Students regarding actual or potential financial obligations the Student will

incur regarding a Program of Study, including but not limited to:

(a)     the Cost of Attendance;

(b)     the Anticipated Total Direct Cost the Student will incur to complete

the Program of Study;

(c)     the Program Cohort Default Rate; and

(d)     the Median Debt of Completers of each Program of Study.

83.     EDMC shall provide all Admissions Representatives and Student Financial

Services Representatives with the information reasonably necessary to inform Prospective

Students about EDMC and its Programs of Study, including but not limited to the

Single-Page Disclosure Sheet, and if a representative of EDMC truthfully advises a

Student or Prospective Student that he or she does not have the information requested by

the Student or Prospective Student at hand, then EDMC shall subsequently, to the extent

such information is reasonably ascertainable prior to the expiration of the applicable refund

period established by paragraph 104 (or, if no such refund period applies, prior to the first

day of the Student's semester, quarter, or payment term), provide such information.

84.     Except in circumstances in which paragraph 86 applies, if a Prospective

Student expresses an interest in pursuing a career as a medical assistant, psychologist,

surgical technician, surgical technologist, or surgical assistant following graduation from a Program of Study, the following shall apply:

      (a)     If the Prospective Student has expressed an interest in pursuing a career as a medical assistant following graduation from a Program of Study, and the Program of Study lacks accreditations from the Commission on Accreditation of Allied Health Education Programs ("CAAHEP") or the Accrediting Bureau of Health Education Schools ("ABHES"), EDMC shall inform the Prospective Student that employers may prefer to hire medical assistants who have been designated as Registered Medical Assistants ("RMA") or Certified Medical Assistants ("CMA"), and shall further inform the Prospective Student that graduates from the Program of Study will be eligible to sit for the examination to obtain the RMA designation but will not be eligible to sit for the examination to obtain the CMA designation.

      (b)     If the Prospective Student has expressed an interest in pursuing a career as a psychologist following graduation from a Program of Study, the Prospective Student is considering enrolling in a Program of Study that is not accredited by the American Psychological Association ("APA"), and APA accreditation is required for licensure in the state where the student resides or the campus is located, EDMC shall inform the Prospective Student that because the Program of Study is not APA-accredited, the Prospective Student is not eligible to obtain licensure as a clinical psychologist, school psychologist, or counseling psychologist at the state level in the relevant state(s).

      (c)     If the Prospective Student has expressed an interest in pursuing a

career as a surgical technician, surgical technologist, or surgical assistant, and the Prospective Student is considering enrolling in a Program of Study that is not accredited by CAAHEP or ABHES, EDMC shall inform the Prospective Student that employers may prefer to hire surgical technicians, surgical technologists, and surgical assistants who have obtained certification as Certified Surgical Technologists ("CST"), and shall further inform the Prospective Student that because the Program of Study lacks CAAHEP or ABHES accreditation, the Prospective Student will not be eligible to become a CST.

(d)    If EDMC, the Administrator, or the Attorneys General become aware of credible information indicating that a lack of programmatic accreditation for a particular Program of Study is prohibiting a significant number of graduates from that Program of Study from obtaining a specific career due to employer preferences in a state, regional, or national market, the parties shall work in good faith to determine whether such information is reasonably reliable and, if necessary, develop an appropriate disclosure similar to the disclosures required by subparagraphs (a) through (c).

85.    Except as set forth in paragraph 87, EDMC shall not represent in advertising, marketing, or promotional materials or otherwise that graduates of a Program of Study would be qualified for a particular occupation if that Program of Study lacks an accreditation necessary to qualify graduates for such occupation.

86.    Except as set forth in paragraph 87, for Programs of Study that prepare Students for employment in fields that require Students to obtain state licensure or authorization for such employment, Defendants shall not enroll Students in the Program of

42

Study if graduation from the Program of Study would not qualify such Students for state licensure or authorization or to take the exams required for such licensure or authorization in the state in which:

(a)     the EDMC campus is located, if the Program of Study is offered at an on-ground campus;

(b)     the Prospective Student resides, if the student resides in a different state from the on-ground campus; or

(c)     the Prospective Student resides if the Program of Study is offered online.

87.     The prohibitions established by paragraphs 85, 86, and 89 shall not apply if:

(a)     the Program of Study is a new program that cannot obtain a programmatic accreditation that would be necessary to qualify Students for state licensure or authorization or to take exams required for such licensure or authorization in the relevant state until the program is operational, the school is making a good faith effort to obtain the necessary programmatic accreditation in a timely manner, the school Clearly and Conspicuously discloses to Prospective Students on all promotional materials for the Program of Study and in a Clear and Conspicuous written disclosure prior to the Student signing an Enrollment Agreement that such programmatic accreditation would need to be obtained before the Student would qualify for state licensure or authorization or to take exams required for such licensure or authorization, and EDMC teaches-out the program if the school's application for accreditation for a program subject to this paragraph is denied, and it is not subject to further review;

(b)    the Prospective Student has notified EDMC in writing that the Student intends to seek employment in a state where the program does lead to immediate state licensure or authorization or qualification to take the exams required for such licensure or authorization;

(c)    the Prospective Student has already completed some of the coursework necessary to complete the Program of Study and is seeking re-enrollment, and EDMC advises the Prospective Student Clearly and Conspicuously in writing prior to re-enrollment that completion of the Program of Study is not expected to qualify the Student for state licensure or authorization or to take exams required for such licensure or authorization; or

(d)    the reason that graduation from the Program of Study would not qualify the Prospective Student for state licensure or authorization or to take the exams required for such licensure or authorization is that the Prospective Student has a criminal record that is disqualifying, and EDMC has complied with the disclosure and acknowledgement requirements of paragraph 90.

88.    Defendants shall take reasonable measures to arrange and facilitate sufficient placements for Students in internships, externships, practicums, or clinicals that are prerequisites for graduation, licensure, or certification; *provided, however*, that nothing herein shall prevent an EDMC school from requiring its Students to seek to obtain an internship, externship, practicum, or clinical through their own efforts in the first instance.

89.    EDMC shall not knowingly enroll a Student in a Program of Study that does not possess the accreditation typically required by employers in the Student's locality for employment. "Typically" shall mean 75% or more of job opportunities in a particular

44

occupation are open only to graduates of a school with certain accreditation(s) and/or an academic program with certain programmatic accreditation(s). EDMC shall make reasonable efforts to assess local employer requirements in localities where they enroll Students.

90.    If EDMC knows that a criminal record may disqualify a Student from employment in the field or a related field for which the Program of Study is a prerequisite, then EDMC shall (a) Clearly and Conspicuously disclose that a criminal record may disqualify the Student for the chosen field or related field of employment and (b) require the Student's acknowledgment of such disclosure in writing at or before the time of enrollment. If EDMC knows that a criminal record will disqualify a Student from employment in the field or a related field for which the Program of Study is a prerequisite, then EDMC shall (a) Clearly and Conspicuously disclose that a criminal record will be disqualifying and (b) require the Student's acknowledgment of such disclosure in writing at or before the time of enrollment.

