**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| THE ART INSTITUTE OF PHILADELPHIA LLC, *et al.*, | Case No. 18-11535 (CTG) |
| Debtors. | Jointly Administered |
| GEORGE L. MILLER, Chapter 7 Trustee, | |
| Plaintiff, | Adv. Pro. No. 20-50627 (CTG) |
| v. | **Related Docket Nos. 40, 42, 45, 48** |
| TODD S. NELSON, *et al.*, | |
| Defendants. | |

<u>**MEMORANDUM OPINION**</u>

Debtor Education Management Corporation[1] and its affiliates ran for-profit colleges.  The basic allegation in the complaint filed by the chapter 7 trustee is that after a 2006 leveraged buyout, the debtors implemented a series of aggressive recruiting practices designed to increase enrollment (and thus revenue) without regard for the students' qualifications.  It is further alleged that the debtors established compensation systems that encouraged such aggressive recruiting practices.  These practices were alleged to violate various state and federal laws governing for-profit colleges.  Following a series of governmental investigations and

---

[1] Debtor Education Management Corporation is referred to herein as "EDMC."

*qui tam* actions, the complaint alleges that the debtors were forced to pay fines, penalties, and settlements that led to the destruction of their business.

Facing financial distress, the debtors closed or sold its various schools in 2016 and 2017, before filing chapter 7 bankruptcy cases in June 2018.  George L. Miller, the chapter 7 trustee in these cases, has filed this lawsuit against ten former officers and directors of the debtors.  He contends, in a series of counts the parties refer to as the "management claims," that defendants' management of the schools (including implementing and leaving in place the allegedly unlawful recruiting and compensation programs) breached the defendants' fiduciary duties, was fraudulent, and amounted to an unlawful civil conspiracy.  Miller also claims, in a series of counts that the parties refer to as the "payment claims," that the compensation paid to the defendants constitutes unjust enrichment, corporate waste, and is avoidable in bankruptcy on preference and fraudulent conveyance theories.

The central theme of the complaint is that the debtors' business was a fundamentally fraudulent one.  Rather than alleging that particular defendants engaged in specific acts that give rise to liability, the trustee emphasizes that each of the defendants participated in the operations of a business that is alleged to be little more than a scam.  He contends that such allegations provide the defendants with ample notice of the claims asserted against them and insists that the rest should be for a jury to sort out.  Upon the filing of a motion to dismiss, however, the Court's task is to assess whether the factual allegations of the complaint (which are accepted

as true with reasonable inferences drawn in favor of the plaintiff) give rise to causes of action under the legal theories asserted.

* * *

*Management Claims.*  By way of overview, as explained in Part I of this Memorandum Opinion, the complaint's allegation that the defendants knowingly engaged in unlawful conduct that ultimately led to the destruction of the company is sufficient to state a claim for breach of fiduciary duty.  With respect to the defendants' argument that this claim is barred by the statute of limitations, because this suit was filed within two years of the order for relief, under section 108 of the Bankruptcy Code any claim that could have been asserted by the debtor at the time of the bankruptcy filing is timely, whereas any claim that had expired as of the petition date is not.  And by virtue of the internal affairs doctrine, the Court concludes that Delaware's three-year statute of limitations applies to the claims for breach of duties running to legal entities organized under Delaware law while Pennsylvania's two-year statute of limitations applies to the claims of breach of fiduciary duty running to entities organized under Pennsylvania law.

While there may be some room to argue around the margins over exactly when a claim for breach of fiduciary duty arises, it is clear that such a claim has arisen (and the statute has begun to run) once the act or omission that is alleged to constitute the breach had occurred and the consequences of that act were revealed to the public. Here, the complaint itself alleges that all of that had happened as of June 29, 2015 – three years before the bankruptcy filing.  As a result, breach of fiduciary duty claims

against those defendants who were no longer in a fiduciary role as of that date are time-barred.

As for those defendants who served in a fiduciary capacity within the period covered by the statute of limitations, despite the fact that the complaint alleges that the debtors' business was in wind-down mode for most of this period (which certainly raises questions about how breaches alleged to have occurred in this period caused injury to the debtor), the Court concludes that the allegations of the complaint are sufficient to survive a motion to dismiss.

Even as to those claims that are not barred by the statute of limitations, the defendants argue that, because similar claims were the subject of pre-bankruptcy shareholder lawsuits, under the doctrine of claim preclusion the dismissal of those cases bars the trustee's lawsuit. It does not. A court may dismiss a derivative lawsuit on the ground that the special committee determined not to pursue the claim after a thorough and independent analysis, without itself adjudicating the merits of the underlying claim. The dismissal of derivative actions brought against EDMC, in which shareholders sought to assert fiduciary duty claims against directors and officers, therefore does not give rise to claim preclusion that would bar the trustee from asserting such a claim on the debtors' behalf. With respect to the other preclusion defenses asserted by the defendants, such as issue preclusion and judicial estoppel, the Court concludes that those defenses, in the circumstances of this case, would require an assessment of extrinsic material that is not subject to judicial notice, and thus are not properly addressed on a motion to dismiss.

As Part II explains, the claim for common law fraud fails because, on the facts alleged, there is no allegation that the debtor (as opposed to the government) suffered injury as a result of its reliance on a misrepresentation made by the debtor. And as set forth in Part III, except as they relate to the surviving claims for breach of fiduciary duty, the claim for civil conspiracy fails in the absence of another live claim for an underlying tort or other cause of action.

*Payment Claims.* Except for the claim for constructive fraudulent conveyance, the payment claims will also be dismissed without prejudice. Part IV explains that the claims for corporate waste and unjust enrichment require a showing that corporate assets were irrationally squandered. The complaint here, however, alleges that the payments to the defendants were made pursuant to employment agreements for services actually provided. It is therefore insufficient to state a claim for corporate waste or unjust enrichment. Nor does the complaint plead fraud with the specificity necessary to assert a claim for intentional fraudulent conveyance.

Part V addresses the claim for constructive fraudulent conveyance. Despite the allegation in the complaint that the payment was made under an employment agreement, one cannot discern from the allegations of the complaint itself whether each payment in fact satisfied a specific legal obligation of the debtor to pay, or whether some of the payments reflected discretionary decisions of the debtor. Because the latter could give rise to a claim of constructive fraudulent conveyance, this count cannot be dismissed under the Rule 12(b)(6) standard.

Finally, as set forth in Part VI, the preference claim fails because the complaint does not identify which debtors made any of the transfers sought to be avoided as preferences, which this Court's precedents require.

## Factual and Procedural Background

The debtors were in the business of providing post-secondary education through for-profit learning institutions.[2]  The debtors' corporate structure consisted of an ultimate parent company, EDMC, a Pennsylvania corporation; four holding companies, all Delaware corporations; and numerous operating entities, consisting of various learning institutions that were wholly owned by the Delaware holding companies.[3]

For-profit colleges have been the subject of intense public controversy and governmental scrutiny since at least 2010.[4]  A Senate Committee report released in 2012, for example, found that EDMC and other for-profit colleges employed recruitment and enrollment practices, designed to attract federal student loan proceeds, that violated various governmental regulations.  The report found, for example, that EDMC and other for-profit colleges misled students about the cost of tuition, the quality of their academic programs, and the likelihood of obtaining post-graduation employment.[5]  It also asserted that EDMC improperly compensated its

---

[2] D.I. 1 ¶ 2.  As Fed. R. Civ. P. 8(a) (made applicable hereto by Fed. R. Bankr. P. 8) requires, the facts set forth herein are based on the allegations in the complaint, which are taken as true for the purpose of considering a motion to dismiss for failure to state a claim.

[3] D.I. 1 ¶ 10.

[4] *Id.* ¶¶ 56-60.

[5] *Id.* ¶ 60.

admission staff in violation of certain regulations.[6]  All the while, the complaint alleges, EDMC was regularly certifying to the Department of Education that it did no such thing.[7]

EDMC was also subject to *qui tam* actions alleging that the company's policies for compensating its admissions and recruitment staff were intentionally designed to encourage its staff to recruit students (and thus to attract the accompanying federal student loan dollars) without regard to the likelihood that the students would benefit from the schools' educational programs.[8]  EDMC entered into a settlement with the U.S. Department of Justice and several other governmental entities that were investigating EDMC in November 2015.[9]  The settlement required EDMC to pay $95.5 million to various state and federal entities and to forgive more than $100 million in student loans that the company had made.[10]

In January 2016, the debtors began to wind down their operations and to liquidate substantially all of their assets.[11]  The debtors sold some of its campus properties to third-party purchasers and implemented "teach-out"[12] plans in

---

[6] *Id.*

[7] *Id.* ¶¶ 85-86.

[8] *Id.* ¶¶ 61, 65, ¶¶ 67-69.

[9] *Id.* ¶¶ 72, 117.

[10] *Id.* ¶¶ 72, 119; *see also id.*, Exh. D (Settlement Agreement).

[11] *Id.* ¶¶ 123-29.

