## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7<br>Case No. 18-11535 (CTG) |
| THE ART INSTITUTE OF PHILADELPHIA LLC, *et al.*,[1]<br><br>        Debtors. | (Jointly Administered) |
| GEORGE L. MILLER, Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>        v.<br><br>TODD S. NELSON, JOHN R. McKERNAN, SAMUEL C. COWLEY, EDWARD WEST, MARK A. McEACHEN, FRANK JALUFKA, J. DEVITT KRAMER, MARK NOVAD, JOHN DANIELSON, AND MICK BEEKHUIZEN,<br><br>        Defendants. | Adv. No. 20-50627 (CTG) |

## OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
## THE FIRST AMENDED COMPLAINT OF
## <u>DEFENDANTS JOHN DEVITT KRAMER AND MARK NOVAD</u>

---

[1] Due to the large number of debtors in the above-captioned jointly-administered chapter 7 cases (the "Chapter 7 Cases"), a complete list of such debtors (the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein. Such information can be found at footnote 1 of the First Amended Complaint ("FAC").

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. ................................................................................................. iii

I.    STATEMENT OF THE STAGE OF THE PROCEEDING ............................................. 1

II.   INTRODUCTION ......................................................................................................... 1

    A.   Payment Claims ................................................................................................. 2

    B.   Breach of Fiduciary Duty................................................................................... 3

III.  FACTUAL BACKGROUND........................................................................................ 4

    A.   Kramer and Novad............................................................................................. 4

    B.   The Payment Claims .......................................................................................... 4

IV.   ARGUMENT ................................................................................................................ 6

    A.   The Trustee Has Failed To Plausibly Allege That The Compensation
        Payments Were Assets With Value To The Debtors' Estates (Count VII,
        Count VIII, Count IX, And Count X) ................................................................ 6

        1.   *The Payment Claims require an allegation of a loss of "an*
            *interest of the debtor."* .............................................................................7

        2.   *Having now identified the Debtor who allegedly made the*
            *"recoverable" transfer, the FAC fails to allege the transfer of*
            *unencumbered funds.* .................................................................................10

            a.   At the time of the Compensation Payments to Defendants,
                all of EDMC II's accounts were subject to a stipulated valid
                security interest held by a third party............................................. 10

            b.   At all times germane to the Payment Claims, the secured
                lenders were undersecured. .......................................................... 12

            c.   Transfers do not give rise to claims of a preference or a
                fraudulent transfer when the interest in the property
                transferred is of no value to the estate. ........................................ 12

    B.   The Complaint Does Not Sufficiently Allege A Preference Claim Under
        Section 547(b) (Count VIII)................................................................................ 15

         1.   *The FAC's perfunctory allegation of due diligence does not comply*
            *with the due diligence requirement.* ..........................................................15

2.    *The FAC does not adequately plead an antecedent debt relating to the Compensation Payments.* ................................................................20

3.    *The FAC does not properly allege that the Defendants were insiders of the Debtors making the Compensation Payments.* ..................21

4.    *The FAC does not plead EDMC II's insolvency at time of each of the Compensation Payments.* ................................................................22

C.    The FAC Does Not Sufficiently Plead Constructive-Fraud Claims Under Section 548(a)(1)(B) (Count VII). ............................................. 24

D.    The FAC Fails To Allege The Necessary Elements To State A Claim Under DUFTA Section 1304(a)(2) Or Section 1305 (Count IX). ........................ 26

E.    The Trustee's Breach-Of-Fiduciary-Duty Claim Against Defendants Kramer And Novad Fails (Count I). ...................................................... 27

1.    *The Trustee's breach-of-fiduciary-duty claim fails to plead with specificity the conduct of Messrs. Kramer and Novad.* .....................27

2.    *The Trustee does not plead facts that sufficiently demonstrate that Defendants Kramer and Novad owed or breached fiduciary duties.* ..........29

V.    CONCLUSION.............................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arete Creditors Litig. Trust v. TriCounty Fam. Med. Care Grp., LLC (In re Arete Healthcare LLC)*,
    2022 Bankr. LEXIS 322 (Bankr. W.D. Tex. Feb. 7, 2022) ...................................17

*Assembly Tech., Inc. v. Samsung Techwin, Co.*,
    695 F. Supp. 2d 168 (E.D. Pa. 2010) ......................................................................29

*Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Del., Inc.)*,
    541 B.R. 219 (Bankr. D. Del. 2015) .........................................................................6

*Begier v. IRS*,
    496 U.S. 53 (1990)..................................................................................................6, 8

*Beskrone v. OpenGate Capital Grp. (In re PennySaver USA Publ'g, LLC)*,
    587 B.R. 445 (Bankr. D. Del. 2018) .............................................................28, 29, 30

*Bird v. SKR Credit, Ltd. (In re Digital Bridge Holdings, Inc.)*,
    2015 Bankr. LEXIS 3314 (Bankr. Utah Sept. 30, 2015) ....................................8, 14

*Cage v. Wyo-Ben, Inc. (In re Ramba Inc.)*,
    437 F.3d 457 (5th Cir. 2006) ..............................................................................12, 13

*Capmark Fin. Group Inc. v. Goldman Sachs Credit LP*,
    491 B.R. 335 (S.D.N.Y. 2013)................................................................................22

*In re Christensen*,
    561 B.R. 195 (Bankr. D. Utah 2016) ......................................................................11

*Crystallex Int'l Corp. v Petroleos de Venez.*,
    S.A., 879 F.3d 79 (3d Cir. 2018) ............................................................................26

*Friedman v. Dolan*,
    2015 Del. Ch. LEXIS 178 (Del. Ch. Ct. Jun. 30, 2015) .......................................30

*Funches v. Household Fin. Consumer Disc. Co. (In re Funches)*,
    381 B.R. 471 (Bankr. E.D. Pa. 2008) .....................................................................10

*Galope v. New Century Mortg. Corp. (In re New Century TRS Holdings, Inc.)*,
    2013 Bankr. LEXIS 4350 (Bankr. D. Del. Oct. 6, 2013)..........................................6

*Gothner. JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*,
    558 B.R. 116 (Bankr. D. Del. 2016) .......................................................................25

iii

*Green v. Paz*,
  2021 U.S. Dist. LEXIS 68075 (D. Del. Mar. 31, 2021) ........................................28

*Grimm v. Discover Fin. Servs.*,
  2008 U.S. Dist. LEXIS 89709 (W.D. Pa. Nov. 4, 2008) .......................................29

*Giuliano v. Gibson Dunn & Crutcher LLP (In re Liquid Holdings Grp., Inc.*,
  2018 Bankr. LEXIS 3589 (Bankr. D. Del. Nov. 14, 2018) ...................................21

*Guiliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*,
  2018 Bankr. LEXIS 1665 (Bankr. D. Del. June 6, 2018)................................26, 27

*Husted v. Taggart (In re ECS Ref. Inc.)*,
  625 B.R. 425 (Bankr. E.D. Cal. 2020)...................................................................17

*Insys Liquidation Trust v. Urquhart (In re Insys Therapeutics, Inc.)*,
  2021 Bankr. LEXIS 2965 (Bankr. Del. Oct. 28, 2021) .........................................16

*Jalbert v. Flanagan (In re F-Squared Inv. Mgmt., LLC)*,
  600 B.R. 294 (Bankr. D. Del. 2019) ................................................................19, 24

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
  2019 Bankr. LEXIS 2817 (Bankr. D. Del. Sept. 6, 2019) .....................................22

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
  844 F. Supp. 2d 519 (D. Del. 2012)......................................................................27

*L.T. Assocs., LLC v. Sussex Cty. Council*,
  2013 U.S. Dist. LEXIS 109297 (D. Del. Aug. 5, 2013) ..........................................5

*In re Liquid Holdings Grp., Inc.*,
  2018 Bankr. LEXIS 3589 ................................................................................14, 25

*Manchester v. Sharpton (In re All Phase Roofing & Constr., LLC*),
  2020 Bankr. LEXIS 178 (Bankr. W.D. Okla. Jan. 17, 2020,) *aff'd*, 2020
  Bankr. LEXIS 2441 (B.A.P. 10th Cir. Sept. 14, 2020)..................................6, 9, 13

*In re Mays*,
  256 B.R. 555 (Bankr. D.N.J. 2000) .........................................................................9

*McCloskey v. Wells Fargo Bank Wisc. (In re Art Unlimited, LLC)*,
  2007 U.S Dist. LEXIS 66479 (E.D. Wis. Sept. 6, 2007)......................................13

*Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*,
  2021 U.S. Dist. LEXIS 183032 (D. Del. Sept. 24, 2021)......................................28

*Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*,
  2019 Bankr. LEXIS 2906 (Bankr. D. Del. Sept. 16, 2019) ...................................26

*Miller v. Easy Star Records (In re DA Liquidating Corp.)*,
   622 B.R. 172 (Bankr. D. Del. 2020) ..............................................................20, 21

