## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 18-11535 (CTG) |
| THE ART INSTITUTE OF PHILADELPHIA LLC, *et al.*, | (Jointly Administered) |
| Debtors. | |
| GEORGE L. MILLER, Chapter 7 Trustee, | <u>JURY TRIAL DEMANDED</u> |
| Plaintiff, | Adv. Proc. No. 20-50627 (CTG) |
| v. | |
| TODD S. NELSON, JOHN R. McKERNAN, SAMUEL C. COWLEY, EDWARD WEST, MARK A. McEACHEN, FRANK JALUFKA, J. DEVITT KRAMER, MARK NOVAD, JOHN DANIELSON, AND MICK BEEKHUIZEN, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS
## <u>WEST AND BEEKHUIZEN TO DISMISS THE FIRST AMENDED COMPLAINT</u>

OF COUNSEL:
Morgan, Lewis & Bockius LLP
Michael L. Kichline, *pro hac vice*
Robert H. O'Leary, *pro hac vice*
Jeffrey J. Masters, *pro hac vice application pending*

1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000

April 1, 2022
Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.
Marcos A. Ramos (No. 4450)
Brett M. Haywood (No. 6166)
J. Zachary Noble (No. 6689)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700

*Counsel for Defendants Edward West and Mick Beekhuizen*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY OF THE ARGUMENTS ................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS ............................................. 6

BACKGROUND .................................................................................... 7

    A.    The Corporate Structure ............................................................. 7

    B.    The Alleged Scheme ................................................................. 9

    C.    The Alleged Injury ................................................................... 11

LEGAL STANDARD .............................................................................. 12

ARGUMENT ........................................................................................ 14

I.    THE FIDUCIARY DUTY CLAIMS AGAINST MESSRS. WEST AND BEEKHUIZEN MUST BE DISMISSED. ........................................................ 14

    A.    The Delaware Holding Companies are not alleged to have engaged in the illegal conduct upon which the entire Complaint is predicated. ......................... 14

    B.    Messrs. West and Beekhuizen are not alleged to have played a role in devising or implementing recruiting or compensation policies as officers or directors of the Delaware Holding Companies. ................................. 16

    C.    The Complaint fails to plead any specific act or omission by Messrs. West or Beekhuizen within the three-year limitations period. ............................ 18

    D.    Claims based on the conduct that allegedly caused the $200 million injury are time-barred. .............................................................. 20

    E.    The Delaware Holding Companies could not have been harmed. ..................... 24

II.    THE ADDITIONAL FIDUCIARY DUTY CLAIMS AGAINST MR. BEEKHUIZEN MUST BE DISMISSED. ........................................................ 25

    A.    The claim for failure to investigate and sue departed executives fails. ............... 25

    B.    The claim for authorizing or receiving payments fails. ................................ 26

III.    THE CIVIL CONSPIRACY CLAIM MUST BE DISMISSED ..................................... 27

IV.    THE TRUSTEE CANNOT RECOVER MR. BEEKHUIZEN'S SEVERANCE PAYMENT. ....................................................................................... 28

CONCLUSION ..................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alja-Iz v. U.S. Virgin Islands Dep't of Educ.*,
    626 F. App'x 44 (3d Cir. 2021) ...................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................13, 17, 19, 22

*Bank of Am., N.A. v. Knight*,
    725 F.3d 815 (7th Cir. 2013) ..............................................................13, 17

*Barnes v. Harris*,
    No. 2:12-CV-1010 TS, 2013 WL 1982182 (D. Utah May 13, 2013)......................19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................13, 17

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ....................................................................27

*In re Bridgeport Holdings, Inc.*,
    388 B.R. 548 (Bankr. D. Del. 2008) ........................................................21

*In re Centaur, LLC*,
    No. 10-10799 (KJC), 2013 WL 4479074 (Bankr. D. Del. Aug. 19, 2013) ............12

*In re Conex Holdings, LLC*,
    514 B.R. 405 (Bankr. D. Del. 2014) ....................................................13, 17, 22

*In re Crown-Simplimatic Inc.*,
    299 B.R. 319 (Bankr. D. Del. 2003) ........................................................27

*Cuker v. Mikalauskas*,
    692 A.2d 1042 (Pa. 1997)....................................................................26

*In re Draw Another Circle.*,
    602 B.R. 878 (Bankr. D. Del. 2019) ........................................................13

*In re Funches*,
    381 B.R. 471 (Bankr. E.D. Pa. 2008) ......................................................16

*Gen. Video Corp. v. Kertesz*,
    No. CIV.A. 1922-VCL, 2008 WL 5247120 (Del. Ch. Dec. 17, 2008)..................24

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Halpern Med. Servs., LLC v. Geary*,
   No. CIV.A. 6679-VCN, 2012 WL 691623 (Del. Ch. Feb. 17, 2012)......................................21

*In re HH Liquidation, LLC*,
   590 B.R. 211 (Bankr. D. Del. 2018) ......................................................................................19

*Kalmanovitz v. G. Heileman Brewing Co.*,
   595 F. Supp. 1385 (D. Del. 1984)....................................................................................27, 28

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
   453 B.R. 645 (N.D. Tex. 2011)..........................................................................................13, 17

*Lubin v. Skow*,
   382 F. App'x 866 (11th Cir. 2010) ...................................................................................14, 19

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D Del. 2018) ......................................................................................13

*Rypac Packaging Mach. Inc. v. Coakley*,
   No. CIV. A. 16069, 2000 WL 567895 (Del. Ch. May 1, 2000) .........................................5, 25

*U.S. ex rel. Sobek v. Educ. Mgmt., LLC*,
   2013 WL 2404082 (W.D. Pa. May 31, 2013)...................................................................10, 11

*In re Sols. Liquidation LLC*,
   608 B.R. 384 (Bankr. D. Del. 2019) ......................................................................................12

*In re: The Art Institute of Philadelphia LLC, et al.*,
   18-11535-CTG (Bankr. D. Del. 2018).......................................................................................8

*In re The Brown Sch.*,
   368 B.R. 394 (Bankr. D. Del. 2007) ......................................................................................28

*In re Walt Disney Co. Derivative Litig.*,
   907 A.2d 693 (Del. Ch. 2005)................................................................................................24

*Wright v. Apartment Inv. & Mgmt. Co.*,
   726 S.E.2d 779 (Ga. Ct. App. 2012)...............................................................................5, 7, 25

*Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*,
   No. CV 18-819-LPS, 2021 WL 1170374 (D. Del. Mar. 29, 2021) ....................................5, 24

## INTRODUCTION AND SUMMARY OF THE ARGUMENTS

The Trustee launched this litigation with a blunderbuss complaint lumping *ten* individual defendants together on claims for breach of fiduciary duty, fraud, and civil conspiracy on behalf of *fifty-six* Debtors across a vast corporate structure consisting of a parent company, four intermediate holding companies, and at least fifty operating companies.  The Trustee broadly alleged that "the Defendants" collectively caused "the Debtors" collectively to engage in "illegal business practices" commencing in 2006 and continuing through the bankruptcy filing in 2018 (the "Management Claims").

Despite having had years to investigate, the Trustee made no distinction in his complaint between the numerous Debtor entities and their roles in the corporate structure or the numerous individual Defendants and the different corporate capacities in which the Defendants were purportedly acting.  Nor did the Trustee allege any specific act or omission by any individual Defendant.  Instead, the Trustee alleged that "the [ten] Defendants" should be held liable to "the [fifty-six] Debtors" solely on the basis of conclusory assertions that by virtue of their positions they must have implemented, directed, or participated in illegal conduct over the course of a twelve-year period.  The Defendants were left to guess as to what specific duties they allegedly owed to which specific Debtors at what point in time and what specific acts or omissions form the basis of these purported claims against them.  In its sprawling and conclusory form, the original complaint obscured—rather than elucidated—the nature, scope, and contours of the Trustee's claims against each Defendant.

