IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE ART INSTITUTE OF PHILADELPHIA<br>LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br>Case No. 18-11535 (CTG)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>TODD S. NELSON, JOHN R. McKERNAN,<br>SAMUEL C. COWLEY, EDWARD WEST,<br>MARK A. McEACHEN, FRANK JALUFKA,<br>J. DEVITT KRAMER, MARK NOVAD, JOHN<br>DANIELSON, AND MICK BEEKHUIZEN,<br><br>Defendants. | <u>JURY TRIAL DEMANDED</u><br><br>Adversary Proceeding<br>No. 20-50627 (CTG) |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS MARK McEACHEN, FRANK JALUFKA, AND JOHN
DANIELSON'S (I) MOTION TO DISMISS FIRST AMENDED COMPLAINT,
(II) MOTION FOR A MORE DEFINITE STATEMENT, (III) MOTION TO EXTEND
ANSWER DEADLINE, AND (IV) JOINDER TO REQUEST FOR JUDICIAL NOTICE**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Sean M. Beach (DE Bar No. 4070)
Kevin A. Guerke (DE Bar No. 4096)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
E-mail: sbeach@ycst.com

SIDLEY AUSTIN LLP

Chad S. Hummel (*admitted pro hac vice*)
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310-595-9500
Facsimile: 310-595-9501
E-mail: chummel@sidley.com

---

[1] Due to the large number of debtors in the above-captioned jointly-administered chapter 7 cases (the "<u>Chapter 7</u> <u>Cases</u>"), a complete list of such debtors (the "<u>Debtors</u>") and the last four digits of their federal tax identification numbers is not provided herein.  Such information can be found at footnote 1 of the Complaint (as defined below).

i

kguerke@ycst.com

Sam Newman (*admitted pro hac vice*)
Stacy Horth-Neubert (*admitted pro hac vice*)
Anna Gumport (*admitted pro hac vice*)
555 West Fifth Street
Los Angeles, California 90013
Telephone: 213-896-6000
Facsimile: 213-896-6600
E-mail: sam.newman@sidley.com
        shorthneubert@sidley.com
        agumport@sidley.com


*Counsel for Defendants Mark A. McEachen,*
*Frank Jalufka, and John Danielson*

# TABLE OF CONTENTS

**NATURE AND STAGE OF PROCEEDING AND SUMMARY OF ARGUMENT** ............. 1

**STATEMENT OF RELEVANT FACTS** ................................................................ 6

**ARGUMENTS AND AUTHORITIES** ................................................................ 7

**I.**    **Governing Standards and Law** ................................................................ 7

**II.**    **Trustee Fails to Overcome the Deficiencies of the Complaint.** ...................... 9

    **A.**    **Claim I – Breach of Fiduciary Duties** ................................................ 9

        1.    Claims against Later Defendants for Breaches of Fiduciary Duties
              Occurring before Later Defendants Became Fiduciaries Are Meritless as a
              Matter of Law ......................................................................... 10

        2.    Certain Breach of Fiduciary Duty Claims against Later Defendants Are
              Time-Barred ............................................................................ 12

        3.    A More Definite Statement Is Warranted as to Claims in Claim I .......... 15

    **B.**    **Claim III – Civil Conspiracy** ......................................................... 16

    **C.**    **Claim VII – Avoidance of Transfers Pursuant to 11 U.S.C. § 548(a)(1)(B)** .. 18

    **D.**    **Claim VIII – Avoidance of Transfers Pursuant to 11 U.S.C. § 547(b)** .......... 20

    **E.**    **Claim IX – Avoidance of Transfers Pursuant to 6 Del. C. §§ 1304(a)(1),
             1304(a)(2) and 1305 and 11 U.S.C. § 544** ............................................ 24

    **F.**    **Claim X – Recovery of Transfers Under 11 U.S.C. § 550** .............................. 26

    **G.**    **Previously-Dismissed Claims Not Revived through Amendments** ................. 27

**III.**    **Later Defendants' Deadline to Respond to the FAC Is Tolled or in the Alternative,
          an Extension Is Requested.** ..................................................................... 28

**IV.**    **Later Defendants Join in the KN RJN.** ..................................................... 29

**CONCLUSION AND RELIEF SOUGHT** ............................................................ 30

iii

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Adderly v. Stofko*,
   Civ. No. 3:CV-12-1546, 2015 WL 4743776 (M.D. Pa. Aug. 11, 2015) ...............................18

*Ahanchian v. Xenon Pictures, Inc.*,
   624 F.3d 1253 (9th Cir. 2010) ...............................................................................................29

*Alberts v. Tuft (In re Greater Southeast Community Hospital Corp.)*,
   333 B.R. 506, 531 n.31 (Bankr. D.D.C. 2005) ......................................................................8

*Anderson News, LLC v. The News Group, Inc. (In re Anderson News, LLC)*,
   Adv. No. 11-53979(CSS), 2012 WL 3638785 (Bankr. D. Del. Aug. 22, 2012) ..............21, 22

*Angstadt v. Midd-West School District*,
   377 F.3d 338 (3d Cir. 2004)....................................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662, 697 (2009) ........................................................................................................7

*August v. August*,
   C.A. No. 3180-VCS, 2009 WL 458778 (Del. Ch. Feb. 20, 2009)..........................................26

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................7

*Beskrone v. OpenGate Capital Group, LLC (In re PennySaver USA Publishing, LLC)*,
   587 B.R. 445 (Bankr. D. Del. 2018) ....................................................................................16

*Burtch v. Huston (In re USDigital, Inc.)*,
   443 B.R. 22 (Bankr. D. Del. 2011) ...................................................................................7, 21

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007)..............................................................................................14

*De La Rochelle v. Woodbridge Group of Companies, LLC (In re Woodbridge Group of Companies, LLC)*,
   593 B.R. 200 (Bankr. D. Del. 2018) ......................................................................................6

*Dillingham v. Garcia*,
   Case No. 1:18-cv-00579-LJO-EPG-PC, 2019 WL 6618055 (E.D. Cal. Dec. 5, 2019) ....................................................................................................................................28

iv

*Ebbert v. Plymouth Oil Co.*,
  348 Pa. 129 (Pa. 1943) ...........................................................................................11

*In re Fuqua Indus., Inc. Shareholders Litig.*,
  No. Civ.A. 11974, 2005 WL 1138744 (Del. Ch. May 6, 2005) ................................11

*Gellert v. The Lenick Co. (In re Crucible Materials Corp.)*,
  Adv. No. 10-55178, 2011 WL 2669113 (Bankr. D. Del. Jul. 6, 2011) ...................22

*Giuliano v. Gibson, Dunn & Crutcher LLP (In re Liquid Holdings Group, Inc.)*,
  Adv. Pro. No. 18-50151 (KG), 2018 WL 6841351 (Bankr. D. Del. Nov. 14,
  2018) ......................................................................................................................8

*Husted v. Taggart (In re ECS Refining, Inc)*,
  625 B.R. 425 (Bankr. E.D. Cal. 2020) ...................................................................23

*Iraheta v. Equifax Information Services, LLC*,
  Civ. Act. No. 5:17-cv-1363, 2018 WL 3381419 (W.D. La. Jul. 10, 2018) ............28

*Jahn v. Char (In re Incentium, LLC)*,
  473 B.R. 264 (Bankr. E.D. Tenn. 2012) .................................................................23

*Jahn v. Char (In re U.S. Insurance Group, LLC)*,
  Case No. 1:12-cv-226, 2013 U.S. Dist. LEXIS 193085 (E.D. Tenn. Mar. 7,
  2013) ......................................................................................................................23

*Joseph v. Frank (In re Troll Commc'ns, LLC)*,
  385 B.R. 110 (Bankr. D. Del. 2008) .........................................................................7

*Kirschner v. FitzSimons*,
  142 S. Ct. 1128 (2022).............................................................................................23

*Kirschner v. FitzSimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
  MDL No. 11-md-2296 (RJS), 2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018) .......23

*Kirschner v. Large Shareholders (In re Tribune Co. Fraudulent Conveyance
  Litig.)*,
  10 F.4th 147 (2d Cir. 2021) .....................................................................................23

*Lichtenstein v. First National Bank of Chester County (In re Moll Group, LLC)*,
  Adv. Nos. 04-1113, 04-1115, 2005 WL 6506459 (Bankr. E.D. Pa. June 15,
  2005) ......................................................................................................................8

*Lightsway Litigation Services, LLC v. Yung (In re Tropicana Ent'mt, LLC)*,
  520 B.R. 455 (Bankr. D. Del. 2014) .......................................................................10

v

*Liquidating Trustee of App Fuels Creditors Trust v. Energy Coal Resources, Inc.*
*(In re Appalachian Fuels, LLC)*,
Adv. No. 11-1041, 2012 WL 4059948 (Bankr. E.D. Ky. Sept. 14, 2012) ...............................8

*Liquidation Trust of Solutions Liquidation LLC v. Stienes (In re Solutions*
*Liquidation LLC)*,
608 B.R. 384 (Bankr. D. Del. 2019) ........................................................................7

*Miller v. ANconnect, LLC (In re Our Alchemy, LLC)*,
Adv. Pro. No. 18-50633 (KG), 2019 WL 4447202 (Bankr. D. Del. Sept. 16,
2019) ...................................................................................................................22

*Miller v. Bradley (In re W.J. Bradley Mortgage Capital, LLC)*,
598 B.R. 150 (Bankr. D. Del. 2019) ........................................................................6

*Miller v. Easy Star Records (In re DA Liquidating Corp.)*,
622 B.R. 172 (Bankr. D. Del. 2020) ......................................................................21

