## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 18-11535 (CTG) |
| THE ART INSTITUTE OF PHILADELPHIA LLC, *et al.*,[1] | (Jointly Administered) |
| Debtors. | |
| GEORGE L. MILLER, Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | Adv. No. 20-50627 (CTG) |
| TODD S. NELSON, JOHN R. McKERNAN, SAMUEL C. COWLEY, EDWARD WEST, MARK A. McEACHEN, FRANK JALUFKA, J. DEVITT KRAMER, MARK NOVAD, JOHN DANIELSON, AND MICK BEEKHUIZEN, | |
| Defendants. | |

### REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF DEFENDANTS JOHN DEVITT KRAMER AND MARK NOVAD

---

[1]     Due to the large number of debtors in the above-captioned jointly-administered chapter 7 cases (the "Chapter 7 Cases"), a complete list of such debtors (the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein.  Such information can be found at footnote 1 of the First Amended Complaint ("FAC").

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 2

      A.   This Court May Consider Documents That Are Incorporated By Reference
          In The Stipulation And Order Directly Applicable To This Action (Counts
          VII-Count X)...................................................................................................... 2

          1.   *This Court may take judicial notice of the Stipulation and Order*
               *and the documents referenced therein.* .......................................................2

          2.   *The Trustee misreads the text of the Stipulation.* ........................................4

      B.   The Trustee Misunderstands His Obligations Under 11 U.S.C. § 547(B)'S
          New Due Diligence Requirement And Fails To Adequately Plead A Preference
          Claim (Count VIII). ........................................................................................ 6

          1.   *The Trustee has failed to adequately plead that he has performed*
               *reasonable due diligence.* ...........................................................................6

          2.   *The Trustee has failed to adequately plead an antecedent debt.* .................8

          3.   *The Trustee has failed to plead that Messrs. Kramer and Novad were*
               *"insiders" of EDMC II.* ...............................................................................9

          4.   *The Trustee has failed to plead insolvency of EDMC II.*...........................10

      C.   The Trustee's Opposition Confirms That He Has Not Adequately Pleaded The
          Constructive Fraud Claim Under Section 548(A)(1)(B) (Count VI)................... 11

      D.   The Trustee's DUFTA Claim Fails For The Same Reasons That The Sections
          547 And Section 548(A)(1)(B) Claims Fail (Count IX). ..................................... 13

      E.   The Trustee's Opposition Confirms That Breach-Of-Fiduciary-Duty Claim
          Should Be Dismissed Because The Trustee Offers No Basis To Conclude That
          Defendants Owed Fiduciary Duties And He Continues To Engage In Group
          Pleading (Count I)............................................................................................ 13

III.  CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Del., Inc.)*,
  541 B.R. 219 (Bankr. D. Del. 2015) ...........................................................................................3

*Beskrone v. OpenGate Capital Grp.* (*In re PennySaver USA Publ'g, LLC*),
  587 B.R. 445 (Bankr. D. Del. 2018) .........................................................................................13

*Bruesewitz v. Wyeth Inc.*,
  561 F.3d 233 (3d Cir. 2009) ......................................................................................................8

*Buckley v. O'Hanlon*,
  2007 U.S. Dist. LEXIS 22211 (D. Del. Mar. 28, 2007) .........................................................14

*Burtch v. Owlstone (In re Advance Nanotech, Inc.)*,
  2014 Bankr. LEXIS 1362 (Bankr. D. Del. Apr. 2, 2014) ......................................................13

*Chao v. Hotel Oasis, Inc.*,
  493 F.3d 26 (1st Cir. 2007) ........................................................................................................4

*In re Cmty. Mem'l Hosp.*,
  2017 Bankr. LEXIS 3503 (Bankr. E.D. Mich. Sep. 29, 2017) ..............................................14

*In re Dewey & LeBoeuf LLP*,
  2014 Bankr. LEXIS 4051 (Bankr. S.D.N.Y. Sept. 23, 2014) ................................................12

*Dix v. Total Petrochemicals USA, Inc.*,
  2011 U.S. Dist. LEXIS 66645 (D.N.J. June 20, 2011) .............................................................3

*In re Enron Corp.*,
  357 B.R. 32 (Bankr. S.D.N.Y. 2006) .........................................................................................8

*In re Genesis Health Ventures, Inc.*,
  355 B.R. 438 (Bankr. D. Del. 2006). (Trustee Br. 32.) ..........................................................14

*In re Insys Therapeutics, Inc.*,
  2021 Bankr. LEXIS 2965 (Bankr. D. Del. Oct. 28, 2021) .......................................................7

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
  2019 Bankr. LEXIS 2817 ......................................................................................................9, 10