91.    Arbitrations between EDMC and any Student shall not be protected or treated as confidential proceedings, unless confidentiality is required by law or the Student requests confidentiality. EDMC shall not ask or require any Student, participant, or witness to agree to keep the arbitration confidential. Except as may be prohibited by law or a Student request for confidentiality, and subject to appropriate assertions of the attorney-client privilege and/or the attorney-work-product doctrine, the Administrator and government entities and regulating bodies, including, but not limited to, state Attorneys General, shall not be prohibited from reviewing or inspecting the parties, proceedings, and evidence pertaining to the arbitration.

92.     EDMC shall not adopt any policy or engage in any practice that delays or
prevents Students with complaints or grievances against EDMC from contacting any
accrediting body, state or federal regulator, or Attorney General regarding the complaint or
grievance. Notwithstanding anything to the contrary in this paragraph, EDMC shall be
permitted to encourage Prospective Students and Students to file any complaint or
grievance with EDMC in the first instance, so long as EDMC does not represent or imply
that Students are required to file their complaints or grievances with EDMC before
contacting any accrediting body, state or federal regulator, or Attorney General regarding
the complaint or grievance, unless the accrediting body, state or federal regulator, or
Attorney General so requires.

## EDMC RECRUITING PRACTICES

93.     EDMC shall not engage in any false, misleading, deceptive, abusive, or
unfair acts or practices (as those terms are commonly understood in the context of
consumer protection laws) when recruiting Prospective Students, including during the
orientation program and refund periods referenced in paragraphs 103 and 104.

94.     EDMC shall not use Abusive Recruitment Methods when communicating
with Prospective Students during the admissions and enrollment process. EDMC shall
train Admissions Representatives and other employees to avoid use of Abusive
Recruitment Methods. EDMC shall audit its communications with Prospective Students,
including those of its Admissions Representatives, to ensure that Abusive Recruitment
Methods are not being used. EDMC shall make the results of such audits reasonably
available to the Administrator and the Attorneys General upon request.

95.     EDMC shall record all telephone calls and online chats between
Admissions Representatives or Student Financial Services Representatives, on the one

46

hand, and Students or Prospective Students, on the other, subject to interruptions in the ordinary course of business; *provided, however,* that EDMC shall not be required to record telephone calls between Students and Admissions Representatives when the purpose of the telephone call or online chat is not to discuss recruiting, admissions, financial aid, or career services issues, but the Admissions Representative is instead serving an advisory role related to the Student's performance in the Program of Study. This provision shall not require EDMC to record telephone calls or online chats placed or received on personal devices, such as cell phones. Admissions Representatives and Student Financial Services Representatives will be trained not to engage in communications with Students on personal devices. EDMC shall acquire and implement an automated voice interaction analytics platform acceptable to the Attorneys General and the Administrator capable of analyzing all of the call recordings required under this paragraph; *provided, however*, that EDMC shall not be required to analyze calls with a duration of two minutes or fewer. EDMC shall make the call recordings required under this paragraph reasonably available to the Administrator and the Attorneys General upon request. The voice analytics platform acquired and implemented shall provide conceptual and intuitive search capability and shall permit searching and remote retrieval. EDMC shall be relieved of its obligations under this paragraph on the seventh anniversary of the Effective Date.

96.    Notwithstanding anything to the contrary in this Consent Judgment, EDMC shall not be required to record a telephone conversation if the Student or Prospective Student, after receiving the disclosure required by paragraph 98, objects to the conversation being recorded, nor shall EDMC be prohibited from continuing a telephone conversation with a Student or Prospective Student on an unrecorded line once such an

objection has been made; *provided, however*, that EDMC shall be prohibited from encouraging Students or Prospective Students to object to recording the conversation.

97.     Call recordings shall be maintained for a period not less than sixty (60) days after the date of the call. The Administrator shall have full and complete access to all recordings via the voice analytics platform.

98.     EDMC shall inform a Prospective Student at the outset of any telephone call after the initial greeting that the call may be being recorded. EDMC shall be permitted to make this disclosure in pre-recorded form.

99.     EDMC shall not initiate unsolicited telephone calls to a telephone number that appears on any current Do Not Call Registry. EDMC shall keep an accurate record of and comply with any request to not receive further telephone calls. EDMC shall not initiate any outbound telephone calls to a person who has previously stated to EDMC that he or she does not wish to receive telephone calls from EDMC, or who has expressed a desire not to be contacted anymore by EDMC, or who has requested that they be placed on EDMC's internal do-not-call list.

100.    EDMC shall not continue a telephone call after a Prospective Student has expressed a desire to conclude the call or has clearly stated that he/she does not want to apply to or enroll at an EDMC school.

101.    EDMC shall not prevent a Prospective Student from consulting with or obtaining advice from a parent, adult friend, or relative with respect to any issue relevant to enrollment.

102.    EDMC shall invite Prospective Students under the age of eighteen (18) to bring an adult with them to any interview/meeting on campus prior to enrollment.

## REQUIRED ORIENTATION AND REFUND PROVISIONS

103. EDMC shall require all incoming Students (other than graduate Students and Students who have already obtained twenty-four (24) or more credits at the post-secondary education level) to complete an online and/or in-person orientation program prior to the Student's first class at no cost to the Student. This orientation program shall be approved by the Administrator in consultation with the Attorneys General. This orientation program shall address such topics as study skills, organization, literacy, financial skills, and computer competency. A Student may withdraw from enrollment in a Program of Study at any time during the orientation program without any cost, and any grants or financial aid received on behalf of the Student shall be returned to the grantor or lender.

104. All Students who are newly enrolled in any fully online Program of Study at an EDMC school (other than graduate Students and Students who have already obtained twenty-four (24) or more online credits at the post-secondary education level) shall be permitted to withdraw within twenty-one (21) days of the first day of the Student's semester, quarter, or (with respect to students enrolled in a non-term program) payment term at the EDMC school in which the Student enrolled. All Students who are newly enrolled in any on-ground Program of Study at an EDMC school (other than graduate Students) shall be permitted to withdraw within seven (7) days of the first day of the Student's first term or first scheduled day of class, whichever is latest in time, at the EDMC school in which the Student enrolled. EDMC shall Clearly and Conspicuously disclose the availability of the refund periods described in this paragraph in the Enrollment Agreement. EDMC shall not hold a qualifying Student who withdraws in accordance with this paragraph liable for any tuition and fees associated with attending classes and shall return

49

to grantors or lenders any grants and financial aid received for or on behalf of the Student. Under no circumstances shall the time of a Student's attendance in the orientation program required pursuant to paragraph 103 be included in the refund periods required pursuant to this paragraph.