[12] "A teach-out plan is a written course of action a school will take to ensure its students are treated fairly with regard to finishing their programs of study."  Federal Student Aid, https://studentaid.gov/help-center/answers/article/what-is-teach-out-plan-and-must-i-accept (last visited Oct. 5, 2021).

anticipation of permanent closures of the remaining locations.[13]  The complaint also alleges, however, that the allegedly fraudulent certifications continued throughout this period and indeed "through and beyond" the petition date in these bankruptcy cases.[14]

During the company's liquidation, several of the defendants, who were at the time actively employed as members of the debtors' boards, were compensated in amounts ranging from $262,000 to as much as $13 million.[15]

On June 29, 2018, each of the debtors filed for bankruptcy under chapter 7 of the Bankruptcy Code.[16]  George Miller was thereafter appointed as the chapter 7 trustee.  On June 17, 2020, Miller filed this adversary proceeding against ten defendants, each of whom is alleged to have served as an officer or director of EDMC and/or one or more of the Delaware holding companies.[17]  Each of the defendants has moved to dismiss the complaint for failure to state a claim.  This Court heard argument on the motions on October 13, 2021.

## Jurisdiction

Certain of the claims (in this case those for preference and fraudulent conveyance) arise under the Bankruptcy Code and are thus within the district court's

---

[13] D.I. 1 ¶¶ 123–129.

[14] *Id.* ¶ 90.

[15] *Id.* ¶¶ 135-141 & Exh. G–J.

[16] *Id.* ¶ 9.

[17] The allegations in the complaint are limited to the defendants' roles as officers or directors of EDMC and/or one or more of the Delaware holding companies.  The complaint does not allege that any of the defendants served as an officer or director of any of the underlying operating entities.

"arising under" jurisdiction set out in 11 U.S.C. § 1334(b).[18]  The common-law claims

are within section 1334(b)'s "related to" jurisdiction because the resolution of those

claims would have a "conceivable effect" on the estate.[19]  These cases have been

referred to this Court under 28 U.S.C. § 157(a) and the February 29, 2012, Standing

Order of the U.S. District Court for the District of Delaware.[20]

## Analysis

The Court's task when considering a motion to dismiss is to determine whether

the complaint's factual allegations are sufficient to state the claims alleged.[21]  Under

Federal Rule 8(a)(2) (made applicable to this proceeding by Bankruptcy Rule 7008),

a complaint must contain a "short and plain statement of the claims showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[22]  The purpose of this rule is to

---

[18] *In re Atamian*, 368 B.R. 375, 379 (Bankr. D. Del. 2007) (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)).

[19] *In re Fairchild Corp.*, 452 B.R. 525, 530 (Bankr. D. Del. 2011) (citing *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

[20] Fed. R. Bankr. P. 7008 requires that a complaint in an adversary proceeding "contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to the entry of final orders or judgment by the bankruptcy judge."  The complaint states that the trustee does not consent to the entry of judgment but does not contain an allegation whether the proceeding is core or non-core.  To the extent the trustee intends to file an amended complaint, the trustee is directed to comply with the rule.  If the trustee intends to proceed on the existing complaint, the trustee should file a statement on the docket indicating whether the trustee alleges that the count for breach of fiduciary duty is core or non-core.  The running of the 14-day period for the defendants to answer the complaint following the disposition of these motions, set forth in Fed. R. Civ. P. 12(a)(4)(A), shall be tolled until the trustee makes such a filing.

[21] *In re DBSI, Inc.*, 447 B.R. 243, 246 (Bankr. D. Del. 2011); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[22] *See also Connelly v. Lane Construction Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (highlighting that a complaint can be dismissed for failing to state a claim, but that generally "detailed pleading" is not required).

provide the defendant with fair notice of the claims alleged against him such that he can adequately defend himself against those claims.[23]   A motion to dismiss is an attack on the sufficiency of the allegations in a complaint, which are taken as true, with all reasonable inferences therefrom drawn in favor of the non-moving party.[24] The factual allegations in a complaint need not be detailed but must provide notice to the defendant "as to the basics of the complaint" and set forth fact-based allegations that stretch beyond "naked assertions" and conclusory allegations.[25]   Under Rule 9(b), however, allegations of fraud must be pled with particularity.[26]

I.   **The complaint adequately states a claim for breach of fiduciary duty against the defendants alleged to have been directors or officers at any period within the three years before the petition date.**

The claim for breach of fiduciary duty raises three substantive issues – *first*, whether the complaint adequately alleges facts sufficient to state a claim; *second*, whether, based on the facts as alleged, the claim is subject to a valid statute of limitations defense; and *third*, whether the claim is barred under principles of preclusion or estoppel.   All of these issues, however, are subject to the logically antecedent question of which jurisdiction's law will govern.   The Court will

---

[23] *In re Zohar III*, No. 18-10512 (KBO), 2021 Bankr. LEXIS 1947, at *13 (Bankr. D. Del. Jul. 23, 2021) (citing *In re Lexington Healthcare Grp., Inc.*, 339 B.R. 570, 575 (Bankr. D. Del. 2006)).

[24] *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 921 n.1 (3d Cir 2015).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[26] *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

accordingly address that choice-of-law issue first, before turning to the three substantive issues.

### A.   The internal affairs doctrine applies to the breach of fiduciary duty claim.

The parties disagree about which jurisdiction's law applies to the claims of breach of fiduciary duty. The trustee argues that the operating entities that engaged in the alleged wrongful practices were each owned by one of four Delaware holding companies and that Delaware law should therefore apply to the fiduciary duty claims.[27] The defendants contend that because the alleged harms were ultimately sustained by EDMC, which was based in Pennsylvania and incorporated under Pennsylvania law, Pennsylvania law should apply.[28]

The Court notes at the outset that even the question of whose choice-of-law principles should apply is subject to disagreement. When disputes that are governed by state law are heard in bankruptcy court because they are within the related-to jurisdiction, several decisions of this Court state that the court should apply Delaware choice-of-law principles, as those governing in the jurisdiction in which this

---

[27] D.I. 58 at 26.

[28] D.I. 46 at 13-14.

Court sits, to decide what substantive law controls.[29]   Indeed, in an unpublished

opinion, the Third Circuit has followed precisely that approach.[30]

On the other hand, Judge Sontchi has pointed out that this reasoning – looking

to the forum state's choice-of-law principles – is fundamentally the approach that the

Supreme Court set forth in *Klaxon*,[31] which by its terms was addressed to the

diversity jurisdiction of 28 U.S.C. § 1332.[32]  And it is by no means self-evident that

the principles of *Klaxon* (which point to the forum state's choice-of-law rules) are

applicable where a case is in federal court by virtue of bankruptcy rather than

diversity jurisdiction.[33]   For this reason, Judge Sontchi explained in *Welded*

---

[29] *In re Essar Steel Minn. LLC*, No. 16-11626 (BLS) 2019 Bankr. LEXIS 1622, at *11 (Bankr. D. Del. May 23, 2019) (applying Delaware choice of law rules); *In re Integrated Health Servs. Inc.*, 304 B.R. 101, 106 (Bankr. D. Del. 2004) (applying Delaware choice of law rules because Delaware is the "forum state"); *In re Circle Y*, 354 B.R. 349, 359 (Bankr. D. Del. 2006) (same).

[30] *In re PHP Healthcare*, 128 Fed. Appx. 839, 843 (3d Cir. 2005) (citing *In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir. 1988) (applying the choice of law rules of the forum state, i.e., the state in which the bankruptcy court sits).

[31] *Klaxon Co. v. Stentor Electric Mfg.* Co., *Inc.*, 313 U.S. 487 (1941).

[32] *See In re Welded Construction, L.P.*, 616 B.R. 649, 657 (Bankr. D. Del. 2020); *In re LMI Legacy Holdings, Inc.*, No. 13-12098 (CSS), 2017 WL 1508606, at *4–5 (Bankr. D. Del. Apr. 27, 2017).  While Judge Sontchi suggested that the uncertainty is whether *Klaxon* applies to cases within the "federal question" jurisdiction, the undersigned views the uncertainty as narrower than that.  Cases that fall within 28 U.S.C. § 1331's "federal question" jurisdiction do not present choice-of-law problems – federal law supplies the rule of decision.  *See Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 387 (2012) ("[f]ederal courts have § 1331 jurisdiction over claims that arise under federal law [and for which] … federal law … specifies the substantive rules of decision").  As Judge Sontchi correctly noted, however, the choice-of-law problem arises only when a federal court exercises jurisdiction over a case that that is governed by a law other than federal law, such as state law, as is commonly the case when state-law matters fall within the bankruptcy court's related-to jurisdiction.