*Miller v. Fallas (In re J&M Sales, Inc.)*,
   2021 Bankr. LEXIS 2268 (Bankr. D. Del. Aug. 20, 2021) ..............................23, 24

*Miller v. Welke (In re United Tax Grp., LLC)*,
   2016 Bankr. LEXIS 4322 (Bankr. D. Del. Dec. 13, 2016)......................................25

*Moriarty v. Lynch* (*In re PostRock Energy Corp.*),
   2018 Bankr. LEXIS 2726 (Bankr. W.D. Okla. Sept. 6, 2018) ...............................23

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs
   Credit Partners L.P. (In re Fedders n. Am., Inc.)*,
   405 B.R. 527 (Bankr. D. Del. 2009) .......................................................................29

*Official Comm. of Unsecured Creditors of Wash. Mut., Inc. v. Corcoran (In re
   Wash. Mut., Inc.)*,
   2013 Bankr. LEXIS 2885 (Bankr. D. Del. July 16, 2013)......................................21

*Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*,
   458 B.R. 87 (Bankr. S.D.N.Y. 2011).......................................................................18

*Quadrant Structured Prods. Co. v. Vertin*,
   102 A.3d 155 (Del. Ch. 2014).................................................................................29

*Rafool v. Goldfarb Corp. (In re Fleming Packaging Corp.)*,
   2005 Bankr. LEXIS 1740 (Bankr. C.D. Ill. August 26, 2005) ...............................13

*Raul v. Rynd*,
   929 F. Supp. 2d 333 (D. Del. 2013).........................................................................30

*Ross v. Blake*,
   136 S. Ct. 1850 (2016)..............................................................................................17

*Sama v. Mullaney (In re Wonderwork, Inc.)*,
   611 B.R. 169 (Bankr. S.D.N.Y. 2020).....................................................................25

*Seaver v. New Buffalo Auto Sales (In re Hecker)*,
   496 B.R. 541 (B.A.P. 8th Cir. 2013)........................................................................14

*Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition,
   LLC)*,
   582 B.R. 846 (Bankr. D. Del. 2018) ..................................................................17, 22

*Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC)*,
   514 B.R. 405 (Bankr. D. Del. 2014) ........................................................................28

*THQ Inc. v. Starcom Worldwide, Inc.* (*In re THQ Inc.*),
  2016 Bankr. LEXIS 1774 (Bankr. D. Del. Apr. 18, 2016) ..........................................20, 21, 25

*Tow v. Pajooh (In re CRCGP LLC)*,
  2008 Bankr. LEXIS 4236 (Bankr. S.D. Tex. Aug. 28, 2008)..................................................13

*In re Tri-Valley Corp.*,
  2015 Bankr. LEXIS 29 .........................................................................................................20

*United States v. Education Mgmt. Corp.*,
  871 F.Supp.2d 433 (W.D. Pa. 2012).....................................................................................18

*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*,
  2020 Del. Ch. LEXIS 311 (Del. Ch. Oct. 8, 2020)..................................................................27

*Wilson v. Henrichs Ins. Servs.* (*In re Haag*),
  2018 Bankr. LEXIS 3959 (Bankr. C.D. Ill. Dec. 17, 2018) ...................................................21

**Statutes**

6 Del. C. 1301 ..................................................................................................................................9

6 Del. C. 1304 .............................................................................................................................9, 26

6 Del. C. 1305 ...........................................................................................................................26, 27

11 U.S.C. § 547................................................................................................................... *passim*

11 U.S.C. § 101................................................................................................................................22

11 U.S.C. § 541..................................................................................................................................8

11 U.S.C. § 548................................................................................................................... *passim*

11 U.S.C. § 550.............................................................................................................................9, 14

11 U.S.C. § 725..................................................................................................................................8

11 U.S.C. § 726..................................................................................................................................8

**Other Authorities**

Fed. R. Evid. 201 ..............................................................................................................................6

Fed. R. Civ. P. 8.................................................................................................................16, 17, 21

Fed. R. Civ. P. 11.............................................................................................................................16

Fed. R. Civ. P. 12..............................................................................................................................1

Defendants J. Devitt Kramer ("Mr. Kramer") and Mark Novad ("Mr. Novad") (together, "Defendants"), by and through undersigned counsel, hereby submit this opening brief in support of their Motion to Dismiss (the "Motion").

## I.    STATEMENT OF THE STAGE OF THE PROCEEDING

On June 29, 2018, Education Management Corporation ("EDMC") and the 55 other debtors in the above-captioned jointly administered bankruptcies (collectively with EDMC, the "Debtors") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.  On June 17, 2020, the Trustee, George Miller, filed the initial complaint ("Complaint") in this lawsuit (Adv. Dkt. 1.)

Messrs. Kramer and Novad (as well as eight "Co-Defendants") moved to dismiss the Trustee's Complaint in September 2020 (Adv. Dkt. 41.)  Under Local Rule 7012-1, Messrs. Kramer and Novad do not consent to the entry of final orders or judgments by the Court.  On February 25, 2022, this Court issued its opinion, granting in part and denying in part the Co-Defendants' motions.  (*See* Adv. Dkt. 90.)  On February 4, 2022, the Court granted the Trustee leave to file an amended complaint within 15 days.  The Trustee filed his first amended complaint ("FAC") on February 15, 2022.  (Dkt. No. 91.)  Defendants now move to dismiss the FAC.[2]

## II.    INTRODUCTION

The Debtors were at one time "among the largest providers of postsecondary education in North America, operating 110 primary locations across 32 U.S. states and in Canada" and

---

[2]    Messrs. Kramer and Novad hereby join several of the arguments set forth by co-Defendants West and Beekhuizen ("WB Brief"), and co-Defendants McEachen, Jalufka, and Danielson ("MJD Brief").  Specifically, Defendants incorporate by reference the Rule 12(e) motion (Section II.A.3) and the argument relating to "reservation of rights" (Section II.G), as explained in the MJD Brief. For the WB Brief, Defendants incorporate the arguments relating to why the breach-of-fiduciary-duty claim fails (Section I).

organized into four separate education systems. (FAC, Ex. K at 2.) But like many others in the proprietary education field, the Debtors suffered economic challenges after years of political pressure and media criticism of proprietary post-secondary education. For the Debtors, the economic challenges mounted and ultimately led to closure and bankruptcy.

In June 2020, the Trustee sued ten defendants—including non-directors Messrs. Kramer and Novad—alleging that all of the Defendants committed breaches of fiduciary duties over a decade by serving in their respective roles at various Debtors and that certain other Defendants received certain compensation payments pursuant to unchallenged employment agreements that could be recovered by the Trustee under a host of avoidance and fraudulent transfer theories. Defendants moved to dismiss, and on January 12, 2022, this Court dismissed *all* the claims, except for breach of fiduciary duty, civil conspiracy, and constructive fraud under 11 U.S.C. § 548(a)(1)(B) and the DUFTA. (*See* Dkt. 87, 90.) The Court did, however, grant the Trustee leave to amend to correct identified pleading deficiencies.

In the FAC, the Trustee has responded to this Court's decision and, at least facially, sought to remedy certain of the pleading deficiencies identified by the Court. As discussed herein, he has failed to do so. Indeed, it is now clear that the Trustee can never plead a valid Payment Claim on the facts as alleged in the FAC.

### A.    Payment Claims

The so-called "Payment Claims" exclusively involve payments by a now-identified Debtor, Education Management II, LLC ("EDMC II"), to certain Defendants based upon alleged and unchallenged employment agreements. But, having now identified the transferor, as the Court ordered, the Trustee has pleaded himself out of Court. All of the accounts of EDMC II were subject to a valid and pre-existing security agreement and liens in favor of lenders represented by U.S. Bank under a $665 million credit facility. This security agreement and the lenders'

2

undersecured interest in EDMC II's accounts and other assets have been acknowledged and stipulated to by the Trustee and approved by this Court.  Having acknowledged these interests, the Trustee can no longer meet the pleading requirement under Sections 547 and 548 of the Bankruptcy Code and DUFTA that require a Trustee to identify an interest of the estate being dissipated by allegedly wrongful payments.

In addition, the Trustee failed to plead "reasonable due diligence," which Section 547(b) required him to do.  Rather than articulate the basis for his belief that the payment of pledged funds to an employee under an employment agreement gives rise to a claim, the Trustee simply professes to have performed such due diligence without addressing any specifics of this case.  If the due diligence requirement is to mean anything, it is more than a recitation of the statute.  The Trustee also fails to plead an antecedent debt.  At most, he alleges that the Compensation Payments were made pursuant to "employee contracts."   But this Court has—again and again—dismissed preference claims that have alleged a similar antecedent debt.

The Section 548(a)(1)(B) claim and the DUFTA claims fail because the Trustee does not allege that EDMC II received "less than a reasonably equivalent value" in exchange for the Compensation Payments.  At best, the Trustee alleges that the Compensation Payments were "excessive," an allegation that this Court in other cases has held is insufficient to plead "less than a reasonably equivalent value."   Again, the FAC's failure to plead "insolvency" of EDMC II dooms these claims.