In its January 12, 2022 ruling on the Defendants' Motions to Dismiss, this Court brought much-needed clarity to this action by applying the statutes of limitations.  In doing so, the Court recognized that Education Management Corporation ("EDMC"), the ultimate parent, is a Pennsylvania corporation and the Delaware Holding Companies are all Delaware entities.  The

Court ruled that "fiduciary duty claims against those defendants who did not serve as fiduciaries within the applicable limitations period will be dismissed." D.I. 87 (the "Opinion" or "Op.") at 3. The Court rejected the statute of limitations defense "for the remaining defendants who had fiduciary duties to Delaware entities within three years before the petition date [*i.e.*, between June 29, 2015 and June 29, 2018] or to Pennsylvania entities within two years before the petition date [*i.e.*, between June 29, 2016 and June 29, 2018]." *Id.* With this ruling, the Court substantially narrowed and clarified the scope of the Trustee's complaint by rejecting the continuing violation doctrine, paring the time period of potential liability from more than a decade to two or three years, and providing a framework to properly analyze the legal sufficiency of the Trustee's remaining claims.[1]

In light of the Court's ruling, Mr. McKernan has been dismissed because he ceased to have any role with any Debtor prior to June 29, 2015. All claims against Messrs. West and Beekhuizen in their EDMC capacities have been dismissed because they left their roles at EDMC before June 29, 2016. Thus, Messrs. West and Beekhuizen remain as defendants only in their capacities as alleged "officers or directors" of the Delaware Holding Companies. Indeed, the Trustee represents in his First Amended Complaint that he is proceeding against Messrs. West and Beekhuizen "only in connection with their positions as officers or directors of the Delaware Holding Companies." D.I. 91 (the "Complaint" or "Compl.") n.3. With the benefit of the Court's ruling and in light of the Trustee's express limitation of his claims, Messrs. West and

---

[1] On February 4, 2022, the Court entered an Order on the Motions to Dismiss, granting the Trustee "leave to file an amended complaint within 15 days of entry of this Order" and providing that "[t]hose Defendants remaining in the case shall have 45 days from the date of such filing to move or plead in response to the amended complaint." D.I. 90. On February 15, the Trustee filed his First Amended Complaint.

Beekhuizen now move the Court to dismiss the remaining claims against them for multiple reasons:

1.      The claims must be dismissed because the alleged illegal conduct upon which the entire Complaint is predicated—and which forms the basis of the breach of fiduciary duty claims—is not alleged to have involved any illegal acts by or on behalf of the Delaware Holding Companies.  The Complaint alleges that the conduct giving rise to the investigations and *qui tam* litigation that led to the $200 million settlement in November 2015 consisted of falsely certifying to the government that EDMC and its educational institutions were in compliance with federal law.  In a rare instance of specificity, the Complaint details that "EDMC signed and submitted PPAs to the Department of Education on behalf of all of EDMC's educational institutions."  Compl. ¶ 83.  The Complaint further alleges that EDMC, through its Chairman and CEO, signed all PPAs for EDMC's institutions and, after the original PPAs expired, "the President for each EDMC institution signed that institution's PPA Agreement."  Compl. ¶¶ 83–84.  Thus, the alleged scheme—as pled—is not alleged to have involved illegal acts or conduct by or on behalf of the Delaware Holding Companies.  Therefore, the Trustee cannot establish a breach of fiduciary duty by Messrs. West or Beekhuizen in their capacities as officers or directors of the Delaware Holding Companies.

2.      The claims must be dismissed because they fail to meet the pleading standard applied by the Court in its Opinion.  The Court ruled that "the Complaint alleges that each of the defendants played a sufficiently substantial role in devising or implementing corporate policy relating to its recruiting or compensation policies to owe a fiduciary duty to the corporation."  Op. at 16.  But the Complaint fails to allege—and cannot allege—that any of the challenged "recruiting or compensation policies" were policies of *the Delaware Holding Companies*.  To the

contrary, the allegations of the *qui tam* complaint—upon which the entire case is predicated and which is attached to the Complaint—make clear that the "recruiting and compensation policies" in question were approved and implemented by *EDMC*, not the Delaware Holding Companies. Nor are there any allegations that Messrs. West or Beekhuizen participated in formulating or implementing the challenged policies in their capacities as directors or officers of the Delaware Holding Companies.

3.      The claims must be dismissed for failure to allege any specific act or omission by Messrs. West or Beekhuizen in their capacities as alleged officers or directors of the Delaware Holding Companies during the applicable three-year statute of limitations period.  Per the Court's ruling, the Defendants may potentially be liable only for acts or omissions occurring during the limitations period.  Thus, the Trustee must allege specific acts or omissions between the June 29, 2015 start of the limitations period and August 28, 2015 (when Mr. West departed) and March 2016 (when Mr. Beekhuizen departed).  But the Complaint pleads no specific acts or omissions by Messrs. West or Beekhuizen in their capacities as officers or directors of the Delaware Holding Companies during the limitations period.

4.      The claims must be dismissed because the injury for which the Trustee seeks to recover is the $200 million settlement in November 2015 and the conduct that is alleged to have caused that injury is plainly time-barred.  The dozens of pages and hundreds of paragraphs of the Complaint alleging the supposed "facts" underlying the Management Claims plead only acts and conduct by the Debtors occurring long before the start of the June 29, 2015 limitations period. And, the factually barren assertions that "[u]pon information and belief" the supposedly "unlawful behavior . . . continued unabated through and beyond the time of the 2015 Settlements" and through the bankruptcy filing plainly fail to satisfy any pleading standard.

Moreover, to the extent the Complaint alleges any events after the November 2015 settlement, these events all occurred after Messrs. West and Beekhuizen left their positions, fail to establish a breach of fiduciary duty in any event, and are wholly irrelevant because—unlike the November 2015 settlement—the Trustee has not pled, and cannot plead, that these events caused any legally cognizable injury.

5. The claims on behalf of the Delaware Holding Companies must be dismissed because they are all pass-through entities that were ultimately owned by EDMC and, therefore, cannot be said to have suffered any legally cognizable harm. *See Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, No. CV 18-819-LPS, 2021 WL 1170374, at *20 (D. Del. Mar. 29, 2021) ("It is . . . unclear how a pass-through entity . . . could, as a matter of law or fact, suffer [damages]."); *Rypac Packaging Mach. Inc. v. Coakley*, No. CIV. A. 16069, 2000 WL 567895, at *10 (Del. Ch. May 1, 2000) ("Nor did Rypac suffer economic harm, because it was a 'pass through' entity—it never made or retained any profit from sales negotiated by its representatives."); *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 784 (Ga. Ct. App. 2012) ("Appellants contend that OP Property Management was not entitled to recover any damages because it was merely a 'pass-through' entity that suffered no loss of its own. We agree.") Accordingly, the Trustee cannot allege any harm or injury suffered by the Delaware Holding Companies.

6. The claims for civil conspiracy must be dismissed because the Trustee fails to plead an underlying claim for breach of fiduciary duty. Additionally, the Trustee fails to allege any specific acts or conduct establishing a conspiracy between Messrs. West and Beekhuizen and any other party to breach their fiduciary duties to the Delaware Holding Companies or any other Debtors.