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
331 F.3d 406 (3d Cir. 2003)...................................................................................14

*Morrone ex rel. Arotech Corp. v. Erlich*,
No. 09 CV 1910(RJD)(VVP), 2011 WL 1322085 (E.D.N.Y. Mar. 31, 2011).......................11

*Notinger v. Costa (In re Robotic Vision Sys., Inc.)*,
374 B.R. 36 (Bankr. D.N.H. 2007) .........................................................................11

*Official Comm. of Unsecured Creditors of Washington Mutual, Inc. v. Corcoran*
*(In re Washington Mutual, Inc.)*,
Adv. No. 10-53158, 2013 WL 3757330 (Bankr. D. Del. Jul. 16, 2013) ..............................21

*Ogus v. SportTechie, Inc.*,
C.A. No. 2018-0869-AGB, 2020 WL 502996 (Del. Ch. Jan. 31, 2020) ................................11

*Phoenix Corporate Recovery Services, LLC v. Astrachan (In re Beaulieu Group,*
*LLC)*,
Adv. No. 18-4027-BEM, 2021 WL 4469928 (Bankr. N.D. Ga. Sept. 29, 2021) ............22, 23

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
102 A.2d 155 (Del. Ch. 2014)................................................................................26

*Sama v. Mullaney (In re WonderWork, Inc.)*,
626 B.R. 94 (Bankr. S.D.N.Y. 2020) ....................................................................8, 9

*Smith v. Weinshaker (In re Draw Another Circle)*,
602 B.R. 878 (Bankr. D. Del. 2019) ........................................................................7

*Snyder v. Crusader Servicing Corp.*,
   231 A.3d 20 (Pa. Super. Ct. 2020) ........................................................................10

*Stanziale v. DMJ Gas-Marketing Consultants, LLC (In re Tri-Valley Corp.)*,
   Adv. No. 14-50446 (MFW), 2015 WL 110074 (Bankr. D. Del. Jan. 7, 2015)..............21, 22

*Summy-Long v. Pennsylvania State University*,
   226 F. Supp. 3d 371 (M.D. Pa. 2016) ....................................................................17

*Summy-Long v. Pennsylvania State University*,
   715 Fed. App'x 179 (3d Cir. 2017)........................................................................18

*THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*,
   Adv. No. 51079 (MFW), 2016 WL 1599798 (Bankr. D. Del. Apr. 18, 2016)...........21, 22, 27

*TWA Inc. Post Confirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post Confirmation Estate)*,
   305 B.R. 228 (Bankr. D. Del. 2004) ......................................................................21

*U.S. v. Shipbuilding*,
   473 F.3d 506 (3d Cir. 2007)..................................................................................28

*USG Insurance Services, Inc. v. Bacon*,
   Civ. Act. No. 2:16-cv-01024, 2016 WL 6901332 (W.D. Pa. Nov. 22, 2016) .........................10

*In re Walt Disney Co. Derivative Litigation*,
   No. Civ.A. 15452, 2004 WL 2050138 (Del. Ch. Sept. 10, 2004) ....................................10, 11

*In re Walt Disney Co. Derivative Litigation*,
   907 A.2d 693 (Del. Ch. 2005)................................................................................11

*In re Walt Disney Co. Derivative Litigation*,
   906 A.2d 27 (Del. 2006) ......................................................................................11

*Weis-Buy Services, Inc. v. Paglia*,
   411 F.3d 415 (3d Cir. 2005)..................................................................................14

*York Linings v. Roach*,
   No. 16622-NC, 1999 WL 608850 (Del. Ch. Jul. 28, 1999)........................................10

**Statutes**

6 Del. C. § 1304 .........................................................................................2, 24, 25, 28

6 Del. C. § 1305 .........................................................................................5, 24, 25, 26

6 Del. C. § 1309 ...............................................................................................26

10 Del. C. § 8106 ..................................................................................................13

11 U.S.C. § 108 ...................................................................................................13

11 U.S.C. § 544 ...................................................................................2, 5, 24, 27

11 U.S.C. § 547 ...........................................................................................*passim*

11 U.S.C. § 548 ...........................................................................................*passim*

11 U.S.C. § 550 ...........................................................................................*passim*

42 Pa. Const. Stat. § 5524 .................................................................................13

**Other Authorities**

Delaware Bankrupcty Local Rule 9006-2.........................................................29

Federal Rule of Bankrptcy Procedure 7008........................................................3

Federal Rule of Bankrptcy Procedure 7012........................................................7

Federal Rule of Bankrptcy Procedure 9006......................................................29

Federal Rule of Civil Procedure 8 ......................................................................7

Federal Rule of Civil Procedure 12 ...........................................................*passim*

## INTRODUCTION

Defendants John Danielson, Frank Jalufka, and Mark McEachen (collectively, "Later Defendants") respectfully submit this memorandum of law (the "Opening Brief") in support of their (I) Motion to Dismiss, (II) Motion for a More Definite Statement, (III) Motion to Extend Answer Deadline, and (IV) Joinder to Request for Judicial Notice (the "Motion") with respect to the First Amended Complaint [Adv. D.I. 91][2] (the "FAC") filed by plaintiff George L. Miller, as chapter 7 trustee (the "Trustee") for the estates of the above-captioned debtors ("Debtors").[3]  To avoid burdening the Court with repetitive briefing, Later Defendants adopt and incorporate by reference certain arguments set forth in the briefs filed by the other Defendants as stated herein.[4]

## NATURE AND STAGE OF PROCEEDING AND SUMMARY OF ARGUMENT

Debtors filed chapter 7 petitions for bankruptcy on June 29, 2018 (the "Petition Date"), and George L. Miller was appointed Trustee.  In the adversary complaint filed on June 17, 2020 [Adv. D.I. 1] (the "Complaint"), Miller asserted various claims against former directors and officers of certain Debtors (Defendants) in his capacity as Trustee for the estates of all of the 56 Debtors whose cases are being jointly administered under the above-captioned chapter 7 case.

The claims set forth in the Complaint generally fell into two categories: (1) recycled breach of fiduciary duty and fraud claims, comprising Claims I (Breach of Fiduciary Duties), II (Fraud), and III (Civil Conspiracy), and (2) claims relating to alleged payments made under employment contracts, comprising Claims IV (Corporate Waste), V (Unjust Enrichment), VI (Avoidance of

---

[2] All docket references herein refer to the above-captioned adversary docket, No. 20-50627 (CTG).

[3] Capitalized terms not defined herein bear the meaning assigned to them in the FAC.

[4] Those briefs are being concurrently filed by John Devitt Kramer and Mark Novad (the "KN Brief"), and Edward West and Mick Beekhuizen (the "WB Brief", collectively, and together with the related motions to dismiss of those defendants, "Defendants' Briefs").  Kramer and Novad are also concurrently filing a request for judicial notice in support of the KN Brief (the "KN RJN"), which Later Defendants join as set forth herein.  The Complaint also named Todd Nelson, Samuel Cowley, and John McKernan as defendants; however, Trustee's claims against them were dismissed as time-barred and are not being pursued in the FAC.  *See* FAC at 36 n.3.  Kramer, Novad, West, Beekhuizen, and Later Defendants are the remaining defendants under the FAC (collectively, "Defendants").

Transfer Pursuant to 11 U.S.C. § 548(a)(1)(A)), VII (Avoidance of Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B), VIII (Avoidance of Transfer Pursuant to 11 U.S.C. § 547(b)), IX (Avoidance of Transfer Pursuant to 6 Del. C. § 1304(a)(1), and 11 U.S.C. § 544), and X (Recovery of Transfers Under 11 U.S.C. § 550). All Defendants filed motions to dismiss the Complaint (collectively, the "Initial Motions to Dismiss"). *See* [Adv. D.I. 40]-[Adv. D.I. 50].

On January 12, 2022, the Court issued a memorandum opinion [Adv. D.I. 87] (the "Memorandum Opinion") granting in part and denying in part the Initial Motions to Dismiss. The Court dismissed without prejudice all claims in the Complaint other than (i) breach of fiduciary duty claims against Defendants alleged to have served as fiduciaries of a Delaware Debtor within three years before the Petition Date or a Pennsylvania Debtor within two years before the Petition Date; (ii) civil conspiracy claims premised on the surviving breach of fiduciary duty claims against those same Defendants; and (iii) constructive fraudulent transfer claims, which claims were not dismissed. Mem. Op. at 45. On February 4, 2022, the Court entered an agreed form of order on the Initial Motions to Dismiss consistent with the rulings in the Memorandum Opinion [Adv. D.I. 90] (the "MTD Order"), which also granted Trustee leave to file an amended complaint and authorized Defendants to move or plead in response to the amended complaint. MTD Order at 3.