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010) ......................................................................................................3

*MBIA Ins. Co. v. Tilton (In re Zohar III)*,
    2021 Bankr. LEXIS 1947 (Bankr. D.Del. July 23, 2021)......................................................14

*Miller v. Fallas (In re J & M Sales, Inc.)*,
    2021 Bankr. LEXIS 2268 (Bankr. D.Del. Aug. 20, 2021) ....................................................11

*Moriarty v. Lynch (In re PostRock Energy Corp.)*,
    2018 Bankr. LEXIS 2726 (Bankr. W.D. Okla. Sept. 6, 2018) ..............................................11

*Nystrom v. Vuppuluri (In re Essar Steel Minn. LLC)*,
    2019 Bankr. LEXIS 1622 (Bankr. D. Del. May 23, 2019) ......................................................3

*Official Comm. of Unsecured Creditors of Wash. Mut., Inc. v. Corcoran (In re
Wash. Mut., Inc.)*,
    2013 Bankr. LEXIS 2885 (Bankr. D. Del. July 16, 2013)......................................................8

*Opoku v. Educ. Comm'n for Foreign Med. Graduates*,
    574 F. App'x. 197 (3d Cir. 2014) .....................................................................................6, 14

*Panjiva, Inc. v. United States Customs & Border Prot.*,
    975 F.3d 171 (2d Cir. 2020)..............................................................................................6, 7

*In re PostRock Energy Corp.*,
    595 B.R. 858 (Bankr. W.D. Okla. Jan. 8, 2019) ................................................................10

*Pyatkova v. Sylena Motorcars*,
    2016 U.S. Dist. LEXIS 20330 (D. N.J. Feb. 2, 2016) ...........................................................3

*SEPTA v. Orrstown Fin. Servs.*,
    2016 U.S. Dist. LEXIS 169379 (M.D. Pa. Dec. 7, 2016)......................................................3

*Starr Int'l Co. v. FRB*,
    906 F. Supp. 2d 202 (S.D.N.Y. 2012)................................................................................13

*In re Trailhead Eng'g LLC*,
    2020 Bankr. LEXIS 3547 (Bankr. S.D. Tex. Dec. 21, 2020) .................................................7

*In re Tri-Valley Corp.*,
    2015 Bankr. LEXIS 29 (Bankr. D. Del. Jan. 7, 2015) ...........................................................9

*In re Tribune Co.*,
    477 B.R. 465 (Bankr. D. Del. 2012) .....................................................................................8

*In re TSIC, Inc.*,
    428 B.R. 103 (Bankr. D. Del. 2010) ...................................................................................12

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir. 1998)..................................................................................................4

**Statutes**

11 U.S.C. § 101(31)(B)...................................................................................................................9

11 U.S.C. § 547........................................................................................................................5, 6

11 U.S.C. § 548.............................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 15......................................................................................................................10

## I.    INTRODUCTION[2]

Having stipulated in this matter that the secured lenders represented by U.S. Bank hold, and have held since 2015, a valid security interest in all of the accounts and other assets of the alleged transferee, EDMC II, and having further alleged that the dire financial circumstances most certainly rendered that security interest undersecured by the time of the challenged payments, the Trustee now bears the burden to "square the circle"—*i.e.*, how it is "plausible," notwithstanding these established circumstances, that the transfers could have involved property of EDMC II rather than that pledged to the creditors.    Whether that obligation arises under the due diligence requirement found in Section 547(b) or *Twombly* and its progeny is somewhat beside the point— it surely exists.    Pleading the connection between the property of the debtor and the interest transferred is an element of all of the Trustee's Payment Claims as are other statutory requirements. And, on this record, it is a burden that his Opposition ("Trustee Br.") fails to carry.

Additionally, the Trustee has failed to adequately plead his claim for breach of fiduciary duty.    He continues to lump the defendants—each with different titles and responsibilities—as if they operated every aspect of a sophisticated, complex business collectively, and engaged in the same alleged misconduct.    That is not how corporate governance works.    Messrs. Kramer and Novad were not directors and so had attendant responsibilities that were different from the remaining director-defendants.    This Court has previously cautioned against the practice of group pleading for the simple reason that defendants like Messrs. Kramer and Novad, faced with serious allegations, are not on notice of what they allegedly did.

Accordingly, this Court should grant Defendants' motion to dismiss.

---

[2]    Capitalized terms not defined herein have the same meaning as in the Opening Brief of Messrs. Kramer and Novad.

## II.    ARGUMENT

### A.    This Court may consider documents that are incorporated by reference in the Stipulation and Order directly applicable to this action (Counts VII-Count X).