105.    Except for qualifying Students who withdraw during the new Student orientation program required pursuant to paragraph 103 or the applicable refund period established by paragraph 104, when a Student withdraws from a Program of Study, EDMC may retain or be entitled to payment for a percentage of any tuition and fees and other educational costs earned, based on the percentage of the enrollment period attended by the Student, subject to the EDMC school's internal refund policies and applicable law; *provided, however*, that where a student has not attended sixty (60) percent of the academic term as calculated in accordance with 34 CFR 668.22, EDMC shall not retain or be entitled to payment for a percentage of any tuition and fees or other educational costs for a class that was scheduled to be taken during the relevant academic term but was not attended because the student withdrew from school prior to the commencement of the class. No EDMC school shall change its internal policy with respect to calculating the percentage of tuition and fees and other educational costs that a Student remains obligated to pay upon withdrawal in a manner that results in the policy becoming less favorable to Students unless EDMC obtains the prior approval of the Administrator or, if the Administrator's term has expired, the Executive Committee. EDMC shall comply with all state and federal record-keeping requirements for documenting Student attendance and determining dates of withdrawal.

50

106.    EDMC shall comply with applicable state and federal law specifying the

amounts owed by or to be refunded to Students to the extent their application would result

in a greater refund or lower cost for a Student than is otherwise required herein.

### THIRD-PARTY LEAD VENDOR REQUIREMENTS

107.    EDMC shall require that all contracts with Third-Party Lead Vendors who

provide it with lead generation services include each of the following:

(a)    a provision requiring that the Third-Party Lead Vendor comply

with:

(i)    EDMC's Administrator-approved Online Vendor

Compliance Guide in effect at the time of contracting or as may be

modified subsequently, subject to approval by the Administrator;

(ii)    all applicable state and federal consumer protection

laws;

(iii)    all provisions in the Code of Conduct referenced in

paragraph 108, when applicable; and

(iv)    all provisions of the Telephone Consumer

Protection Act, 47 U.S.C. § 227.

(b)    a prohibition on attracting Students or obtaining leads by misleading

advertising suggesting available employment opportunities rather than educational

opportunities;

(c)    a prohibition on representing that a Student or Prospective Student

is guaranteed to receive "free" financing from the federal or a state government;

*provided, however*, that EDMC may permit its Third-Party Lead Vendors to

51

represent that grants and scholarships may be available and would not need to be repaid;

(d)    a prohibition on representing that loans are grants that do not carry with them an obligation to be repaid;

(e)    a provision prohibiting Third-Party Lead Vendors from transferring a consumer inquiry to an EDMC school unless the consumer has expressly informed the Third-Party Lead Vendor that he or she is interested in educational opportunities. Prior to directing a consumer to an EDMC school, Third-Party Lead Vendors shall be required to ask the consumer if they are interested in educational opportunities. Should the consumer say "no," or otherwise provide a clear negative response as to their interest in pursuing educational opportunities, the consumer cannot be directed to an EDMC school. Should the consumer say "I'm not sure," or otherwise provide an equivocal response as to their interest in pursuing educational opportunities as opposed to job opportunities, the Third-Party Lead Vendor shall be permitted to describe the advantages an education may provide in creating additional job opportunities, but in so doing, the Third-Party Lead Vendor shall be prohibited from referencing any specific salary amounts. The Third-Party Lead Vendor shall then again ask the consumer if they are interested in educational opportunities. Should the consumer respond by providing a clear and affirmative indication that they are interested in educational opportunities, the Third-Party Lead Vendor shall be permitted to continue directing the consumer to an EDMC school; otherwise, the consumer cannot be directed to an EDMC school. In all events, prior to transferring any consumer to a representative of any EDMC school,

Third-Party Lead Vendors shall be required to reconfirm the consumer's interest in pursuing educational opportunities; and

(f)     a requirement that all Third-Party Lead Vendors begin calls made on behalf of EDMC with the following statement immediately after the consumer answers the phone, "This is [insert name] from [insert company], this call may be recorded for quality assurance and training purposes," or words to that effect. Should the consumer that answers the phone transfer the call to another consumer, the preceding statement must be repeated for this consumer and any other consumer that may be later connected to the call. Additionally, the Third-Party Lead Vendor will clearly state that "this call may be recorded for quality assurance and training purposes" before transferring a call to EDMC.

108.     In addition, EDMC shall negotiate in good faith with the Attorneys General and other industry participants with the goal of codifying a Code of Conduct for the recruitment of Students through Third-Party Lead Vendors. The Code of Conduct shall include provisions to help ensure that Third-Party Lead Vendors do not make misleading claims or use misleading solicitation strategies when generating leads for the industry participants. EDMC shall be bound to abide by the provisions of the Code of Conduct that the industry participants agree to follow and implement as long as those provisions do not conflict with any other requirement of this Consent Judgment. EDMC shall not be obligated to abide by the Code of Conduct provisions unless and until the Code of Conduct becomes effective as to industry participants representing (together with EDMC) at least 50% of students enrolled in for-profit schools, with such percentage to be calculated using the most recent available data from The Integrated Postsecondary Education Data System

regarding student enrollments at four-year and two-year for-profit institutions that award degrees at the associate's degree level or above.

109.   EDMC and the Administrator shall, in consultation with the Attorneys General, devise a plan for EDMC to monitor the conduct of EDMC's Third-Party Lead Vendors and verify that they are complying with the contractual terms set forth in paragraph 107, including but not limited to whether the Third-Party Lead Vendors are using any unfair, false, misleading, deceptive, or abusive acts or practices (as those terms are commonly understood in the context of consumer protection laws), and the use of any incentive, discount, or inducement of any kind to encourage Student inquiries or otherwise used to recruit Students.

110.   If EDMC learns that a Third-Party Lead Vendor has failed to comply with the contractual terms set forth in paragraph 107, EDMC shall retain a record of such violation (which record shall be available to the Administrator and the Attorneys General upon request) for a period of two (2) years and shall address such violation by taking one or more adverse actions against the segment of the Third-Party Lead Vendor's business in which the violation occurred (for example, if the Third-Party Lead Vendor commits a violation related to a webpage, electronic solicitation, or other online advertisement, EDMC shall not be required to take adverse action against that Third-Party Lead Vendor with respect to any call center services that the Third-Party Lead Vendor may be providing to EDMC) as follows:

(a)   First violation within any rolling 12-month period:  EDMC shall notify the Third-Party Lead Vendor of the violation and the steps it must take to correct the violation.  If, within five (5) business days, the Third-Party Lead Vendor

does not document that it is actively engaged in making the required changes, the violation shall be escalated to EDMC's Chief Marketing Officer who shall inform the Third-Party Lead Vendor and pause the campaign until the violation is corrected;

 (b) <u>Second violation within any rolling 12-month period</u>:  EDMC shall notify the Third-Party Lead Vendor of the violation and the steps it must take to correct the violation.  If, within five (5) business days, the Third-Party Lead Vendor does not document that it is actively engaged in making the required changes, the violation shall be escalated to EDMC's Chief Marketing Officer who shall inform the Third-Party Lead Vendor and pause the campaign for thirty (30) days or until the violation is corrected, whichever is longer; and

 (c) <u>Third violation within any rolling 12-month period</u>:  EDMC shall notify the Third-Party Lead Vendor of the violation and the steps it must take to correct the violation.  If, within five (5) business days, the Third-Party Lead Vendor does not document that it is actively engaged in making the required changes, the violation shall be escalated to EDMC's Chief Marketing Officer who shall inform the Third-Party Lead Vendor that the segment of the Third-Party Lead Vendor's business in which the violations occurred shall be removed from EDMC's vendor list for a period of at least one (1) year;

*provided, however*, that nothing in this paragraph shall be deemed to limit or otherwise affect EDMC's obligations under paragraph 111 of the Consent Judgment.