[33] Note also that the case for applying a federal choice of law rule may be stronger in claims allowance disputes governed by underlying state law, which ultimately involve whether the claim is "unenforceable" within the meaning of 11 U.S.C. § 502(b)(1).  In a brief filed at the invitation of the Supreme Court, the United States took the position that in the claims allowance context, a federal choice of law rule should apply.  *See Brief of the United States as Amicus Curiae*, *Sterba v. PNC Bank*, S. Ct. No. 17-423 at 6 (brief available at:

*Construction* and *LMI Legacy Holdings*, that the Delaware choice-of-law rules would presumptively apply, with that presumption subject to being rebutted if an overriding federal interest pointed to the application of a federal principle.[34]

In fact, there is an express circuit split on this question. As noted above, the Third Circuit has addressed the matter only in its unpublished opinion in *PHP Healthcare*, which under the Third Circuit's Internal Operating Procedures is not viewed as precedential.[35] The Ninth Circuit, however, has broadly held that in cases within the bankruptcy jurisdiction "the court should apply federal, not forum state, choice of law rules."[36] Courts applying federal choice of law rules typically look to the approach set forth in the *Restatement (Second) of Conflict of Laws* as setting forth the governing choice-of-law principle.[37] The Second and Fourth Circuits, on the other hand, have applied the forum state's choice-of-law rules.[38]

---

https://www.supremecourt.gov/DocketPDF/17/17-423/47241/20180517141645673_17-423%20Sterba%20-%20AC%20Pet.pdf). The United States' brief pointed to the conflicting decisions, but did not take a position, on the choice of law principle that should govern when a case is heard in bankruptcy court under the related-to jurisdiction. *Id.* at 14-17.

[34] By way of analogy, Judge Silverstein recently pointed to the differences between the diversity jurisdiction and related-to jurisdiction under section 1334(b) in finding that the "well-pleaded complaint rule" is not applicable to cases under the bankruptcy jurisdiction. *See In re Seaboard Hotel Mbr. Assocs., LLC*, No. 19-50257 (LSS) 2021 Bankr. LEXIS 1564, at *17–19 (Bankr. D. Del. June 10, 2021).

[35] *See* Third Circuit Internal Operating Procedure §§ 5.3; 5.7.

[36] *Lindsay v. Beneficial Reinsurance Co.*, 59 F.3d 942, 948 (9th Cir. 1995).

[37] *In re Vortex Fishing Systems, Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002).

[38] *In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir. 1988); *In re Gaston & Snow*, 243 F.3d 599, 606 (2d Cir. 2001). The Fifth, Sixth and Seventh Circuits have considered but declined to resolve this issue. *See In re Mirant Corp.*, 675 F.3d 530, 537–538 (5th Cir. 2012); *In re Miller*, 513 Fed. Appx. 566, 572 (6th Cir. 2013); *In re Jafari*, 569 F.3d 644, 650–651 (7th Cir. 2009). *See also In re Global Indus. Technologies, Inc.*, 333 B.R. 251, 256–257 (Bankr. W.D. Pa 2005) (also declining to choose a choice-of-law principle because both led to the same result).

This case, however, presents no occasion for this Court to decide whose choice-of-law rules apply, since application of either the *Restatement* approach or Delaware law would lead to the same result. Under the internal affairs doctrine, which is the governing choice-of-law principle under both Delaware law and the *Restatement* approach, the law of the state under whose laws a legal entity is organized governs the fiduciary duties of that entity's officers and directors.[39] So while the parties brief the issue on the premise that a single jurisdiction's laws will apply to all of the breach of fiduciary claims, the Court concludes that this premise is incorrect. Rather, under the internal affairs doctrine, and in view of bankruptcy law's respect for the corporate form,[40] the law of the state in which each entity is incorporated governs claims of breach of fiduciary duties running to that corporation.

Accordingly, Delaware law applies to claims alleging breach of the fiduciary duties owed to Delaware entities and Pennsylvania law applies to claims alleging breach of the fiduciary duties owed to Pennsylvania entities. And while, as described below in Part I.C, the question of which statute of limitations is applicable introduces a further complication, the ultimate punchline conclusion is the same – because the

---

[39] *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 501 (Bankr. D. Del. 2010) (applying state of incorporation to claim for breach of fiduciary duty); *Minn. LLC,* No. 16-11626 (BLS), 2019 Bankr. LEXIS 1622, at *9 (Bankr. D. Del. May 23, 2019) (citing *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1115 (Del. 2005)); *In re LMI Legacy Holdings, Inc.*, No. 13-21098 (CSS), 2017 Bankr. LEXIS 1150, at *11, 14 (Bankr. D. Del. Apr. 27, 2017); *Fedders*, 405 B.R. 527, 539 (Bankr. D. Del. 2009); RESTATEMENT (SECOND) CONFLICT OF LAWS § 309 (the "local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholder").

[40] *See generally In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005).

controlling law does not turn on which choice-of-law scheme applies, this case does not require the Court to choose between them.

## B.    The complaint states a claim for breach of fiduciary duty under both Pennsylvania and Delaware law.

The allegations in the complaint are sufficient to state a *prima facie* claim of breach of fiduciary duty against the fiduciaries of both the Delaware and Pennsylvania entities.  The elements of a claim for breach of fiduciary duty are the same under both Delaware and Pennsylvania law.  To state a claim, a plaintiff must allege facts sufficient to show that the defendant (i) owed a duty, (ii) breached that duty, and (iii) the breach of that duty resulted in injury to the plaintiff.  Here, the complaint alleges that each of the defendants was a director and/or officer of one of debtors.[41]  And directors and officers of a corporate entity owe fiduciary duties to the corporation under both Pennsylvania and Delaware law.[42]

Certain defendants argue that the complaint does not allege that they held the type of positions under which they would owe a fiduciary duty to the corporation.[43] Under applicable law, however, the existence of a fiduciary duty does not turn on a director or officer's title, but rather on the individual's authority, control, and/or substantive responsibilities within the corporation.  "Delaware law imposes fiduciary

---

[41] *See* D.I. 1 at ¶¶ 12–22.

[42] *Quadrant Structured Products Co., Ltd., v. Vertin*, 102 A.3d 155, 171 (Del. Ch. 2014); *In re Total Containment, Inc.*, 335 B.R. 589, 602–603 (Bankr. E.D. Pa. 2005) (explaining that under Pennsylvania law, directors and officers are fiduciaries).

[43] *See* D.I. 43 at 2, 12–13.

duties on those who effectively control a corporation."[44]   Fairly read, the complaint alleges that each of the defendants played a sufficiently substantial role in devising or implementing corporate policy relating to its recruiting or compensation policies to owe a fiduciary duty to the corporation.[45]

The complaint alleges the defendants implemented, or failed to reform, unlawful compensation and recruiting practices.[46]   That allegation is sufficient to state a claim for breach of duty.   Finally, the complaint alleges that the respective debtors were injured, indeed, that the businesses were forced into liquidation, as a result of those breaches.[47]   The complaint thus sufficiently alleges that each defendant breached a fiduciary duty owed to the corporation for which he or she allegedly served as an officer or director.

### C.   Claims asserted against defendants alleged to have been fiduciaries of an entity within its state-law limitations period are timely; claims against defendants who left their positions before the beginning of the statutory period are time-barred.

As a general matter, a motion to dismiss measures the allegations set forth in the complaint against the elements of a plaintiff's *prima facie* case.   The availability of a potential affirmative defense is not generally cognizable on a motion to dismiss.[48] There is an exception to that principle, however, for cases in which the availability of

---

[44] *Quadrant Structured Products Co.*, 102 A.3d at 183–184.

[45] *See* D.I. 1 ¶¶ 12–22 (describing the important roles that each of the defendants was alleged to have served).

[46] *Id.* ¶¶ 119, 131, 160.

[47] *Id.* ¶¶ 73, 109, 112.

[48] *In re Reading Broad, Inc.*, 390 B.R. 532, 551 (E.D. Pa. 2008) (citing *Hanna v. U.S. Veteran's Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

the affirmative defense is apparent based on the plaintiff's own factual allegations.[49]

Defendants contend, on this basis, that the entire complaint should be dismissed on

statute of limitations grounds.  For the reasons set forth below, the Court concludes

that the claims against defendants alleged to have been fiduciaries of Pennsylvania

entities, and within that state's two-year statute of limitations, are timely.  So are

claims against those alleged to have been officers or directors of Delaware entities in

the three-year period before the petition date.  Claims against defendants who did

not serve as officers or directors within the applicable limitations period, however,

are time-barred.

> ## 1.    Regardless of the choice-of-law principle selected, the jurisdiction whose law provides the rule of decision also supplies the applicable statute of limitations.

As noted above, this case does not require the Court to decide on a choice-of-

law principle to determine which substantive law applies, since principles of

Delaware law and federal law (reflected in the *Restatement*) lead to the same place –

the internal affairs doctrine.  Deciding on the applicable statute of limitations,

however, introduces a further wrinkle, because of the particular manner in which

choice-of-law principles operate for statutes of limitations in diversity cases.  As

---

[49] *Id.* (citing *In re Coastal Group, Inc.*, 13 F.3d 81, 83 (3d Cir. 1994)).  *See also* Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 1357 ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)…. [T]he inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim.").

further described below, however, that wrinkle still does not alter the analysis above or require the Court to decide which choice-of-law principle is applicable.