### B.    Breach of Fiduciary Duty

As for the breach-of-fiduciary-duty claim, Messrs. Kramer and Novad are the only defendants who are *not* alleged to have been directors.  Mr. Novad is alleged to have served in Human Resources, while Mr. Kramer is alleged to have been in-house counsel.  (FAC ¶¶ 19-20.) This Court has repeatedly rejected attempts to "lump" defendants together without specifying who

did what, and when.  Even more problematic, the Trustee alleges that all named Defendants—with different titles, responsibility, power, and authority—engaged in the *same* wrongful conduct suggesting that the power and actions of an HR director and Chairman of the Board are identical—an implausible inference without well-pleaded facts in support.  Nor does the Trustee plead facts sufficient to show that Messrs. Kramer and Novad breached any fiduciary duties, especially since they are not alleged to be directors.  And, the mere receipt of the Compensation Payments does not support the claim absent an allegation that Messrs. Kramer and Novad "exercised control over" EDMC II.  This claim should be dismissed.

## III.    FACTUAL BACKGROUND

### A.    Kramer and Novad

The FAC alleges that Messrs. Kramer and Novad held positions with EDMC and four alleged Delaware Holding Companies, but does not—and cannot—allege that they were directors. Mr. Kramer was, at various times from May 2004 through December 2017, Vice President, Senior Counsel, Assistant Secretary, Vice President Corporate Compliance, Senior Vice President, General Counsel and Secretary.  (FAC ¶ 19.)  Mr. Novad was, at various times from 2008 through at least August 2015, Vice President of Human Resources, Senior Vice President of Human Resources, Office of the Chairman, and Senior Vice President of Human Resources.  (FAC ¶ 20.) The FAC fails to allege what exactly Mr. Novad did after August 2015.

### B.    The Payment Claims

The Payment Claims relate to certain alleged payments made to Messrs. Kramer, Novad, and other Co-Defendants referred to in the FAC as the "Excessive Payments"—*i.e.*, the "Compensation Payments."  The FAC alleges the transferor, transferee, date of transfer, amount of the payment, and that the payment was a "Bonus Payment."  (FAC Exs. G-J.)  The FAC further alleges that the Compensation Payments "were made . . . under an employment contract" (*Id.* ¶

189), and "on account of antecedent debts owed by the Debtors to the recipients of those payments before the transfers were made as set forth in various employee contracts." (*Id.* ¶ 195.) But, as discussed below, the FAC does *not* allege the particular Debtor's assets and liabilities on the date the Compensation Payments were made, or whether Messrs. Kramer and Novad were "insiders" of EDMC II at the time of the alleged payments, whether and when the Compensation Payments were due and payable under the employment agreements, or whether the amount paid was the amount agreed to under these agreements.

Critically, the FAC is silent regarding the nature of the Debtors' (including EDMC II) interests in the alleged Compensation Payments. The Trustee, on behalf of the Debtors, has acknowledged, on the Petition Date, that a claim dating back to January 5, 2015 was owing to U.S. Bank National Association ("U.S. Bank"), as Administrative and Collateral Agent, in the amount of $566,890,806.29, and that the claim was secured by "[s]ubstantially all assets" of the Debtors. (FAC, Ex. K at 25.) The Trustee similarly stipulated to U.S. Bank's secured claim (the "Security Pledge Stipulation"). (Dkt. 64.) In the Security Pledge Stipulation, the Trustee acknowledged a valid "Credit and Guaranty Agreement" by and between U.S. Bank, as agent for certain lenders, and various Credit Parties, including EDMC II, whereby U.S. Bank held "a valid and enforceable first priority security interest in and continuing lien on each of the [Credit Parties'] right, title, and interest to and under all of the Collateral which constitutes substantially all of the Debtors' assets." (*Id.* Exh. 1, p.2.)[3] The Credit and Guaranty Agreement set forth the terms under which U.S. Bank and associated lenders established credit facilities totaling $656,440,701.[4] *See* Credit and

---

[3]    A court can consider pleadings and filings under judicial notice on a motion to dismiss without converting it to a summary judgment motion. *L.T. Assocs., LLC v. Sussex Cty. Council*, 2013 U.S. Dist. LEXIS 109297, at *3 (D. Del. Aug. 5, 2013).

[4]    *See* contemporaneously filed Request of Defendants John Devitt Kramer and Mark Novad to Take Judicial Notice in Support of Motion to Dismiss the First Amended Complaint. As

Guaranty Agreement, attached as Exhibit 1-B to Request of Defendants John Devitt Kramer and

Mark Novad to Take Judicial Notice in Support of Motion to Dismiss the First Amended

Complaint. In exchange, EDMC II executed a Pledge and Security Agreement (attached to the

Credit and Guaranty Agreement), which granted to U.S. Bank a security interest in all of, *inter*

*alia*., EDMC II's "accounts" and "cash."

## IV.    ARGUMENT

### A.    The Trustee Has Failed To Plausibly Allege That The Compensation Payments Were Assets With Value To The Debtors' Estates (Count VII, Count VIII, Count IX, And Count X)

The Trustee's power, including the power to recover allegedly wrongful transfers, is

limited to assets that had value to the Debtors' estate. *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 58

(1990); *Manchester v. Sharpton* (*In re All Phase Roofing & Constr., LLC*), 2020 Bankr. LEXIS

178, at *21 (Bankr. W.D. Okla. Jan. 17, 2020,) *aff'd*, 2020 Bankr. LEXIS 2441 (B.A.P. 10th Cir.

Sept. 14, 2020). Here, the Trustee has alleged that at the time of the alleged wrongful payments

by EDMC II, the Debtors collectively—presumably including EDMC II—were "insolvent" with

debts grossly exceeding assets. (*See generally* FAC ¶ 143) (alleging that "Debtors were insolvent

when the Excessive Payments to Defendants were made" and had excess liabilities on June 30,

2016 of $280,388,243, on June 30, 2017 of $467,083,680, and on the Petition Date of

---

explained in this Request, Federal Rule of Evidence 201 authorizes a court to take judicial notice
of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally
known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.
201(b); *see also Galope v. New Century Mortg. Corp. (In re New Century TRS Holdings, Inc.)*,
2013 Bankr. LEXIS 4350, *2-4 (Bankr. D. Del. Oct. 6, 2013) ("Much of this background cites to
pleadings, rulings and other events that have taken place during the Debtors' chapter 11 bankruptcy
case, as referenced by the docket numbers to pleadings in the main bankruptcy case."); *Barry v.
Santander Bank, N.A. (In re Liberty State Benefits of Del., Inc.)*, 541 B.R. 219, 234 (Bankr. D. Del.
2015) (determining that prior sworn testimony of trustee "clearly satisfy the requirements of Rule
201").

$628,885,442).  The Trustee has also stipulated that the Debtors' assets (including those of alleged payor EDMC II) were fully encumbered pursuant to a Credit and Guaranty Agreement dated January 5, 2015 and the associated Pledge and Security Agreement executed the same day in favor of U.S. Bank as administrative and collateral agent for various lenders.[5]  When read collectively— as, given the Trustee's Security Pledge Stipulation, they must be—it is clear that the FAC fails to make a plausible allegation that the funds that comprised the allegedly "Excessive Payments" were an avoidable interest in property of the Debtors' estates.  Rather, they were fully pledged to U.S. Bank, which was woefully undersecured.  Failing to allege the transfer of potential assets of the estate, the Trustee's allegations do not state a claim for recovery.

> 1.     *The Payment Claims require an allegation of a loss of "an interest of the debtor."*

The FAC seeks to recoup certain payments to Defendants under theories of an impermissible constructive fraudulent transfer under Section 548(a)(1)(B) of the Code, (FAC ¶¶ 185-191), a constructive fraudulent transfer under Delaware law, (*Id*. ¶¶ 201-212,) and a voidable preference under Section 547(b) of the Code, (*Id*.  ¶¶ 192-200.)[6]  Although the claims differ in their elements, both constructive fraudulent transfer claims under state and federal law and a Section 547 preference claim have in common the requirement that the property allegedly transferred pre-petition be "an interest of the debtor."

---

[5]      *See* Dkt. 64-1, Order Approving Stipulation Resolving Objection of George L. Miller, Chapter 7 Trustee, To Proofs of Claim Filed by U.S. Bank, National Association As Administrative Agent On Behalf of Itself and Each Secured Claimant, Exh. A. ¶ 3 (stipulating that "U.S. Bank holds a valid and enforceable first priority security in and continuing lien on all of the Credit Party Debtors' right, title, and interests to and under all of the Credit Party Debtors' assets other than" estate causes of action and causes of action under Chapter 5 of the Bankruptcy Code).

[6]      Prior allegations related to actual fraudulent transfers were dismissed by this Court and while the FAC re-asserts those claims, it did so "solely for the purpose of preserving . . . appellate rights."  (FAC n. 8 & 9.)