7.      The claims against Mr. Beekhuizen for (i) failing to investigate and sue departed officers and directors for breach of fiduciary duty, and (ii) "accepting" his own severance payment and "authorizing" two payments to certain other defendants in January 2016 must be dismissed.  In his capacity as an officer or director of the Delaware Holding Companies, Mr. Beekhuizen had no duty or basis for initiating any such investigations or suits and, in any event, the Complaint fails to plead any breach by any executive who departed the Delaware Holding Companies.  Moreover, the Complaint fails to plead any basis for treating his alleged "acceptance" or "approval" of any payments as a breach of fiduciary duty and must be dismissed because this Court has already ruled that, as a matter of law, the so-called "excessive payments" cannot constitute actionable corporate waste.

8.      The "Excessive Payment" claims asserted against Mr. Beekhuizen under the Bankruptcy Code to recover his $262,000 severance payment must be dismissed as untimely and for all of the reasons set forth by the other Defendants, which are fully incorporated herein. Indeed, all theories of recovery fail because the Trustee cannot allege that any "excessive payment" constituted property of the paying Debtor's estate.

## NATURE AND STAGE OF THE PROCEEDINGS

Debtors filed Chapter 7 petitions on June 29, 2018, and George L. Miller was appointed Trustee.  *In re: The Art Institute of Philadelphia LLC, et al.*, 18-11535-CTG (Bankr. D. Del. 2018), D.I. 1, 4.  Following this Court's January 12, 2022 ruling, the Trustee filed his First Amended Complaint on February 15, 2022 in which the Trustee purports to bring claims on behalf of Debtors against numerous former directors and officers.  Pursuant to Local Rule 7012-1, Messrs. West and Beekhuizen do not consent to the entry of final orders or judgments by the Court.

## BACKGROUND[2]

### A.    The Corporate Structure

EDMC is a Pennsylvania corporation and the "ultimate parent" of several tiers of subsidiaries (together, the "Companies"), which at the operating company level ran for-profit universities and art institutes.  Compl. ¶ 10.  These subsidiaries include "four intermediate holding companies," which are Delaware limited liability companies, and numerous "for-profit learning institutions that were wholly-owned subsidiaries of the Delaware Holding Companies." Compl. ¶ 10.

Three of these four intermediate holding companies are Debtors in the underlying bankruptcy: Education Management LLC, Education Management Holdings II, LLC, and Education Management II LLC (together, the "Delaware Holding Companies").  The fourth, Education Management Holdings LLC, is not a Debtor.  *See id.* n.1.  The respective limited liability company agreements[3] provide that:

---

[2] The allegations of the complaint are accepted as true solely for purposes of this motion to dismiss.  Op. at 2–3.  Messrs. West and Beekhuizen reserve their rights to deny and/or contest the inaccurate allegations in the Complaint.  Exhibit citations refer to the exhibits to the *Declaration in Support of Motion of Defendants West and Beekhuizen to Dismiss the First Amended Complaint*, filed contemporaneously herewith.

[3] As set forth in the accompanying Request for Judicial Notice, the Court may take judicial notice of the limited liability company agreements attached as Exhibits 1 to 3, which are, upon information and belief, the operative agreements governing the affairs of the Delaware Holding Companies at all times relevant hereto (collectively, the "LLC Agreements").  Exhibits 2 and 3 are the LLC Agreements of New Education Management Holdings LLC and New Education Management LLC, respectively.  Relevant portions of the bankruptcy petitions and certificates of formation and amendment of Debtors Education Management Holdings II LLC and Education Management II LLC, all of which are subject to judicial notice and are attached as Exhibits 13 to 16, establish that those Debtors were formerly known as New Education Management Holdings LLC and New Education Management LLC, respectively.

- Education Management LLC was owned by non-Debtor Education Management Holdings LLC, which in turn was owned by corporate parent and Debtor EDMC.  Ex. 1, at 1; Compl. ¶ 10; *id.* Ex. A.

- Education Management Holdings II LLC was also owned by EDMC.  Compl. Ex. 2, at 1 (stating that its managing member is EDMC); *see also* Exs. 13, 15.

- Education Management II LLC was owned by Education Management Holdings II LLC.  Ex. 3, at 1 (stating that its managing member is Education Management Holdings II LLC); *see also* Exs. 14, 16.

The limited liability company agreement for each of the Delaware Holding Companies provides that, "So long as [the managing member] is the sole member of the Company, all items of income, profit and loss of the Company shall be allocated to [the managing member] and all cash and other distributable assets of the Company shall be distributed to [the managing member]." *See, e.g.*, Ex. 3, at Art. 9.

The Delaware Holding Companies were ultimately owned and controlled by corporate parent EDMC through this tiered ownership structure.  The Trustee does not allege that the Delaware Holding Companies had any business or operations other than serving as "intermediate holding companies" between corporate parent EDMC and the for-profit learning institutions that were subsidiaries of the Delaware Holding Companies.  Compl. ¶ 10.

Below the Delaware Holding Companies lay various operating subsidiaries consisting of educational institutions.  Specifically, the Trustee alleges that each of the Delaware Holding Companies had wholly-owned subsidiaries that were for-profit learning institutions.  *Id.* ¶ 10. The organizational charts attached to the Complaint and to the Debtors' bankruptcy petitions reflect that these operating subsidiaries consisted of dozens of corporate entities incorporated in various states.  *See* Compl. Ex. A; *In re: The Art Institute of Philadelphia LLC, et al.*, 18-11535-CTG (Bankr. D. Del. 2018), D.I. 1, Ex. A.  The Trustee does not allege that West, Beekhuizen, or any other Defendant served as directors or officers of any of these various subsidiaries to the Delaware Holding Companies.  *See* Compl. ¶¶ 12–22.

Rather, the Trustee alleges that Defendants are former directors, officers, and employees of EDMC and the Delaware Holding Companies. *Id.* The Trustee alleges that Mr. West was an EDMC director and its CEO and from July 2012 through August 2015; EDMC's CFO from 2006 through 2012; CEO and a director of the Delaware Holding Companies from July 2012 through August 2015; and CFO of the Delaware Holding Companies from 2006 through 2012. *Id.* ¶ 16. The Trustee alleges that Mr. Beekhuizen was EDMC's CFO from April 2013 through March 2016; an EDMC director from October 2009 through April 2013; a director of the Delaware Holding Companies from October 2009 through April 2013; and CFO of the Delaware Holding Companies from April 2013 through March 2016. *Id.* ¶ 22.

### B.    The Alleged Scheme

The Management Claims[4] are predicated on allegations and claims made in *qui tam* litigation filed in 2007 and 2010. In 2011, a *qui tam* complaint filed in 2007 under the False Claims Act against EDMC by multiple states and the federal government (the "Government *Qui Tam* Complaint," Compl. Ex. B) was unsealed. Compl. ¶ 61. The Government *Qui Tam* Complaint alleged that during the period of July 1, 2003 through June 30, 2011, the Companies' compensation plans for admissions representatives violated federal laws and regulations that prohibited providing compensation based on success in securing enrollments (the "Incentive Compensation Ban"). *See id.* ¶ 63.