On February 15, 2022, Trustee filed the FAC, which is nearly identical to the Complaint and remains woefully deficient. Trustee's minimal amendments primarily consist of attempts to remedy the specific defects flagged by the Court with respect to the section 547(b) claims in Claim VIII by adding the single allegation that "[a]ll of the Excessive Payments to Defendants were made by Debtor Education Management II LLC" ("EDMC II"), FAC ¶ 136, and a conclusory assertion of compliance with the "reasonable due diligence" requirement under section 547(b), *id.* ¶ 199. Other amendments include (i) adding a statement that the breach of fiduciary duty claims are non-

core and that Trustee does not consent to the Court's entry of final orders or judgment (in response to the Court's observation in footnote 20 of the Memorandum Opinion that the Complaint did not comply with Rule 7008 of the Federal Rules of Bankruptcy Procedure),[5] *id.* ¶ 6; (ii) modifying the address for one Defendant, FAC ¶ 14; (iii) clarifying that Debtors' nonexistent alleged fraud on regulators did not extend into the post-petition period, *id.* ¶ 90; (iv) adding a conclusory assertion (without any specific factual allegations)[6] that Debtors "failed to pay debts when due, were inadequately capitalized and had liabilities that exceeded the fair value of their assets," *id.* ¶ 143; (v) deleting references to some – but not all – facially time-barred section 547(b) claims, *id.* ¶¶ 193-194, 198; (vi) adding claims under additional provisions of title 6 of the Delaware Code (the "DUFTA") in Claim IX, *id.* ¶ 202; and (vii) adding numerous footnotes acknowledging that various previously-dismissed claims are being included in the FAC "solely for purposes of preserving [Trustee's] appellate rights" and that Defendants "need not plead to" such claims, *see, e.g.*, *id.* at 4 n.2, 39 n.4.  Later Defendants are named in all Claims in the FAC.

Like the Complaint, the FAC relies heavily on vague group pleading and conclusory assertions masquerading as factual allegations, particularly as to Later Defendants.  The FAC perpetuates many of the defects in the Complaint and creates additional confusion regarding the status and scope of a number of claims, thus warranting dismissal and/or a more definite statement.

As to Claim I, all breach of fiduciary duty claims against Later Defendants for breaches occurring before Later Defendants allegedly became fiduciaries should be dismissed with prejudice because Later Defendants could not breach fiduciary duties they did not yet have.

---

[5] Later Defendants presume Trustee similarly asserts that the civil conspiracy claims in Claim III are non-core insofar as they are premised on the breach of fiduciary duty claims, but Trustee should be required to clarify this point.

[6] Later Defendants dispute the new conclusory allegations in paragraph 143 of the FAC, but recognize that the Court previously ruled that Trustee's allegations of insolvency were sufficient "at the motion to dismiss stage."  *See* Mem. Op. at 41 n.110.

Further, claims against McEachen and Danielson for the period before they became directors in April 2015 are time-barred under Delaware or Pennsylvania law, and claims against Jalufka for the period before he joined as CFO in January 2016 are time-barred under Pennsylvania law, as discussed in Section I.D of the WB Brief. Later Defendants also move for a more definite statement regarding all claims asserted against them in Claim I based on the excessively-vague allegations therein.

As to Claim III, all civil conspiracy claims against each Later Defendant for the period before such Later Defendant's role as an alleged fiduciary should be dismissed with prejudice because the FAC is devoid of allegations that Later Defendants – who are not specifically alleged to have had any involvement with Debtors or other Defendants at the time – did or said anything, much less actively conspired with any then-current fiduciaries to breach such fiduciaries' duties, during such period.

As to Claim VII, all claims therein should be dismissed with prejudice. Trustee improperly purports to assert claims on behalf of Debtors other than EDMC II, the sole alleged Debtor-transferor, and all of Trustee's section 548(a)(1)(B) claims fail because, as set forth in Section IV.A of the KN Brief, Trustee fails to adequately allege a transfer of an interest of any Debtor in property. The FAC also improperly asserts a claim to avoid the January 15, 2016 payment to McEachen under Claim VII despite Trustee having expressly acknowledged that such claim was time-barred.

As to Claim VIII, notwithstanding Trustee's minimal efforts to revive the preference claims asserted therein, all such claims remain deficient and should be dismissed with prejudice. Trustee improperly purports to assert claims on behalf of Debtors other than EDMC II, and all of the section 547(b) claims fail because Trustee fails to adequately allege a transfer of an interest of any

Debtor in property, as well as additional elements of the claims. Further, any claim to avoid the February 2, 2018 payment to McEachen under section 547(b) is time-barred and meritless because McEachen is not alleged to have been an insider when the transfer was made.

As to <u>Claim IX</u>, all claims therein should be dismissed with prejudice. Trustee improperly purports to assert claims on behalf of Debtors other than EDMC II, and all section 544(b) claims fail because Trustee fails to adequately allege a transfer of an interest of any Debtor in property and, for any claims under 6 Del. C. § 1305(b), fails to even recite, much less allege, the elements. In addition, any claim to avoid the January 15, 2016 payment to McEachen under section 1305(b) of the DUFTA should be dismissed with prejudice because such claim is plainly time-barred.

As to <u>Claim X</u>, all claims therein should be dismissed with prejudice. Trustee improperly purports to assert claims on behalf of Debtors other than EDMC II, and all section 550 claims in Claim X fail because Trustee fails to adequately allege a transfer of an interest of any Debtor in property. Trustee also appears to assert invalid claims for recovery of transfers avoided pursuant to previously-dismissed Claims not revived through amendments in the FAC, as well as pursuant to re-pled avoidance action claims that should be dismissed for the reasons set forth herein.

Finally, as to all claims in fully-dismissed Claims (Claims II, IV, V and VI) and partially-dismissed Claims (Claim I, III, and VII) of the FAC that Trustee is not seeking to revive through amendments but has included to reserve appellate rights,[7] Later Defendants move for a more definite statement clarifying that not only are such dismissed claims included solely for the purpose of preserving Trustee's appellate rights, but for all other purposes, such claims shall be disregarded as dismissed and, notwithstanding anything in the FAC to the contrary, any allegations with respect thereto shall not be incorporated by reference into other sections of the FAC.

---

[7] Trustee did not seek to reserve appellate rights as to the Court's prior dismissal of claims in Claim VIII or Claim X.

5

## STATEMENT OF RELEVANT FACTS[8]

Debtors operated as a for-profit provider of secondary education.  FAC ¶¶ 1-2.  Trustee asserts the remaining breach of fiduciary duty claims in Claim I and the remaining civil conspiracy claims in Claim III against various former directors and officers primarily but not exclusively based on allegedly improper recruiting practices that occurred between 2007 and 2011.  *Id*. ¶¶ 1, 3, 36-40, 156-162.  The constructive fraudulent transfer claims and preferential transfer claims in Claims VII, VIII, and IX and the claims for recovery of avoided transfers under section 550 of the Bankruptcy Code in Claim X are asserted against a subset of the same former directors and officers based on their receipt of so-called "Excessive Payments."  *Id*. ¶ 135.

Each of Later Defendants joined Debtors well after the bulk of the allegedly improper recruiting practices occurred.  McEachen joined the EDMC Boards (defined as the boards of EDMC and the four Delaware Holding Companies), *id*. ¶ 13, as Chairman in April 2015 and held that role until December 2017, and served as Chief Executive Officer ("CEO") of EDMC and the Delaware Holding Companies from September 2015 until December 2017.  *Id.* ¶ 17.  Danielson joined the EDMC Boards in April 2015 and served until June 2018.  *Id.* ¶ 21.  Jalufka served as Chief Financial Officer ("CFO") of EDMC and the Delaware Holding Companies from January 2016 to December 2017, and as CEO of EDMC and President of each Debtor from December 2017 until the Petition Date.  *Id.* ¶ 18.

---

[8] The facts contained herein are based on the FAC, documents integral to the FAC, and documents that are a matter of public record (including those attached to the KN RJN).  Later Defendants dispute many of the factual allegations set forth in the FAC, including, without limitation, those relating to the descriptions and durations of Later Defendants' roles.  Nevertheless, Later Defendants recognize that, for purposes of the Motion only, the Court must accept the truth of any well-pled allegations.  "In deciding a motion to dismiss, courts generally only consider the allegations contained in the complaint, exhibits attached thereto, and matters of public record." *Miller v. Bradley (In re W.J. Bradley Mortg. Capital, LLC)* 598 B.R. 150, 164 (Bankr. D. Del. 2019).  "However, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" *De La Rochelle v. Woodbridge Grp. of Cos., LLC (In re Woodbridge Grp. of Cos., LLC)*, 593 B.R. 200, 207 (Bankr. D. Del. 2018) (quoting *Angstadt v. Midd-West School Dist.*, 377 F.3d 338, 342 (3d Cir. 2004)).

Later Defendants are not alleged to have been involved with Debtors or other Defendants, or to have said or done *anything whatsoever*, prior to assuming their respective roles as directors and/or officers.  Rather, Later Defendants were brought in to facilitate a regulator-approved wind-down and teach-out process for Debtors shortly before (in the case of McEachen and Danielson) and shortly after (in the case of Jalufka) the 2015 Settlements that resulted from long-pending Qui tam Actions based on the same allegations relied on by Trustee for the bulk of the claims asserted in the FAC.  *See id.* ¶¶ 123-130.

## ARGUMENTS AND AUTHORITIES

### I.     Governing Standards and Law

"Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted." *Joseph v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 116 (Bankr. D. Del. 2008).  "As a threshold matter, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Liquidation Trust of Solutions Liquidation LLC v. Stienes (In re Solutions Liquidation LLC)*, 608 B.R. 384, 396 (Bankr. D. Del. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009)) (alterations in original).  "The plausibility standard is not akin to the probability standard but requires more than the sheer possibility that a defendant acted unlawfully." *Smith v. Weinshaker (In re Draw Another Circle)*, 602 B.R. 878, 892 (Bankr. D. Del. 2019).  "[L]abels and conclusions" or "formulaic recitation of the elements of a cause of action" are not sufficient.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not state a claim and should be dismissed. *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 35 (Bankr. D. Del. 2011) (citing *Iqbal*, 556 U.S. at 679).  "Rule 12(b)(6) is inextricably linked to Federal Rule of Civil Procedure 8(a)(2) . . .,

7

which provides that '[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Giuliano v. Gibson, Dunn & Crutcher LLP (In re Liquid Holdings Group, Inc.)*, 2018 WL 6841351, at *1 (Bankr. D. Del. Nov. 14, 2018).