*1.    This Court may take judicial notice of the Stipulation and Order and the documents referenced therein.*

The Trustee makes several arguments in support of his position that this Court should not consider any of the documents that have been expressly incorporated in this Court's previous orders.  As an initial matter, nowhere in the Trustee's fifty-page Opposition does he dispute the existence of the Credit and Guaranty Agreement ("CGA") or the Pledge and Security Agreement. (Trustee Br. 18, n.10.)  Nor does the Trustee seriously dispute the import of those agreements, namely, that U.S. Bank, on behalf of a group of lenders, had a valid and undersecured interest in EDMC II's accounts and other assets, including the alleged source of the payments that underlie the payment claims, at the time the alleged transfers were made.[3]  (Indeed, if the Trustee did so dispute then he could not plead insolvency.)  Instead, he simply argues that "it is unclear where the copies attached to Kramer and Novad's Request for Judicial Notice came from." (*Id.*)  In other words, the Trustee has identified no basis to dispute the authenticity of the documents other than by asking how Defendants obtained copies of these documents.  (Trustee Br. 37.)  Given that he indisputably has knowledge of these ancillary documents and has used them for prior relief before this Court, the Trustee must raise (and could easily have raised) any contest to the authenticity for, among other reasons, judicial efficiency and economy—he has not done so.[4]

Unable to challenge the authenticity of the documents, the Trustee next claims that the documents are "extrinsic" to the FAC and so should not be considered.  (Trustee Br. 17.)  In

---

[3]    It is undisputed that the Pledge and Security Agreement was necessary because the Trustee otherwise could not have gained access to funds that would have been subject to the CGA.  (Trustee Br. 11.)

2

particular, he notes that "an extrinsic document may only be considered on a motion to dismiss if it is "integral to or explicitly relied upon" in the complaint. (*Id.*) Courts, upon a motion to dismiss, may consider "any 'matters incorporated by reference or integral to the claim, *[or]* items subject to judicial notice, *[or]* matters of public record, *[or]* orders, [and] items appearing in the record of the case.'" *SEPTA v. Orrstown Fin. Servs.*, 2016 U.S. Dist. LEXIS 169379, at *15 (M.D. Pa. Dec. 7, 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).  Because this Court may properly take judicial notice of the Stipulation and ancillary documents, it need not consider whether they are "integral" to the Trustee's claims.  *See, e.g.*, *SEPTA*, 2016 U.S. Dist. LEXIS 169379, at *15 (assessing whether documents were subject to judicial notice or otherwise "integral" to the claims).[5]  In fact, this Court has routinely taken judicial notice of documents when those documents were central to a defense and not "integral" to a claim.  *See, e.g.*, *Nystrom v. Vuppuluri (In re Essar Steel Minn. LLC)*, 2019 Bankr. LEXIS 1622, at *20-21 (Bankr. D. Del. May 23, 2019) (taking judicial notice of articles of incorporation, which contained an exculpation provision, to conclude that the trustee failed to state a claim for breach of fiduciary duty); *Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Del., Inc.)*, 541 B.R. 219, 236 (Bankr. D. Del. 2015) (taking judicial notice of the trustee's prior sworn statements in other proceedings to conclude that the defendant's *in pari delicto* defense doomed trustee's claims).  Given *Barry* and *Nystrom*'s cues, this Court may (and should) take judicial notice of the Stipulation and ancillary documents, particularly where these documents were used as part of the foundation for the Stipulation executed by the Trustee and were approved by the Court.  S*ee generally Pyatkova v.*

---

[4]    And because he has not done so, this Court should outright grant Defendants' request to take judicial notice of the Stipulation and ancillary documents.

[5]    For these reasons, the Trustee's reliance on cases stating that a court may consider documents "integral" to the complaint is misplaced.  (*See* Trustee Br. 17) (citing *Dix v. Total Petrochemicals USA, Inc.*, 2011 U.S. Dist. LEXIS 66645, at *1 (D.N.J. June 20, 2011)).

*Sylena Motorcars*, 2016 U.S. Dist. LEXIS 20330, at *4 (D. N.J. Feb. 2, 2016) (noting that a "court is not required to turn a blind eye to contradictory facts shown in documents properly before it" and "need not accept factual claims that are internally inconsistent") (quotation omitted).