 111. Termination Violations.

  (a) For purposes of this paragraph, a "Termination Violation" means

55

any one of the following occurrences:

(1)     a Third-Party Lead Vendor's webpage, electronic solicitation, or other online advertisement references both a post-secondary educational opportunity and an employment opportunity, and the webpage, electronic solicitation, or online advertisement (i) uses a substantially smaller font size to present the educational opportunity as compared with the employment opportunity or (ii) represents the educational opportunity as a "want ad" or employment application;

(2)     a Third-Party Lead Vendor's webpage, electronic solicitation, or other online advertisement states that the Prospective Student (i) is eligible for a scholarship, grant, or financial aid as the result of a drawing or raffle, (ii) has been specially selected to receive a scholarship, grant, or financial aid, or (iii) is entitled to receive compensation to fund his or her education in exchange for completing a form; or

(3)     a Third-Party Lead Vendor's webpage, electronic solicitation, or other online advertisement states that a Prospective Student will receive compensation to fund his or her post-secondary education that will not need to be repaid, unless the statement refers to grants that are expressly stated to be subject to eligibility.

(b)     Notwithstanding anything in paragraph 110 to the contrary, in the event that a Third-Party Lead Vendor incurs three Termination Violations within a 180-day period, EDMC shall, within thirty (30) days of discovering the third such Termination Violation, terminate any outstanding insertion orders to the segment

of the Third-Party Lead Vendor's business in which the Termination Violations occurred and not issue any new insertion orders to that business segment for at least ninety (90) days; *provided, however*, that the requirements of this subparagraph shall not apply if the EDMC and/or the Third-Party Lead Vendor document to the reasonable satisfaction of the Administrator that the three Termination Violations that would otherwise have triggered the requirements of this subparagraph represented, in the aggregate, no more than 1% of the total Prospective Student leads from the Third-Party Lead Vendor during the relevant period.

112.    Upon written notice from the Attorneys General or Administrator that a Third-Party Lead Vendor has failed to comply with the contractual terms set forth in paragraph 107 of this Consent Judgment, or any provision of an applicable state consumer protection law, EDMC shall conduct an investigation of the Third-Party Lead Vendor practice and report the results of that investigation to the Attorneys General and to the Administrator within thirty (30) days, unless the Attorneys General agree otherwise.

113.    EDMC shall maintain policies and procedures and take appropriate action, including but not limited to exercising any rights available to it under a contract, to require Third-Party Lead Vendors to comply with this Consent Judgment. Appropriate action shall be determined by the nature and circumstance of the alleged violation, including but not limited to the pattern or severity of the alleged conduct.

114.    Subject to the prior approval of the U.S. Department of Education, EDMC shall work in good faith to develop and implement a system of paying Third-Party Lead Vendors based on the actual quality of leads produced by the particular vendor.

115.    Nothing in this Consent Judgment limits the right of the Attorneys General
to investigate or take any action against Third-Party Lead Vendors for any violation of
applicable law, nor shall anything in the Consent Judgment be construed to limit the
remedies available to the Attorneys General for any violation of applicable law by
Third-Party Lead Vendors.

## V.    ENFORCEMENT

116.    The terms of this paragraph apply only during the term of the
Administrator.

(a)    If at any time it appears that EDMC is engaged in a practice or
pattern of non-compliance, or commits an egregious act of non-compliance, either
on the basis of information obtained by the Administrator pursuant to the workplan
or from information obtained through any other source, then the Administrator
shall review the relevant facts, collect whatever additional facts the Administrator
deems necessary, seek EDMC's position as to the practice, pattern, or egregious act
of non-compliance and related instances of individual violations, and shall work in
conjunction with EDMC to devise a corrective action plan to remedy such practice
or pattern of non-compliance, including a reasonable period for corrective action
and implementation of such plan. To the extent that the Administrator and EDMC
are unable to agree to a corrective action plan, the Attorneys General may take
whatever action they deem necessary, including but not limited to bringing an
action to enforce this Consent Judgment, filing a new original action, conducting
further investigation, or attempting to negotiate a corrective action plan directly
with EDMC. Should the Attorneys General choose to file a new original action,
nothing referred to in this paragraph shall affect the release in paragraph 129.

58

(b)    At a reasonable time following the period for corrective action, the Administrator shall provide a report to the Executive Committee, setting forth:

(1)    a description of the practice or pattern of non-compliance and related instances of individual violations of the Consent Judgment (including the relevant facts);

(2)    a description of the corrective action plan;

(3)    findings by the Administrator as to whether the Administrator deems it reasonably likely that EDMC is in substantial compliance with the terms of the Consent Judgment, including but not limited to whether EDMC has ceased to engage in a practice or pattern of non-compliance; and

(4)    a description of EDMC's views as to the foregoing matters.

(c)    The Attorneys General agree that they will meet and confer with EDMC concerning the subject of the action before filing any action related to this Consent Judgment, so long as EDMC makes necessary representatives available to meet and confer in a timely manner. However, an Attorney General may take any action where the Attorney General concludes that, because of a specific practice, a threat to the health, safety, or welfare of the citizens of the State exists, or the practice creates a public emergency requiring immediate action.

(d)    The Attorneys General agree that no action may be filed to enforce the terms of this Consent Judgment unless they have proceeded as set forth in this paragraph. However, an Attorney General may take any action where the Attorney General concludes that, because of a specific practice, a threat to the health, safety,

59

or welfare of the citizens of the State exists, or the practice creates a public
emergency requiring immediate action.

117.    The terms of this paragraph shall apply following the term of the
Administrator.

(a)    For the purposes of resolving disputes with respect to compliance
with this Consent Judgment, should any of the Attorneys General have a reasonable
basis to believe that EDMC has engaged in a practice that violates a provision of
this Consent Judgment and decide to pursue the matter, then such Attorney General
shall notify EDMC in writing of the specific practice in question, identify with
particularity the provision of this Consent Judgment that the practice appears to
violate, and give EDMC thirty (30) days to respond to the notification. Within
thirty (30) days of its receipt of such written notice, EDMC shall provide a
good-faith written response to the Attorney General notification, containing either
a statement explaining why EDMC believes it is in compliance with the Consent
Judgment, or a detailed explanation of how the alleged violation occurred and a
statement explaining how EDMC intends to remedy the alleged breach.