To the extent the Court were to treat choice of law as subject to a *federal* principle (as the law in the Ninth Circuit requires), then there would be no reason to treat statutes of limitation differently from the substantive rule of decision. Since the Restatement approach to choice of law points to the internal affairs doctrine, then, in the absence of some federal principle that might supply a statute of limitations, the state of incorporation should presumably supply not only the substantive standard but also the applicable statute of limitations. In that event, the claims against fiduciaries of the Pennsylvania entity would be subject to Pennsylvania's two-year statute.

The wrinkle is introduced, however, if one were to treat the case in the way diversity cases are treated (as the law in the Second and Fourth Circuits provides), such that the court should decide on the statute of limitations in the same way as would a state court sitting in the forum state. Despite the principle of *Erie* under which federal courts sitting in diversity apply federal law to matters of "procedure,"[50] courts exercising the diversity jurisdiction apply state (not federal) law to the statute of limitations.[51]

The complication here is that Delaware state law typically treats the statute of limitations as *procedural* rather than substantive – meaning that a Delaware state

---

[50] *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

[51] *See Guaranty Trust Co. v. York*, 326 US 99, 109 (1945).

18

court hearing a claim governed by the law of another state would apply the Delaware statute of limitations, not the statute of the jurisdiction whose substantive law would control.[52]  Delaware law, however, provides for an exception to this principle in the state's "borrowing statute."[53]  The borrowing statute effectively prohibits a plaintiff from obtaining a longer statute of limitations on account of claims for injuries that occur in other states by filing the case in a Delaware state court.  Specifically, the statute provides that "[w]here a cause of action arises outside of [Delaware], an action cannot be brought to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state ... where the cause of action arose, for bringing an action upon such cause of action."[54]

As the Delaware Supreme Court has explained, the purpose of the borrowing statute is "to address a specific kind of forum shopping scenario—cases where a plaintiff brings a claim in a Delaware court that (i) arises under the law of a jurisdiction other than Delaware and (ii) is barred by that jurisdiction's statute of limitations but would not be time-barred in Delaware, which has a longer statute of limitations."[55]  As the court explained, under "that 'standard scenario,'

---

[52] *See B.E. Capital Mgt. Fund LP v. Fund.com Inc.*, 171 A.3d 140, 147 (Del. Ch. 2017) ("the law of the forum applies [to statutes of limitations] because the statute of limitations is a procedural matter").

[53] *See, e.g., Vichi v. Koninklijke Philips Electronics, N.V.*, 62 A.3d 26, 42 (Del. Ch. 2012); *Burrell v. AstraZeneca LP*, 2010 WL 3706584, at *3 (Del. Super. Ct. Sept. 20, 2010).

[54] 10 *Del. C.* § 8121.

[55] *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.*, 866 A.2d 1, 16 (Del. 2005).

the borrowing statute operates to prevent the plaintiff from circumventing the shorter limitations period mandated by the jurisdiction where the cause of action arose."[56]

As described in Part I.A, claims for breach of fiduciary duty, per the internal affairs doctrine, "arise under" the law of the jurisdiction in which the entity is incorporated. Accordingly, the Delaware borrowing statute would apply the Pennsylvania two-year statute to the claims that run against alleged fiduciaries of Pennsylvania entities, while Delaware's three-year statute of limitations applies to claims running against alleged fiduciaries of Delaware entities. Because that is the same result that would obtain under the *Restatement* approach, the wrinkle introduced by the need to decide which statute-of-limitations applies does not require the Court to choose as between the different choice-of-law principles.

> **2.    The claims against defendants alleged to have served as officers or directors within the applicable limitations period are not time-barred.**

In asserting claims for breach of fiduciary duty, the trustee stands, by virtue of section 541 of the Bankruptcy Code, in the shoes of each of the debtors that could

---

[56] *Id.* at 16–17. Some case law provides that the borrowing statute may be disregarded in circumstances in which there is no reason to be concerned about forum shopping, such as where a bankruptcy trustee brings suit in bankruptcy court. *See Mervyn's Holdings, Inc.*, 426 B.R. 488, 503 (Bankr. D. Del. 2010). The trustee contends that the borrowing statute should be disregarded on that basis. D.I. 58 at 25. Without casting judgment on any party's motive in selecting a forum, however, this Court believes it is sufficient for this purpose to observe that this Court has concurrent rather than exclusive jurisdiction over the state-law claim for breach of fiduciary duty. 28 U.S.C. § 1334(b). Accordingly, that claim also could have been brought in any state court of competent jurisdiction. The Delaware borrowing statute thus applies in this context per its express terms.

have asserted such a claim against its officers and directors.[57]  The Bankruptcy Code operates to extend the statute of limitations, for any cause of action as to which the statute had not expired as of the petition date, until two-years after the entry of the order for relief.[58]  This action was filed within two years of the entry of the order for relief and is thus timely filed for any claim that had not expired as of the filing of the petition.

For claims that are subject to Pennsylvania's two-year statute of limitations,[59] to the extent the alleged breach of fiduciary duty occurred more than two years before the petition date, the statute of limitations on such a claim would have expired before the petition date, and such a claim is therefore not saved by section 108(a) of the Bankruptcy Code.   For claims subject to Delaware's three-year statute of limitations,[60] the question is whether the alleged breach occurred within three years of the petition date.

The parties dispute when a claim for breach of fiduciary duty accrues – which is the date on which the statute of limitations begins to run.  The defendants argue, as many cases hold, that such a claim accrues at the time of the breach – meaning at the time of the act or omission that is alleged to give rise to the claim of breach of

---

[57] 11 U.S.C. § 541; *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 12–13 (1924); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989).

[58] 11 U.S.C. § 108(a).

[59] 42 Pa. Cons. Stat. § 5524(7).

[60] 10 *Del. C.* § 8106.

fiduciary duty.[61]  On this view, the statute begins to run "the moment the wrongful act occurs, not when the harmful effects of the [wrongful] acts are felt—even if the plaintiff is unaware of the wrong."[62]

The trustee takes a different view, arguing that the claims for breach of fiduciary duty did not accrue until the settlements were reached in 2015.  That, however, cannot be correct.  The settlements operated to liquidate and resolve the company's otherwise disputed and unliquidated liabilities.  If the actions that gave rise to those liabilities amounted to breaches of fiduciary duties, however, those claims for breach would have accrued no later – on any plausible theory – than the time that the underlying actions were known to the general public.  Once the company's actions were sufficiently known such that relators could begin bringing *qui tam* litigation, the company itself was certainly in a position to assert a breach of fiduciary duty claim against those whose decisions and actions gave rise to those asserted liabilities.  And the complaint alleges throughout that the practices that gave rise to those liabilities were a matter of public record for years before the 2015 settlements.[63]

---

[61] *In re W.J. Bradley*, 598 B.R. 150, 167 (Bankr. D. Del. 2019) (citing *In re AMC Investors, LLC*, 524 B.R. 62, 80–81 (Bankr. D. Del. 2015)) (finding that the statute of limitations for a breach of fiduciary duty claim began to run when the wrongful act of approving certain fees was approved, not when the harmful effects were realized, i.e., when the defendant accepted each payment).

[62] *Id.* (quoting *Carr v. New Enter. Assocs., Inc.*, No. 2017-0381-AGB, 2018 WL 1472336, at *8 (Del. Ch. Mar. 26, 2018)).

[63] *See, e.g.,* D.I. 1 at ¶¶ 42, 57, 58, 60.

Accordingly, the complaint does not state a claim against any defendant who is not alleged to have served as an officer or director of one of the debtor entities within the statute of limitations period that applies to that entity, based on its state of incorporation – which means within two years of the petition date for the Pennsylvania entities and within three years of the petition date for the Delaware entities.  A defendant who departed the company outside that timeframe cannot have taken any action within the applicable statutory period that would constitute a breach.  And because there is no allegation that some relevant action amounting to a breach of duty taken before this period only became known after this period began, there is no reason to opine further on precisely when a claim for breach of fiduciary duty accrues.[64]

On the other hand, the allegations of the complaint – including the allegations that the false certifications continued to be made through the filing of the bankruptcy petition – are sufficient to state a claim against those defendants who held fiduciary roles within the limitations period.  To be sure, once the debtors began to wind down

---

[64] For this reason, the trustee is incorrect to argue that actions taken outside the limitations period can form the basis of a claim under the continuing violation doctrine.  Under that doctrine, where a series of acts or omissions are essentially indivisible, and at least a portion of the conduct giving rise to the claim occurs within the limitations period, the entire set of actions is deemed to fall within the period.  *See Albert v. Alex. Brown Mgmt. Servs., Inc*, 2005 WL 1594085, at *16, (Del. Ch. June 29, 2005); *Liberty Mut. Fire Ins. Co. v. Corry Indus., Inc.*, 2000 WL 34546492, at *3–4 (W.D. Pa. Mar. 30, 2000).  Where there is a basis to segment the alleged wrongful actions into discrete periods, however, the continuing violation doctrine will not apply.  *See Desimone v. Barrows*, 924 A.2d 908, 925 (Del. Ch. 2007); *Travis v. Deshiel*, 832 F. Supp. 2d 449 (E.D. Pa. 2011).  With respect to a claim for breach of fiduciary duty brought against an individual, the termination of the fiduciary duty certainly provides a point at which the claim can be segmented, rendering the continuing violation doctrine inapplicable.

their operations and liquidate their businesses, there are questions about how the alleged breaches may have given rise to claims for damages.  But those are not matters that are before the Court on a motion to dismiss.  For this purpose, it is sufficient to state that for those who served as fiduciaries within the limitations period, the complaint cannot be dismissed for failure to state a claim.