While the Bankruptcy Code does not define "an interest of the debtor" in property, which must be determined by state law, it does define "property of the estate."  Section 541 provides that "all legal or equitable interests of the debtor in property" as of the Petition Date constitutes "property of the estate."  11 U.S.C. § 541(a).  Section 541(d) clarifies that such property only includes that which the debtor held on the Petition Date such that if the debtor only held legal title and not an equitable interest, the equitable interest is not property of the estate.  *See* 11 U.S.C. § 541(d).[7]

Section 547, by its very terms, requires that a claim must allege "a transfer of an interest *of the debtor* in property . . . ."  11 U.S.C. § 547(b).  If an alleged payment involved property that is not owned by the debtor, *i.e.*, *an equitable interest*, then an avoidance action does not lie.  *See, e.g., Begier*, 496 U.S. at 58 (holding that tax payments to the IRS were not avoidable).  "Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind avoidance power is not implicated."  *Id.*  Because the phrase "interest of the debtor in property" is not defined in the Bankruptcy Code, courts will

---

[7]    As explained by the Court in *In re Digital Bridge Holdings, Inc.,* Sections 725 and 726 of the Bankruptcy Code distinguish the property of the estate that is under the administration of the Trustee, as follows:

> Section 725 provides that before the final distribution of "property of the estate" the trustee "shall dispose of any property in which an entity other than the estate has an interest such as a lien."  Section 726, which directs the distribution of "property of the estate," makes no provision for distribution to secured creditors. These sections clearly distinguish "property in which an entity other than the estate has an interest" (property which is subject to a lien) from "property of the estate" (property which is not subject to liens).

*Bird v. SKR Credit, Ltd. (In re Digital Bridge Holdings, Inc.)*, 2015 Bankr. LEXIS 3314, *63-*64 (Bankr. Utah Sept. 30, 2015).

look to state law to determine whether the debtor has such an interest under the facts alleged. *See, e.g., In re Mays*, 256 B.R. 555, 563 (Bankr. D.N.J. 2000).

Similarly, claims alleging a constructive fraudulent transfer under federal or state law must also allege a loss to the debtor's estate. Section 548(a)(1) applies only to transfers "of an interest of the debtor in property . . . ." 11 U.S.C. § 548(a)(1); *see also In re All Phase Roofing & Constr., LLC*, 2020 Bankr. LEXIS 178, at *21 ("To sustain a cause of action for a constructively fraudulent transfer, a trustee must also first establish that there was a transfer of a *debtor's property interest* within two years prior to the petition date. . . .") (emphasis added). Section 1304 of the Delaware Code—upon which the FAC relies—requires the allegation of a "transfer" but, by definition, a "transfer" requires an "asset." 6 Del. Code §§ 1304; 1301. Section 1301(2), in turn, requires an "asset" to be "property of a debtor" but expressly excludes "property to the extent it is encumbered by a valid lien." *Id.* § 1301(2)(a).

Finally, to the extent a transfer is avoidable under either of these statutory provisions, Section 550 provides that the "trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the *value* of such property . . . ." 11 U.S.C. § 550(a) (emphasis added). If the property lacks "value," recovery is precluded under Section 550. *See In re All Phase Roofing & Constr., LLC*, 2020 Bankr. LEXIS 178, at *41 (holding that even a fraudulent transfer under Section 548 is not recoverable under Section 550 if fully encumbered by liens). Thus, under all of the recovery theories advanced by the Trustee, the FAC must allege that the monies transferred to the Defendants were an interest in "property" that would benefit and provide "value" to the transferor debtor's estate.

2.     *Having now identified the Debtor who allegedly made the "recoverable" transfer, the FAC fails to allege the transfer of unencumbered funds.*

In response to Defendants' initial motion to dismiss, this Court held that the initial Complaint failed to allege the transferor of the funds subject to the Payment Claims. (Adv. Dkt. 87, p. 39.) To correct this basic pleading deficiency, the FAC now alleges that the transferor was EDMC II. (FAC ¶ 136.) ("All of the Excessive Payments to Defendants were made by Debtor Education Management II LLC."). But, now that the Trustee has made this disclosure, he has pleaded himself out of Court. *See, e.g., Funches v. Household Fin. Consumer Disc. Co.* (*In re Funches*), 381 B.R. 471, 482 (Bankr. E.D. Pa. 2008) (explaining that Court should consider whether the plaintiff "pleads itself out of court" upon review of motion to dismiss).

a.     At the time of the Compensation Payments to Defendants, all of EDMC II's accounts were subject to a stipulated valid security interest held by a third party.

Before the initiation of this adversary proceeding, this Court approved a Security Pledge Stipulation between the Trustee and U.S. Bank. (*See* Dkt. 64.) In that Order, this Court ordered that the "Stipulation and this Order shall be binding upon the Parties." (*Id.* ¶ 2.) In the Security Pledge Stipulation, the Trustee acknowledged a valid "Credit and Guaranty Agreement" by and between U.S. Bank, as agent for certain lenders, and various Credit Parties, including EDMC II, whereby U.S. Bank held "a valid and enforceable first priority security interest in and continuing lien on each of the [Credit Parties'] right, title, and interest to and under all of the Collateral which constitutes substantially all of the Debtors' assets." (*Id.* Exh. 1, p.2.) The Credit and Guaranty Agreement set forth the terms under which U.S. Bank and associated lenders established credit facilities totaling $656,440,701. *See* Credit and Guaranty Agreement, attached as Exhibit 1-B to Request of Defendants John Devitt Kramer and Mark Novad to Take Judicial Notice in Support of Motion to Dismiss the First Amended Complaint. In exchange, EDMC II agreed to, and entered

into, a Pledge and Security Agreement (attached to the Credit and Guaranty Agreement as Exhibit F) that granted to U.S. Bank a security interest in identified "Collateral" that included, *inter alia*, all "accounts" and "cash" held by EDMC II.  (*Id.* at Section 2.1(a); (k).)  That document, dated January 5, 2015, predated all of the payments alleged in the FAC and continued to be in force through the Petition date, as the Trustee's Security Pledge Stipulation acknowledges.  Thus, as the Trustee has recognized and, indeed, stipulated, the very funds that form the alleged basis of the Payment Claims were completely pledged to non-Debtors.

The Trustee's Security Pledge Stipulation allowing for a "carve out" from encumbered assets further recognized that a secured creditor existed and that the monies accessed by the Trustee were subject to a valid lien.  *See, e.g.*, *In re Christensen*, 561 B.R. 195, 207 (Bankr. D. Utah 2016) (noting that a carve out relates to "those instances where a secured creditor agrees that its cash collateral may be used to pay administrative expenses").  And such orders are necessary because "a secured creditor's interest in property is not property of the estate." *Id.* at 206.  If such funds are to be used for the administration of the estate, consent is required. *Id.*  Here, by entering into the Security Pledge Stipulation, the Trustee acknowledged that funds existing in the Debtors' accounts are pledged to U.S. Bank as agent to a group of lenders and, therefore, requires U.S. Bank's consent before they are taken for use by the Trustee and his counsel to administer the Estate.  (*See* Security Pledge Stipulation at ¶ 5 (authorizing the use of $375,000 of "Collateral" to fund professional fees and expenses)).  In so agreeing and seeking the lenders' permission to "carve out" these funds from an acknowledged and valid lien, the Trustee concedes that the monies that exist in the accounts of the Debtors are fully pledged to the lender group and not property of the estate.  If it were otherwise, the Security Pledge Stipulation would be unnecessary.

> b.     At all times germane to the Payment Claims, the secured lenders were undersecured.

The status of an obligation, or the security pledged in support of that obligation, often would not be discernable on a motion to dismiss.  But here, the Trustee has pleaded that, in fact, at the time of the alleged payments from EDMC II, the secured creditors were undersecured.  The Trustee alleges that the Debtors were collectively "insolvent" at the time of the payments, noting that on June 30, 2016, Debtors' liabilities exceed their assets by nearly $300 million, a year later by over $450 million, and at the petition date, by over $625 million.  (FAC ¶ 143.)  Moreover, the Security Pledge Stipulation grants to U.S. Bank a secured claim of $308,928.42 and an unsecured claim in this bankruptcy of $599,466,708.37 further establishing that the U.S. Bank obligation was grossly undersecured.  U.S. Bank was, at all relevant times, entitled to exercise its rights under its credit and security agreements to protect its Collateral, including its cash collateral.  The Trustee's Security Pledge Stipulation recognizes that U.S. Bank's security interest extended to "substantially all of the Debtors' assets, except for Unliened Assets" and that such an interest extends to all "right, title, and interest" to the Debtors' assets.  (*See* Dkt. 64-1.)  It is inescapable that EDMC II's assets—including the accounts from which the payments flowed—were pledged to U.S. Bank.

> c.     Transfers do not give rise to claims of a preference or a fraudulent transfer when the interest in the property transferred is of no value to the estate.