Adopting and reasserting the allegations in the Government *Qui Tam* Complaint, the Complaint states that to receive federal funding under Title IV ("Title IV") of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070, *et seq.* (the "HEA"), a post-secondary

---

[4] *See* Op. at 2–3 (referring to the Trustee's breach of fiduciary duty, fraud, and conspiracy claims as "management claims").

educational institution must enter into a program participation agreement ("PPA") with the Department of Education certifying compliance with various laws, including the Incentive Compensation Ban. *Id.* ¶¶ 77, 85–86. The Trustee further alleges that, "[i]n December 2006, EDMC's then Chairman and CEO, McKernan, signed all PPAs for EDMC institutions certifying that EDMC was complying with the Incentive Compensation Ban." *Id.* ¶ 83; *see also* Ex. 4 (Government *Qui Tam* Complaint Ex. 1, Program Participation Agreement, signed by McKernan on December 13, 2006).[5] The Trustee also alleges that, "[a]fter the original agreements expired, the President for each EDMC institution signed that institution's PPA agreement." Compl. ¶ 84; *see also* Ex. 5 (Government *Qui Tam* Complaint Ex. 10, chart showing signatories of certain PPAs). The Trustee further alleges that in addition to certifications made in PPAs, similar certifications were made as part of annual compliance audits. Compl. ¶ 87. The Trustee contends that because the Companies were allegedly not complying with the Incentive Compensation Ban, "the statements made in each EDMC school's PPA and as part of the annual audit process were fraudulent misrepresentations." *Id.* ¶ 90; *see id.* ¶¶ 91, 107.

In 2012, another *qui tam* complaint filed in 2010 by former EDMC employee Jason Sobek was unsealed. *Id.* ¶¶ 65–66. As in the Government *Qui Tam* Complaint, Sobek alleged that "by Defendants' numerous false certifications to the government, Defendants intentionally misled the United States to believe they were eligible to participate in Title IV, HEA programs when, in fact, they were not." *U.S. ex rel. Sobek v. Educ. Mgmt., LLC*, 2013 WL 2404082, at *13 (W.D. Pa. May 31, 2013).

---

[5] Although the Trustee included the Government *Qui Tam* Complaint as Exhibit B to the Complaint, he did not include the exhibits thereto. For the Court's convenience, West and Beekhuizen have included as exhibits hereto certain exhibits attached to the Government *Qui Tam* Complaint.

The Trustee filed the Complaint on February 15, 2022. The specific allegations of the Government *Qui Tam* Complaint and the *Sobek* action are expressly incorporated into the Complaint. Compl. ¶¶ 61, 65. The Trustee reasserts those allegations and attaches those complaints (without their exhibits) as exhibits to the Complaint. The Trustee further alleges that, "[u]pon information and belief, Defendants' unlawful behavior continued through the sale of the Debtors' businesses. The unlawful behavior was part of a course of conduct that continued unabated through and beyond the time of the 2015 Settlements." *Id.* ¶ 131.

Other than identifying the Delaware Holding Companies by name and alleging the positions held by Messrs. West and Beekhuizen and the other Defendants, the Complaint is silent as to the Delaware Holding Companies. The Complaint does not allege that the Delaware Holding Companies made any false certifications to the government and does not allege that Messrs. West or Beekhuizen committed any specific acts or omissions in their capacities as officers and/or directors of the Delaware Holding Companies—the only capacities in which they are now being sued.

### C.     The Alleged Injury

The injury for which the Trustee seeks to hold the Defendants liable is the November 2015 settlement of the civil claims brought by and on behalf of the federal government as well as certain states.[6] *Id.* ¶¶ 72, 117; *see* Compl. Ex. D. The Trustee alleges that "[i]n connection with the 2015 Settlements, EDMC paid $95.5 million, to be distributed among the United States, the various states involved in the litigation, and the Relators." Compl. ¶ 118. The Trustee further alleges that "[t]he 2015 Settlements also resulted in Consent Judgments (the 'Consent

_____

[6] The settlement was not "an admission of liability by the EDMC Releasees," but rather was reached "[t]o avoid the delay, uncertainty, inconvenience, and expense of protracted litigation." Compl. Ex. D, at 5–6.

Judgments') entered in state courts for the states involved in the Consumer Protection Consortium that required certain reforms to the Defendants [sic] operations, and, *inter alia*, required the EDMC Companies to forgive $102.8 million in loans to certain students who attended the Company's institutions between January 1, 2006 and December 31, 2014." *Id.* ¶ 119.  Thus, the Trustee alleges that "[a]s a direct and proximate result of the wrongdoing of the Defendants," the Debtors entered into "settlements costing the Company nearly $200 million." *Id.* ¶¶ 109, 145.

The Complaint makes clear that the November 2015 settlement is the alleged injury that flowed from the alleged corporate misconduct and allegedly caused the demise of the Debtors. *See, e.g.*, *id.* ¶ 3 (fines, penalties, and loan forgiveness "***crippled*** the Debtors and ultimately resulted in their ***demise***"); *id.* ¶ 122 ("In short, the 2015 Settlements and the revelation of the Company's illegal practices sent the company into a ***downward spiral*** from which it never recovered."); *id.* ¶ 135 (alleging that "Debtors were on a ***death spiral*** from the damages flowing from the *Qui tam* actions"); *id.* ¶ 159 (alleging that "Defendants' conduct . . . resulted in . . . the ***destruction*** of the EDMC Companies"); *id.* ¶ 160 (Defendants caused  damage to the Debtors by "allowing violations of law . . . which ultimately resulted in the 2015 Settlements, the Consent Judgments and the ***destruction*** of the Company") (all emphases added).

## LEGAL STANDARD

"Rule 12 (b)(6), made applicable by Bankruptcy Rule 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted."  *In re Centaur, LLC*, No. 10-10799 (KJC), 2013 WL 4479074, at *2 (Bankr. D. Del. Aug. 19, 2013).  "As a threshold matter, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"  *In re Sols. Liquidation LLC*, 608 B.R. 384, 396 (Bankr. D. Del. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 697 (2009)) (alterations in original).  "The plausibility standard is not akin to the probability

standard but requires more than the sheer possibility that a defendant acted unlawfully." *In re*

*Draw Another Circle.*, 602 B.R. 878, 892 (Bankr. D. Del. 2019).  "Labels and conclusions" or "a

formulaic recitation of the elements of a cause of action" are not sufficient.  *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007).

      In attempting to plead a claim for breach of fiduciary duty, it is insufficient to allege in

conclusory terms that a group of defendants generally "participated in" or "were involved with"

some alleged misdeeds.  *See Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 682 (N.D.

Tex. 2011) (rejecting group "participation" and "involvement" allegations); *In re Conex*

*Holdings, LLC*, 514 B.R. 405, 414–15 (Bankr. D. Del. 2014) ("[T]he Trustee has failed to satisfy

the *Twombly* and *Iqbal* pleading standard. . . .  [T]he Trustee lumps all of the Individual

Defendants together . . . without supplying specific facts as to each defendant's wrongdoing. . . .

[T]he Trustee has not provided any specific facts as to which transactions a particular defendant

authorized, nor did the Trustee allege what authority any particular defendant had to approve

such transactions. . . .  [T]he allegations are 'vague and lack sufficient detail about which

officers, if any, knowingly participated.'  This is not a close question.  Much more specificity is

needed here to satisfy the legal standard."); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th

Cir. 2013) ("Liability is personal. . . .  Each defendant is entitled to know what he or she did that

is asserted to be wrongful.  A complaint based on a theory of collective responsibility must be

dismissed."); *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 465–66 (Bankr. D Del. 2018)

(noting that the plaintiff "must not lump defendants together 'without supplying specific facts as

to each defendant's wrongdoings.'" (quoting *Conex*, 514 B.R. at 414)).  In addition, where a

defendant served in multiple corporate capacities, the plaintiff must differentiate between actions

that took place at the holding company level and actions that took place at the parent or subsidiary level. *See Lubin v. Skow*, 382 F. App'x 866, 873 (11th Cir. 2010) (holding that no "allegations regarding these defendants' conduct as Holding Company officers[] appear in the Complaint").