Rule 12(e) of the Federal Rules of Civil Procedure permits defendants to move for a more definite statement where the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). While Rule 12(e) motions are disfavored, "they are appropriate when the pleading is wholly uninformative as to the basis of the claim . . . . Indeed, [d]epending upon the type of action, and the available defenses, certain information may be deemed necessary for forming a response." *Lichtenstein v. First Nat'l Bank of Chester Cnty. (In re Moll Group, LLC)*, 2005 WL 6506459, at *7 (Bankr. E.D. Pa. June 15, 2005) (internal quotations omitted). *See also Liquidating Tr. of App Fuels Creditors Trust v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC)*, 2012 WL 4059948, at *5 (Bankr. E.D. Ky. Sept. 14, 2012) (granting motion for more definite statement where defendants were "left to guess" whether undefined names in complaint referred to "the same group of individuals or differing groups"); *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.)*, 333 B.R. 506, 531 n.31 (Bankr. D.D.C. 2005) (noting that court would "view favorably" a Rule 12(e) motion where complaint "refer[red] repeatedly to 'the Debtors' collectively, without establishing . . . that harms suffered by one debtor harmed the others"). "The decision to order a more definite statement lies within the Court's discretion, and if a complaint is overly prolix or complex, a more definite statement may assist the court in the cumbersome task of sifting through myriad claims, many of which may be foreclosed by various defenses." *Sama v. Mullaney (In re WonderWork, Inc.)*, 626 B.R. 94, 135 (Bankr.

8

S.D.N.Y. 2020) (internal quotations omitted)).[9]

## II.    Trustee Fails to Overcome the Deficiencies of the Complaint.

Like the Complaint, the FAC relies heavily on vague group allegations as to all of (i) against whom, (ii) for what conduct (timing or nature), and (iii) on whose behalf the various claims are being asserted.  Further, for some of the remaining claims, the FAC fails to adequately plead the basic elements of the claims.  The overwhelming lack of basic information regarding the claims asserted is particularly troubling with respect to Later Defendants, who did not even start working at EDMC until 2015 or 2016—well after the majority of the allegations giving rise to the claims in the FAC.  FAC ¶¶ 17, 18, 21.  The FAC also fails to adequately take into account the rulings in the Court's Memorandum Opinion, and is unclear as to the status and scope of a number of claims asserted therein.  Accordingly, Later Defendants move for dismissal with prejudice pursuant to Rule 12(b)(6) and/or for a more definite statement under Rule 12(e) as and to the extent set forth below.

### A.    Claim I – Breach of Fiduciary Duties[10]

Because, as alleged in the FAC, Later Defendants had no involvement with, much less fiduciary duties to, the Debtors before they were first appointed as directors or officers in April 2015 (McEachen and Danielson) or in January 2016 (Jalufka), they could not have breached any fiduciary duties prior to those dates.  *Cf.* Mem. Op. at 23 (explaining that claims against Defendants

---

[9] The Court may grant a motion for a more definite statement even as to claims it declined to dismiss in the Memorandum Opinion.  *See, e.g.*, *In re WonderWork, Inc.*, 626 B.R. at 135 ("Although the Court previously sustained portions of the fraudulent transfer claims in the *Prior Decision*, the Court now concludes that it overlooked a fatal deficiency in the *Complaint* and will grant [defendant's] alternative request to file a more definite statement . . . solely with respect to the fraudulent transfer claims [asserted in the amended complaint]").

[10] Later Defendants address Pennsylvania and Delaware law as the laws identified by the Court as governing claims for breaches of fiduciary duty to EDMC and the Delaware Holding Companies, respectively.  *See* Mem. Op. at 14. To the extent Trustee purports to assert breach of fiduciary duty claims relating to other Debtors (which, as discussed herein, is unclear from the face of the FAC), other statutes-of-limitations may apply, and Later Defendants reserve all rights with respect to any such claims (including, without limitation, regarding governing law).

who did not serve as fiduciaries during the applicable statute-of-limitations periods must be dismissed because "[a] defendant who departed the Company outside that timeframe cannot have taken any action within the statutory period that would constitute a breach").

Further, any claims against (i) McEachen and Danielson for breaches of fiduciary duties to EDMC or the Delaware Holding Companies occurring before their appointment as directors in April 2015 or (ii) Jalufka for breaches of fiduciary duties to EDMC occurring before his appointment as CFO of EDMC in January 2016 are barred by the applicable statutes-of-limitations.

Finally, the FAC remains so vague regarding the claims asserted in Claim I that a more definite statement under Rule 12(e) is warranted.

1.    <u>Claims against Later Defendants for Breaches of Fiduciary Duties Occurring before Later Defendants Became Fiduciaries Are Meritless as a Matter of Law</u>

Under both Delaware and Pennsylvania law, the existence of a fiduciary duty is a necessary element of a breach of fiduciary duty claim. *See, e.g.*, *USG Ins. Servs., Inc. v. Bacon*, 2016 WL 6901332, at *6 (W.D. Pa. Nov. 22, 2016) ("To allege a breach of fiduciary duty under Pennsylvania law, a plaintiff must establish that a fiduciary or confidential relationship existed between her and the defendant."); *accord, e.g.*, *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 31-32 (Pa. Super. Ct. 2020) (affirming ruling that breach of fiduciary duty claims failed under Pennsylvania law due to, *inter alia*, failure to establish fiduciary duty); *Lightsway Litig. Servs., LLC v. Yung (In re Tropicana Ent'mt, LLC)*, 520 B.R. 455, 470 (Bankr. D. Del. 2014) ("'The elements of a breach of fiduciary duty claim [under Delaware law] are (1) that the fiduciary duty exists and (2) that the fiduciary breached that duty.' . . .  For a fiduciary duty to exist, there must first be a fiduciary relationship." (quoting *York Linings v. Roach*, 1999 WL 608850, at *2 (Del. Ch. Jul. 28, 1999)). Further, directors and officers "become fiduciaries only when they are officially installed, and receive the formal investiture of authority that accompanies such office or directorship." *In re*

*Walt Disney Co. Deriv. Litig.*, 2004 WL 2050138, at *4 (Del. Ch. Sept. 10, 2004) (reasoning that "finding that [director] owed fiduciary duties at some time before [he became a director] would lead to significant uncertainty," and adopting "bright-line rule" that fiduciary duties arise upon official installment).

Consistent with these principles, courts have also recognized that, as a general rule, "[d]irectors cannot be held liable for actions of the board of directors taken before the director assumes his position." *Notinger v. Costa (In re Robotic Vision Sys., Inc.)*, 374 B.R. 36, 57 (Bankr. D.N.H. 2007); *Ebbert v. Plymouth Oil Co.*, 348 Pa. 129, 137 (Pa. 1943) (noting that a director is generally "not responsible for anything that happened in the corporation before he became a member of the board"); *see also, e.g.*, *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 758 (Del. Ch. 2005) (citing with approval prior holding in *In re Walt Disney Co. Deriv. Litig.*, 2004 WL 2050138, at *4 regarding absence of fiduciary duty for "directors-to-be" under Delaware law), *aff'd*, 906 A.2d 27 (Del. 2006); *Ogus v. SportTechie, Inc.*, 2020 WL 502996, at *10 (Del. Ch. Jan. 31, 2020) (granting director's motion to dismiss breach of fiduciary duty claims based on alleged wrongdoing occurring prior to director's appointment); *Morrone ex rel. Arotech Corp. v. Erlich*, 2011 WL 1322085, at *6 (E.D.N.Y. Mar. 31, 2011) (applying Delaware law, and noting that directors "cannot be held liable for acts or omissions that occurred before they became affiliated with the Company"); *In re Fuqua Indus., Inc. S'holders Litig.*, 2005 WL 1138744, at *5 (Del. Ch. May 6, 2005) (holding that directors could not be held responsible for any breach of fiduciary duty associated with transaction that occurred before directors became fiduciaries because they owed no fiduciary duties at time of transaction).

Here, Later Defendants could not have breached fiduciary duties before their terms as directors or officers because they had no such duties. The FAC alleges that McEachen and

Danielson first became directors in April 2015, FAC ¶¶ 17, 21, and that Jalufka first became an officer in January 2016, *id.* ¶ 18.  The FAC is unclear as to the temporal scope of claims against Later Defendants under Claim I.  *See infra* II.A(3).  On the one hand, Claim I asserts that "*as officers and/or directors*, Defendants owed fiduciary duties," *id.* ¶ 148, suggesting that Later Defendants are only alleged to have breached fiduciary duties while they were "officers and/or directors."  However, both Claim I specifically and the FAC generally are replete with references to unspecified "Defendants" having allegedly engaged in various acts, including during the period before Later Defendants first became directors and/or officers of any Debtor.  *See, e.g.*, *id.* ¶¶ 73, 104-105, 156-160.  Among other things, the allegation that the misconduct of "Defendants" (including Later Defendants) "resulted in the 2015 Settlements," *id.* ¶¶ 159-160, strains credulity as to McEachen and Danielson, who became directors less than a year before the 2015 Settlements and several years after the Qui tam Actions that ultimately resulted in the 2015 Settlements had been commenced, and is wholly nonsensical as to Jalufka, who did not have any role at the Debtors until several months after the 2015 Settlements.

For these reasons, as a matter of law, Claim I  fails to state a claim against Later Defendants for any alleged breaches of fiduciary duties by Later Defendants occurring before Later Defendants served as fiduciaries.