Equally important, the Stipulation and the ancillary documents qualify as law of the case, establishing the foundation for this matter. *See, e.g.*, *Waldorf v. Shuta*, 142 F.3d 601, 615 n.3 (3d Cir. 1998) (referring approvingly to district court's conclusion that permitting party to withdraw from the stipulation related its liability would violate the law of the case doctrine). If the Trustee wanted to escape the reach of the Stipulation's plain terms, he could have declined to agree to it in the first place or could have sought reconsideration. But he did neither. *See, e.g.*, *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007) (holding that party should be held to the stipulation made in a pre-trial order because it did not "object to the order, move to strike the reference to the stipulation, or request reconsideration" and that the order became "law of the case"). He must acknowledge and accommodate that to which he previously agreed.

        2.      *The Trustee misreads the text of the Stipulation.*

Turning to the text of the Stipulation, the Trustee next argues that the Stipulation specifically exempted an interest in any recovery under Section 547 and 548—thus, the property associated with the claims are not subject to the security interests in the funds transferred. (Trustee Br. 16.) The Trustee misconstrues Defendants' position. The Stipulation cannot, and does not, retroactively alter the status of, and ownership in, funds transferred pre-petition. The Trustee does not dispute the following facts that support this conclusion:

- The CGA and the Pledge and Security Agreement were executed on January 5, 2015. (RJN, Exhibit 1-B, 1-C.)[6]

---

[6]      "RJN" refers to Messrs. Kramer and Novad's Request to Take Judicial Notice, filed April 1, 2022 [Dkt. 95].

- Under those agreements, U.S. Bank has a valid security interest in EDMC II's accounts and other assets as of that date.

- Payments were allegedly made by EDMC II to Messrs. Kramer and Novad in 2016 and 2017, but at those times, EDMC II's accounts and cash were subject to a stipulated valid security interest.  (*See* FAC, ¶¶ 139-40; KN Br., at 10.)[7]

- And according to the FAC, the Debtors were collectively insolvent at those times.  (*See* FAC ¶139-43.)

Under the applicable bankruptcy statutes, there has been no "transfer of an interest of the debtor" because the assets allegedly transferred were pledged to U.S. Bank as the representative of the secured creditor body.  *See* 11 U.S.C. §§ 547-48.  Importantly, the Trustee does not dispute any of the legal principles or multiple cases supporting the proposition that if the assets supporting the Payment Claims are fully pledged in support of an undersecured interest, then the estate has no claim to recover those assets.  (KN Br., at 7-14.)[8]

That the Trustee reserved a right in future adversary proceedings cannot be used to re-characterize the nature of funds transferred years before.  (RJN, Exhibit 1-A.)  Defendants do not argue that the Trustee is barred from pursuing otherwise valid Section 547 and 548 claims—he simply cannot press those claims against the Defendants because the Trustee has failed to identify an estate property interest in the transfer of EDMC II's property.  Because of the plain language of the Stipulation, and because the Trustee does not contest the legal principles and multiple cases cited in Defendants' motion, the Trustee has *not* "reasonably alleged that Education Management II had a property interest in funds."  (Trustee Br. 18.)

---

[7]     "KN Br." refers to Messrs. Kramer and Novad's Motion to Dismiss filed on April 1, 2022 [Dkt. 94].

[8]     U.S. Bank is not bankrupt and the Trustee has no jurisdiction over its assets.

When the Stipulation and the ancillary documents are viewed in their proper context, the Trustee has not, as he must, *plausibly* alleged a transfer of debtor property. *See Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x. 197, 200 (3d Cir. 2014) ("The plausibility standard requires 'more than a sheer possibility' that a defendant is liable for the alleged misconduct.") This Court should dismiss Counts VII-X.

**B.    The Trustee misunderstands his obligations under 11 U.S.C. § 547(b)'s new due diligence requirement and fails to adequately plead a preference claim (Count VIII).**

*1.    The Trustee has failed to adequately plead that he has performed reasonable due diligence.*

The Trustee continues to assert that the amendment to Section 547 did "not modify or create any additional pleading requirements." (Trustee Br. 11.) As explained in Defendants' motion, the amendment to Section 547 imposed on trustees an additional pleading requirement. (KN Br. 17.) (citing cases). For the amendment to have meaning, it must be that trustees sufficiently plead that they perform reasonable due diligence in order to comply with the requirement's plain terms. It is not enough—as the Trustee contends—that he merely "consider" the merits of a preference claim. (*See* Trustee Br. 12.) Were that the case, the amendment would be little more than surplusage, adding nothing to a litigant's obligations under Rule 11. *See Panjiva, Inc. v. United States Customs & Border Prot.*, 975 F.3d 171, 182 (2d Cir. 2020) ("Congress should not be understood to have intended an amendment to be ineffective.")