(b)    EDMC shall provide the Attorneys General reasonable access to
inspect and copy relevant, non-privileged records and documents in the possession,
custody, or control of EDMC that relate to EDMC's compliance with each
provision of this Consent Judgment pursuant to that State's CID or investigative
subpoena authority. If the Attorneys General make or request copies of any
documents during the course of that inspection, the Attorneys General will provide
a list of those documents to EDMC. This provision does not limit the Attorneys

60

General's rights to otherwise serve subpoenas or CIDs on EDMC or to enforce them.

(c)     The Attorneys General may assert any claim that EDMC has violated this Consent Judgment in a separate civil action to enforce compliance with this Consent Judgment, or may seek any other relief afforded by law, but only after providing EDMC an opportunity to respond to the notification described in subparagraph (a); *provided, however,* that an Attorney General may take any action if the Attorney General concludes that a specific practice of EDMC requires immediate action due to a threat to the health, safety, or welfare of the public, or the practice creates a public emergency requiring immediate action.

118.    The Attorneys General agree to make good faith efforts to coordinate any future efforts to enforce violations of the injunctive relief herein, to the extent they are reasonably able and willing to do so. To that end, each Attorney General agrees to provide notice to the Executive Committee at least ten (10) business days prior to the filing of any action to enforce this Consent Judgment against any of the parties released from liability pursuant to paragraph 129. However, nothing in this paragraph shall be construed so as to limit the right of a state to enforce any law in any action by that state. In addition, the notice requirement stated herein shall not apply to the extent that the relevant Attorney General concludes that further delay in acting constitutes a threat to public health, safety, or welfare, or that the action intended to be taken addresses a public emergency requiring immediate action. For the avoidance of doubt, nothing in this paragraph shall relieve the Attorneys General of the requirements of paragraphs 116 and 117 of this Consent Judgment, which must be satisfied before any Attorney General may provide the notices

required by this paragraph.

119.    Subject to the release set forth in paragraph 129, nothing in this Consent Judgment limits the right of the Attorneys General to conduct investigations or examinations or file suit for any violation of applicable law, nor shall anything in the Consent Judgment be construed to limit the remedies available to the Attorneys General for any violation of applicable law that is not released by this Consent Judgment. For the avoidance of doubt, nothing in this paragraph shall be construed to modify the procedures to be followed prior to the filing of an action to enforce the terms of this Consent Judgment, as set forth in paragraphs 116 through 118.

## VI.    INSTITUTIONAL DEBT

120.    For purposes of this paragraph and paragraph 121, a "Qualifying Former Student" means any former student who meets the following criteria: (a) enrolled in a Program of Study with fewer than twenty-four (24) hours of transfer credit, (b) withdrew from the Program of Study within forty-five (45) days of the first day of their first term, and (c) whose final day of attendance at an EDMC school was between January 1, 2006, and December 31, 2014. As partial consideration for the release set forth in paragraph 129, without any admission of wrongdoing, Defendants agree to forgo efforts to collect all amounts that Defendants claim is owed to EDMC by Qualifying Former Students (hereinafter "Institutional Debt"), which amounts totaled, as of September 11, 2015, approximately $102,800,000.00. For the avoidance of doubt, Institutional Debt shall not include debts that are owed to non-EDMC entities, such as, for example, federal student loans owed to the United States government. In the event that a Qualifying Former Student or a co-signer for a Qualifying Former Student attempts to make a payment to EDMC subsequent to the Effective Date that relates to Institutional Debt, EDMC shall use its

62

reasonable best efforts to refuse such payment and return the payment. Defendants shall request that any and all trade line information related to amounts covered by this paragraph be deleted from Qualifying Former Students' credit reports, to the extent that such trade line information exists, at Defendants' own expense.

121.    Within ninety (90) days of the Effective Date, Defendants shall send a letter by U.S. mail to each Qualifying Former Student at his or her last known mailing address notifying such former students that Defendants are foregoing collection on their Institutional Debt, including all interest and fees. The notice shall state that due to a recent settlement with the Attorneys General the student's account balance owing to EDMC is $0 and shall encourage the student to advise any and all co-signers that the student's account balance owing to EDMC has been reduced to $0. The notice shall also inform the student that Defendants will send a copy of the notice to each of the credit reporting agencies (*i.e.*, TransUnion, Equifax, and Experian). The notice shall further inform the student that if the student finds that the amounts owed to Defendants by the student are still erroneously appearing on the student's credit report after one hundred and twenty (120) days and notifies Defendants, then Defendants, at their own expense, shall promptly and properly notify the appropriate credit reporting agency, whether directly or indirectly, of any change(s) to be made to the credit reporting resulting from the application of the terms of this Consent Judgment. The notice shall provide Defendants' contact information for making a request to correct a credit report and for any additional inquiries about the student's account.

## VII.  TIME TO IMPLEMENT AND DURATION

122.    Except as otherwise provided in paragraphs 35 and 121 and Exhibit A hereto, EDMC shall implement the terms of the Consent Judgment by no later than the Effective Date.

123.    With respect to each of the paragraphs of the Consent Judgment listed in Exhibit A hereto, EDMC shall implement the terms of the relevant paragraph of the Consent Judgment by no later than the date set forth in Exhibit A.

124.    Except as otherwise provided in paragraphs 38, 49, and 95, EDMC shall be relieved of its obligations under this Consent Judgment on the twentieth anniversary of the Effective Date; *provided, however*, that EDMC's obligations under paragraphs 74 through 83, 85, 93, 94 (first sentence only), 131, 135 through 138, and 141 of the Consent Judgment shall remain in effect unless and until the Consent Judgment is vacated or modified by the Court.

125.    Beginning on the fourth anniversary of the Effective Date, EDMC shall have the right to petition the Executive Committee to be relieved of its obligations under specific identified paragraphs of the Consent Judgment that EDMC believes have become overly burdensome or unnecessary.  EDMC shall set forth in writing the reasons why it believes it should be relieved from such obligations and any additional factors that it would like the Executive Committee to consider.  Moreover, if the U.S. Department of Education adopts regulations that establish a uniform approach for the calculation and disclosure of job placement rates that is applicable to EDMC schools, then EDMC may petition the Executive Committee to be relieved of its obligations under paragraph 23 and paragraphs 62 through 70 on the date when such regulations become effective.  The Executive Committee shall consider any petitions made by EDMC in good faith and, in each case, the

64

Executive Committee shall be obligated to meet and confer with EDMC within sixty (60) days of the request being sent and to make a recommendation about the petition to the Attorneys General within sixty (60) days thereafter. In the event that EDMC sells or otherwise transfers control of one or more of its schools to a third-party acquirer (the "Acquiring Company"), and the Acquiring Company becomes subject to the terms of this Consent Judgment as a successor to EDMC, the Acquiring Company shall assume EDMC's rights to petition under this paragraph with respect to the schools sold or transferred by EDMC.