Accordingly, fiduciary duty claims against those defendants who did not serve as fiduciaries within the applicable limitations period will be dismissed.  The statute of limitations defense fails, however, for the remaining defendants who had fiduciary duties to Delaware entities within three years before the petition date or to Pennsylvania entities within two years before the petition date.[65]

### 3.   The trustee's arguments for overcoming the statute of limitations defenses are unsuccessful.

The trustee argues that to the extent his claims are barred by the limitations period under Pennsylvania or Delaware law, they should be revived under the adverse domination tolling exception and the discovery rule.[66]  The adverse domination doctrine provides that a statute of limitations is tolled for the period when a plaintiff is controlled by the alleged tortfeasors.[67]  Miller argues that the statute of

---

[65] According to the allegations of the complaint, defendants Nelson, McKernan, and Cowley left EDMC and the Delaware entities before June 2015 and are not subject to breach of fiduciary duty claims involving EDMC or the Delaware entities.  The complaint alleges that defendants West, Novad, and Beekhuizen left EDMC before June 2016—two years before the petition date—and are therefore not subject to breach of fiduciary duties claims involving EDMC.  The breach of fiduciary duty claims against those defendants that are alleged to have served as a board member or officer for EDMC or the Delaware entities within the applicable limitations period remain.

[66] D.I. 58 at 39–43.

[67] *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp 2d 395, 399 (E.D. Pa. 2010) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 87 (2d Cir. 1983)). ("[W]here an action is brought on

limitations should be tolled because the defendants (the alleged tortfeasors) were in control of the company, and as a result, there was no independent party to bring a claim on the company's behalf.

To begin, the adverse domination doctrine does nothing to revive claims that expired on the ground that the alleged breaches of duties by directors and officers of Delaware entities took place more than three years before the petition date, as Delaware law does not recognize the doctrine of adverse domination.[68]

While it does not appear that any Pennsylvania state appellate court has recognized, adopted, or endorsed the adverse domination doctrine, the parties have pointed to one Pennsylvania trial court that has done so, relying on decisions by federal courts applying Pennsylvania law.[69] The doctrine is only applicable, however, when (i) there was no non-culpable party who could have brought suit before the

---

behalf of an entity which has been defrauded by persons who completely dominated and controlled it, the statute of limitations is tolled as to the controlling wrongdoers during the period of their domination and control.").

[68] *See In re IH 1, Inc.*, No. 09-10982 (LSS), 2016 Bankr. LEXIS 4604, at *40 (Bankr. D. Del. Sep. 28, 2016) ("The Court is persuaded that Delaware has not adopted the adverse domination doctrine and so rejects that argument to the extent it was suggested by the Trustee.")); *In re AMC Investors, LLC*, 524 B.R. 62, 81 (Bankr. D. Del. 2015) ("It also appears that Delaware courts do not recognize adverse domination—when a corporation's board is controlled by culpable directors—as a basis for tolling a breach of fiduciary duty action.").

[69] *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 280 (Pa. Super. Ct. 2016) (citing *Resolution Trust Corp. v. Farmer*, 865 F. Supp. 1143, 1158–1159 (E.D. Pa. 1994)). *See also In re O.E.M./Erie, Inc.*, 405 B.R. 779, 785 (W.D. Pa. 2009) ("While Pennsylvania has recognized various tolling principles to permit a cause of action that may otherwise be prohibited under the applicable statute of limitations, the concept of adverse domination has not yet been utilized by the state courts of Pennsylvania. Despite the lack of authority, federal courts have assumed that adverse domination is a viable equitable tolling principle in Pennsylvania."); *see also In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 59 (Bankr. S.D.N.Y. 2007) ("the Court regards it as highly likely that the Pennsylvania Supreme Court would apply the doctrine of adverse domination in this case").

appointment of a trustee (or its equivalent) because of the defendants' control over the company and (ii) non-culpable parties were not aware of the alleged wrongdoing.[70]

The adverse domination doctrine (like the discovery rule, which is a variant on the same principle) is thus inapplicable where the facts giving rise to the claim are publicly known.[71]  Here, the complaint is replete with allegations of public disclosure of the recruiting and compensation policies that are the gravamen of the trustee's lawsuit.[72]  Principles of adverse domination accordingly will not save the claim from an otherwise valid statute of limitations defense.

### D. Defendants' various preclusion and estoppel defenses are unsuccessful.

Because part of the trustee's claim for breach of fiduciary duty (the claims against fiduciaries of the Delaware-incorporated entities who were alleged to have served in a fiduciary role at any point within three years before the petition date) is not barred by the statute of limitations, the Court next turns to the defendants' remaining defenses to that claim – the argument that the claim is barred by principles of preclusion and estoppel.

---

[70] *See e.g., Hecht*, 716 F. Supp 2d at 399; *O.E.M./Erie, Inc.*, 405 B.R. at 785; *Resolution Trust Corp.*, 865 F. Supp. at 1158–1159; *Mariner Chestnut Partners*, 152 A.3d at 278.

[71] *Mariner Chestnut Partners*, 152 A.3d at 280.

[72] *See, e.g.*, D.I. 1 at ¶¶ 37, 42, 57, 58, 60.

1.    **The claim preclusion defense fails because the dismissal of the derivative action was not an adjudication on the merits of the underlying claim.**

In *Oklahoma Law Enforcement Retirement System ("OLERS") v. Nelson*,[73] a group of shareholders of EDMC brought a derivative action, seeking to obtain authority to pursue, on behalf of EDMC, a claim for breach of fiduciary duty against certain officers and directors.  In a 2015 ruling, the Pennsylvania Court of Common Pleas dismissed that action based on the determination of a special litigation committee that examined the potential claim and concluded that pursuing it would not be in the best interests of the company.[74]  The defendants collectively assert that this ruling is claim preclusive of the trustee's breach of fiduciary duty claim asserted here.[75]  While, like a statute of limitations, claim preclusion is an affirmative defense, a court may take judicial notice of the fact of a prior judgment, and on that basis consider claim preclusion on a motion to dismiss.  As the Third Circuit has explained, on a Rule 12(b)(6) motion, "a court may properly look at judicial proceedings, in addition to the allegations of the complaint."[76]  And while there is a limit to a court's ability to review other judicial proceedings discussed further below, a court "may take judicial notice of another court's opinion not fort the truth of the facts recited therein, but for the existence of the opinion," that limitation does affect the ability of a

---

[73] No. GD-12-008785 (Pa. Ct. Comm. Pleas).

[74] The relevant decisions of the Pennsylvania Court of Common Pleas are set forth at D.I. 44-1 and D.I. 44-2.

[75] D.I. 43 at 9–11; D.I. 46 at 24; D.I. 49 at 13–16.

[76] *See Southern Cross Overseas v. Wah Hwong Shipping*, 181 F.3d 410, 426 (3d Cir. 1999). *See also In re Raytrans Holding, Inc.*, 573 B.R. 121, 129 (Bankr. D. Del. 2017).

defendant to raise claim preclusion as a defense, since consideration of claim preclusion does not require the consideration of any facts beyond the issuance of the judgment that is argued to be claim preclusive.

Under the Full Faith and Credit Act,[77] federal courts must grant "state court decisions … the same preclusive effect in federal court they would be given in the courts of the rendering state."[78] The *OLERS* derivative action was dismissed by a state court in Pennsylvania; thus, the Court must apply the principles of claim preclusion (or *res judicata*) that prevail in Pennsylvania state courts. A defendant that raises a *res judicata* defense must show that there was a (i) final judgment on the merits in a prior suit, (ii) that the prior proceeding involved the same parties or their privies, and (iii) the existence of a subsequent lawsuit based on the same cause of action.[79] In bankruptcy, the trustee steps into the shoes of a debtor; thus, the parties are identical, notwithstanding the trustee's argument that the trustee and shareholder's interests are not the same.[80] And the trustee does not dispute that the current claims before the Court are similar to those in the previous derivative

---

[77] 28 U.S.C. § 1738.

[78] *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572–573 (3d Cir. 2002).

[79] *See In re Cowden*, 337 B.R. at 529–30 (explaining that under Pennsylvania law, the elements of *res judicata* are essentially the same as under federal law); *In re Jeannette Corp.*, 116 B.R. 934, 935 (Bankr. W.D. Pa. 1990) (citing *United States v. Athlone Indus.*, 746 F.2d 977, 983 (3d Cir. 1984)).