Given the Trustee's Security Pledge Stipulation and recognition of the lenders' security interest in the accounts belonging to EDMC II, the FAC must plead how such funds could constitute property of the Debtors' estate which the Trustee could recover for the benefit of unsecured creditors.  *Cage v. Wyo-Ben, Inc.*, (*In re Ramba Inc.*), 437 F.3d 457, 460 (5th Cir. 2006) ("A trustee cannot avoid transfers of property unless the property would have been in the estate and therefore available to the debtor's general creditors.")

12

Under Section 547, preference actions cannot seek the return of property pledged to another: "Fully encumbered property is not property in a bankruptcy estate. Therefore, there can be no preference when a debtor transfers property in which the debtor has no equitable interest." *Id.* Where, as here, an undersecured creditor permits the transfer of property that would otherwise secure an indebtedness, there is no preference "because the estate is not depleted." *Rafool v. Goldfarb Corp. (In re Fleming Packaging Corp.)*, 2005 Bankr. LEXIS 1740, at * 42 (Bankr. C.D. Ill. August 26, 2005) (rejecting the argument that the transfer of a fully-encumbered asset could constitute a preference.).

Constructive fraudulent conveyance actions, whether asserted under Section 548 or DUFTA, have the same requirement: the plaintiff must plead and prove that the asset had value to the estate and not only a third party. *See, e.g.*, *In re All Phase Roofing & Constr., LLC*, 2020 Bankr. LEXIS 178, at *30 ("Plaintiff presented absolutely no evidence at trial to suggest that [defendant's] assets were less than fully encumbered and therefore, had value to the estate."). Importantly, this proposition is equally applicable where a creditor other than the secured creditor receives the transfer. As the court in *In re All Phase* explained: "[B]ecause the assets Plaintiff alleges were fraudulently transferred have no value in excess of the liens of the secured creditors, [defendant's] unsecured creditors are no worse off after the transfers than they were before the transfers." *Id.* at *31 & n.27 (noting that fully encumbered property does not meet the definition of "asset" under the Uniform Fraudulent Transfer Act); *see also McCloskey v. Wells Fargo Bank Wisc. (In re Art Unlimited, LLC)*, 2007 U.S Dist. LEXIS 66479, at * 32 (E.D. Wis. Sept. 6, 2007) (holding that where assets would not have been available to unsecured creditors in a liquidation, they are not part of the estate subject to reclamation under a fraudulent transfer claim); *Tow v. Pajooh (In re CRCGP LLC)*, 2008 Bankr. LEXIS 4236, at *48  (Bankr. S.D. Tex. Aug. 28, 2008)

("[A]s to assets which are fully encumbered by liens, the Court finds such asset cannot be fraudulently transferred.").

For similar reasons, recovery under Section 550 is unavailable.  *See, e.g.*, *In re Digital Bridge Holdings, Inc.*, 2015 Bankr. LEXIS 3314, at *66-67 (reasoning, under Section 550, that there "clearly was no equity, or value," in the assets when they were transferred because they were encumbered by liens); *Seaver v. New Buffalo Auto Sales (In re Hecker)*, 496 B.R. 541, 552 (B.A.P. 8th Cir. 2013) (limiting recovery under Section 550 to the value of debtor's encumbered interest in the transferred property at the time of the transfer).[8]

Here, the FAC pleads the transfer of funds to Defendants from accounts that the Trustee has stipulated were subject to secured liens of the lenders.  As such, the funds did not constitute property subject to the Trustee's avoidance power or his ability to recoup such transfers under either state or federal theories of constructive fraud.  Counts VII through X should be dismissed with prejudice.[9]

---

[8]    Recovery under Section 550 is also impossible because relief under Sections 547 and 548 is unavailable.  *See, e.g.*, *In re Liquid Holdings Grp., Inc.*, 2018 Bankr. LEXIS 3589, at *8 (dismissing Section 550 claim because Sections 547 and 548 claims were dismissed).

[9]    In their initial Motion to Dismiss, Defendants made reference to this same pleading deficiency, (*see* Adv. Dkt. 41, p. 20,) but because the Trustee had failed to allege the identity of the transferor, Defendants could not analyze the potential that the cited accounts were subject to the acknowledged security interest.  The Trustee argued in response that his acknowledgement of the liens specifically exempted any claims that he might bring for avoidance. (*See* Adv. Dkt. 58, p. 61) (citing the Security Pledge Stipulation which exempted certain causes of action).  But this misses the point of Defendants' position.  Defendants do not claim that the secured lenders have a lien on the lawsuits or any recovery therefrom.  Rather, Defendants contend that the subject of the avoidance actions—funds in a fully-liened account—do not constitute an interest in property of the estate or estate assets under the fraudulent transfer or preference statutes.  Nothing in the Security Pledge Stipulation contends to the contrary or derogates from the conclusion that the funds at issue were subject to rights, interests, and Collateral control of the under-secured lender group.  Now that the Trustee has identified the Debtor that allegedly transferred the funds, it is possible to connect the security interest pledge, the status of the debtor, and the timing of the

**B.      The Complaint Does Not Sufficiently Allege A Preference Claim Under Section 547(b) (Count VIII).**

Section 547(b) (as amended in 2019) provides, in relevant part:

> "[T]he trustee may, based on reasonable ***due diligence*** in the circumstances of the case and taking into account a party's known or reasonably known affirmative defenses . . .  avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an ***antecedent debt*** owed by the debtor before such transfer was made;
> (3) made while the debtor was ***insolvent*** . . .
>
> (4)(B) between ninety days and one year before the date of the filing of the petition, ***if such creditor at the time of such transfer was an insider*** . . . .

11 U.S.C. § 547(b) (emphases added).  The FAC fails to properly plead nearly every one of these elements.

> *1.      The FAC's perfunctory allegation of due diligence does not comply with the due diligence requirement.*

In their initial Motion to Dismiss, Messrs. Kramer and Novad argued that the Complaint was infirm because it failed to satisfy the requirement found in the affirmative element portion of Section 547 that the Trustee allege that his claim is "based upon reasonable due diligence in the circumstances of the case" and that the Trustee has "tak[en] into account a party's known or reasonably knowable affirmative defenses" under subsection (c) of Section 547.  (Adv. Dkt. 41, p. 10, n. 12.)  Although this Court did not deem it necessary to resolve the import of this section due to its decision to dismiss the Section 547 claim on other grounds, (Adv. Dkt. 87, p. 43-4), the Court

---

payment to reach the conclusion that at the time of the payments alleged in the FAC, the EDMC II estate had no equitable interest in the fully-liened accounts that provided the funds.

concluded that "the complaint also fails to allege that the trustee conducted 'reasonable due diligence.'" (*Id.*)

In the FAC, the Trustee makes a perfunctory attempt to remedy this deficiency by alleging, without supporting factual allegations or detail of the efforts undertaken, that:

> The Trustee and his professionals have conducted reasonable due diligence into potential affirmative defenses and have concluded that those defenses are without merit given the nature of and circumstances surrounding the Excessive Payments to Defendants, including, but not limited to, the fact that they were running an essentially illegal business and made the Excessive Payment to themselves as the Debtors were struggling to operate and preparing for bankruptcy.

(FAC ¶ 199.)  This remains insufficient.

As this Court noted, the due diligence requirement essentially embodies two elements affirmatively representing that the Trustee has facts to support the elements of his claim given the facts and circumstances surrounding the matter, akin to the pleading requirements under Rule 8 and Rule 11, plus the added obligation, which most federal plaintiffs do not bear, "to assess the availability of an affirmative defense before filing suit."  (Adv. Dkt. 87, p. 44.)  In so holding, this Court joined a growing number of courts that have been called upon to evaluate the pleading burden imposed by the due diligence requirement.  *See, e.g., Insys Liquidation Trust v. Urquhart (In re Insys Therapeutics, Inc.)*, 2021 Bankr. LEXIS 2965, at *9 (Bankr. Del. Oct. 28, 2021).[10]  Although courts are not uniform in reaching a conclusion regarding the extent of this requirement, it cannot be disputed that the due diligence obligation exists in the portion of Section 547 that lays

---

[10]    In *Insys*, this Court noted the due diligence requirement and, without deciding whether an affirmative pleading burden existed, held that if such a burden was required, it was met by the trustee's specific allegation that trustee had contacted defendants' counsel, requested a return of the payments, inquired from counsel as to potential defenses that the defendants might raise, and evaluated those defenses under the facts of the case.  *In re Insys Therapeutics, Inc.*, 2021 Bankr. LEXIS 2965, at *9 n.9.  These types of allegations are simply missing from the Trustee's FAC.

out the Trustee's affirmative pleading burden.  *See* 11 U.S.C. § 547(b); *see also Arete Creditors Litig. Trust v. TriCounty Fam. Med. Care Grp., LLC (In re Arete Healthcare LLC)*, 2022 Bankr. LEXIS 322, at *30 (Bankr. W.D. Tex. Feb. 7, 2022) ("If due diligence is an element, merely paraphrasing the element will not satisfy Rule 8.")  And, as other courts have recently noted, the due diligence requirement includes three distinct inquiries the trustee must undertake prior to initiating suit: "(1) reasonable due diligence under 'the circumstances of the case'; (2) consideration as to whether a prima facie case for a preference action may be stated; and (3) review of the known or 'reasonably knowable' affirmative defenses that the prospective defendant may interpose." *Husted v. Taggart (In re ECS Ref. Inc.)*, 625 B.R. 425, 454  (Bankr. E.D. Cal. 2020) (quoting 11 U.S.C. § 547(b)).  While the contours of the due diligence threshold may not be well-defined, for it to mean anything, it must mandate something more than a boilerplate representation that the trustee performed due diligence and concluded that he has a case—otherwise whatever the Congressional intent may have been in inserting the requirement could be frustrated by a "cut and paste" of standard due diligence language.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (reasoning that "[w]hen Congress amends legislation, courts must 'presume it intends [the change] to have real and substantial effect'") (citation omitted).  This reasoning comports with this Court's recognition in multiple other contexts that "the Trustee must do more than simply recite statutory elements [of a claim]" to pass muster under Rule 8(a).  *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 856 (Bankr. D. Del. 2018).