## ARGUMENT

**I.     The Fiduciary Duty Claims Against Messrs. West and Beekhuizen Must Be Dismissed.**

      **A.     The Delaware Holding Companies are not alleged to have engaged in the illegal conduct upon which the entire Complaint is predicated.[7]**

The Trustee's claims for breach of fiduciary duty are premised on the assertions that "Delaware law does not charter law breakers" and "[f]iduciaries of Delaware entities breach their duty of loyalty when they knowingly cause the entity to seek profit by breaking the law." Compl. ¶¶ 151–52.  Although the Trustee does not differentiate between the Debtor entities in his pleading, the Court previously ruled that any claims by corporate parent EDMC against West and Beekhuizen are time-barred under Pennsylvania's two-year statute of limitations, and the remaining claim against Messrs. West and Beekhuizen appears to be that they breached their duties to the Delaware Holding Companies by (i) operating the Delaware Holding Companies "in an illegal fashion"; (ii) "implementing a business model and plan the purpose and effect of which was to fuel growth by engaging in unlawful recruiting methods"; and/or (iii) failing to implement "appropriate internal controls and a proper corporate governance framework to detect and terminate unlawful recruiting and enrollment practices." *Id.* ¶¶ 153, 157–58.  Thus, to

---

[7] As the Trustee concedes, the breach of fiduciary duty claim against Messrs. West and Beekhuizen vis-à-vis their conduct at EDMC fails.  Compl. n.3. This motion therefore pertains exclusively to their conduct at the Delaware Holding Companies.

establish a breach of fiduciary duty owed to the Delaware Holding Companies, the Trustee must plead that the Delaware Holding Companies engaged in the alleged illegal conduct.

The crux of the Trustee's case is that "the Defendants caused the EDMC companies to operate in violation of the federal laws and regulations applicable to the Debtors' ownership and management of post-secondary for-profit learning institutions—*i.e.*, Title IV ('Title IV') of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070, *et seq.* (the 'HEA') and in violation of applicable state laws and regulations." *Id.* ¶ 3. It was these alleged violations that the Trustee claims to have triggered the government investigations and *qui tam* litigation that resulted in the $200 million settlement.

But the Trustee alleges that the illegal conduct consisted of the submission of "false" certifications by EDMC and the educational institutions—not the Delaware Holding Companies. In Paragraphs 83 through 94 of the Complaint, the Trustee—parroting allegations from the *qui tam* litigation—alleges that "EDMC signed and submitted PPAs to the Department of Education on behalf of all of EDMC's educational institutions through the United States." *Id.* ¶ 83. The Trustee alleges that "EDMC's then Chairman and CEO, McKernan, signed all PPAs for EDMC institutions certifying that EDMC was complying with the Incentive Compensation Ban." *Id.* The PPA referenced in the Complaint confirms that the PPA was signed not by or on behalf of the Delaware Holding Companies, but by "Education Management Corporation for the Institution." Ex. 4 (Government *Qui Tam* Complaint Ex. 1, Program Participation Agreement, signed by McKernan on December 13, 2006). The Trustee then alleges that "[a]fter the original agreements expired, the President for each EDMC institution signed that institution's PPA agreement." Compl. ¶ 84; *see* Ex. 5 (Government *Qui Tam* Complaint Ex. 10, chart showing signatories of certain PPAs).

To plead a claim that Messrs. West and Beekhuizen breached fiduciary duties to the Delaware Holding Companies, the Trustee must plead illegal acts or practices by the Delaware Holding Companies, which he has not done.  Simply put, there are no allegations implicating any of the Delaware Holding Companies in the alleged illegal scheme; no allegations that any of the Delaware Holding Companies ever signed or submitted false certifications to the government; and no allegations that Messrs. West or Beekhuizen ever signed or submitted a false certification to the government in any capacity, let alone their capacities as directors or officers of the Delaware Holding Companies.  Rather, the scheme *as pled* demonstrates that other Debtors— namely, EDMC and the institutions—allegedly committed the illegal acts underlying the Complaint.  *See, e.g.*, *Alja-Iz v. U.S. Virgin Islands Dep't of Educ.*, 626 F. App'x 44, 47 (3d Cir. 2021) (noting that the plaintiff "pleaded himself out of court" by making allegations antithetical to his claim); *In re Funches*, 381 B.R. 471, 482 (Bankr. E.D. Pa. 2008) (explaining that when considering plausibility at the motion to dismiss stage, courts should consider whether the plaintiff "pleads itself out of court" (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

**B.    Messrs. West and Beekhuizen are not alleged to have played a role in devising or implementing recruiting or compensation policies as officers or directors of the Delaware Holding Companies.**

In its Opinion, the Court concluded that the Trustee's original complaint stated a claim for breach of fiduciary duty under Delaware law.  Op. at 15–16.  The Court observed that "the existence of a fiduciary duty does not turn on a director or officer's title, but rather on the individual's authority, control, and/or substantive responsibilities within the corporation." *Id.* at 15.  The Court further observed that "the complaint alleges that each of the defendants played a sufficiently substantial role in devising or implementing corporate policy relating to its recruiting or compensation policies to owe a fiduciary duty to the corporation." *Id.* at 16.  Thus, the Court

-16-

concluded that the conclusory allegation that "defendants implemented, or failed to reform, unlawful compensation and recruiting practices" is "sufficient to state a claim for breach of duty." *Id.* In reaching this result, the Court did not evaluate the role of each Debtor entity nor the role of each individual Defendant with respect to each Debtor entity.[8]

But the Complaint fails to meet the standard articulated by the Court because the Complaint does not—and cannot—allege that any of the challenged "recruiting or compensation policies" were policies of the Delaware Holding Companies. To the contrary, the Government *Qui Tam* Complaint—upon which the entire case is predicated and which is attached to the Complaint—makes clear that the policies in question were the policies of *EDMC*, not the Delaware Holding Companies. For example, that complaint alleges that recruiters were provided with a document entitled "Your Guide to the Admissions Performance Plan," which explicitly states that it is the policy of "**Education Management Corporation**" and makes repeated references to EDMC's "compensation philosophy," "objective," and "business goals." Ex. 6

---

[8] The law is clear that a plaintiff cannot plead breach of fiduciary duty by merely alleging in a conclusory fashion that the defendant "participated in" some improper conduct; more is required. For example, in *Kaye v. Lone Star Fund V (U.S.), L.P.*, the court held that "conclusory allegations" that defendants "'were involved with' or 'participated in' certain transactions . . . are insufficient to withstand a motion to dismiss." 453 B.R. 645, 682 (N.D. Tex. 2011). In *Bank of America, N.A. v. Knight*, the court noted that because "[l]iability is personal" and "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful," "[a] complaint based on a theory of collective responsibility must be dismissed." 725 F.3d 815, 818 (7th Cir. 2013). And in *In re Conex Holdings, LLC*, the court held that "the Trustee has failed to satisfy the *Twombly* and *Iqbal* pleading standard" when he "lump[ed] all of the Individual Defendants together as 'Officers and Directors' . . . without supplying specific facts as to each defendant's wrongdoing." 514 B.R. 405, 414–15 (Bankr. D. Del. 2014) ("[T]he Trustee has not provided any specific facts as to which transactions a particular defendant authorized, nor did the Trustee allege what authority any particular defendant had to approve such transactions. . . . [T]he allegations are 'vague and lack sufficient detail about which officers, if any, knowingly participated.' This is not a close question. Much more specificity is needed here to satisfy the legal standard."). The Trustee's conclusory allegations therefore do not provide West and Beekhuizen with fair notice of the claims alleged against them.