2.    <u>Certain Breach of Fiduciary Duty Claims against Later Defendants Are Time-Barred</u>

In addition to the above defects, any breach of fiduciary duty claims against (i) McEachen and Danielson for alleged breaches of fiduciary duties to EDMC or the Delaware Holding Companies occurring before they became directors and (ii) Jalufka for alleged breaches of fiduciary duties to EDMC occurring before he became CFO of EDMC, are time-barred for the reasons set forth below and in Section I.D of the WB Brief.

The FAC alleges that EDMC is a Pennsylvania corporation and the Delaware Holding Companies are Delaware entities.  FAC ¶ 10; *see also id.* Ex. A.  Thus, as the Court held, claims for breaches of fiduciary duties to EDMC and the Delaware Holding Companies are subject to a two-year statute of limitations and a three-year statute of limitations, respectively.  *See* Mem. Op. at 3, 14, 17, 20-21.  *See also* 42 Pa. Const. Stat. § 5524(7); 10 Del. C. § 8106; 11 U.S.C. § 108. The Court previously rejected all of Trustee's tolling arguments with respect to the statutes-of-limitations for breach of fiduciary duty claims (which Trustee makes no attempt to amend), and further rejected Trustee's argument that claims for breach of fiduciary duty did not accrue until the harmful effects from the breaches were realized, holding that "claims for breach would have accrued no later – on any plausible theory – than the time that the underlying actions were known to the general public," and that "the practices that gave rise to [the Qui tam Actions] were a matter of public record for years before the 2015 settlements."  *See* Mem. Op. at 22, 24-25.  Thus, in discussing the Claim I claims that survived dismissal, the Court focused on allegations relating to the two- or three-year period immediately preceding the Petition Date.  *See* Mem. Op. at 4 ("[D]espite the fact that the complaint alleges that the debtors' business was in wind-down mode for most of this period (which certainly raises questions about how breaches alleged to have occurred in this period caused injury to the debtor), the Court concludes that the allegations in the complaint are sufficient to survive a motion to dismiss"), 23-34 (referring to "allegations that the false certifications continued to be made through the filing of the bankruptcy petition" and noting that "[t]o be sure, once the debtors began to wind down their operations and liquidate their businesses, there are questions about how the alleged breaches may have given rise to claims for damages").  The Court rejected Trustee's argument that "actions taken outside the limitations period can form the basis of a claim under the continuing violations doctrine," explaining that the

13

doctrine was inapplicable "[w]here there is a basis to segment the alleged wrongful actions into discrete periods," such as "the termination of the fiduciary duty." Mem. Op. at 23 n.64.[11]

Based on the amendments to the FAC, Trustee appears to misconstrue the Court's rulings as permitting the assertion of any and all breach of fiduciary duty claims, whenever arising, against any Defendant who happened to serve as an employee of EDMC and/or the Delaware Holding Companies within two or three years before the Petition Date. This sweeping approach ignores the carefully-articulated reasoning behind the rulings on Claim I in the Memorandum Opinion. Because the Court has already determined that there is no basis to toll the applicable statutes-of-limitations as to Trustee's breach of fiduciary duty claims, the only conceivable basis for reviving otherwise-time-barred claims would be the continuing violations doctrine, which is of no help to Trustee for the reasons set forth below.

First, the continuing violations doctrine does not apply where, as here, the FAC alleges a series of wrongful acts, made by different individuals over a period of time, each of which was independently actionable when made. In such cases, the clock begins to run from *each* wrongful act, not the *last* wrongful act. *Desimone v. Barrows*, 924 A.2d 908, 925 n.39 (Del. Ch. 2007). The doctrine also does not apply where, as here, "plaintiffs are aware of the injury at the time it occurred." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005).

Second, even if the continuing violations doctrine applied to Trustee's claims (and it does not), the doctrine still would not apply to any Claim I claims against Later Defendants pre-dating

---

[11] With respect to Defendants' judicial estoppel and issue preclusion arguments (based on prepetition litigation regarding Trustee's claims), the Court concluded that "those defenses, in the circumstances of this case, would require an assessment of extrinsic material that is not subject to judicial notice and thus are not properly addressed on a motion to dismiss." Mem. Op. at 4. Later Defendants reserve the right to renew such arguments in subsequent phases of this litigation.

their respective roles as fiduciaries because Later Defendants could not "continue" to breach fiduciary duties they did not have in the first instance. Just as the termination of fiduciary duties provides a natural cut-off preventing application of the continuing violations doctrine to claims based on breaches occurring thereafter, the commencement of fiduciary duties provides a natural cut-off preventing application of the continuing violations doctrine to claims based on breaches occurring prior thereto. Thus, any claims against McEachen and Danielson for breaches of fiduciary duties to EDMC or the Delaware Holding Companies occurring prior to April 2015 (outside the applicable statutes-of-limitations under both Delaware and Pennsylvania law) and any claims against Jalufka for breaches of fiduciary duties to EDMC occurring prior to January 2016 (outside the applicable statute-of-limitations under Pennsylvania law) are time-barred.

### 3.    A More Definite Statement Is Warranted as to Claims in Claim I

Later Defendants also move for a more definite statement as to all claims against them in Claim I (to the extent not dismissed pursuant to the Motion and Defendants' Briefs) clarifying, at a minimum, (1) the capacity in which Trustee is bringing the claims in Claim I, (2) to whom the duties allegedly breached by each Later Defendant were purportedly owed, (3) which alleged breaches were committed by Later Defendants, (4) during which time period such alleged breaches were committed, and (5) the state of formation of any relevant entities. As pled, Trustee's breach of fiduciary duty claims are so vague as to be unintelligible as to Later Defendants.

In Claim I (like all Claims), Trustee purports to assert claims as Chapter 7 Trustee for the estates of *all* of the numerous Debtors, *see* FAC ¶¶ 1, 3, and Claim 1 refers exclusively to duties and harms to these same collective "Debtors" rather than any particular Debtor, *see id.* ¶¶ 148, 160, 163. As the Memorandum Opinion made clear, "under the internal affairs doctrine, and in view of bankruptcy law's respect for the corporate form, the law of the state in which each entity is incorporated governs claims of breach of fiduciary duties running to that corporation." Mem.

Op. at 14.  Claim I of the FAC exclusively references Delaware law, FAC ¶¶ 152, 153, but does

not indicate how that law would apply to breaches of duties to EDMC, a Pennsylvania corporation,

much less to any of the many other Debtors whose states of formation are never specified, *see*

FAC n.1 & Ex. A (incomplete organization chart)).  These numerous entities may be subject to

laws imposing differing duties and statutes-of-limitations, some of which may render Trustee's

claims patently deficient.  The FAC does not allege that McEachen or Danielson held any positions

at any Debtors other than EDMC and the Delaware Holding Companies, nor that Jalufka held any

such positions other than in the brief period between the closing of the sale of substantially all of

Debtors' assets and the Petition Date.  *See* FAC ¶¶ 17, 18, 21.  Thus, even if some portion of the

claims in Claim I are not time-barred under the Memorandum Opinion, the FAC is far too vague

about which claims remain.

For the reasons set forth in this Section II(A), all claims in Claim I against each Later

Defendant for alleged breaches of fiduciary duties occurring before such Later Defendant was

alleged to be a fiduciary of the relevant Debtor(s) should be dismissed with prejudice.  In addition,

Later Defendants move for a more definite statement as to any surviving claims in Claim I

regarding, at a minimum (i) the capacity in which Trustee is bringing such claims,[12] (ii) to whom

the duties allegedly breached by each Later Defendant were purportedly owed, (iii) which alleged

breaches were committed by Later Defendants, (iv) during which time period such alleged

breaches were committed, and (v) the state of formation of any relevant entities.

### B.    Claim III – Civil Conspiracy

As to Claim III, the Court previously dismissed all civil conspiracy claims "except as they

---

[12] For example, standing may be restricted as to any Debtors, such as the Delaware Holding Companies, that are Delaware limited liability companies.  *See Beskrone v. OpenGate Capital Group, LLC (In re PennySaver USA Publ'g, LLC)*, 587 B.R. 445, 464-67 (Bankr. D. Del. 2018) (discussing unique restrictions on ability to pursue direct or derivative claims for breaches of fiduciary duties to Delaware limited liability companies).

relate to the surviving claims for breach of fiduciary duty" because such claims "fail[] in the absence of another live claim for an underlying tort or other cause of action." Mem. Op. at 5, 36. With respect to the remaining civil conspiracy claims, the Court acknowledged that the Complaint was "thin on specific allegations," but found that "allegations regarding the defendants' common participation in a plan to operate the debtor's business in a manner that violated applicable law is sufficient to survive a motion to dismiss." *Id*. at 37. Consistent with these rulings, Later Defendants move to dismiss the civil conspiracy claims against them to the extent such claims relate to the period before Later Defendants' alleged respective roles as directors and/or officers, because during that period, Later Defendants are not alleged to have had any fiduciary duties to or involvement with Debtors or other Defendants, much less any " combin[ation] or agree[ment] . . . to commit an unlawful act" or "participation in a plan to operate the debtor's business in a manner that violated applicable law." *See* Mem. Op. at 36-37.