Indeed, the Trustee's FAC is an example of why due diligence into claims and defenses is necessary. The Trustee fails to articulate whether he investigated the nature of the property allegedly transferred when it was clearly subject to a valid security interest in favor of a non-debtor or whether he considered the statutory affirmative defenses. Rather, the Trustee insists that the mere (alleged) fact that Defendants (with the other defendants) were operating an "essentially

illegal enterprise" or that the payments "occurred when the company was preparing for bankruptcy" constitutes an evaluation of the elements of his claims or any potential affirmative defenses.  (Trustee Br. 11) (citing FAC, ¶ 199).  Specifically, he contends that this wrongful conduct demonstrates that the affirmative defenses set forth in Section 547(C)—the "contemporaneous exchange" and the "ordinary course" defense—are somehow inapplicable.  *Id.*  Vague, generalized allegations of misconduct or dire financial circumstances do *not* automatically render unavailable an otherwise valid affirmative defense.  The Trustee wishes to import an alleged "bad actor" exception to Section 547 defenses not found in the statute or case law.  In short, the Trustee must explain what he actually did to verify his claims and defenses, not that he can call the Defendants bad people.

The Trustee's own cases underscore this point.  In *In re Trailhead Eng'g LLC*, the court ruled that the due diligence requirement was met because the complaint "demonstrate[d] that [the] [t]rustee reviewed [the] bank and wire records, invoices relating to the . . . [t]ransfer, correspondence, and the [relevant] contract . . . and that the complaint mapped out the alleged structure of the parties' relationships."  2020 Bankr. LEXIS 3547, at *7 (Bankr. S.D. Tex. Dec. 21, 2020).  Paragraph 199 of the FAC contains *none* of the these allegations.  In *In re Insys*, the trustee invited the defendant to "advise . . . of its defenses," and further alleged that "to the extent any defenses were presented, they have been taken into account by the [t]rustee, in conjunction with the [t]rustee's review of the [d]ebtors' books and records."  *In re Insys Therapeutics, Inc.*, 2021 Bankr. LEXIS 2965, at *3 (Bankr. D. Del. Oct. 28, 2021).  Again, the FAC did not include any allegation that the Trustee invited the Defendants to advise of their defenses.

Unsupported by Section 547's plain terms or the case law, the Trustee is left with legislative history and various articles.  (Trustee Br. 10-13.)  But "the authoritative statement is the statutory

text, not the legislative history or any other extrinsic material." *In re Tribune Co.*, 477 B.R. 465, 471 (Bankr. D. Del. 2012) (citation omitted). And the Trustee has identified no ambiguity within the amendment that would justify resort to legislative history. *See, e.g.*, *Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 244 (3d Cir. 2009) ("[R]esort to legislative history is appropriate when necessary to interpret ambiguous statutory text.") Regardless, none of the materials the Trustee cites contradicts the interpretation proffered by the Defendants (and the courts) that the due diligence requirement is an element of the Trustee's prima facie case. (Trustee Br. 10-14.)

2.      *The Trustee has failed to adequately plead an antecedent debt.*

The Trustee simply asserts an "obvious trend" in construing the term "antecedent debt" "broadly." (Trustee Br. 19) (citing *In re Enron Corp.*, 357 B.R. 32, 44 (Bankr. S.D.N.Y. 2006)). Because of this purported "trend," the Trustee contends that "bonuses constitute payments on antecedent debt . . . when paid pursuant to an employment agreement or bonus/retention plan." *Id.* This blanket contention is not consistent with this Court's decision in *Official Comm. of Unsecured Creditors of Wash. Mut., Inc. v. Corcoran (In re Wash. Mut., Inc.)*, 2013 Bankr. LEXIS 2885, at *14 (Bankr. D. Del. July 16, 2013). There, the Court analyzed the terms of a severance agreement and reasoned that "because the severance was paid on the same date that [the] obligation arose . . . the severance payment was not made on account of an antecedent debt." *Id.* Put another way, the Court did not accept the argument that a severance payment was a payment on account of an antecedent debt as a matter of law; it carefully reviewed the terms of the severance agreement to determine *when* the obligation to pay actually arose. By contrast, the FAC—indisputably—does not allege *when* the obligation to pay Defendants arose. Indeed, the FAC is entirely silent on the employment or bonus agreements (as was available in *Corcoran*), the nature of the compensation or bonus structure, or the work performed to trigger such payments.

The Trustee's "broad" reading of the "antecedent debt" cannot overcome other hurdles. For example, the FAC does not say whether EDMC II—as opposed any of the other fifty-five Debtors—owed the antecedent debt. This is a critical shortcoming because the Trustee is required to allege that the transferor that owed the antecedent debt is the same one that made the transfer. *In re Tri-Valley Corp.*, 2015 Bankr. LEXIS 29, at *12 (Bankr. D. Del. Jan. 7, 2015).