## VIII. MISCELLANEOUS PROVISIONS

126. If the position of the Administrator is vacant or the Administrator's term has expired, then, to the extent that this Consent Judgment or the work plan referenced in paragraph 35 requires the Administrator's approval or consent for EDMC to take a particular action, then EDMC shall be entitled to take that action if it notifies the Attorneys General of its intent to act and the Attorneys General fail to object with particularity within thirty (30) days. If the Attorneys General object and particularize the bases for the objection within the thirty (30) day period, then the Parties shall promptly meet and confer, following which EDMC shall be entitled to seek judicial review with regard to the objection if necessary.

127. Either the Attorneys General or EDMC may request to meet and confer with respect to any aspect of this Consent Judgment or its implementation by notifying the other party. The notice shall state the subjects proposed to be discussed. The recipient of the notice shall in good faith make itself and/or its representatives available to meet and confer at a mutually convenient time within thirty (30) days of the notice being sent.

128.    This Consent Judgment is for settlement purposes only. No part of this
Consent Judgment constitutes or shall be deemed to constitute an admission by Defendants
that they have ever engaged in any conduct proscribed by this Consent Judgment, nor shall
this Consent Judgment constitute evidence against Defendants in any action brought by
any person or entity for any violation of any federal or state statute or regulation or the
common law, except in an action brought by the Attorney General to enforce the terms of
this Consent Judgment.

129.    As of the Effective Date, the Plaintiff hereby releases Defendants from all
civil claims, actions, causes of action, damages, losses, fines, costs, and penalties related to
the allegations of the Complaint in this action, that have been or could have been brought
against Defendants or any of their respective current or former affiliates, agents,
representatives, or employees pursuant to FDUTPA or other consumer-related or civil
fraud laws (including common law claims concerning fraudulent trade practices) on or
before the Effective Date. Notwithstanding any other term of this Consent Judgment, the
following do not comprise Released Claims: private rights of action; UDAP enforcement
actions relating to representations made to students in 2015 regarding the planned closure
of campuses of The Art Institutes; criminal claims; claims of environmental or tax liability;
claims for property damage; claims alleging violations of State or federal securities laws;
claims alleging violations of State or federal antitrust laws; claims alleging violations of
State or federal false claims laws, including but not limited to all claims brought in United
States, et al. v. EDMC, et al., Case No. 2:07-cv-00461; claims brought by any other agency
or subdivision of the State; claims alleging violations of State or federal privacy laws or
State data breach laws; and claims alleging a breach of this Consent Judgment.

130.    The Parties agree that this Consent Judgment does not constitute an

approval by the Attorneys General of any of Defendants' past or future practices, and

Defendants shall not make any representation to the contrary.

131.    The requirements of this Consent Judgment are in addition to, and not in

lieu of, any other requirements of state or federal law. Nothing in this Consent Judgment

shall be construed as relieving Defendants of the obligation to comply with all local, state,

and federal laws, regulations, or rules, nor shall any of the provisions of this Consent

Judgment be deemed as permission for Defendants to engage in any acts or practices

prohibited by such laws, regulations, or rules.

132.    Nothing contained in this Consent Judgment shall be construed to create or

waive any individual private right of action.

133.    Except as permitted by paragraph 134, Defendants shall not participate

directly or indirectly in any activity to form or proceed as a separate entity or corporation

for the purpose of engaging in acts prohibited in this Consent Judgment or for any other

purpose which would otherwise circumvent any part of this Consent Judgment.

134.    EDMC shall be permitted, without the provisions of this consent judgment

applying, to complete transactions in which it sells or otherwise transfers control of one or

more of its schools representing in the aggregate less than 3% of (a) EDMC's net revenues

for the fiscal year ended June 30, 2015, or (b) the average starting student body at EDMC's

post-secondary institutions during the fiscal year ended June 30, 2015, to an Acquiring

Company, and neither the transferred schools shall remain nor the Acquiring Company

shall become subject to the terms of this Consent Judgment, as successors to EDMC or

otherwise (an "Exempted Transaction"); *provided, however*, that in no event may the

aggregate of all Exempted Transactions ever exceed 10% of either (a) EDMC's net revenues for the fiscal year ended June 30, 2015, or (b) the average starting student body at EDMC's post-secondary institutions during the fiscal year ended June 30, 2015. Notwithstanding the foregoing, in no event will the sale or transfer of a school by EDMC qualify as an Exempted Transaction if (a) the school was among the largest 11% of school locations at EDMC (excluding the impact of students attending fully online programs) based on the average starting student body during the fiscal year ended June 30, 2015, or (b) the Acquiring Company is owned or controlled by any person or entity affiliated with EDMC or any EDMC board member or officer.

135.    If any clause, provision or section of this Consent Judgment shall, for any reason, be held illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other clause, provision or section of this Consent Judgment and this Consent Judgment shall be construed and enforced as if such illegal, invalid, or unenforceable clause, section, or other provision had not been contained herein.

136.    The section headings and subheadings contained in this Consent Judgment are included for convenience of reference only and shall be ignored in the construction or interpretation of this Consent Judgment.

137.    To the extent that any changes in Defendants' business, advertisements, and/or advertising practices are made to achieve or facilitate conformance to the terms of this Consent Judgment, the fact that such changes were made shall not constitute any form of evidence or admission, explicit or implicit, by Defendants of wrongdoing.

138.    In the event that any statute, rule, or regulation pertaining to the subject matter of this Judgment is enacted, promulgated, modified, or interpreted by any federal or

state government or agency, or a court of competent jurisdiction holds that such statute, rule, or regulation is in conflict with any provision of the Consent Judgment, and compliance with the Consent Judgment and the subject statute, rule or regulation is impossible, Defendants may comply with such statute, rule or regulation and such action in the affected jurisdiction shall not constitute a violation of this Consent Judgment. Defendants shall provide written notices to the Attorneys General and the Administrator, if applicable, that it is impossible to comply with the Consent Judgment and the subject law and shall explain in detail the basis for claimed impossibility, with specific reference to any applicable statutes, regulations, rules, and court opinions. Such notice shall be provided immediately upon EDMC learning of the potential impossibility and at least thirty (30) days in advance of any act or omission which is not in compliance with the Consent Judgment. Nothing in this paragraph shall limit the right of the Attorney General to disagree with EDMC as to the impossibility of compliance and to seek to enforce the Consent Judgment accordingly.