[80] *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356–357 (3d Cir. 2001); *Hays & Co.*, 885 F.2d at 1154 (quoting 3 *Collier on Bankruptcy* ¶ 323.02[4]).

actions.[81]  The only disputed issue, therefore, is whether the ruling in the *OLERS* derivative action is a "final judgment on the merits."

While the Court is not aware of a case arising in the bankruptcy context that addressed the preclusive effect of a decision that dismisses a derivative action on the ground that a special litigation committee conducted an independent review of the potential claim and determined not to pursue it, the Delaware Chancery Court has addressed that issue.[82]  Indeed, both the Delaware Chancery Court and a leading treatise on Delaware corporate law have explained that a court's determination to dismiss a derivative lawsuit based on the judgment of an independent special litigation committee that the pursuit of such an action is not in the corporation's interest is *not* an adjudication by the court of the merits of that action.[83]  The question before a court in deciding whether to dismiss a derivative action based on the determination of a special litigation committee is fundamentally a question of corporate governance – whether the shareholder should, in effect, be granted standing to pursue the claim on behalf of the corporation.[84]  A decision to accept the

---

[81] Oct. 13, 2021 Hearing Tr. at 10.

[82] While the Court has not identified any Pennsylvania authority on this issue, the Court is not aware of any reason to believe that a Pennsylvania court would diverge from the approach adopted by the Delaware Chancery Court on this corporate law principle.

[83] *In re Primedia Inc.*, 67 A.3d 455, 490 (Del. Ch. 2013); *see, e.g., London v. Tyrell*, No. 3321-CC, 2010 Del. Ch. LEXIS 54, at *74 (Mar. 11, 2010); *Lewis v. Fuqua*, 502 A.2d 962, 966–967 (Del. Ch. 1985); *see also* Wolfe, Jr., Pittenger, Davey, Belger, and Rogers, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY at § 902[c][4] Publ. 1195 Rel. 15 (2014).

[84] *London*, No. 3321-CC, 2010 Del. Ch. LEXIS 54, at 87 (rejecting the committee's recommendation for dismissal where the committee failed to provide evidence supporting steps taken to resolve disputed facts in the derivative action).

determination of a special committee is a decision to deny the shareholder standing to pursue the corporate case of action, not itself an adjudication by the court of the underlying action.[85]

In sum, a court's determination that a special litigation committee conducted a good-faith and independent investigation into the claims asserted in a derivative action is not an adjudication on the merits because, while the court might consider the merits of the underlying claim, the court need not actually adjudicate the merits of the underlying claim.  Instead, the court is reviewing the process undertaken by the special litigation committee in reaching the judgment that pursuit of the claim was not in the corporation's best interests.  The dismissal of a derivative action therefore does not constitute a final judgment on the merits, and the trustee's claims that survive the statute of limitations challenge are not barred by principles of claim preclusion.

> ### 2. The remaining preclusion defenses require consideration of extrinsic evidence and, in the context of this dispute, are not properly addressed on a motion to dismiss.

The defendants alternatively argue that Judge Wettick's ruling in the *OLERS* derivative action precludes the trustee's lawsuit under theories of issue preclusion (or collateral estoppel) and judicial estoppel.  In the context of this dispute, however, the assertion of estoppel defenses is premature at the motion to dismiss stage.

---

[85] CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, Publ. 1195 at § 9.02[c][5], 9-135 (citing *Primedia*, 67 A.3d at 490).

In considering a motion to dismiss, a court is generally bound by the four corners of the complaint and cannot rely on extrinsic documents not attached to or relied upon in the complaint.[86] As noted above, however, the court may take consider material that is subject to judicial notice, such as a judicial record, not for the truth of its assertions, but for the existence of the document itself.[87] As the Third Circuit explained in *Southern Cross Overseas*, it "has been suggested that the appropriate analogy is the hearsay rule, which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement."[88]

To find an action barred by principles of issue preclusion, a court is required to determine that a particular matter was "actually litigated" in the previous matter. Specifically, to establish issue preclusion, a defendant must show (i) identical issues were presented in a prior proceeding; (ii) there was a full and fair opportunity to litigate the issues in the prior proceeding; (iii) the issues in the prior proceeding were a necessary part of the prior determination; (iv) the parties in the prior and current proceedings were identical; and (v) actual litigation of the prior issues on the merits.[89]

Thus, unlike the defense of claim preclusion, the *fact* of a judgment alone will not be sufficient to establish a collateral estoppel defense. Rather, a court in

---

[86] *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that the court may not consider any extrinsic evidence with the exception of documentation integral to or explicitly relied upon in the complaint).

[87] *See supra* n.76.

[88] *Southern Cross Overseas*, 181 F.3d at 427 n.7.

[89] *In re Stetar*, 323 B.R. 646, 649 (W.D. Pa. 2005) (citing *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995)).

considering such a defense is required to review what actually happened in the prior litigation, including the positions taken by the parties, in order to determine which matters were "actually litigated."

That is not to say that it may not be possible, in an appropriate case, to address a collateral estoppel defense on a motion to dismiss.[90]  In this case, however, the Court concludes that it would be more appropriate to consider the various estoppel and abandonment defenses on a summary judgment record.  To be sure, as Wright and Miller recognize in their discussion of judicial notice, a "court could take judicial notice that a party made a statement in some document filed with the court."[91]  And there are certainly situations in which the making of a statement to a court is a sufficient basis to find judicial estoppel.

In view of the limitations on the doctrine of judicial notice (which bar the court from considering a judicial record for the truth of the matters contained therein) and the nuances involved in determining what was "actually litigated" in the derivative actions, the Court believes it more appropriate to consider the various estoppel and abandonment defenses on a summary judgment record.

For example, the determination that a matter was "actually litigated" in a prior proceeding is something that cannot be ascertained based on the fact of a judgment – it requires an assessment of what happened in the litigation to lead to that judgment.

---

[90] Indeed, the court in *Raytrans Holding*, for example, dismissed certain counts on a motion to dismiss based on a collateral estoppel defense.  573 B.R. at 129–131.  In addition, Wright & Miller observe that courts have considered "various types of estoppel" on a motion to dismiss.  FEDERAL PRACTICE AND PROCEDURE § 1357.

[91] FEDERAL PRACTICE AND PROCEDURE § 5106.4.

It may certainly be possible, in another context, for a court to determine that a matter was "actually litigated" by relying only on the *fact* that the parties made certain filings. In the context of this case, however, the Court does not believe that the judicial records that have been submitted in connection with the motions to dismiss (which include the EDMC special litigation committee report and various pleadings in the *qui tam* and derivative lawsuits) are sufficient to establish, at least without additional context, that the *merits* of the fiduciary duty claim were "actually litigated" in the derivative litigation. Rather, the Court believes that in this context, a fair assessment of the claims of collateral and/or judicial estoppel will require a consideration of the posture, circumstances, and context in which parties took positions and how the courts addressed them. To the extent the trustee (who has argued that such pleadings cannot be considered for their truth on a motion to dismiss) contends that other admissible evidence will provide appropriate context that will bear on these defenses, the trustee should be afforded the opportunity to provide such evidence at the summary judgment stage.

### 3. Nothing that is properly the subject of judicial notice demonstrates that the debtor waived or abandoned the breach of fiduciary duty claims.

Defendants also contend that the breach of fiduciary duty claim is barred on the ground that the estate "waived" or "abandoned" it in connection with the resolution of the derivative actions.[92] There is nothing, however, in the allegations of the complaint or that is subject to judicial notice to support that assertion.

---

[92] *See* D.I. 46 at 24; D.I. 49 at 22–23.

Like the argument that the resolution of the derivative lawsuit is claim preclusive, these arguments misapprehend both what the court and the corporation are doing when a derivative action is dismissed.  In the first instance, the decision whether to pursue a cause of action is a business judgment like any other, vested in the corporation's board of directors.[93]  The decision of a board (or, where appropriate, a special litigation committee), to forego asserting a potential claim is just a business judgment about the path that best serves the corporation's interests at a particular moment in time.  Like the decision to pursue a particular transaction or to adopt a given marketing strategy, the decision not to pursue litigation is subject to being changed at any time, based on new facts, a change in personnel, or just a change of heart.  In the absence of a contract (such as a settlement and release) or, at the very least, a factual circumstance that would give rise to an estoppel, the decision by a corporation at one point that it will not pursue a claim does not prevent it from making a different decision later.  And while a chapter 7 trustee has no *greater* rights to recover on an estate cause of action than the debtor had at the time of the bankruptcy, the trustee certainly has the same right the debtor would have had to make a different business judgment than the company had made in the past about what is in the estate's best interests.[94]  Aside from the arguments about collateral

---

[93] *See Zapata*, 430 A.2d at 782 ("Directors of Delaware corporations derive their managerial decision-making power, which encompasses decisions whether to initiate, or refrain from entering, litigation, from 8 Del. C. § 141(a)."); 8 *Del. C.* § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation.").