Here, the "facts and circumstances" of this case include payments made pursuant to a series of employment agreements that the Trustee does not contest, a failing business in an industry where resort to bankruptcy before a disposition of educational assets would have resulted in the loss of

tens of millions of dollars of recoverable funds, and continued employment service by Defendants during trying times.  (Adv. Dkt. 41, p. 14-25.)  Indeed, "[s]alary payments are often subject to the affirmative defenses enumerated in section 547(c) of the Code, such as transfers made in the ordinary course of business."  *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 118 n.22 (Bankr. S.D.N.Y. 2011).  In addition, the FAC nowhere discusses how the Trustee has evaluated the presence of an acknowledged security agreement that fully encumbers the accounts now identified as providing the source of the payment or whether that renders the funds inaccessible by the bankruptcy estate.  *See supra*, Section A.  At a bare minimum, the Trustee should have to allege the nature of his inquiry into these "facts and circumstances."

Turning to the evaluation of the potential statutory defenses, in the Trustee's single paragraph related to the diligence which he allegedly conducted, he asserts that the statutory defenses are "without merit" because, allegedly, the defendants were engaged in an "essentially illegal business."  (FAC ¶ 199.)[11]  Putting aside whether the FAC adequately alleges that Defendants continued conduct through the time of the Compensation Payments—a point addressed elsewhere—there is nothing in the nine statutory defenses that depends on the characteristics of the business enterprise to make the defense available.  *See* 11 U.S.C. 547(c).  The Trustee seems to suggest that an otherwise valid defense based upon, for example, contemporaneous exchange, new value conferred, or a compensation payment made in the ordinary course of business, could

---

[11]      Despite this allegation, the FAC never alleges that EDMC, any of the other Debtors, or any of the Defendants were subject to criminal charges or criminal or civil fines for this allegedly problematic business.  In fact, as discussed in the briefing on the first round of motions to dismiss, the United States District Court for the Western District of Pennsylvania ruled that the compensation plan, at the heart of the FAC's allegations, was, as a matter of law, proper and non-actionable.  *United States v. Education Mgmt. Corp.*, 871 F.Supp.2d 433, 448 (W.D. Pa. 2012) (holding that the EDMC compensation plan, "as written," did not state a cognizable claim for recovery).

be defeated so long as the Trustee pleaded and proved the valid defense occurred in the context of an "essentially illegal enterprise." (*See* FAC ¶ 199.)  There is nothing in Section 547 that would so provide and no authority would support the rejection of otherwise meritorious defenses if the Trustee concludes that the defendants are potentially running a questionable business.

In addition, the Trustee layers a second element on his basis for rejection: timing.  He argues that the statutory defenses lack merit because the payments were made as "Debtors were struggling to operate and preparing for bankruptcy." (*Id.*)  Again, there is nothing in Section 547 that would render otherwise meritorious defenses unavailable because the payments occurred while a business was in financial trouble.  In fact, given that preference actions can only be brought for a limited time pre-petition (ninety days or one year depending on the status of the defendant), it is hardly surprising that payments were made while the company was "struggling" or contemplating bankruptcy.  Indeed, this Court has recognized that, in hard times, companies must reward hard-working employees. *See Jalbert v. Flanagan (In re F-Squared Inv. Mgmt., LLC)*, 600 B.R. 294, 309 (Bankr. D. Del. 2019) ("Rewarding your best employees(s) with a discretionary bonus . . . undoubtedly helps to build the loyalty of the employee and increase morale, generally, if nothing else.")  The affirmative defenses that the Trustee was obligated to evaluate under the "facts and circumstances" of this case relate to the statutory requirements for the affirmative defenses—not the timing of payment.

In short, the boilerplate employed by the Trustee discloses nothing about his actual due diligence in bringing the FAC.  The two assertions that he does allege in leading to his preliminary rejection of statutory defenses have nothing to do with whether the defenses are actually present or not.  As such, despite reciting the talismanic words that he has conducted due diligence, he has not, and that element of his pleading burden has not been established.

2.      *The FAC does not adequately plead an antecedent debt relating to the Compensation Payments.*

A complaint must include "an identification of the nature and amount of each antecedent debt." *THQ Inc. v. Starcom Worldwide, Inc.* (*In re THQ Inc.*), 2016 Bankr. LEXIS 1774, at *10-12 (Bankr. D. Del. Apr. 18, 2016) (citation omitted).   The FAC merely alleges that the Compensation Payments "were made on account of antecedent debts owed by the Debtors to the recipients of those payments before the transfers were made as set forth in various employee contracts."   (FAC ¶ 196.)   Elsewhere, with respect to Messrs. Kramer and Novad, the FAC opaquely refers to the Compensation Payments as "bonus payments," but does not allege the nature of the compensation or bonus structure, the work performed to trigger such payments, when the payment was due, and whether the Debtors received value in respect of the work performed.   (FAC ¶¶ 139-40.)   The FAC's paltry references to "employee contracts" and "bonus payments"—free from any further detail—are generic and do not raise a reasonable inference of a sufficiently-defined antecedent debt.   And while the FAC alleges that EDMC II is the *transferor*, it does not allege that it specifically—as opposed to any one of other 55 debtors—*owed* the antecedent debt. (FAC ¶ 196.); *see also In re Tri-Valley Corp.*, 2015 Bankr. LEXIS 29, at *12 ("When there are multiple debtors in a case, the Complaint must state which debtor owed the antecedent debt *and that the same debtor made the preferential transfer*.") (emphasis added).

This Court has dismissed preference claims when faced with similar generic allegations. For example, in an attempt to plead an antecedent debt in *Easy Star Records*, the *same* Trustee alleged—much like he does in the FAC—that the "[d]efendant was a vendor or creditor of [d]ebtors, and the [t]ransfers were made on account of [d]ebtor's purchase of products or services from [d]efendant." *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172, 177 (Bankr. D. Del. 2020).   The Court dismissed the preference claim, reasoning that "[n]either of

these statements identif[ied] an antecedent debt." *Id.*  The Court has also relied on Rule 8's standards to conclude that an antecedent debt was not properly pleaded in other cases.  *Giuliano v. Gibson Dunn & Crutcher LLP (In re Liquid Holdings Grp., Inc.)*, 2018 Bankr. LEXIS 3589, at *8 (Bankr. D. Del. Nov. 14, 2018) (reasoning that complaint failed to allege nature of antecedent debt where it "merely state[d]" that "Defendant was a creditor of the Debtors . . . by virtue of supplying goods and/or services for which Debtors were obligated to pay"); *THQ*, 2016 Bankr. LEXIS 1774, at *10-12 (reasoning that nature of antecedent debt was not well-pleaded where complaint alleged that defendants "may have entered into one or more agreements").  Also problematic, the FAC assumes that any "bonus" payment must have been paid on account of an antecedent debt, but as this Court has recognized, critical to the inquiry is *when* any bonus payment became due.  *See, e.g.*, *Official Comm. of Unsecured Creditors of Wash. Mut., Inc. v. Corcoran (In re Wash. Mut., Inc.)*, 2013 Bankr. LEXIS 2885, at *14 (Bankr. D. Del. July 16, 2013) (reasoning that "because the severance was paid on the same date that [the] obligation arose, the Court finds that the severance payment was not made on account of an antecedent debt.").

> 3.    *The FAC does not properly allege that the Defendants were insiders of the Debtors making the Compensation Payments.*

The FAC's allegations that at various times Messrs. Kramer and Novad were "insiders" of "EDMC and the [four] Delaware Holding Companies" are insufficient to plead their insider status. (FAC ¶¶ 19- 20.)  With respect to Mr. Novad, the Complaint does not include any allegation that he was an insider of EDMC II *at the time of the* Compensation Payments made to him, which is fatal to the Trustee's claim.  (FAC ¶ 20); *see Wilson v. Henrichs Ins. Servs. (In re Haag)*, 2018 Bankr. LEXIS 3959, at *7 (Bankr. C.D. Ill. Dec. 17, 2018) (dismissing avoidance claim because trustee failed to plead a plausible claim that defendant was an insider to the debtors *on the date of*

*the transfer*).  Indeed, the FAC lacks any detail as to what Mr. Novad did after August 2015.  (*See* FAC ¶ 20.)