(Government *Qui Tam* Complaint Ex. 13).  Likewise, that complaint alleges that the

"Admissions Performance Plan—Manager Guidelines" were guidelines that were promulgated

and provided to recruiters by "**Education Management Corporation**" and discusses EDMC's

"compensation philosophy" and  "expectations."  Exs. 7–8 (Government *Qui Tam* Complaint

Exs. 15–16).  And the documents tracking the enrollment statistics of recruiters specifically and

students generally bear the name of "**Education Management Corporation**."  Exs. 9–11

(Government *Qui Tam* Complaint Exs. 21–22, 31).  In fact, the Trustee alleges that "the

compensation system for admissions staff was **developed at the corporate level and approved

by EDMC Corporate**."  Compl. ¶ 110 (emphasis added).[9]

In short, there is nothing in the Complaint to establish that any of the challenged policies

were formulated, approved, or implemented by the Delaware Holding Companies.  Nor are there

any allegations that Messrs. West or Beekhuizen participated in formulating, approving, or

implementing the challenged compensation or recruiting policies in their capacities as directors

or officers of the Delaware Holding Companies.  Although they did serve in dual capacities at

EDMC and the Delaware Holding Companies, their participation (if any) in formulating,

approving, or implementing the policies of EDMC cannot possibly support their liability because

they are not being sued in their EDMC capacities.

> **C.    The Complaint fails to plead any specific act or omission by Messrs. West or
> Beekhuizen within the three-year limitations period.**

In its Opinion, the Court dismissed certain Defendants because they departed from

EDMC and the Delaware Holding Companies before the applicable limitations period began and,

---

[9] Moreover, documents at the educational institution level demonstrate that compensation
policies were directed by EDMC, not the Delaware Holding Companies.  For example, the "New
Employee Introduction" for "The Art Institute Online" explains "**EDMC's** compensation
philosophy."  Ex. 12 (Government *Qui Tam* Complaint Ex. 14) (emphasis added).

therefore, they "***cannot have taken any action within the applicable statutory period*** that would constitute a breach." Op. at 23 (emphasis added). Moreover, the Court ruled that "[f]or claims subject to Delaware's three-year statute of limitations, the question is ***whether the alleged breach occurred within three years of the petition date***"—*i.e.*, within the time period between June 29, 2015 and the date on which the Defendant departed and ceased being a fiduciary. *Id.* at 21 (emphasis added). Mr. West departed on August 28, 2015 and Mr. Beekhuizen departed in March 2016; thus, to state a claim for breach of fiduciary duty, the Complaint must allege an act or omission by Messrs. West and Beekhuizen in their capacities as officers or directors of the Delaware Holding Companies ***within*** these periods. It does not.

The Trustee must allege actions or omissions by Messrs. West and Beekhuizen in connection with their roles at the Delaware Holding Companies. *See In re HH Liquidation, LLC*, 590 B.R. 211, 278 (Bankr. D. Del. 2018) ("It is necessary to address the individual Defendant's alleged breach of fiduciary duty vis-à-vis each Debtor."). In *Lubin v. Skow*, for example, the Eleventh Circuit affirmed the district court's holding that the plaintiff failed to adequately allege that the defendants breached fiduciary duties *in their capacity as officers of a holding company*—as distinct from their capacities in other companies. 382 F. App'x 866, 873 (11th Cir. 2010). Critically, the court noted that no "allegations regarding these defendants' conduct as Holding Company officers[] appear in the Complaint." *Id.*; *see Barnes v. Harris*, No. 2:12-CV-1010 TS, 2013 WL 1982182, at *6–7 (D. Utah May 13, 2013) (noting that although "Plaintiffs' allegations concern conduct that, on its face, appears to have occurred at the Holding Company level," "[w]ithout further factual development or explanation of how this conduct constitutes a breach of fiduciary duty . . . these claims do not meet the pleading standards set forth in *Iqbal*").

Here, apart from alleging that the Delaware Holding Companies were four Delaware LLCs that served as intermediate holding companies, Compl. ¶ 10, and alleging that Messrs. West and Beekhuizen served as officers and directors for relatively short periods of time, *id.* ¶¶ 16, 22, the Complaint provides no details relating to the activities of the Delaware Holding Companies generally, nor does it allege any specific conduct by Messrs. West and Beekhuizen in connection with their roles at the Delaware Holding Companies.  In short, the Trustee fails to allege any specific acts or omissions by Messrs. West and Beekhuizen in any capacity for any Debtor, let alone specific acts or omissions in connection with their capacities as officers or directors of the Delaware Holding Companies between the start of the three-year limitations period (June 29, 2015) and the dates they departed from the Delaware Holding Companies a few months later.

> **D.    Claims based on the conduct that allegedly caused the $200 million injury are time-barred.**

The alleged specific injury for which the Trustee seeks recovery is the $200 million settlement that was reached with federal and state authorities in November 2015.  *See* Compl. ¶ 3 (the settlement resulted in "fines and penalties exceeding $95 million, numerous consent decrees and the loss of more than $100 million of outstanding tuition obligations by way of loan forgiveness, the combination of which crippled the Debtors and ultimately resulted in their demise"); *id.* ¶ 122 ("In short, the 2015 Settlements and the revelation of the Company's illegal practices sent the company into a downward spiral from which it never recovered."); *id.* ¶ 135 (alleging that "Debtors were on a death spiral from the damages flowing from the settlements of the *Qui tam* Actions and related state investigations").  Hence, on the Management Claims, the Trustee seeks compensatory damages in excess of $200 million (which includes $95.5 million paid in the settlement and $102.8 million of student loan forgiveness).  *Id.* ¶ 145.

Given that the alleged injury occurred in November 2015, it is incumbent upon the Trustee to allege breaches of fiduciary duty that caused that injury ***and*** occurred within the three-year limitations period, which commenced on June 29, 2015. But the Complaint is predicated on allegations that were copied from government investigations and the Government *Qui Tam* Complaint, all of which focused on alleged conduct that occurred in the 2000s and early 2010s, long before the statute of limitations period began. Indeed, in the "Facts" section of the Complaint, which spans over 27 pages and 124 paragraphs, the Trustee does not identify any specific conduct on the part of any Debtor or any individual Defendant that occurred after June 29, 2015 and before the November 2015 settlement.

As the Court recognized, claims based on historical conduct dating back to the 2000s and early 2010s are barred by the statute of limitations. Op. at 21 ("For claims subject to Delaware's three-year statute of limitations, the question is whether the alleged breach occurred within three years of the petition date."); *see generally In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 560–63 (Bankr. D. Del. 2008) (granting a motion to dismiss pertaining to allegations outside the statute of limitations period: "Where a plaintiff brings a claim based upon multiple allegedly wrongful acts, a court considers each act in turn in applying the statute of limitations."); *Halpern Med. Servs., LLC v. Geary*, No. CIV.A. 6679-VCN, 2012 WL 691623, at *3 (Del. Ch. Feb. 17, 2012) ("The Complaint was filed on July 19, 2011; therefore, any claim of HEA based upon acts that occurred before July 19, 2008, falls outside of the statute of limitations.").[10] Accordingly, the

---

[10] The Court also rejected any argument that the continuing violation doctrine could save the Trustee's claims. Op. at 22 ("Once the company's actions were sufficiently known such that relators could begin bringing *qui tam* litigation, the company itself was certainly in a position to assert a breach of fiduciary duty claim against those whose decisions and actions gave rise to those asserted liabilities. And the complaint alleges throughout that the practices that gave rise to those liabilities were a matter of public record for years before the 2015 settlements."); *id.* at

Trustee's claims based on alleged misconduct that occurred long ago and formed the basis of the Government *Qui Tam* Complaint and the settlement in November 2015 are time-barred and must be dismissed.