The FAC is devoid of any allegations that Later Defendants had any involvement with the other Defendants or Debtors prior to becoming directors or officers, much less any allegations that Later Defendants conspired with then-current fiduciaries of the Debtors to breach such fiduciaries' duties prior to becoming directors or officers. While the FAC specifically identifies other Defendants as having engaged in alleged acts prior to Later Defendants' involvement, Later Defendants are, not surprisingly, only specifically identified with respect to acts occurring after Later Defendants became directors or officers. *Compare* FAC ¶¶ 100, 106, 108, 110, *with id.* ¶¶ 115-116, 161-162. Thus, even if the allegations in the FAC are sufficient to survive a motion to dismiss with respect to the period when Later Defendants were alleged to be fiduciaries (which the Court found was a "close" question, Mem. Op. at 30, they are insufficient as to any time before that period. *See Summy-Long v. Pa. State Univ.*, 226 F. Supp. 3d 371, 412 n.256 (M.D. Pa. 2016)

17

(dismissing conspiracy claim for lack of credibly-alleged meeting of the minds where "many of the Defendants worked at the [relevant institution] at different times" and "[c]learly, then . . . did not find themselves in a position to conspire with each other" (internal quotations omitted)), *aff'd*, 715 Fed. App'x 179 (3d Cir. 2017); *see also, e.g.*, *Adderly v. Stofko*, 2015 WL 4743776, at *3 (M.D. Pa. Aug. 11, 2015) (rejecting conspiracy claim "because many of the incidents occurred at different times and involved completely different defendants").[13]

To the extent any of Trustee's remaining Count I claims are dismissed, Trustee's claims in Claim III fail for lack of an underlying tort or other cause of action to the extent such claims are premised on the dismissed Count I claims. *See* Mem. Op. at 5. The Court should therefore dismiss with prejudice all civil conspiracy claims against Later Defendants in Claim III to the extent such claims relate to the period prior to Later Defendants' roles as directors and/or officers.

## C.    Claim VII – Avoidance of Transfers Pursuant to 11 U.S.C. § 548(a)(1)(B)

The Court denied the Initial Motions to Dismiss the constructive fraudulent transfer claims in Claim VII (and/or Claim IX)[14] because the Court was unable to "discern from the allegations of the complaint itself whether each payment in fact satisfied a specific legal obligation of the debtor to pay, or whether some of the payments reflected discretionary decisions of the debtor." Mem Op. at 5. The Court found that the Complaint's allegations were "sufficient, at the motion to dismiss stage, to allege that the debtors were insolvent when the transfers were made." *Id*. at 41 n.110. The Memorandum Opinion did not address Defendants' argument that any payments from

---

[13] Indeed, the Court dismissed all civil conspiracy claims against those Defendants who were not alleged to have been fiduciaries of any Debtors within the applicable statute-of-limitations period and thereby implicitly rejected Trustee's argument that such individuals could plausibly have conspired with other Defendants to breach fiduciary duties *after* their own fiduciary roles ended, *see* [Adv. D.I. 58] at 22; Mem. Op. at 36-37, and it is certainly no more plausibly or adequately alleged that Later Defendants – who would have had absolutely no stake in the matter prior to their time as alleged fiduciaries – conspired with other Defendants *before* Later Defendants' alleged fiduciary roles began.

[14] Later Defendants disputed whether the Complaint asserted any constructive fraudulent transfer claims in Claim IX, the heading of which referred solely to actual fraudulent transfer claims. *See* [Adv. D.I. 67] at 15. The Memorandum Opinion did not address this issue.

funds fully-encumbered by security interests of Debtors' secured creditors could not constitute transfers of an interest of a debtor in property as for avoidance action claims.[15]

In the subsequently-filed FAC, Trustee added an allegation identifying the alleged Debtor-transferor as EDMC II, *see* FAC ¶ 136, which is an obligor under Debtors' prepetition secured credit agreement. *See* KN RJN Ex 1. Trustee fails to state a claim under section 548(a)(1)(B) because, as discussed in Section IV.A of the KN Brief, any interest of EDMC II in the Excessive Payments was fully-encumbered and of no value to the EDMC II estate.

Further, despite having identified EDMC II as the sole Debtor-transferor, Trustee relies on vague allegations regarding the collective "Debtors" in Claim VII (as well as all other avoidance action claims). *See* FAC ¶¶ 187-188, 190. Trustee improperly purports to bring all claims in the FAC on behalf of the estates of numerous Debtors whose estates have not been substantively consolidated, *see id.* ¶ 1, but based on his allegations, there is no basis for Trustee to assert section 548(a)(1)(B) claims on behalf of the estates of non-transferors. All claims in Claim VII should be dismissed with prejudice to the extent asserted on behalf of Debtors other than EDMC II.

The claim to avoid the January 15, 2016 payment to McEachen under section 548(a)(1)(B) is also time-barred because the alleged transfer occurred more than two years before the Petition Date. *See* 11 U.S.C. § 548(a)(1). Trustee expressly conceded this point in prior briefing, *see* [Adv. D.I. 58] at 63 n.32 ("To the extent the Complaint pleads that the 2016 transfers are also avoidable under § 548 of the Bankruptcy Code, that was in error."), but the FAC fails to correct the admitted error. *See* FAC ¶ 191 (asserting that *all* "Excessive Payments" "constitute avoidable fraudulent transfers pursuant to Section 548(a)(1)(B) of the Bankruptcy Code").

---

[15] *See* [Adv. D.I. 43] at 24, 26, 28, 30. The Memorandum Opinion also did not address Later Defendants' arguments with respect to Trustee's claims under section 548(a)(1)(B)(ii)(IV), *see* [Adv. D.I. 43] at 29, [Adv. D.I. 67] at 15, which requires additional elements beyond insolvency and lack of reasonably equivalent value. *See* 11 U.S.C. § 548(a)(1)(B)(ii)(IV). Later Defendants reserve the right to renew their challenges to such claims in later phases.

### D.    Claim VIII – Avoidance of Transfers Pursuant to 11 U.S.C. § 547(b)

The Court previously dismissed the preferential transfer claims in Claim VIII for failure to identify the relevant Debtor-transferor.  Mem. Op. at 6, 42.  The Court also noted that certain Defendants (including Later Defendants) had raised questions about whether Trustee satisfied the "reasonable due diligence" requirement under section 547(b), but found it unnecessary to rule on the issue.  *Id.* at 43-44.  Trustee's limited attempts to save the dismissed preference claims fail, and such claims should be dismissed with prejudice.

Notwithstanding Trustee's conclusory assertion that he and his professionals have "conducted reasonable due diligence" as required by section 547(b), *see* FAC ¶ 199, the FAC (like the Complaint) fails to satisfy the basic pleading requirements for preference claims under section 547(b).  While Trustee has remedied his prior failure to identify the specific Debtor-transferor and struck some – but not all – time-barred claims from his allegations, the FAC remains largely unchanged from the Complaint and fails to state a claim for avoidance under section 547(b).  Trustee alleges, in conclusory fashion, that "[t]he Excessive Payments to Defendants were made on account of antecedent debts owed by the Debtors to the recipients of those payments before the transfers were made as set forth in various employee contracts," *id.* ¶ 196, and elsewhere alleges in various instances that the payments were "bonus payments" made "under" or "as set forth in" unspecified "employment contracts" or "employee contracts," *id.* ¶¶ 137-138, 141, 189, 196.  These bare-bones allegations are insufficient.

First, Trustee fails to identify any specific agreement with or antecedent debt to Later Defendants (or any Defendant).  The lack of information about the terms of the alleged contracts is important because those terms dictate whether there is, in fact, an antecedent debt – an element of the claim that Trustee has the burden to prove.  *See* 11 U.S.C. § 547(g).  It is well-established that "to survive a motion to dismiss, a complaint must include [among other information] . . . an

identification of the nature and amount of each antecedent debt." *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172, 176 (Bankr. D. Del. 2020); *see also, e.g.*, *Stanziale v. DMJ Gas-Mktg. Consultants, LLC (In re Tri-Valley Corp.)*, 2015 WL 110074, at *4 (Bankr. D. Del. Jan. 7, 2015) (dismissing complaint for failure "to allege sufficient facts detailing the nature of the alleged antecedent debt"); *TWA Inc. Post Confirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post Confirmation Estate)*, 305 B.R. 228, 232-33 (Bankr. D. Del. 2004) (dismissing preference complaint based on, *inter alia*, "failure to provide the nature and amounts of the debts").

The FAC fails to identify the amount of any antecedent debt, and its references to the Excessive Payments to Later Defendants being "bonus payments" made "under"/"as set forth in" unspecified "employment contracts" or "employee contracts" is insufficient to satisfy the pleading requirements for section 547(b) claims.  As noted in Section IV.B.2 of the KN Brief, the mere fact that a payment was allegedly made pursuant to a contract does not suffice to establish that the payment was made on account of an antecedent debt.  *See In re USDigital, Inc.*, 443 B.R. at 37-38 (dismissing § 547(b) claims for failure to adequately plead existence of antecedent debt where terms of contracts indicated that payment obligations arose simultaneously with or after challenged transfers); *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*, 2016 WL 1599798, at *3 (Bankr. D. Del. Apr. 18, 2016) (dismissing preference claims where complaint "merely" alleged that defendants "may have entered into one or more agreements" for services with "one or more of the Debtors"); *Official Comm. of Unsecured Creditors of Washington Mut., Inc. v. Corcoran (In re Washington Mut., Inc.)*, 2013 WL 3757330, at *4 (Bankr. D. Del. Jul. 16, 2013) (explaining, in dismissing § 547(b) claim, "[b]ecause the severance was paid on the same date that [the debtor's] obligation arose, the Court finds that the severance payment was not made on account of an antecedent debt"); *see also Anderson News, LLC v. The News Group, Inc. (In re Anderson News,*

21

*LLC)*, 2012 WL 3638785, at *2 (Bankr. D. Del. Aug. 22, 2012) ("Payment of a debt on the date it was incurred is generally not for or on account of an antecedent debt.").