The Trustee contends that Defendants' authority is inapplicable because the complaints at issue in those cases failed because they did not to describe the relationship between the defendant and the debtors. (Trustee Br. 19-20.) The Trustee misses the point. In those cases, this Court held that the antecedent debt was not adequately pleaded because the complaints merely alleged that the defendant performed services or supplied goods to the debtor. (KN Br. 20-21.) Likewise, the FAC fails to identify what services Messrs. Kramer and Novad specifically provided to EDMC II.

3.     *The Trustee has failed to plead that Messrs. Kramer and Novad were "insiders" of EDMC II.*

As an initial matter, the Trustee does not appear to argue that Messrs. Kramer and Novad were "non-statutory" insiders; so, the question is whether they were statutory insiders, *i.e.*, directors or officers. *See* 11 U.S.C. § 101(31)(B). The Trustee concedes that Messrs. Kramer and Novad are not directors, but insists that they are "officers" based on their titles. (*See* Trustee Br. 21-22). But this Court focuses on the *management* role of each defendant—not just his or her individual title. *Flanagan*, 600 B.R. at 311 (emphasis added) (concluding "that the allegations that each [d]efendant is a Senior Vice President *together with allegations that he participates in management* is sufficient to plausibly infer that [the] [d]efendants . . . were officers"). Unlike in *Flangan*, the Trustee's allegations that Messrs. Kramer and Novad were General Counsel and SVP of Human Resources notably makes no reference as to their management roles or responsibilities.

(Trustee Br. 21-22 (citing FAC at ¶¶ 17-21)).  The FAC thus does not adequately plead insider status.

Additionally, when faced with Defendants' argument that the FAC does not plead that Mr. Novad's insider status on the relevant dates, the Trustee cites prior filings in the bankruptcy case to indicate his title through December 31, 2017.  (Trustee Br. 21, n.13.)  If the Trustee seeks to rely on prior filings in the main bankruptcy case, Defendants should not be precluded from doing the same.  *See* Section II.A.  And by including new "facts" within the Opposition to cure any pleading deficiencies, the Trustee has effectively amended his FAC without moving for leave under Fed. R. Civ. P. 15.  The Trustee's expectation that this Court consider facts that he has failed to plead does not mean that he has otherwise cured those pleading deficiencies.  *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, 2019 Bankr. LEXIS 2817, at *37 (declining the trustee's request to consider proof of claim chart "as it [was] submitted to support the new facts alleged in the [t]rustee's [a]nswering [b]rief").

### 4.    The Trustee has failed to plead insolvency of EDMC II.

The Trustee concedes that the FAC does not specifically allege the insolvency of EDMC II.  (*See* Trustee Br. at 23.)  Pleading the insolvency of the fifty-six Debtors collectively, according to the Trustee, is proper under *In re PostRock Energy Corp.*, 595 B.R. 858 (Bankr. W.D. Okla. Jan. 8, 2019) ("*Postrock II*").  *See id.  Postrock II* is distinguishable from this case. There, the trustee alleged that the debtor-transferor was insolvent, by noting, among other things, that it was one of two primary obligors under a $200 million borrowing base facility with certain lenders, and that its outstanding indebtedness was around $65 million on the petition date.  *Id.* at 867.  The trustee further alleged that the indebtedness exceeded the combined asset bases of the remaining debtors, and "***far exceed[ed]*** the asset base [of the transferor] by February 2015."  *Id.* at 868 (emphasis in original).  In contrast to the *Postrock II* complaint, the FAC does not say anything

about the indebtedness of EDMC II.    Indeed, in *Postrock I*, the court held that it is the "[transferring] entity's solvency that is at issue."    *Moriarty v. Lynch (In re PostRock Energy Corp.)* ("*Postrock I*"), 2018 Bankr. LEXIS 2726, at *14 (Bankr. W.D. Okla. Sept. 6, 2018).[9]

The Trustee's attempt to distinguish *Fallas* fails.    (Trustee Br. 24 n.16.)    There, this Court reasoned that "*if* there are facts alleged that would support the conclusion that the estate is not barred from substantively consolidating, then it is permissible to consider the solvency of debtors on a combined basis."    *Miller v. Fallas (In re J & M Sales, Inc.)*, 2021 Bankr. LEXIS 2268, at *88 (Bankr. D.Del. Aug. 20, 2021) (emphasis added).    And the Court "consider[ed] the solvency of debtors on a combined basis" because of the various allegations, such as that the "[d]ebtors did not prepare financial projections on an entity-by-entity basis but rather on a combined basis," and that "[r]eporting to third-parties, including the [d]ebtors' annual audits, was also on a combined basis." *Id.* at *88.    These allegations are noticeably missing from the FAC—and as explained in Defendants' motion, this Court did not substantively consolidate the bankruptcy case.    (KN Br. 24.)