139. All notices under this Consent Judgment shall be provided to the following via email and Overnight Mail:

For EDMC:

J. Devitt Kramer
Senior Vice President, General Counsel and Secretary
Education Management Corporation
210 Sixth Avenue, 33rd Floor
Pittsburgh, Pennsylvania 15222
devitt.kramer@edmc.edu

and

Bradley R. Wilson
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street

New York, New York 10019
brwilson@wlrk.com

For the State of Florida:

Mark S. Hamilton
Special Counsel
Office of the Attorney General
107 W. Gaines Street
Tallahassee, FL 32399
Mark.Hamilton@myfloridalegal.com

     140.    Defendants shall be liable for all court costs.

     141.    The Court retains jurisdiction of this action for the purpose of ensuring

compliance.

     142.    This document is signed in anticipation of the Consent Judgment being

submitted to the Court for approval, without necessity of hearing, which is hereby

WAIVED by all parties. The signatures below indicate the parties' consent and agreement

to this Consent Judgment.

SIGNATURES ON FOLLOWING PAGES.

## ACCEPTANCE BY DEFENDANTS

EDUCATION MANAGEMENT
CORPORATION

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT
HOLDINGS LLC

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT
HOLDINGS II LLC

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT LLC

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT II LLC

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

THE ART INSTITUTES
INTERNATIONAL II LLC

By:      Timothy P. Moscato
Its:     Chief Operating Officer

SOUTH UNIVERSITY, LLC

By:      John T. South, III
Its:     President

BROWN MACKIE EDUCATION II LLC

By:      Danny D. Finuf
Its:     President

ARGOSY UNIVERSITY OF
CALIFORNIA LLC

By:      Cynthia G. Baum
Its:     President

ARGOSY UNIVERSITY OF FLORIDA,
INC.

By:      J. Devitt Kramer
Its:     Secretary

72

## ACCEPTANCE BY DEFENDANTS

EDUCATION MANAGEMENT
CORPORATION

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT
HOLDINGS LLC

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT
HOLDINGS II LLC

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT LLC

By:      Mark A. McEachen
Its:     President and Chief Executive
Officer

EDUCATION MANAGEMENT II LLC

By:      **Mark A. McEachen**
**Its:**     **President and Chief Executive**
**Officer**

THE ART INSTITUTES
INTERNATIONAL II LLC

By:      Timothy P. Moscato
Its:     Chief Operating Officer

SOUTH UNIVERSITY, LLC

By:      John T. South, III
Its:     President

BROWN MACKIE EDUCATION II LLC

By:      Danny D. Finuf
Its:     President

ARGOSY UNIVERSITY OF
CALIFORNIA LLC

By:      Cynthia G. Baum
Its:     President

ARGOSY UNIVERSITY OF FLORIDA,
INC.

By:      J. Devitt Kramer
Its:     Secretary

72

## ACCEPTANCE BY DEFENDANTS

EDUCATION MANAGEMENT
CORPORATION

THE ART INSTITUTES
INTERNATIONAL II LLC

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

By:    Timothy P. Moscato
Its:    Chief Operating Officer

SOUTH UNIVERSITY, LLC

EDUCATION MANAGEMENT
HOLDINGS LLC

By:    John T. South, III
Its:    President

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

BROWN MACKIE EDUCATION II LLC

EDUCATION MANAGEMENT
HOLDINGS II LLC

By:    Danny D. Finuf
Its:    President

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

ARGOSY UNIVERSITY OF
CALIFORNIA LLC

EDUCATION MANAGEMENT LLC

By:    Cynthia G. Baum
Its:    President

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

ARGOSY UNIVERSITY OF FLORIDA,
INC.

EDUCATION MANAGEMENT II LLC

By:    J. Devitt Kramer
Its:    Secretary

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

72

## ACCEPTANCE BY DEFENDANTS

EDUCATION MANAGEMENT
CORPORATION

THE ART INSTITUTES
INTERNATIONAL II LLC

By: Mark A. McEachen
Its: President and Chief Executive
Officer

By: Timothy P. Moscato
Its: Chief Operating Officer

EDUCATION MANAGEMENT
HOLDINGS LLC

SOUTH UNIVERSITY, LLC

By: John T. South, III
Its: President

By: Mark A. McEachen
Its: President and Chief Executive
Officer

EDUCATION MANAGEMENT
HOLDINGS II LLC

BROWN MACKIE EDUCATION II LLC

By: Danny D. Finuf
Its: President

By: Mark A. McEachen
Its: President and Chief Executive
Officer

ARGOSY UNIVERSITY OF
CALIFORNIA LLC

EDUCATION MANAGEMENT LLC

By: Cynthia G. Baum
Its: President

By: Mark A. McEachen
Its: President and Chief Executive
Officer

ARGOSY UNIVERSITY OF FLORIDA,
INC.

EDUCATION MANAGEMENT II LLC

By: J. Devitt Kramer
Its: Secretary

By: Mark A. McEachen
Its: President and Chief Executive
Officer

72

## ACCEPTANCE BY DEFENDANTS

EDUCATION MANAGEMENT
CORPORATION

THE ART INSTITUTES
INTERNATIONAL II LLC

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

By:    Timothy P. Moscato
Its:    Chief Operating Officer

SOUTH UNIVERSITY, LLC

EDUCATION MANAGEMENT
HOLDINGS LLC

By:    John T. South, III
Its:    President

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

BROWN MACKIE EDUCATION II LLC

EDUCATION MANAGEMENT
HOLDINGS II LLC

By:    Danny D. Finuf
Its:    President

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

ARGOSY UNIVERSITY OF
CALIFORNIA LLC

EDUCATION MANAGEMENT LLC

By:    Cynthia G. Baum
Its:    President

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

ARGOSY UNIVERSITY OF FLORIDA,
INC.

EDUCATION MANAGEMENT II LLC

By:    J. Devitt Kramer
Its:    Secretary

By:    Mark A. McEachen
Its:    President and Chief Executive
Officer

ARGOSY EDUCATION GROUP, INC.
(D/B/A ARGOSY UNIVERSITY,
TAMPA)

By      J. Devitt Kramer
Its:    Secretary

THE UNIVERSITY OF SARASOTA,
INC.

By:     J. Devitt Kramer
Its:    Secretary

THE ART INSTITUTE OF
PITTSBURGH LLC

By:     J. Devitt Kramer
Its:    Secretary

THE ART INSTITUTE OF FORT
LAUDERDALE, INC.

By      J. Devitt Kramer
Its:    Secretary

THE ART INSTITUTE OF
JACKSONVILLE, INC.

By      J. Devitt Kramer
Its:    Secretary

ART INSTITUTE OF ORLANDO, INC.

By      J. Devitt Kramer
Its:    Secretary

THE ART INSTITUTE OF TAMPA, INC.

By      J. Devitt Kramer
Its:    Secretary

AIT RESTAURANT, INC.