[94] *Chicago Board of Trade v. Johnson*, 264 U.S. 1 (1924).

estoppel or judicial estoppel (which the Court concluded are premature in the context of this case on a motion to dismiss), nothing else alleged in the complaint or subject to judicial notice (that has been identified by the defendants in the motions to dismiss) would operate to "waive" or "abandon" the claim for breach of fiduciary duty.

## II.    The trustee fails adequately to plead a claim for common law fraud.

The trustee's claim for common law fraud fails, both as a matter of Delaware and Pennsylvania law.  The heart of the fraud claim is the allegation that defendants defrauded the federal government out of millions of dollars in student loan funds by making false certifications of their compliance with certain laws necessary to receive these funds.

Those allegations are insufficient to state a claim by the bankruptcy estate against the former directors and officers for common law fraud.   Under both Pennsylvania and Delaware law, a claim for common law fraud requires a showing, at the very least, that there was (i) a material misrepresentation by the defendant, which the defendant knows to be false, (ii) justifiable reliance on the misrepresentation by the plaintiff, and (iii) harm to the plaintiff as a result.[95]

The fatal flaw in the trustee's claim for common law fraud is the absence of any allegation that the plaintiff relied on the alleged misrepresentation.  Otherwise put, the problem with the claim for common law fraud is that, accepting the

---

[95] *See Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992); *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006); *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 167 (Pa. Super. Ct. 2013); *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. 2006) ("to establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a result.").

allegations in the complaint as true, the debtors were the perpetrators of the alleged fraud – submitting certifications of compliance on which *the government relied* in advancing federal funds – not the victims. Accordingly, even without reaching the question whether the allegations of fraud are sufficiently particular to satisfy Rule 9(b) (and the related question of the application of Rule 9(b) to claims asserted by a trustee in bankruptcy[96]), the claims for common law fraud will be dismissed for failure to state a claim.

### III. The trustee's civil conspiracy claim survives only to the same extent as the claim for breach of fiduciary duty.

The law on civil conspiracy in Pennsylvania and Delaware is identical, obviating the need to consider which law is applicable. To successfully plead a claim for civil conspiracy (under both laws), a plaintiff must allege that (i) two or more persons combined or agreed (ii) to commit an unlawful act[97] that resulted in (iii) actual injury.[98]

To assert a claim for civil conspiracy, a plaintiff must allege a valid underlying claim.[99] The only claim that has otherwise survived the motion to dismiss is the claim

---

[96] *See, e.g.*, *Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d. Cir. 1989) (explaining that courts generally apply a more relaxed standard under Federal Rule 9(b) when factual information is within the defendants' knowledge or control because a plaintiff cannot be expected to possess personal knowledge with respect to a corporate defendants' internal affairs); *In re APF Co.*, 308 B.R. 183, 188 (Bankr. D. Del. 2004) ("But 'in the bankruptcy context, Federal Rule 9(b) should be interpreted liberally, particularly when the trustee . . . is bringing the action.'")."

[97] This element can also be satisfied by showing an unlawful act done in furtherance of the alleged conspiracy. *See McLaughlin v. Copeland*, 455 F. Supp. 749, 752–753 (D. Del. 1978), *aff'd*, 595 F.2d 1213 (3d Cir. 1979).

[98] *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-150 (Del. 1987).

[99] *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 892 (Del. Ch. 2009).

36

for breach of fiduciary duty against those defendants who were alleged to have served in a fiduciary role between January 2016 and June 2016.

The question whether the complaint properly asserts a claim for civil conspiracy against those defendants is a close one. On the one hand, the complaint is thin on specific allegations of the defendants having "combined" or "agreed" to breach their fiduciary duties. On the other hand, a court must draw all inferences from the facts as alleged in favor of the non-moving party. The Court therefore concludes that the allegations regarding the defendants' common participation in a plan to operate the debtor's business in a manner that violated applicable law is sufficient to survive a motion to dismiss. To that end, it bears note that this Court has previously observed that a claim for civil conspiracy to breach a fiduciary duty is substantively similar to a claim for aiding and abetting breach of fiduciary duty.[100] It therefore seems to follow that a complaint that is sufficient to allege that various members of a corporate board individually breached their duties to the corporate entity by facilitating and failing to reform unlawful corporate practices need not allege much more to state a claim against those same defendants for conspiring with one another to breach those fiduciary duties. The remaining claims for civil conspiracy, however, will be dismissed without prejudice for failure to state a claim.

---

[100] *In re USA Detergents*, 418 B.R. 533, 547 (Bankr. D. Del. 2009).

**IV.    The corporate waste and unjust enrichment claims fail because it is alleged that the payments were made under employment agreements; the complaint fails to allege intentional fraudulent conveyance with the requisite specificity.**

Miller argues that the payments made to the defendants during the liquidation of the debtors' assets and closure of its locations were excessive, without equivalent value and/or consideration, and therefore constitute fraudulent conveyances, corporate waste, and unjust enrichment.

To plead a claim for corporate waste, a plaintiff must show that there was an exchange of corporate assets for consideration so disproportionately small that no reasonable person would be willing to trade.[101]   Most often, courts find corporate waste when the transfer of corporate assets subject to the waste claim serves no corporate purpose, or in which there is no consideration.[102]

Miller alleges in the complaint, however, that the payments at issue here were made pursuant to employment contracts.[103]   That allegation effectively defeats his claims for corporate waste, and unjust enrichment.   In the absence of a challenge to the employment agreements themselves, and the complaint includes no such challenge, a payment made under an employment agreement is not the kind of disposition of corporate assets that can amount to corporate waste or give rise to a claim of unjust enrichment.

---

[101] *In re The Brown Schools*, 368 B.R. 394, 407–408 (Bankr. D. Del. 2007); *see also Brehm v. Eisner*, 746 A.2d 244, 263–264 (Del. 2000) (explaining that a finding of corporate waste in risky business transactions is "confined to unconscionable cases where directors irrationally squander or give away corporate assets.").

[102] *Id.*

[103] D.I. 1 ¶¶ 188, 195.

Miller also asserts a claim for intentional fraudulent conveyance under section 548(a)(1)(A) of the Bankruptcy Code.[104]  Miller alleges that the later defendants (McEachen, Danielson, and Jalufka) received large compensation payments during liquidation of the debtors' assets with knowledge that doing so would hinder their creditors, and therefore constitutes actual fraud under section 548(a)(1)(A).[105]

Claims for intentional fraudulent conveyance under section 548(a)(1)(A) require the trustee to allege (i) the transfers in question were made within two years of the petition date, and (ii) the debtor made the transfer with intent to hinder, delay or defraud an entity to which the debtor was or became, on or after the date that such transfer was made, indebted.[106]  Claims of actual intent to hinder, delay or defraud creditors must be pled with particularity under Rule 9(b).[107]  While courts in this jurisdiction have held that this standard should be applied liberally when the plaintiff is a trustee[108] (often restrained by time and with limited access to the debtors' books and records), the complaint still must, at the very least, contain some factual allegation sufficient to support a finding that the transferor intended to defraud its creditors.

The theme of this complaint, however, is that the debtors sought to increase revenues by defrauding the government.  There is no specific factual allegation (that

---

[104] D.I. 1 ¶¶ 180–183.

[105] *Id.*

[106] 11 U.S.C. § 548(a)(1)(A).

[107] Fed. R. Civ. P. 9(b); *see also In re Pennysaver USA Publ'g, LLC*, 587 B.R. 445, 459–460 (Bankr. D. Del. 2018).

[108] *Id.* at 460.

would pass muster under Rule 9(b)) to support the trustee's claim that the transfers

in question were made with the requisite intent to hinder, delay or defraud creditors.

The claim will accordingly be dismissed without prejudice.

## V.  The allegations in the complaint are sufficient to state a claim for constructive fraudulent conveyance under the Bankruptcy Code and the Delaware Uniform Fraudulent Transfer Act.

With respect to the claim for constructive fraudulent conveyance, the caselaw

in this jurisdiction provides that the satisfaction of a valid debt is, at least

presumptively, reasonably equivalent value.[109]  Defendants argue that because the

---

[109] *See In re Opus East, LLC*, 528 B.R. 30, 83, 89-90 (Bankr. D. Del. 2015).  The Bankruptcy Code by its terms provides that the "satisfaction … of … antecedent debt of the debtor" constitutes "value."  11 U.S.C. § 548(d)(2).  When a debtor receives value at the same time it makes a transfer, the analysis of "reasonably equivalent value" involves a comparison of the value received and the value transferred.  This is the analysis of the specific transfers in which the court engaged in *Opus East*, 528 B.R. at 83–90 (finding that the trustee had not met its burden to show that the debtor did not receive reasonably equivalent value for each of the transfers), and that the Third Circuit undertook in *In re RML Inc.*, 92 F.3d 139, 148–150 (3d Cir. 1996) (concluding that a company in financial distress did not obtain reasonably equivalent value when, for a transfer of $515,000, the debtor received a commitment from a bank to conduct due diligence in connection with a potential $53 million loan that was unlikely to close, and in fact did not close), and *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 646–647 (3d Cir. 1991) (assessing the value of the "indirect benefits" received by a debtor that was acquired in a leveraged buyout).