In any event, to the extent that either Mr. Novad or Mr. Kramer is an "insider," it is unclear whether the Trustee views them as "statutory insiders" (which includes directors and officers) or as "non-statutory insiders" (which exercise "dominion and control").  *See* 11 U.S.C. §§ 101(31)(B)-(C); *In re BMT-NW Acquisition, LLC*, 582 B.R. at 863 (finding that insider status is plausibly pleaded based on dominion and control where a particular defendant was the sole member of the debtor, shared the same managers and directors as the debtor, and was a lender to the debtor under a credit agreement); *Capmark Fin. Group Inc. v. Goldman Sachs Credit LP*, 491 B.R. 335, 351 (S.D.N.Y. 2013) (concluding non-statutory insider status to be based on: "(1) the closeness of the relationship between the debtor and the transferee, and (2) whether the transactions between the transferee and the debtor were conducted at arm's length") (citation omitted).  The FAC is bereft of any allegations as to whether Messrs. Novad and Kramer—who allegedly engaged in certain wrongdoing—had a "close" relationship with EDMC II and whether the transactions (*i.e.*, the Compensation Payments) were made at "arm's length."  *See Capmark Fin. Group In.*, 491 B.R. at 351.  Vague allegations that Messrs. Novad and Kramer engaged in wrongdoing that harmed Debtors do not compel the conclusion that each had a "close" relationship with EDMC II.

> 4.     *The FAC does not plead EDMC II's insolvency at time of each of the Compensation Payments.*

"Insolven[cy]" is defined as the "sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of [certain conditions]."  11 U.S.C. § 101(32).  "Insolvency is determined at the time of conveyance."  *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, 2019 Bankr. LEXIS 2817, at *43 (Bankr. D. Del. Sept. 6, 2019) (granting motion to dismiss where the "[c]omplaints do not contain any specific allegations regarding Debtors' assets

or liabilities *at the time of each transfer*") (emphasis added). Here, the FAC alleges that EDMC II made employment-related bonus payments to Mr. Kramer on January 15, 2016, on August 4, 2017, and on October 20, 2017. (*See* FAC ¶ 139; Ex. I.)  The FAC further alleges that EDMC II made employment-related bonus payments to Mr. Novad on August 4, 2017, and October 20, 2017. (*See id.* at ¶ 140, Ex. J.)

In its attempts to plead insolvency, the FAC alleges the assets and liabilities of the Debtors—collectively—on June 30, 2016, June 30, 2017, and on the Petition Date. (*Id.* at ¶ 143.) The FAC further alleges that "[the Debtors] failed to pay debts when due, were inadequately capitalized and had liabilities that exceeded the fair value of their assets." (*Id.*)  But the FAC is completely silent on the insolvency of the *specific* Debtor, EDMC II, making the Compensation Payments *on each of the dates of the Compensation Payments*.  The FAC's failure to plead the insolvency of the specific Debtor—*i.e.*, of EDMC II—dooms the preference claim.

In *PostRock*, the complaint alleged the insolvency of the six debtors, but without specifying the insolvency of the debtor that made the purportedly avoidable transfer.  *Moriarty v. Lynch* (*In re PostRock Energy Corp.*), 2018 Bankr. LEXIS 2726, at *14 (Bankr. W.D. Okla. Sept. 6, 2018). The court dismissed the claim for this reason and others.  *Id.*  The court reasoned: "identifying the specific . . . Debtor making the [t]ransfers is the critical first step because it is that entity's solvency that is at issue." *Id.* at *13.  The failure to identify the insolvency of EDMC II  is particularly problematic where there are *fifty* more debtors than there were in *PostRock*.  The Trustee's identification of EDMC II as the specific transferor means little if the Trustee is unable to allege that the specific transferor—as opposed to all 56 Debtors—was insolvent. (*See, e.g.,* FAC at ¶¶ 143, 197).  Additionally, this Court has recognized pleadings alleging insolvency on an enterprise or collective basis only when substantive consolidation is present.  *Miller v. Fallas (In re J&M*

*Sales, Inc.)*, 2021 Bankr. LEXIS 2268, at \*88 (Bankr. D. Del. Aug. 20, 2021). This Court, however, did not substantively consolidate these proceedings. *See* No. 18-11535 (LSS), Dkt. 27, ¶ 5 (stating "[n]othing contained in the Motion or this Order shall be deemed or construed as directing or otherwise effectuating a substantive consolidation of the above-captioned Chapter 7 cases").

Accordingly, this Court should dismiss Count VIII.

**C.    The FAC Does Not Sufficiently Plead Constructive-Fraud Claims Under Section 548(a)(1)(B) (Count VII).**

The FAC fails to sufficiently plead a constructive-fraud claim under 11 U.S.C. § 548(a)(1)(B). To establish a claim under Section 548(a)(1)(B), a plaintiff must prove: that (i) a transfer of an interest of the debtor in property was made, (ii) where the applicable debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation;" and (iii) the applicable debtor, in relevant part:

> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital . . .

11 U.S.C. § 548(a)(1)(B).

In its attempt to allege "reasonably equivalent value," the FAC alleges that the Compensation Payments were "merely excessive payments to directors and/or officers of a dying company." (FAC ¶ 190.) The FAC does not examine the value of the employment activities of Mr. Kramer, Mr. Novad, and others, nor does it discuss the efforts they made to successfully sell the company's assets, recover monies securing regulatory obligations, and transfer the Debtors' students to other institutions to further their education. *See Jalbert*, 600 B.R. at 309 ("It seems

self-evident that the awarding of a bonus in [difficult] circumstances may confer value to the employer for purposes of § 548.")

This Court has dismissed similarly pleaded constructive-fraud claims in several other cases. Take, for instance, this Court's decision in *Gothner*. *JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*, 558 B.R. 116, 130 (Bankr. D. Del. 2016). There, the trustee alleged a constructive-fraud claim against a company CEO, seeking to avoid certain compensation payments. *Id.* This Court dismissed the claim. *Id.* The Court reasoned that the complaint did "not allege that [the CEO] received any compensation that he was not owed under the [e]mployment [a]greement." *Id.* It further reasoned that conclusory allegations that certain payments are "excessive"—*i.e.*, the *exact* word used in paragraph 190 of the FAC—are not "sufficient to overcome a motion to dismiss." *Id.* Relevant here, that the Company may have ultimately failed does not render the Compensation Payments avoidable, and at most, the Trustee has alleged "excessive compensation by hindsight." *Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 209 (Bankr. S.D.N.Y. 2020); *see, also, e.g.*, *Miller v. Welke (In re United Tax Grp., LLC)*, 2016 Bankr. LEXIS 4322, at *7-10 (Bankr. D. Del. Dec. 13, 2016) (dismissing constructive-fraud claim where "there [we]re no allegations regarding what [d]ebtor received in exchange for the transfers . . ."); *In re Liquid Holdings Grp., Inc.*, 2018 Bankr. LEXIS 3589, at *8 (dismissing constructive-fraud claim because it "mechanically recite[d] the elements of the claim"); *THQ*, 2016 Bankr. LEXIS 1774, at *10-12 (dismissing constructive-fraud claim because it "merely paraphrases the language of section 548(a)(1)(B) without providing any supporting facts").[12]

---

[12]     Under Section 548(a) specifically, only transfers made on or within two years before the Petition Date are avoidable—i.e., any transfer made after June 29, 2016. Accordingly, the January 15, 2016 $70,000 payment to Mr. Kramer falls well outside this two-year period and is not subject to avoidance.

Accordingly, this Court should dismiss Count VII.

**D.    The FAC Fails To Allege The Necessary Elements To State A Claim Under DUFTA Section 1304(a)(2) Or Section 1305 (Count IX).**

Under Section 1304(a)(2), a plaintiff may bring a fraudulent transfer claim if he pleads the transfer was made "[w]ithout receiving a ***reasonably equivalent value*** in exchange for the transfer or obligation," and the debtor

> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

6 Del. C. § 1304(a)(2) (emphasis added).  And this statute "mirrors closely Section 1305 which permits a fraudulent transfer claim to be pleaded if the plaintiff shows 'the transfer was made or the obligation was incurred . . . without receiving ***reasonably equivalent value*** in exchange for the transfer or obligation and the debtor was ***insolvent*** at the time or the debtor became insolvent as a result of the transfer or obligation.'" *Guiliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, 2018 Bankr. LEXIS 1665, at *49 (Bankr. D. Del. June 6, 2018) (citing 6 Del. C. 1305(a) (emphasis added)).  "Essential to both Section 1304(a)(2) and Section 1305(b) is the allegation of insolvency at the time of the transfer (or the rendering of insolvency due to the transfer)." *Id.* at *49. "DUFTA is 'virtually a carbon copy of the fraudulent transfer law under the Bankruptcy Code' and 'the result under Delaware law should be the same outcome under the Bankruptcy Code'." *Miller v. ANConnect, LLC* (*In re Our Alchemy, LLC*), 2019 Bankr. LEXIS 2906, at *39 (Bankr. D. Del. Sept. 16, 2019) (citing *Crystallex Int'l Corp. v Petroleos de Venez.*, S.A., 879 F.3d 79, 85-86 (3d Cir. 2018)).

The DUFTA claim fails for the same reasons the constructive-fraud claim fails.  *See supra*, Section C.  With respect to DUFTA, "there must be some sort of financial data or analysis provided so that the court can infer the company's liabilities exceeded its assets at the time the transfers in question took place."  *In re Liquid Holdings Grp., Inc.*, 2018 Bankr. LEXIS 1665, at *49 (analyzing DUFTA).  Without any allegation that EDMC II's "liabilities exceeded its assets at the time" of the Compensation Payments, no basis exists to let the DUFTA claim proceed to discovery. *See id.*  Because insolvency has not been pleaded, this Court should dismiss the DUFTA claim.

Additionally, Delaware courts have reasoned that whether "reasonably equivalent value" has been pleaded depends on three factors: "(1) whether the transaction was at arm's length, (2) whether the transferee acted in good faith, and (3) the degree of difference between the fair market value of the asset transferred and the price paid."  *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2020 Del. Ch. LEXIS 311, at *10-11 (Del. Ch. Oct. 8, 2020).  The FAC is notably silent on any of these factors, and this Court should dismiss the claim on this basis alone.[13]

Accordingly, this Court should dismiss Count IX.

**E.    The Trustee's Breach-Of-Fiduciary-Duty Claim Against Defendants Kramer And Novad Fails (Count I).**

*1.    The Trustee's breach-of-fiduciary-duty claim fails to plead with specificity the conduct of Messrs. Kramer and Novad.*

The breach-of-fiduciary-duty claim fails because it does not specify the alleged wrongful conduct of either Messrs. Kramer or Novad.  *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012); *In re Liquid Holdings Grp.*, 2018 Bankr. LEXIS

---

[13]    The FAC does not expressly appear to rely on section 1305(b) of the DUFTA.  That section relies on the existence of an "antecedent debt."  To the extent that it does, any claim under Section 1305(b) fails for the same reasons that the Section 547 claim fails.

1665, at *33.   Plaintiffs "must not lump defendants together without supplying specific facts as to each defendant's wrongdoing." *Beskrone v. OpenGate Capital Grp.* (*In re PennySaver USA Publ'g, LLC*), 587 B.R. 445, 465-66 (Bankr. D. Del. 2018) (quotation omitted) (discussing breach-of-fiduciary-duty claim).   This is because "liability is personal . . . [and] [e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Stanziale v. Heico Holdings, Inc. (In re Conex Holdings, LLC)*, 514 B.R. 405, 414 (Bankr. D. Del. 2014) (applying Texas law governing breach of fiduciary duty) (citation omitted).   Accordingly, "[a] complaint based on a theory of collective responsibility *must* be dismissed."   *Id.* (emphasis added); *see generally Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, 2021 U.S. Dist. LEXIS 183032, at *7 (D. Del. Sept. 24, 2021) (agreeing, as a general matter, that "allegations lumping multiple defendants together without providing allegations of individual conduct are frequently insufficient to satisfy the notice pleading standard"); *Green v. Paz*, 2021 U.S. Dist. LEXIS 68075, at *43 (D. Del. Mar. 31, 2021) (dismissing breach-of-fiduciary-duty claim because plaintiffs engaged in "group pleading" and "have not alleged specific facts about any [i]ndividual [d]efendant").

The Trustee fails to plead the fiduciary duty claims as to each Defendant.   Instead, the FAC relies on "group pleading," requiring this Court infer, for example, that a director of human resources and a chairman of the board had equal duty, power, authority, and responsibility.   That simply is not plausible, especially where the FAC essentially alleges that the all defendants engaged in the *exact* same wrongful conduct.   (*See* FAC ¶¶ 12-20.)   Messrs. Kramer and Novad are entitled to know how they participated in this alleged conduct, particularly given their respective positions.

2.    *The Trustee does not plead facts that sufficiently demonstrate that Defendants Kramer and Novad owed or breached fiduciary duties.*

The Complaint does not adequately allege each of the required elements of a claim for breach of fiduciary duty.  *Assembly Tech., Inc. v. Samsung Techwin, Co.*, 695 F. Supp. 2d 168, 180-181 (E.D. Pa. 2010); *Grimm v. Discover Fin. Servs.*, 2008 U.S. Dist. LEXIS 89709, at *30 (W.D. Pa. Nov. 4, 2008) (noting there is "no appreciable difference between the laws of Pennsylvania and Delaware with respect to Plaintiffs' claims for breach of fiduciary duty").  First, the Complaint does not adequately allege that Messrs. Kramer or Novad plausibly could have breached fiduciary duties as non-directors because there are no allegations that either of them "misled the board, failed to perform any assigned duties . . . or otherwise acted improperly [in convincing the board to take a particular action]."  *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders n. Am., Inc.)*, 405 B.R. 527, 541 (Bankr. D. Del. 2009).  This case is not comparable to those where a single, controlling shareholder owning all shares, such that it may be proper to impose "fiduciary duties on those who effectively control a corporation."  *See Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 183 (Del. Ch. 2014); *see* Adv. Dkt. 87, p. 15 (relying on *Quadrant*).  The Trustee has failed to plead facts that would demonstrate that Defendants specifically exercised the type of control necessary to impose fiduciary duties on them despite their non-director/officer status.

The mere receipt of the Compensation Payments does not amount to a breach of fiduciary duty.  As this Court previously recognized, "allegations that the Defendants helped facilitate allegedly fraudulent transfers and benefited from one such transfer alone are insufficient to show that the Defendants exercised actual control over any of the Debtors' LLCs."  *In re PennySaver USA Publ'g, LLC*, 587 B.R. at 465.  Equally important, Delaware courts are particularly "hesitant to scrutinize executive compensation decisions, recognizing that 'it is the essence of business

judgment for a board to determine if a particular individual warrants large amounts of money.'" *Friedman v. Dolan*, 2015 Del. Ch. LEXIS 178, at *16-17 (Del. Ch. Ct. Jun. 30, 2015); *see also Raul v. Rynd*, 929 F. Supp. 2d 333, 346-8 (D. Del. 2013) (analyzing breach-of-fiduciary-duty claims based on executive compensation plan and dismissing all claims against defendant directors and executives).  Because this Court has already dismissed the Trustee's corporate-waste claim, it makes little sense to let the breach-of-fiduciary-duty claim to survive based on the same allegation.

This Court in *PennySaver* dismissed a breach-of-fiduciary-duty claim with similar inadequacies.  *See In re PennySaver*, 587 B.R. at 466.  There, the court dismissed the trustee's breach-of-fiduciary-duty claim because the Trustee engaged in group pleading, shown by "not adequately distinguish[ing] the Defendants from one another[,]" and failed to show that the defendants exercised actual control over any of the Debtors, who made the alleged fraudulent transfers, among other reasons.  *Id.*  Similarly, here, the Trustee has failed to plead with specificity that the conduct of Messrs. Kramer and Novad amounted to a breach of fiduciary duty and failed to plead facts demonstrating that Messrs. Kramer and Novad specifically exercised the control sufficient to confer fiduciary duties upon them.[14]

Accordingly, this Court should dismiss the breach-of-fiduciary-duty claim as to non-directors Messrs. Kramer and Novad (Count I).

## V.  CONCLUSION

For the reasons explained above, Defendants Kramer and Novad respectfully request that this Court dismiss each of the claims alleged against them.

---

[14]   Although the Trustee expressly notes in footnote 5 of his FAC that Defendants "need *not* plead" to the civil-conspiracy claim, Messrs. Kramer and Novad expressly refer to Messrs. West and Beekhuizen's, explaining why the civil-conspiracy claim fails (WB Brief, Section III).

Respectfully submitted,

Dated: April 1, 2022            YOUNG CONAWAY STARGATT & TAYLOR, LLP

*s/ Sean M. Beach*
Sean M. Beach (DE Bar No. 4070)
Kevin A. Guerke (DE Bar No. 4096)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
E-mail: sbeach@ycst.com
             kguerke@ycst.com


PORTER WRIGHT MORRIS & ARTHUR LLP
Thomas S. Jones (Pennsylvania ID #71636) (*pro hac vice*)
6 PPG Place
Third Floor
Pittsburgh, PA 15222
Telephone: (412) 235-4500
Email: tjones@porterwright.com

Syed Ahmadul Huda (Ohio 0098633) (*pro hac vice*)
41 South High Street, 29th Floor
Columbus, OH 43215
Telephone: (614) 227-2000
Facsimile: (614) 227-2100
Emails: ahuda@porterwright.com


*Attorneys for Defendants John Devitt Kramer and Mark Novad*