In a futile attempt to allege culpable conduct during the statute of limitations period, the Trustee makes conclusory allegations concerning supposed breaches or wrongdoing ***after*** the injury producing event in November 2015. These paltry allegations fail. In the most conclusory terms, the Trustee alleges that the supposed fraud on the government "was ongoing and continued until shortly before or to the Petition Date." Compl. ¶ 90. Elsewhere, he alleges (but only upon information and belief) that "[t]he unlawful behavior was part of a course of conduct that continued unabated through and beyond the time of the 2015 Settlements." *Id.* ¶ 131. But beyond these conclusory one-liners, the Trustee pleads no facts. What are the facts? What is this supposed unlawful behavior? Who engaged in this behavior and exactly when and how? What did they do and in what capacity? The Trustee's conclusory assertions must be rejected. *See In re Conex Holdings, LLC*, 514 B.R. 405, 414 (Bankr. D. Del. 2014) ("[T]he Trustee has failed to provide facts with any specificity to support how any of the Individual Defendants breached any fiduciary duty . . . . Trustee's allegations constitute mere conclusory statements. . . . [T]he trustee has not provided any specific facts as to which transactions a particular defendant authorized."); *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[11]

---

23 n.64 (noting that "the trustee is incorrect to argue that actions taken outside the limitations period can form the basis of a claim under the continuing violation doctrine").

[11] The Trustee's bald assertion that the alleged wrongdoing "continued" through the November 2015 settlement date and through the date of the bankruptcy in June 2018 is not only factually

In yet another attempt to come up with some conduct—any conduct—during the limitations period, the Trustee cites a couple of events postdating the November 2015 settlement. *See* Compl. ¶¶ 133(m) and 133(n) (referencing letters sent in 2017 by politicians to "several university accrediting commissions" expressing concerns about student debt levels); *id.* ¶ 133(o) (referencing an action brought in 2018 by the Massachusetts Attorney General relating to recruitment practices at a single college). But these allegations are legally meaningless because they are actions of third parties, not conduct of any defendant. Furthermore, (i) they all occurred ***after*** Messrs. West and Beekhuizen left the Delaware Holding Companies; (ii) they are wholly unrelated to the alleged illegal conduct underlying the *qui tam* litigation and the November 2015 settlement; (iii) they fail to allege any individual conduct that could possibly establish the elements of a claim for breach of fiduciary duty; and (iv) they are not alleged to have resulted in any injury to any Debtor.[12]

---

baseless, but it is also undercut by the undisputed absence of any action by the federal or state governments. To be sure, if there had been any suggestion or indication that EDMC was continuing to violate the law during the settlement process or after November 2015, the government entities would surely have sought to rescind the settlement and enforce the Consent Decrees, which explicitly enjoined EDMC from any further violations. But no such action was ever taken.

[12] The Complaint does not allege that any of these events resulted in any damage such as the payment of fines or penalties. Indeed, the Court has already indicated that the Debtors could not have been damaged by any conduct after the November 2015 settlement given that the settlement allegedly triggered the Debtors' demise. *See* Op. at 4 (noting that the fact the Debtors' business "was in wind-down mode for most of [the statute of limitations] period . . . certainly raises questions about how breaches alleged to have occurred in this period caused injury to the debtor"); *id.* at 23–24 ("To be sure, once the debtors began to wind down their operations and liquidate their businesses, there are questions about how the alleged breaches may have given rise to claims for damages."). Therefore, post-November 2015 events cannot support any claims for breach of fiduciary duty.

Accordingly, these events cannot breathe life into the Trustee's time-barred claims.  *See*
Op. at 23 n.64 (rejecting the notion that any of the Defendants may be liable for breaches of
fiduciary duties that may have occurred after they left their respective entities); *see, e.g.*, *Gen.
Video Corp. v. Kertesz*, No. CIV.A. 1922-VCL, 2008 WL 5247120, at *18 (Del. Ch. Dec. 17,
2008) (holding that claims for breach of fiduciary duty "predicated on acts" occurring after the
director/officer's resignation "must fail"); *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693,
758 (Del. Ch. 2005) (noting that "former directors owe no fiduciary duties"), *aff'd*, 906 A.2d 27
(Del. 2006).

### E.      The Delaware Holding Companies could not have been harmed.

The Court's ruling limiting the claims against Messrs. West and Beekhuizen to claims in
their capacities as officers or directors of the Delaware Holding Companies has also brought
another dispositive issue into focus: the Trustee's failure—and inability—to plead that the
Delaware Holding Companies were injured, a necessary element for the claims asserted here.

The LLC Agreements governing each of the Delaware Holding Companies state that each
of them is a pass-through company.  Each of the LLC Agreements (i) appoints a "sole member"
who also serves as the "Managing Member" of the Company, and (ii) provides that "[s]o long as
[the sole member] is the sole member of the Company, all items of income, profit and loss of the
Company shall be allocated to the Managing Member and all cash and other distributable assets
of the Company shall distributed to the Managing Member."  Ex. 1 (Education Management
LLC Agreement), at Art. 7; Ex. 2 (Education Management Holdings II LLC Agreement), at Art.
9; Ex. 3 (Education Management II LLC Agreement), at Art. 9.

Not surprisingly, courts have recognized that pass-through entities—such as the
Delaware Holding Companies—cannot sustain legally cognizable economic harm or injury.  *See
Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, No. CV 18-819-LPS, 2021 WL 1170374,

at *20 (D. Del. Mar. 29, 2021) ("It is . . . unclear how a pass-through entity . . . could, as a matter of law or fact, suffer [damages]."); *Rypac Packaging Mach. Inc. v. Coakley*, No. CIV. A. 16069, 2000 WL 567895, at *10 (Del. Ch. May 1, 2000) ("Nor did Rypac suffer economic harm, because it was a 'pass through' entity—it never made or retained any profit from sales negotiated by its representatives."); *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 784 (Ga. Ct. App. 2012) ("Appellants contend that OP Property Management was not entitled to recover any damages because it was merely a 'pass-through' entity that suffered no loss of its own.  We agree. . . .  There was no evidence that it suffered any losses or was otherwise damaged by any breach of duty or fraud.").  Thus, the Trustee's claims on behalf of the Delaware Holding Companies must be dismissed.

## II.    The Additional Fiduciary Duty Claims Against Mr. Beekhuizen Must Be Dismissed.

### A.    The claim for failure to investigate and sue departed executives fails.

The Trustee seeks to hold Mr. Beekhuizen liable—in his capacity as a director or officer of the Delaware Holding Companies—for not personally investigating and asserting claims against executives who "had left the Company."  Compl. ¶ 22.  This claim fails.  *First*, this one-sentence "claim" fails to provide any factual support and fails to state a plausible claim for relief. The Trustee (i) fails to identify the departed executives of the Delaware Holding Companies that supposedly should have been investigated and sued, and (ii) fails to specify any breach of duty or conduct by any departed executives of the Delaware Holding Companies that would support actionable claims against the departed executives.  *Second*, under the LLC Agreements, the Managing Member of the Company—not Beekhuizen—would be the proper party to investigate

-25-

and assert any potential claims against former officers, directors, or managers of the LLC. Accordingly, this claim must be dismissed.[13]

### B.    The claim for authorizing or receiving payments fails.

The Trustee alleges that "Defendants breached the duties of loyalty and care by authorizing and accepting the Excessive Payments to Defendants McEachen, Jalufka, Kramer, Novad, Danielson and Beekhuizen." Compl. ¶ 162.[14]  In regard to these claims, Mr. Beekhuizen is alleged to have (i) authorized two payments to Messrs. McEachen and Kramer in January 2016,[15] and (ii) received a severance payment in the amount of $262,000 when he left in March 2016.  These claims fail as a matter of law based on the Court's Opinion.

With respect to Mr. Beekhuizen's alleged approval of the two January 2016 payments to Messrs. McEachen and Kramer, the Trustee has failed to plead—and cannot plead—that such approval constituted a breach of fiduciary duty.  The authorization of payments could only amount to a breach of duty if the payments constituted waste—*i.e.*, when the transfer of assets

---

[13] To the extent the Trustee is alleging failure to investigate and sue former executives who departed from EDMC, his claim fails.  Clearly, Mr. Beekhuizen in his capacity as director or officer of the subsidiary Delaware Holding Companies had no duty or authority to investigate and sue former officers and directors of the parent.  Under Pennsylvania law, the authority to bring litigation on behalf of a Pennsylvania corporation such as EDMC resides exclusively with the board of directors of the corporation.  *See Cuker v. Mikalauskas*, 692 A.2d 1042, 1048 (Pa. 1997) ("Decisions regarding litigation by or on behalf of a corporation . . . are within the province of the board of directors.").

[14] Although the Trustee's breach of fiduciary duty claim is against all Defendants, only Mr. Beekhuizen is alleged to have still been at the Delaware Holding Companies when the payments were allegedly authorized; West had departed months prior.  Therefore, to the extent this claim is brought against Mr. West, the claim fails at the outset.

[15] These payments, which occurred on January 15, 2016, are the only two payments that are alleged to have taken place while Mr. Beekhuizen was at the Delaware Holding Companies.  *See* Compl. ¶¶ 137, 139; *id.* Exs. G, I.  The other alleged payments were made after Mr. Beekhuizen had already left the Delaware Holding Companies.  *See* Compl. ¶¶ 138, 140–41.

serves no corporate purpose, or when there is no consideration. *See Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000). But, as this Court has already ruled, the Trustee's allegation that "the payments at issue here were made pursuant to employment contracts . . . effectively defeats his claims for corporate waste." Op. at 38; *see id.* (noting that "a payment made under an employment agreement is not the kind of disposition of corporate assets that can amount to corporate waste").

With respect to Mr. Beekhuizen's acceptance of his $262,000 severance payment—in connection with terminating his employment—the Trustee cannot state a claim for breach of fiduciary duty. Again, as the Court has already ruled, because the payment was made pursuant to and authorized by an agreement, the payment could not constitute actionable corporate waste.

### III.    The Civil Conspiracy Claim Must Be Dismissed.

The Trustee's conspiracy claim fails as a matter of law. "Under Delaware law, 'civil conspiracy cannot be sustained as an independent tort, but rather the allegations must relate to the completion of a tort independent of the conspiracy itself.'" *In re Crown-Simplimatic Inc.*, 299 B.R. 319, 327 (Bankr. D. Del. 2003) (quoting *Outdoor Techs., Inc. v. Allfirst Fin., Inc.*, No. CIV.A.99C-09-151-JRS, 2001 WL 541472, at *6 (Del. Super. Ct. Apr. 12, 2001)). Because the Trustee fails to state a claim against Messrs. West and Beekhuizen for breach of fiduciary duty, his civil conspiracy claim necessarily fails. *See, e.g.*, *id.* ("Because the underlying . . . count is being dismissed . . . , [the] conspiracy claim cannot stand.").

In addition, the conspiracy claim fails because the Trustee does not even attempt to allege sufficient facts concerning the supposed conspiracy. "It is a longstanding rule in the Third Circuit that a mere general averment of conspiracy is insufficient." *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985). Rather, "plaintiffs must plead with particularity the 'circumstances' of the alleged wrongdoing,"

-27-

such as the "period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." *Id.* at 1401. Here, the Complaint alleges in a conclusory fashion that Defendants engaged in a conspiracy, but plainly fails to allege, among other things, when and how the Defendants supposedly joined the conspiracy or what overt acts they (or anyone else) took in furtherance of the conspiracy. Accordingly, the Trustee's civil conspiracy claim fails. *See, e.g.*, *In re The Brown Sch.*, 368 B.R. 394, 410 (Bankr. D. Del. 2007) ("The Court concludes . . . that the Complaint fails to identify what unlawful acts were done in furthering any conspiracy between the [defendants].").

## IV.    The Trustee Cannot Recover Mr. Beekhuizen's Severance Payment.

The Trustee seeks to recover Mr. Beekhuizen's $262,000 severance payment, which is alleged to have been made by Debtor Education Management II LLC on March 18, 2016. Compl. ¶¶ 136, 142. These claims are set forth in Counts VII, IX and X. Because the payment was made more than two years before the bankruptcy filing, Count VII (brought pursuant to 11 U.S.C. § 548(a)(1)(B)) must be dismissed.[16] Moreover, Count VII, as well as the avoidance claims in Counts IX and X, fail for all the same reasons identified in the Memoranda of Law filed by Defendants John Devitt Kramer, Mark Novad, Mark McEachen, Frank Jalufka, and John Danielson, including, as it pertains to Counts IX and X, the fact that the payment made to Mr. Beekhuizen did not constitute "property" of the Debtors' estate.

## CONCLUSION

For all of the foregoing reasons, Messrs. West and Beekhuizen respectfully request that the Court dismiss the Trustee's Complaint with prejudice. The Trustee has already been

---

[16] The Trustee concedes as much. D.I. 58 at 63 n.32 ("To the extent the Complaint pleads that the 2016 transfers are . . . avoidable under § 548 of the Bankruptcy Code, that was in error.").

afforded ample opportunity to plead claims against Messrs. West and Beekhuizen in their capacities as officers and/or directors of the Delaware Holding Companies.  The Trustee should not be afforded a third bite at the apple.  Accordingly, all claims against Messrs. West and Beekhuizen should be dismissed with prejudice.

Dated:  April 1, 2022
Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Marcos A. Ramos*

Marcos A. Ramos (No. 4450)
Brett M. Haywood (No. 6166)
J. Zachary Noble (No. 6689)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651 7700
Facsimile: (302) 651-7701
ramos@rlf.com
haywood@rlf.com
noble@rlf.com

MORGAN, LEWIS & BOCKIUS LLP
Michael L. Kichline, *pro hac vice*
Jeffrey J. Masters, *pro hac vice application
    pending*
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
michael.kichline@morganlewis.com
jeffrey.masters@morganlewis.com

Robert H. O'Leary, *pro hac vice*
One Market, Spear Street Tower
28th Floor
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (215) 442-1001
bob.oleary@morganlewis.com

*Counsel for Defendants Edward West and
Mick Beekhuizen*

-29-