Second, Trustee fails to allege an antecedent debt owed "to the debtor" – i.e., *the specific Debtor-transferor* – as required under section 547(b).  *See* 11 U.S.C. § 547(b) (providing that trustee may avoid a "transfer of an interest of *the debtor* in property . . . for or on account of an antecedent debt *owed by the debtor*" (emphasis added)).  Trustee's vague allegation that EDMC II made the Excessive Payments "on account of antecedent debts owed by *the Debtors*," FAC ¶ 196 (emphasis added), is insufficient even for motion-to-dismiss purposes.  *See In re Tri-Valley Corp.* 2015 WL 110074, at *3 ("When there are multiple debtors in a case, the [c]omplaint must state which debtor owed the antecedent debt and that the same debtor made the preferential transfer."); *accord In re THQ Inc.*, 2016 WL 1599798, at *3; *see also, e.g.*, *Gellert v. The Lenick Co. (In re Crucible Materials Corp.)*, 2011 WL 2669113, at *4 (Bankr. D. Del. Jul. 6, 2011) (dismissing preference claims for failure to adequately allege antecedent debt where complaint stated that "[t]he Transfers were for, or on account of, antecedent debts owed by one or more of the Debtors before the Transfers were made").  Indeed, despite the new paragraph in the FAC identifying EDMC II as the sole Debtor-transferor, FAC ¶ 136, Claim VIII continues to improperly allege transfers by "Debtors" generally, *see id.* ¶¶ 193-197, contrary to Trustee's own allegation.

Third, the February 2, 2018 payment to McEachen is not avoidable under section 547(b) because the alleged transfer occurred more than ninety days before the Petition Date and McEachen is not alleged to have been an insider when the transfer was made.  *See* 11 U.S.C. § 547(b)(4)(B) (providing for one-year reach-back period "if such creditor *at the time of such transfer* was an insider" (emphasis added)); *see also, e.g.*, *Miller v. ANconnect, LLC (In re Our Alchemy, LLC)*, 2019 WL 4447202, at *6 (Bankr. D. Del. Sept. 16, 2019); *Phoenix Corporate*

*Recovery Servs., LLC v. Astrachan (In re Beaulieu Group, LLC)*, 2021 WL 4469928, at \*33 (Bankr. N.D. Ga. Sept. 29, 2021) (noting that looking to insider status when payment was arranged is "an older view not followed by courts in recent years" and finding "no basis to depart from the plan language of the statute, which requires that insider status exist at the time of the transfer"); *Jahn v. Char (In re Incentium, LLC)*, 473 B.R. 264, 273 (Bankr. E.D. Tenn. 2012), *aff'd on other grounds*, 2013 U.S. Dist. LEXIS 193085 (E.D. Tenn. Mar. 7, 2013); *Kirschner v. FitzSimons (In re Tribune Co. Fraudulent Conveyance Litig.)*, 2018 WL 6329139, at \*18-20 (S.D.N.Y. Nov. 30, 2018), *aff'd on other grounds*, 10 F.4th 147 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1128 (2022).[16]

Fourth, Trustee fails to adequately allege a "transfer of an interest of the debtor in property" as required under section 547(b) because, as discussed in Section IV.A of the KN Brief and reflected in Exhibits 1-A through 1-C of the KN RJN, EDMC II's assets were fully-encumbered.

The FAC should also be dismissed with prejudice based on Trustee's persistent failure to comply with the "reasonable due diligence" requirement under section 547(b). *See Husted v. Taggart (In re ECS Refining, Inc.)*, 625 B.R. 425, 454 (Bankr. E.D. Cal. 2020) ("This court believes that this condition precedent, i.e., due diligence and consideration of affirmative defenses, is an element of the trustee's prima facie case"). As noted in Section IV.B.1 of the KN Brief, this requirement is not satisfied by Trustee's conclusory assertion that "[t]he Trustee and his professionals have conducted reasonable due diligence into potential affirmative defenses and concluded that those defenses are without merit given the nature of and circumstances surrounding the Excessive Payments to Defendants, including, but not limited to, the fact that they were running

---

[16] Trustee acknowledged that "cases have held that insider status for the recipient of a preference should be determined by the exact date of the transfer," but argued that the Court should adopt the approach used by some courts applying 548(a)(1)(B)(ii)(IV) – which, unlike section 547(b)(4)(B), does not expressly require insider status "at the time of such transfer" – and instead look to insider status on the date the transfer was arranged. *See* [Adv. D.I. 58] at 85 n.51. This approach is inconsistent with the case law and the relevant statutory text, and, in any event, fails to save Trustee's claim because Trustee has not identified when any of the alleged antecedent debts arose, and thus has not even alleged that McEachen was an insider when the obligation for the February 2, 2018 payment to McEachen was incurred.

23

an essentially illegal business and made the Excessive Payments to themselves as the Debtors were struggling to operate and preparing for bankruptcy."  FAC ¶ 199.  Even if Trustee sincerely believes this statement, it reveals a fundamental misunderstanding of the requirement.  First, the due diligence requirement is not limited to consideration of affirmative defenses, but also relates to Trustee's own burden to establish the elements of his cause of action, which he has failed to do as set forth above.  *See* 11 U.S.C. § 547(b) (permitted avoidance "*based on reasonable due diligence in the circumstances of the case and* taking into account a party's known or reasonably knowable affirmative defenses under subsection (c)").  Second, a number of the elements of section 547(b) claims and affirmative defenses thereto are not mooted by Trustee's baseless assertions in paragraph 199 of the FAC.  *See, e.g.*, *id.* §§ 547(b)(2) (requiring that payments be "for or on account of an antecedent debt owed by the debtor before such transfer was made"), 547(b)(4)(C) (requiring insider status for transfers made more than 90 days prepetition), 547(c)(1)(A) (contemporaneous exchange defense), 547(c)(4) (subsequent new value defense).

Claim VIII should also be dismissed with prejudice in its entirety for the reason stated above with respect to Claim VII – i.e., based the worthless nature of the Debtor-transferor's interest in the alleged transfers (as further explained in the KN Brief), and claims in Claim VIII should be dismissed with prejudice to the extent purportedly asserted on behalf of Debtors other than EDMC II.  Further, any claim to avoid the February 2, 2018 payment to McEachen under Claim VIII should be dismissed with prejudice as time-barred.

E.    **Claim IX – Avoidance of Transfers Pursuant to 6 Del. C. §§ 1304(a)(1), 1304(a)(2) and 1305 and 11 U.S.C. § 544**

With respect to Claim IX, the Court dismissed the actual fraudulent transfer claims in this Claim for the same reason it dismissed the claims in Claim VI, but declined to dismiss any

constructive fraudulent transfer claims in Claim IX.[17]  Trustee makes no attempt to revive the actual fraudulent transfer claims, and instead only purports to preserve appellate rights regarding the Court's prior dismissal.  Trustee also clarifies that he is asserting claims under provisions of the DUFTA other than those governing actual fraudulent transfers.

Claim IX should be dismissed with prejudice in its entirety.  All claims therein fail for the reasons stated above with respect to Claim VII and in Section IV.A of the KN Brief – i.e., based on the worthless nature of the Debtor-transferor's interest in the transfers, and because all claims purportedly asserted on behalf of non-transferor Debtors likewise fail.  Moreover, while Claim IX is so vague that it is unclear which state-law claims Trustee asserts, it also appears to include claims under section 1305(b) of the DUFTA that are inadequately pled and/or time-barred.

Claim IX purports to assert claims under "6 Del. Code § 1304(a)(1), 6 Del. Code § 1304(a)(2), and/or 6 Del. Code § 1305." FAC ¶ 202.  Section 1304(a)(1) of the DUFTA governs actual fraudulent transfer claims (which this Court already dismissed as baseless as noted below) and Section 1304(a)(2) governs constructive fraudulent transfer claims.  However, section 1305 contains two types of claims: traditional constructive fraudulent transfer claims which are fraudulent as to present creditors (6 Del. C. § 1305(a)), and insider preference claims which are fraudulent as to present creditors (6 Del. C. § 1305(b)).  The limited allegations in Claim IX do not specifically address the insider and antecedent debt requirements under section 1305(b), *see* FAC ¶¶ 201-12, and the requirements under section 1305(a) (other than the present creditor requirement, which is also not addressed) generally overlap with those under section 1304(b), making it unclear which of these subsections Trustee is relying on for his claims.  Trustee's claims

---

[17] Later Defendants dispute whether the Complaint asserted any constructive fraudulent transfer claims in Claim IX, the heading of which referred solely to actual fraudulent transfer claims. *See* [Adv. D.I. 67] at 15.  The Memorandum Opinion did not address this issue; however, the Memorandum Opinion did not bar state-law constructive fraudulent transfer claims to the extent asserted in the Complaint. *See* MTD Order ¶ (c).

under 6 Del. C. § 1305(b), if any, are not properly pled.

To the extent Claim IX purports to assert claims under section 1305(b) of the DUFTA, such claims further fail because, as discussed above with respect to Claim VIII, Trustee has not adequately alleged any "antecedent debt." *See* 6 Del. C. § 1305(b); *August v. August*, 2009 WL 458778, at *9 n.56 (Del. Ch. Feb. 20, 2009) ("Without a legitimate antecedent debt, § 1305(b) is inapplicable."). In addition, Trustee's claim to avoid the January 15, 2016 payment to McEachen under that provision is time-barred because the alleged transfer was made more than one year before the Petition Date. *See* 6 Del. C. § 1309(3) (providing for extinguishment of § 1305(b) claims if not brought "within 1 year after the transfer was made or the obligation was incurred"); *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.2d 155, 198 (Del. Ch. 2014) ("[I]n light of the one year statute of limitations imposed for claims brought pursuant to Section 1305[(b)], [the plaintiff] can only recover for transfers that occurred . . . one year before the filing of the Complaint." (citing 6 Del. C. § 1309(3))). Claim IX should thus be dismissed with prejudice.

### F.    Claim X – Recovery of Transfers Under 11 U.S.C. § 550

The Memorandum Opinion did not directly address Claim X, but dismissed all avoidance action claims on which a section 550 claim under Claim X could be based other than constructive fraudulent transfer claims.[18]

Claim X should be dismissed with prejudice because all claims thereunder fail for the reasons stated above with respect to Claim VII and in Section IV.A of the KN Brief – i.e., based the worthless nature of EDMC II's property interest in the alleged transfers, and any claims purportedly asserted on behalf of Debtors other than the sole alleged transferor (EDMC II) fail.

---

[18] Later Defendants reserve all rights with respect to any and all arguments regarding the section 550 claims not previously addressed by the Court.

Even setting aside the above issues, Claim X of the FAC is otherwise deficiently pled. Claim X does not reflect the Court's prior rulings insofar as it purports to assert claims for recovery of transfers based on avoidance action claims that were previously dismissed and are not being re-pled in the FAC (other than for the sole purpose of preserving appellate rights) – i.e., the actual fraudulent transfer claims asserted in Claims VI and IX. *See* FAC ¶¶ 180-184, 201-212, 213-216. Unlike in other Claims of the FAC, Trustee has not included any footnote purporting to limit the scope of Claim X based on the Court's prior rulings. The claims in Claim X should be dismissed with prejudice to the extent they are premised on previously-dismissed actual fraudulent transfer claims under section 548(a)(1)(A) or section 544(b) of the Bankruptcy Code, or any other dismissed avoidance action claims. *See* 11 U.S.C. § 550(a) (providing for recovery "*to the extent that* a transfer is avoided under section 544, . . . 547, [or] 548" (emphasis added)); *see also, e.g.*, *In re THQ Inc.*, 2016 WL 1599798, at *4 ("Because the Court is granting the Motions to Dismiss the preference and fraudulent transfer claims, there is no basis for a claim under section 550(a).").

### G.    Previously-Dismissed Claims Not Revived through Amendments

With respect to all claims in fully-dismissed Claims (Claims II, IV, V, and VI) and partially-dismissed Claims (Claims I, III, and IX) of the FAC that Trustee is not seeking to revive through amendments, rather than omitting the dismissed claims from the FAC, Trustee has simply added footnotes substantially similar to the following example from Claim II:    "The Trustee acknowledges that his fraud claim was dismissed pursuant to the Court's January 12, 2022 Opinion, and includes that claim in this First Amended Complaint solely for the purpose of preserving his appellate rights.    Defendants need not plead to this claim."[19]    FAC at 39 n.4.    This

---

[19] Trustee's protective footnote approach is particularly confusing as to Claim III.    Trustee notes that this civil conspiracy Claim was "*partially* dismissed," but states that "Defendants need not plead to *this claim*," which is the same broad language used with respect to fully-dismissed Claims, *see, e.g.*, FAC at 39 n.4-5 (emphasis added), making it unclear whether/to what extent Defendants are expected to respond to Claim III.

preservation-by-footnote approach is insufficient.

Later Defendants assume Trustee is seeking to prevent inadvertent waiver under *U.S. v. Shipbuilding*, 473 F.3d 506, 516 (3d Cir. 2007) and similar cases.[20]  However, Trustee's approach creates problematic ambiguities because every subsequent Claim in the FAC (including those relating to claims not dismissed) purports to incorporate *all* prior paragraphs, including the now-defunct claims that Trustee has no basis to include in the operative FAC.  *See id.* ¶¶ 168, 173, 176, 180, 185, 192, 201, 213. Later Defendants therefore move for a more definite statement clarifying that as to all dismissed claims that Trustee is not seeking to revive through amendments, not only are they included "solely for the purpose of preserving the Trustee's appellate rights" (as stated by Trustee), but for all other purposes, they shall be disregarded as dismissed and, notwithstanding anything in the FAC to the contrary, any allegations with respect thereto shall not be incorporated by reference into other sections of the FAC.[21]

## III.   Later Defendants' Deadline to Respond to the FAC Is Tolled or in the Alternative, an Extension Is Requested.

Later Defendants submit that their April 1, 2022 deadline to answer or otherwise respond to the FAC pursuant to the MTD Order (the "Response Deadline") has been tolled automatically by filing the Motion pursuant to Federal Rule of Civil Procedure 12.  *See Dillingham v. Garcia,* 2019 WL 6618055, at *8 (E.D. Cal. Dec. 5, 2019) ("[T]he filing of a [Rule 12(b)] motion that . . . addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion." (internal quotations omitted)); *Iraheta v. Equifax Info. Servs., LLC*, 2018 WL 3381419, at *2 (W.D. La. Jul. 12, 2018) ("[T]he Court sees no reason to

---

[20] Trustee's approach is unwarranted even under such cases.  *See Shipbuilding*, 473 F.3d at 517 (explaining that including previously-dismissed claims in an amended complaint is not necessary to preserve appellate rights).

[21] Specifically, the conclusory allegations in the following paragraphs of the FAC either have no bearing on any live claims and thus no rightful place in the operative complaint, or are wholly duplicative of allegations in operative Claims: paragraphs 164-167, 173-175, 177-179, 180-184, 202 (solely the reference to 6 Del. C. § 1304(a)(1) therein), and 204.

depart from the majority rule that filing of a partial motion to dismiss extends the defendant's time to answer the entire complaint."). Nevertheless, out of an abundance of caution, Later Defendants respectfully request an extension of the Response Deadline.

Federal Rule of Bankruptcy Procedure 9006(b) provides that the Court may extend unexpired time periods, including answering a complaint, without notice:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order.

Fed. R. Bankr. P. 9006(b)(1); *see also* 11 U.S.C. § 105(a) (granting courts broad equitable authority). An extension of the Response Deadline is appropriate while the Motion is pending. *Cf. Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) ("[R]equests for extensions of time made before the applicable deadline has passed should normally . . . be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." (quotations omitted)). The Motion has been filed prior to the expiration of the Response Deadline, and is thus a timely request for an extension. *See* Del. L.R. 9006-2.

Accordingly, Later Defendants respectfully request an extension of the Response Deadline through and including the earlier of (i) the date that is forty-five (45) days after Trustee files an amended complaint providing a more definite statement as requested herein or (ii) such deadline as may be set by the Court for the other Defendants to answer or otherwise respond to any claims not dismissed pursuant to the Motion and Defendants' Briefs.

## IV.    Later Defendants Join in the KN RJN.

Later Defendants hereby join in the concurrently-filed KN RJN in support of the argument set forth in Section IV.A of the KN Brief and herein regarding the worthless nature of EDMC II's

29

alleged property interest in the Excessive Payments.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Later Defendants respectfully request that the Court enter an order (i) dismissing with prejudice (a) all claims against each Later Defendant in Claim I for any alleged breaches occurring before such Later Defendant is first alleged to have become a fiduciary of any Debtor, (b) all claims against each Later Defendant in Claim III for any alleged civil conspiracy occurring before such Later Defendant is first alleged to have become a fiduciary of any Debtor, and (c) all claims against Later Defendants in Claims VII, VIII, IX, and X; (ii) requiring a more definite statement (a) as to any claims in Claim I not dismissed pursuant to the Motion, regarding, at a minimum, (1) the capacity in which Trustee is bringing such claims, (2) to whom the duties allegedly breached by each Later Defendant were purportedly owed, (3) which alleged breaches were committed by Later Defendants, (4) during which period such alleged breaches were committed, and (5) the state of formation of any relevant entities, and (b) as to all claims in fully-dismissed Claims (Claims II, IV, V, and VI) and partially-dismissed Claims (Claims I, III, and IX) that Trustee is not seeking to revive through amendments, clarifying that not only are such dismissed claims included "solely for the purpose of preserving the Trustee's appellate rights," but for all other purposes, such claims shall be disregarded as dismissed and, notwithstanding anything in the FAC to the contrary, any allegations with respect thereto shall not be incorporated by reference into other sections of the FAC; (iii) extending Later Defendants' Response Deadline through and including the earlier of (a) the date that is forty-five (45) days after Trustee files an amended complaint providing a more definite statement as requested herein or (b) such deadline as may be set by the Court for the other Defendants to answer or otherwise respond to any claims not dismissed pursuant to the Motion and Defendants' Briefs; and (iv) granting such other and further relief as the Court deems just and proper.

| Dated April 1, 2022 | /s/ *Sean M. Beach* |

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sean M. Beach (DE Bar No. 4070)
Kevin A. Guerke (DE Bar No. 4096)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
E-mail:  sbeach@ycst.com
        kguerke@ycst.com

SIDLEY AUSTIN LLP

Chad S. Hummel (*admitted pro hac vice*)
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: 310-595-9500
Facsimile: 310-595-9501
E-mail: chummel@sidley.com

Sam Newman (*admitted pro hac vice*)
Stacy Horth-Neubert (*admitted pro hac vice*)
Anna Gumport (*admitted pro hac vice*)
555 West Fifth Street
Los Angeles, California 90013
Telephone: 213-896-6000
Facsimile: 213-896-6600
E-mail: sam.newman@sidley.com
        shorthneubert@sidley.com
        agumport@sidley.com

*Counsel for Defendants Mark A. McEachen, Frank Jalufka, and John Danielson*