### C.    The Trustee's Opposition confirms that he has not adequately pleaded the constructive fraud claim under Section 548(a)(1)(B) (Count VI).

The Trustee's constructive fraud claim under Section 548(a)(1)(B) fails because it relies on mere allegations of wrongdoing and does not properly apply the relevant three-factor test. (Trustee Br. 26).    Instead of applying the test, the Trustee overlooks factors and points to only favorable (and irrelevant) allegations.    For example, the Trustee fails to describe or acknowledge the "fair market value of the benefit provided" and instead simply argues that the Defendants'

---

[9]    The Trustee tries to distinguish *Postrock I* by referring to the party's mistaken assumption as to when the insolvency presumption applies—but this point has no bearing as to why Defendants cited *Postrock I* in the first place.    (Trustee Br. 24 n.16.)

"services" "consisted of running the Company in an illegal fashion and causing substantial damages to the Company." (Trustee Br. at 26.) Further, the Trustee notes the "Transferee Defendants were insiders"—again, not properly alleged, *see* II.A.3—instead of analyzing whether there was an arm's-length relationship between EDMC II and Defendants. The Trustee's argument confirms that no constructive fraud claim has been adequately pleaded.

The Trustee argues that this Court should reject the common-sense inference that Defendants provided services as EDMC headed towards bankruptcy. (Trustee Br. at 25); *In re Dewey & LeBoeuf LLP*, 2014 Bankr. LEXIS 4051, at *11 (Bankr. S.D.N.Y. Sept. 23, 2014). Unlike this case, *In re Dewey* involved a challenged employment agreement where multiple provisions within the agreement suggested that the debtor did not receive reasonably equivalent value for any payments made to the employee. The Trustee has not made similar allegations about Defendants' employment agreements. *In re TSIC* is similarly unhelpful to the Trustee. *In re TSIC, Inc.*, 428 B.R. 103, 116-17 (Bankr. D. Del. 2010). There, the court determined that a CEO had a pre-existing duty under the employment agreement to render services, and the severance payment made to him was not for reasonably equivalent value given the facts of the case. Unlike those facts, the FAC says nothing of Defendants' pre-existing duties under their employment agreements, and therefore, establishes no basis from which to infer that any payments were "excessive." (FAC ¶ 190.) Without more, the Trustee's bare assertions that these were "excessive" payments (*id.*), are not enough to survive a motion to dismiss, as confirmed by the multiple cases cited by Defendants. (KN Br. 25.)[10]

---

[10]    As the Trustee acknowledges, recovery under Section 550 relies on the viability of claims under Sections 547 and 548. (Trustee Br. 28-29.) Accordingly, the Section 550 claim (Count X) fails for that reason, as well as for the reasons set forth in Section II.A.

**D.    The Trustee's DUFTA claim fails for the same reasons that the Sections 547 and Section 548(a)(1)(B) claims fail (Count IX).**

As the Trustee also acknowledges, his DUFTA claim is analogous to his Section 547 and Section 548 claims.  (Trustee Br. 27-28.)  Accordingly, Defendants incorporate by reference their arguments raised in Section II.B-C, and those raised in their motion to dismiss.

**E.    The Trustee's Opposition confirms that breach-of-fiduciary-duty claim should be dismissed because the Trustee offers no basis to conclude that Defendants owed fiduciary duties and he continues to engage in group pleading (Count I).**

The Trustee's Opposition offers no basis to conclude that Messrs. Kramer and Novad owed fiduciary duties to Education Management Corporation or the Delaware Holding Companies. Curiously absent from the Trustee's Opposition is an attempt to address this Court's decision in *In re PennySaver* in which the Court held that, for non-managers of an LLC to be held liable for breach of fiduciary duty, they must be alleged have "exercised actual domination and control" over the LLC.  *Beskrone v. OpenGate Capital Grp.* (*In re PennySaver USA Publ'g, LLC*), 587 B.R. 445, 465-66 (Bankr. D. Del. 2018).  Similarly, as Messrs. Kramer and Novad are not alleged to be directors of Education Management Corporation, the Trustee was required to allege that their "control" over the corporation gave rise to fiduciary duty.  *See, e.g.*, *Starr Int'l Co. v. FRB*, 906 F. Supp. 2d 202, 215 (S.D.N.Y. 2012) ("It is axiomatic that, for an entity to be liable for breach of a fiduciary duty owed to a corporation, it must have had control over that corporation.").  General allegations that a defendant engaged in wrongdoing—such as, by facilitating fraudulent transfers as in *PennySaver*—does not mean that he or she, in fact, "exercised actual domination and control" over the relevant entity.  *Burch v. Owlstone, Inc.* (*In re Advance Nanotech, Inc.*), 2014 Bankr. LEXIS 1362, at *14 (Bankr. D. Del. Apr. 2, 2014).

Regardless of whether Defendants owed any fiduciary duties, the Trustee concedes that he has not identified any conduct of Messrs. Kramer and Novad separate and apart from the remaining

defendants.   Instead, he asserts that his grouping of defendants is permissible, citing the pre-
*Twombly/Iqbal* cases of *Buckley v. O'Hanlon*, 2007 U.S. Dist. LEXIS 22211 (D. Del. Mar. 28,
2007) and *In re Genesis Health Ventures, Inc.*, 355 B.R. 438 (Bankr. D. Del. 2006).   (Trustee Br.
32, 34.)   But those two cases are distinguishable from this one, and if anything, underscore the
deficiencies of the Trustee's allegations.   In *Buckley*, this Court permitted the complaint's pleading
because it "separate[d] the list of defendants into smaller groups who worked together on various
committees and boards." *Buckley*, 2007 U.S. Dist. LEXIS 22211, at *14; *see also id.* at *15 (noting
that the complaint "identified the small groups within [the company] and their roles in approving
or participating in each alleged bad-faith practice").   Similarly, in *Genesis*, the Court noted that
"collective references [within the complaint] ma[de] sense considering that [the] [p]laintiffs are
alleging that [the] [d]efendants, as a group, decided in steering committee meetings to engage in
the allegedly fraudulent conduct." *Genesis*, 355 B.R. at 457.   The FAC offers no basis to conclude
that Messrs. Kramer and Novad—who were *not* directors—could have *plausibly*, and not *possibly*,
engaged in the same conduct as the other director-defendants over the decade covered in the FAC.
*See Opoku*, 574 F. App'x. at 200.   Common sense and case law confirm that Messrs. Kramer and
Novad held positions with "different duties that are subject to different legal standards"—and any
contrary conclusive allegations are implausible.   *In re Cmty. Mem'l Hosp.*, 2017 Bankr. LEXIS
3503, at *9 (Bankr. E.D. Mich. Sep. 29, 2017); (FAC, ¶¶ 19-20, 45, 50.).

In short, the Trustee's allegations are insufficient as Messrs. Kramer and Novad—as well
as this Court—"[are] left guessing which [d]efendant did what particular act." *See MBIA Ins. Co.
v. Tilton (In re Zohar III)*, 2021 Bankr. LEXIS 1947, at *31 (Bankr. D.Del. July 23, 2021).[11]

---

[11]    The Trustee spends three pages identifying case law for general principles related to
breaches of fiduciary duty.  (Trustee Br. 30-33.)  None suggests that the allegations against Messrs.
Kramer and Novad are by any means plausible.

Accordingly, the breach-of-fiduciary-duty claim against Defendants should be dismissed.[12]

## III.    CONCLUSION

Defendants Kramer and Novad respectfully request that this Court dismiss with prejudice each of the claims alleged against them.

Respectfully submitted,

Dated: June 15, 2022                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

*s/ Sean M. Beach*
Sean M. Beach (DE Bar No. 4070)
Kevin A. Guerke (DE Bar No. 4096)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: 302-571-6600
Facsimile: 302-571-1253
E-mail:  sbeach@ycst.com
            kguerke@ycst.com

PORTER WRIGHT MORRIS & ARTHUR LLP
Thomas S. Jones (Pennsylvania ID #71636) (*pro hac vice*)
6 PPG Place
Third Floor
Pittsburgh, PA 15222
Telephone: (412) 235-4500
Email: tjones@porterwright.com

Syed Ahmadul Huda (Ohio 0098633) (*pro hac vice*)
41 South High Street, 29th Floor
Columbus, OH 43215
Telephone: (614) 227-2000
Facsimile: (614) 227-2100
Emails: ahuda@porterwright.com

---

[12]    As noted in footnote 5 of FAC, the Trustee expressly noted that Defendants "need not plead to [the] [civil conspiracy] claim."  This Court should thus reject the Trustee's attempt to revive the civil conspiracy claim through his Opposition Brief.  (Trustee Br. 40-41.)  In any event, the Trustee acknowledges that the viability of the civil conspiracy is tied to the breach-of-fiduciary duty claim. (*See id.*)  If the fiduciary duty claim fails, the civil-conspiracy claim fails as well.

*Attorneys for Defendants John Devitt Kramer and Mark Novad*