By:     J. Devitt Kramer
Its:    Secretary

MIAMI INTERNATIONAL
UNIVERSITY OF ART & DESIGN, INC.

By:     J. Devitt Kramer
Its:    Secretary

SOUTH UNIVERSITY OF FLORIDA,
INC. (D/B/A SOUTH UNIVERSITY,
ORLANDO; SOUTH UNIVERSITY,
TAMPA; AND SOUTH UNIVERSITY,
WEST PALM BEACH)

By:     J. Devitt Kramer
Its:    Secretary

BROWN MACKIE COLLEGE – MIAMI, INC.

By _____
J. Devitt Kramer
Its:    Secretary

BROWN MACKIE COLLEGE – MIAMI NORTH LLC

By _____
J. Devitt Kramer
Its:    Secretary

COUNSEL FOR DEFENDANTS

_____
By:  Carol DiBattiste
EVP, Chief Legal, Privacy, Security and
Administrative Officer
Education Management Corporation

_____
By:  J. Devitt Kramer
SVP, General Counsel and Secretary
Education Management Corporation

_____
By:  Meyer G. Koplow
Counsel for Education Management
Corporation
Wachtell, Lipton, Rosen & Katz

BROWN MACKIE COLLEGE – MIAMI, INC.

COUNSEL FOR DEFENDANTS

_____

By:     J. Devitt Kramer
Its:     Secretary

BROWN MACKIE COLLEGE – MIAMI NORTH LLC

_____

By:     J. Devitt Kramer
Its:     Secretary

_____
By:  Carol DiBattiste
EVP, Chief Legal, Privacy, Security and
Administrative Officer
Education Management Corporation

_____
By:  J. Devitt Kramer
SVP, General Counsel and Secretary
Education Management Corporation

_____
By:  Meyer G. Koplow
Counsel for Education Management
Corporation
Wachtell, Lipton, Rosen & Katz

**ACCEPTANCE BY ATTORNEY GENERAL'S OFFICE**

The Office of the Attorney General approves the entry of this *Consent Judgment.*

Signed this _____ day of November, 2015

Mark S. Hamilton
Special Counsel
Office of the Attorney General
107 W. Gaines Street
Tallahassee, FL  32399
(850) 414-3300 (Telephone)
(850) 488-4483 (Fax)
Fla. Bar No.:  0063819
email: Mark.Hamilton@myfloridalegal.com

75

DONE AND ORDERED in Chambers in Tallahassee, Leon County, Florida this

16ᵗʰ day of _____November_____, 2015.

_____
CIRCUIT JUDGE

cc:   Mark S. Hamilton, Special Counsel
      Charles D. Cording, Esq.

**Exhibit A – Implementation Schedule**

| Consent Judgment Paragraph(s) | Subject Matter of Terms | Deadline for Compliance |
|---|---|---|
| ¶¶ 56-58 (and all other references) | Single-Page Disclosure Sheet[1] | 180 days from the Effective Date, except:<br><br>• the deadline for including the Median Earnings for Completers on the Single-Page Disclosure Sheet pursuant to ¶ 56(f) shall be ninety (90) days after the US Department of Education provides the final relevant data; and<br><br>• the deadline for including a Job Placement Rate on the Single-Page Disclosure Sheet pursuant to ¶ 56(g) shall be March 1, 2017. |
| ¶¶ 71-73 | Electronic Financial Impact Platform | If EDMC determines to use the platform that is developed by the Consumer Financial Protection Bureau, then EDMC shall implement that Electronic Financial Impact Platform within 180 days of the date of such determination.<br><br>If EDMC determines not to use the platform that is developed by the Consumer Financial Protection Bureau, then EDMC shall have one year to develop, have approved by the Administrator in consultation with the Attorneys General, and implement its own Electronic Financial Impact Platform, running from the date of such determination. |

---

[1] All capitalized terms used in this Exhibit A shall have the meaning given to them in the Consent Judgment.

| Complaint Paragraphs | Subject Matter | Deadline for Compliance |
|---|---|---|
| ¶¶ 84-87, 89-90 | Prohibitions relating to graduate eligibility for employment and/or required licensure | 180 days from the Effective Date |
| ¶¶ 95-98 | Call recording and voice analytics | Phased in with full functionality 18 months from the Effective Date |
| ¶¶ 99-100 | Telephone Consumer Protection Act and related matters | 90 days from the Effective Date |
| ¶ 103 | Mandatory orientation | 180 days from the Effective Date |
| ¶ 104 | Refunds for newly enrolled students | 180 days from the Effective Date |
| ¶ 105 | Internal policy regarding obligation to pay tuition and fees when student does not attend 60% of the term | 180 days from the Effective Date |
| ¶¶ 107-114 | Third-Party Lead Vendor compliance | 90 days from the Effective Date |

<u>**Exhibit B – Single-Page Disclosure Sheets**</u>

# Argosy University
Forensic Psychology (Online) Associates Degree

## Facts you should know about this program

**Time and Cost Estimates**

**4 YEARS**  Time to complete if you continuously attend on a full-time basis

**$59,475**  Total tuition, fees and book costs

**Transfer of Credits and Degrees**

**Course credits** are not guaranteed to transfer to other schools

**Success of Students who Enroll**

**20%** complete the program

● ●  ● ● ● ● ● ● ● ●
**2 complete**   **8 do not complete**

**40%** default on their federal student loans

● ● ● ● ●   ● ● ● ●
**6 are not in default**   **4 are in default**

**Outcomes for Students who Complete**

**Job Placements** for students in this field are not calculated by Argosy University

**$37,446**  Median earnings for graduates

**$43,714**  Median student loan debt for graduates

| Please read carefully the Frequently Asked Questions to further understand these facts |
|---|

See www.argosy.edu/programs-info for program duration, tuition, fees and other costs, median debt, salary data, and other important information.

# Art Institute
## Graphic Design (Online) Associates Degree

## Facts you should know about this program

**Time and Cost Estimates**

**4 YEARS**     Time to complete if you continuously attend on a full-time basis

**$59,475**     Total tuition, fees and book costs

**Transfer of Credits and Degrees**

**Course credits** will likely not transfer to other schools

**Degrees** will likely not be honored by other schools

**Success of Students who Enroll**

**20%** complete the program

● ●    ● ● ● ● ● ● ● ●
**2 complete**    **8 do not complete**

**40%** default on their federal student loans

● ● ● ● ● ●    ● ● ● ●
**6 are not in default**    **4 are in default**

**Outcomes for Students who Complete**

**60%** are able to get a job in this field

● ● ● ● ● ●    ● ● ● ●
**6 get jobs**    **4 do not get jobs**

**$37,446**     Median earnings for graduates

**$43,714**     Median student loan debt for graduates

| Please read carefully the Frequently Asked Questions to further understand these facts |
| --- |

See www.artinstitutes.edu/programs-info for program duration, tuition, fees and other costs, median debt, salary data, alumni success, and other important information.