On one view, where a transfer satisfies an antecedent debt, the question of the "reasonable equivalence" of the value would not appear to be presented, so long as every dollar transferred satisfied a dollar of antecedent debt.  *See also In re Amcad Holdings, LLC*, 579 B.R. 33, 42 (Bankr. D. Del. 2017) ("A payment that reduces the amount owed on a pre-existing obligation constitutes reasonably equivalent value.").  The Bankruptcy Code does, however, provide for the possibility that the incurrence of that debt might itself be avoidable.  *Id.* § 548(a)(1) (addressing the possibility that an "obligation … incurred by the debtor" may be avoided as a fraudulent conveyance).  A transfer that satisfies an obligation that was itself avoided is of course likewise avoidable, since the avoidance of the obligation would eliminate the antecedent debt.

On the other hand, there is also some contrary some authority.  *See generally In re Liquid Holdings Group, Inc.*, No. 16-10202 (KG), 2018 WL 6841351 at *5 (Bankr. D. Del. Nov. 14, 2018) (suggesting that there may be circumstances in which satisfaction of an antecedent debt does not constitute reasonably equivalent value without addressing whether those circumstances are limited to those in which the obligation that gave rise to the indebtedness

challenged payments were (according to the allegations of the complaint) made under employment contracts, they therefore cannot be challenged as constructive fraudulent conveyances.

Without any evidence about the terms of the employment contracts, however, it is impossible to say that each of the challenged payments was in satisfaction of a valid antecedent debt. Specifically, the trustee contends that the payments being challenged as constructive fraudulent conveyances were bonus and severance payments. Without excluding the possibility that the payments may have satisfied a valid antecedent indebtedness, the complaint does not by its terms make it obvious that the debtor received reasonably equivalent value by receiving a dollar-for-dollar reduction of a legal obligation on account of each dollar transferred. The Court accordingly cannot conclude, based solely on the allegations of the complaint, that the debtor received reasonably equivalent value for each of the challenged payments.[110]

## VI.    The trustee fails adequately to state a preference claim.

### A.    The complaint fails to identify which debtor made the allegedly preferential transfers, as this Court's precedent requires.

The defendants contend that the preference claim is not sufficiently pled because Miller fails to detail each allegedly preferential transfer. The defendants specifically point out that the complaint does not contain adequate, identifying

---

is itself subject to avoidance). In the current posture of this motion, the Court need not address whether the presumption that the satisfaction of antecedent debt is reasonably equivalent value can be rebutted by a means other than by the avoidance of the corresponding obligation.

[110] The allegations in the complaint regarding the debtors' financial distress are sufficient, at the motion to dismiss stage, to allege that the debtors were insolvent when the transfers were made. D.I. 1 ¶ 142.

information of the alleged fraudulent transfers, including the debtor that made each transfer and the antecedent debt.

A trustee may avoid certain transactions between a debtor and its creditors that occurred within the ninety days before the petition date.  11 U.S.C. § 547.  To avoid a prepetition transfer on preference grounds, a plaintiff must identify a transfer (i) made to or for the benefit of a creditor, (ii) for or on account of an antecedent debt[111] owed by the debtor before such transfer was made, (iii) made while the debtor was insolvent, and (iv) made on or within 90 days before the date of the filing of the petition.[112]  Case law in this jurisdiction makes clear that when there are multiple debtors in the case, to plead a preference claim the trustee must identify the specific debtor that made the allegedly preferential transfer.[113]

Here, Miller attached exhibits to his complaint, listing each Defendant, the date of the payment subject to preferential treatment, and the amount.[114]  Those exhibits, however, do not identify the particular debtor that made the transfer.  The complaint accordingly fails to state a claim for a preference.  That count will thus be dismissed without prejudice.

---

[111] 11 U.S.C. § 547(b)(1)(2).  An antecedent debt is a debt that was incurred before the transfer of payment from the debtor.  *In re US Digital, Inc.*, 443 B.R. 22, 35 (Bankr. D. Del. 2011).

[112] § 547(b)(3)-(4).

[113] *In re Pennysaver USA Publ'g, LLC*, 602 B.R. 256, 274 (Bankr. D. Del. 2019) (citing *In re Tweeter Opco*, 452 B.R. 150, 154 (Bankr. D. Del. 2011) ("Because there is more than one debtor, in this case, the Court concludes that the Trustee must identify the transferor precisely by name.").

[114] *See* D.I. 1 Exh. G–J.

## B.    The complaint also fails to allege that the trustee conducted "reasonable due diligence."

The defendants also argue that the complaint fails to allege that Miller conducted reasonable due diligence into potential affirmative defenses, as required by the 2019 amendments to section 547(b) under the Small Business Reorganization Act.[115]    While the provision contains scant legislative history, the purpose of the provision is easy enough to discern.    As a general proposition, plaintiffs are required under Rule 11 to have a good faith basis to believe, after a reasonable investigation, that they can prove the elements of a *prima facie* case.    But even where a defendant's affirmative defense is obviously available, nothing in the federal rules by their terms bars a plaintiff from filing suit – the traditional theory being that defendants bear the burden of proving an affirmative defense, and a plaintiff that is able to establish its *prima facie* case is therefore entitled to hold the defendant to its burden of pleading and proving such a defense.[116]

As a practical matter, however, this led to a practice in which trustees would sometimes assert preference actions against every defendant that received a payment on account of an antecedent debt within the 90 days before bankruptcy without regard for the availability of obvious affirmative defenses like ordinary course of

---

[115] *See* 11 U.S.C. § 547(b) ("[t]he trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property . . .").

[116] *See generally Perry v. Merit Sys. Protection Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017) (plaintiff is not required to "anticipate and negate [a potentially available affirmative defense] in her pleading").

business, contemporaneous exchange, or new value.  Such lawsuits would impose burden and expense on defendants even where the claims were subject to a clear and meritorious affirmative defense.  The 2019 amendment to section 547 appears to be a response to that practice, imposing an obligation on trustees (not typically borne by plaintiffs) to assess the availability of an affirmative defense before filing suit.[117]

Bankruptcy courts are divided on the question whether this statutory language adds an element to a preference claim that must be sufficiently alleged in the complaint and proven at trial.[118]  In view of the fact that the Court will dismiss the preference claim without prejudice for the reasons described above, it is not necessary for the Court to resolve this question in connection with the current motion.

---

[117] *See David S. Forsh et al., New Bankruptcy Amendments Lower the Burdens of Preference Actions on Defendants*, Vol. 16 Pratt's Journal of Bankruptcy Law 1, 3 (2021) (explaining that this new requirement is likely to discourage the practice of filing preference actions against every entity that received a prebankruptcy transfer); Brook E. Gotberg, *Poking at Preference Actions: SBRA Amendments Signal the Need for Change*, 28 Am. Bankr. Inst. L. Rev. 285, 295 (2020) (describing how the reasonable due diligence requirement should operate to prevent trustees from filing of preference actions with only nuisance value).

[118] *See In re Insys Therapeutics, Inc.*, No. 19-11292 (JTD), 2021 Bankr. LEXIS 2965, at *8 (Bankr. D. Del. Oct. 28, 2021) (concluding that although the purpose of the reasonable due diligence language was susceptible to more than one interpretation, there was no need to rule on the interpretative issue because the trustee adequately pled due diligence in his complaint); *see also In re Reagor-Dykes Motors, LP*, No. 20-05038 (RLJ), 2021 Bankr. LEXIS 1643, at *14 (Bankr. N.D. Tex. Jun. 18, 2021) (explaining that the court need not decide whether the due diligence language created an additional element but emphasizing that a trustee must exercise a certain level of due diligence before bringing a preference action); *see also, In re Trailhead Eng'g LLC*, No. 20-3094 (EVR), 2020 Bankr. LEXIS 3547, at *17 (S.D. Tex. Dec. 21, 2020) (declining to conclude whether the due diligence language created an additional element and deciding that the court had discretion to apply the requirement based on what the complaint alleged); *but see In re ECS Ref., Inc.*, 625 B.R. 425, 453–454 (Bankr. E.D. Cal. Dec. 15, 2020) (determining that the due diligence language created a condition precedent that must be met prior to bringing a preference claim).

## Conclusion

For the reasons set forth above, the motion will be granted except for (a) the claims for breach of fiduciary duty against those defendants who are alleged to have served as directors or officers of a Delaware-incorporated entity in the period beginning three years before the petition date and those who are alleged to have served as directors of officers of a Pennsylvania-incorporated entity in the period beginning two years before the petition date; (b) the claim for civil conspiracy against the same defendants; and (c) the claims for constructive fraudulent conveyance.  The remaining claims will be dismissed without prejudice to being replead.  The trustee is directed to settle an order, on notice to all defendants, so providing.

Dated: January 12, 2022

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE