## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE ART INSTITUTE OF PHILADELPHIA LLC, *et al.*,<br><br>Debtors. | Chapter 7<br>Case No. 18-11535 (CTG)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>TODD S. NELSON, JOHN R. McKERNAN, SAMUEL C. COWLEY, EDWARD WEST, MARK A. McEACHEN, FRANK JALUFKA, J. DEVITT KRAMER, MARK NOVAD, JOHN DANIELSON, and MICK BEEKHUIZEN,<br><br>Defendants. | <u>JURY TRIAL DEMANDED</u><br><br>Adv. Proc. No. 20-50627 (CTG) |

## REPLY MEMORANDUM OF DEFENDANTS WEST AND BEEKHUIZEN IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

OF COUNSEL:
Morgan, Lewis & Bockius LLP
Michael L. Kichline, *pro hac vice*
Jeffrey J. Masters, *pro hac vice*
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000

Robert H. O'Leary, *pro hac vice*
One Market, Spear Street Tower
28th Floor
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

RICHARDS, LAYTON & FINGER, P.A.
Marcos A. Ramos (No. 4450)
J. Zachary Noble (No. 6689)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700

June 15, 2022

*Counsel for Defendants Edward West and Mick Beekhuizen*

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 4

I.     THE TRUSTEE'S ARGUMENT THAT THE FAC CONTAINS "EXTENSIVE
      ALLEGATIONS" THAT DEFENDANTS BREACHED THEIR FIDUCIARY
      DUTIES IS MERITLESS. ............................................................................................... 4

II.    THE TRUSTEE'S ARGUMENT THAT THE AG COMPLAINT AND THE
      CONGRESSIONAL LETTERS WERE "RED FLAGS" OF ILLEGAL
      CONDUCT MUST BE REJECTED. ................................................................................ 8

III.   THE TRUSTEE'S OPPOSITION DOUBLES DOWN ON HIS
      IMPERMISSIBLE GROUP PLEADING ........................................................................ 9

      A.    The Lumping Of Defendants Is Impermissible. ..................................................... 9

      B.    The Lumping Of Debtors As An "Enterprise" Is Impermissible ......................... 11

IV.  THE TRUSTEE'S ARGUMENT THAT HE HAS PLED FACTS
      ESTABLISHING HARM OR INJURY TO THE DELAWARE HOLDING
      COMPANIES DURING THE LIMITATIONS PERIOD IS INCORRECT .................. 14

V.    THE TRUSTEE'S ARGUMENT THAT HE HAS PLED CIVIL CONSPIRACY
      IS MERITLESS. ........................................................................................................... 15

VI.  THE TRUSTEE'S OPPOSITION FAILS TO SAVE HIS CLAIM TO RECOVER
      THE SEVERANCE PAYMENT FROM MR. BEEKHUIZEN ..................................... 15

CONCLUSION ..................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................2, 6

*Barnes v. Harris*,
  No. 2:12-CV-1010 TS, 2013 WL 1982182 (D. Utah May 13, 2013)....................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................2

*Buckley v. O'Hanlon*,
  No. 04-955GMS, 2007 WL 956947 (D. Del. Mar. 28, 2007) ...........................................10, 11

*CareDx, Inc. v. Natera, Inc.*,
  563 F. Supp. 3d 329 (D. Del. 2021)....................................................................................4

*Clark v. BASF Salaried Employees' Pension Plan*,
  329 F. Supp. 2d 694 (W.D.N.C. 2004) .................................................................................13

*Clinton v. Enter. Rent-A-Car Co.*,
  977 A.2d 892 (Del. 2009) ....................................................................................................6

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
  948 F. Supp. 338 (D. Del. 1996)...........................................................................................11

*In re Genesis Health Ventures, Inc.*,
  355 B.R. 438 (Bankr. D. Del. 2006) .....................................................................................11

*Guinn v. St. Jude Medical, LLC*,
  No. CV 20-71-CJB, 2020 WL 12442365 (D. Del. Dec. 30, 2020).........................................7

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) .....................................................................................12

*Lubin v. Skow*,
  382 F. App'x 866 (11th Cir. 2010) .......................................................................................12

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993).................................................................................................13

*U.S. ex rel. Pilecki-Simko v. Chubb Inst.*,
  443 F. App'x 754 (3d Cir. 2011) ...........................................................................................5

*Sweda v. Univ. of Pennsylvania*,
   923 F.3d 320 (3d Cir. 2019)......................................................................................6

*Trevino v. Merscorp, Inc.*,
   583 F. Supp. 2d 521 (D. Del. 2008).........................................................................11

## INTRODUCTION

In his Opposition (the "Opposition" or "Opp."), the Trustee contends that this Court has already ruled that the allegations in the First Amended Complaint (the "FAC") adequately state claims for breach of fiduciary duty and civil conspiracy and, even if the Court were to reconsider its earlier ruling, the FAC contains sufficient factual allegations to sustain his claims.  These arguments are meritless.

This Court's earlier ruling, D.I. 87 (the "Opinion"), plainly does not foreclose—and does not permit the Trustee to escape—consideration of whether the allegations of the FAC survive scrutiny under *Twombly* and *Iqbal*.  In his original Complaint, the Trustee indiscriminately lumped all ***ten*** Defendants together on numerous claims asserted on behalf of ***fifty-six*** debtors for alleged misconduct spanning a period of almost ***two decades***.  Now that the Court has ruled on the statutes of limitations, pared away decades-old allegations, dismissed various Defendants, and defined the narrow time period during which the remaining Defendants may potentially be liable to specific Debtors, the Court can and should consider (or reconsider) whether the Trustee's allegations ***in the FAC*** meet the stringent standards mandated by *Twombly* and *Iqbal*.

The Trustee does not dispute that under the Court's ruling Messrs. West and Beekhuizen may potentially be liable solely in their capacities as officers or directors of the Delaware Holding Companies for breaches of fiduciary duty occurring between the start of the three-year limitations period on June 29, 2015 and the time they departed EDMC, which for Mr. West is August 28, 2015 and for Mr. Beekhuizen is February 28, 2016 (the "Limitations Period").  Nor does the Trustee dispute that his only allegations to support claims during this critical period are that "Upon information and belief, Defendants' unlawful behavior continued . . . unabated through and beyond the time of the 2015 Settlements" and that the "fraud [*i.e.*, violations of the

False Claims Act or FCA] was ongoing and continued until shortly before or to the Petition Date." FAC ¶¶ 90, 131. These conclusory and speculative allegations are legally insufficient.

As Justice Souter wrote in *Bell Atlantic Corp. v. Twombly*, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and a complaint that merely tenders "naked assertions" without "further factual enhancement" must be dismissed for failure to "state a claim for relief that is plausible on its face." *Id.* at 555, 557, 570. Later, in *Ashcroft v. Iqbal*, the Court held that "[t]o survive a motion to dismiss" a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable" and shows "more than a sheer possibility that the defendant has acted unlawfully." 556 U.S. 662, 678 (2009). And, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations" that push the claims "across the line from conceivable to plausible." *Id.* at 679–80.

Here, the Trustee's Opposition confirms that his fiduciary duty allegations lack any "factual enhancement" and are nothing more than naked assertions and speculation that fall well short of stating a "plausible" claim. For example, the Trustee's Opposition does not point to a single fact establishing that EDMC actually committed a single violation of the FCA or any other law during the Limitations Period; that Messrs. West or Beekhuizen "implemented" or "failed to reform" any "illegal" conduct during the Limitations Period; or that any EDMC company became subject to any governmental action or paid any fines or penalties or suffered any loss in asset value due to any conduct that occurred during the Limitations Period. The lone allegation that EDMC's Board minutes do not reflect any effort to reform supposedly illegal practices—*i.e.*, an allegation that the purported lack of a notation in meeting minutes is somehow a substitute for

2

affirmative factual allegations of actual misconduct—is sheer speculation that violates *Twombly* and *Iqbal*.

In his Opposition, the Trustee points to allegations in the FAC that Messrs. West and Beekhuizen "consciously disregard[ed]" and "ignor[ed]" numerous "red flags" that should have alerted them to the continuation of "illegal" conduct after the 2015 Settlements.  The Trustee alleges that (i) in *2018* the Massachusetts Attorney General filed a lawsuit alleging that EDMC misled students about certain programs offered at one school in New England (the "AG Complaint"), and (ii) in *2017* certain members of Congress sent letters to accreditation agencies urging them to "carefully scrutinize" the sale of certain EDMC schools to The Dream Center Foundation (the "Dream Center," and the letters, the "Congressional Letters").  Not only do these matters fail to demonstrate the commission of any actual illegal conduct by any EDMC company or any breach of fiduciary duty by Messrs. West and Beekhuizen during the Limitations Period, they could not possibly have been "red flags" that were "ignored" by Messrs. West or Beekhuizen because they had departed EDMC *years* before the AG Complaint was filed or the Congressional Letters were written.

Furthermore, the FAC fails to plead any actual harm or injury flowing from any alleged breach of fiduciary duty during the Limitations Period.  In his Opposition, the Trustee argues that the Delaware Holding Companies were injured "because they were subject to the fines and penalties imposed on the EDMC Companies . . . and because the value of the EDMC Companies' assets, which they owned, was destroyed."  Opp. at 38.  But the FAC specifically pleads that these supposed harms flowed from the 2015 Settlements, which were indisputably based on alleged conduct that long preceded those settlements and the Limitations Period.

3

There is no reading of the FAC that can plausibly sustain the claims against Messrs. West and Beekhuizen under *Twombly* and *Iqbal*. Moreover, the Court may grant Messrs. West and Beekhuizen's motion even if the Court concludes that its earlier ruling has continuing relevance to the allegations under the FAC, as the Court "may revisit a prior decision *sua sponte* so long as it has not entered a final judgment depriving it of jurisdiction to reconsider the issue." *CareDx, Inc. v. Natera, Inc.*, 563 F. Supp. 3d 329, 332 n.1 (D. Del. 2021) (citing *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010)). Here, dismissal of the factually barren and purely speculative assertions lodged against Messrs. West and Beekhuizen under the FAC is completely consistent with the Court's gatekeeping function in weeding out groundless claims at the pleading stage.

## **ARGUMENT**

### I.     The Trustee's Argument That The FAC Contains "Extensive Allegations" That Defendants Breached Their Fiduciary Duties Is Meritless.

The Trustee's theory of liability is that Messrs. West and Beekhuizen breached their fiduciary duties by implementing "illegal practices" or "failing to reform illegal practices." The "illegal practices" that underly this theory are alleged violations of the FCA, which formed the basis of the *Qui Tam* Complaint adopted by the Trustee and which led to the 2015 Settlements for which the Trustee seeks to recover. Thus, to sustain his claims, the Trustee must allege specific ***facts*** establishing that (i) EDMC actually committed violations of the FCA during the Limitations Period, and (ii) Messrs. West and Beekhuizen actually implemented or failed to reform the conduct that constituted or led to violations of the FCA during the Limitations Period.

While the Trustee relies nearly exclusively on allegations from the *Qui Tam* Complaints in an attempt to allege conduct that preceded the Limitations Period, those allegations stand in stark contrast to the FAC's lone, anemic post-June 29, 2015 allegation, which the Trustee pastes into his Opposition:

4

> Upon information and belief, Defendants' unlawful behavior continued through the sale of the Debtors' businesses. The unlawful behavior was part of a course of conduct that continued unabated through and beyond the time of the 2015 Settlements. A review of the Board of Directors' meeting minutes shows no concerted effort by Defendants to reform their behavior or to comply with the Consent Judgments.

Opp. at 33 (quoting FAC ¶ 131). By the Trustee's own admission, these three sentences set forth the totality of the Trustee's "implementation" and "failure to reform" allegations against Messrs. West and Beekhuizen within the Limitations Period.[1]

First, the Trustee does not even attempt to allege that EDMC actually violated the FCA during the Limitations Period. The Third Circuit has held that "a prima facie claim under the FCA requires a plaintiff to show that (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *U.S. ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x 754, 761 (3d Cir. 2011). Here, the FAC does not contain a single allegation establishing a single violation of the FCA by EDMC or the Delaware Holding Companies during the Limitations Period. On this basis alone, the claims against Messrs. West and Beekhuizen must be dismissed.

Second, even if the Trustee could escape his obligation to plead an underlying FCA violation within the Limitations Period by relying on the existence of the time-barred conduct at

---

[1] The Trustee also pasted Paragraphs 119 and 161 of the FAC into his Opposition, but neither paragraph saves his claims. Paragraph 119 merely notes that EDMC entered into settlements and consent judgments in 2015 arising out of alleged conduct that is plainly barred by the statute of limitations. Paragraph 161 alleges that Mr. Beekhuizen breached his fiduciary duties by not causing EDMC and the Delaware Holding Companies to investigate and assert claims against certain Defendants. However, the Trustee does not even attempt to address Mr. Beekhuizen's arguments with regard to this point. *See* Messrs. West and Barkhuizen's Opening Memorandum ("Mem.") at 25–26.

issue in the *Qui Tam* Complaints (and he cannot), the Trustee simply has not alleged a single *fact*—not one—establishing that any alleged unlawful behavior continued into the Limitations Period. The Trustee instead speculates, on information and belief, that the alleged prior conduct continued. But by the Trustee's logic, any plaintiff could resurrect any past alleged misconduct by reciting upon nothing more than "information and belief" that the conduct "continued." This would turn the pleading standard on its head and allow claims to proceed into discovery based solely on rank speculation that time-barred conduct continued unabated.

Not surprisingly, the Trustee's view of what he must allege is not the law. "[C]ourts must take great care to allow only plausible, rather than possible, claims to withstand a motion to dismiss." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 343 (3d Cir. 2019) (Roth, J., concurring in part and dissenting in part); *see also, e.g.*, *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) ("We do not . . . simply accept conclusory allegations unsupported by specific facts, nor do we draw unreasonable inferences in the plaintiff's favor."). It is elementary that to meet his pleading burden, the Trustee must allege "more than a sheer possibility that a defendant has acted unlawfully"; a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). But the Trustee has not even attempted to make such factual allegations and, instead, relies on pure speculation that it is possible that the conduct continued.

The Trustee may not cure the fatal absence of well-pleaded ***facts*** by couching his allegations as "upon information and belief." Plaintiffs may only plead facts upon information and belief if "the requisite factual information is peculiarly within the defendant's knowledge or control," "there are no boilerplate and conclusory allegations," and "[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'"

*Guinn v. St. Jude Medical, LLC*, No. CV 20-71-CJB, 2020 WL 12442365, at *7 (D. Del. Dec. 30, 2020) (quoting *McDermott v. Clondalkin Grp.*, 649 F. App'x 263, 267–68 (3d Cir. 2016)). Here, the Trustee meets none of these requirements.  *First*, the Trustee does not allege that "the requisite factual information is peculiarly within the defendant's knowledge or control."  To the contrary, the Trustee, by virtue of his position, possesses and/or has access to all of the Debtors' documents and information.  *Second*, his allegation that "Defendants' unlawful behavior continued [into the Limitations Period]" is about as "boilerplate and conclusory" as one can imagine.  *Third*, the Trustee has not accompanied his theory with any plausible factual allegations, and he points to ***nothing*** to substantiate his baseless "belief" that the alleged conduct "continued unabated."  It is one thing to allege "upon information and belief" the existence of a single fact; it is quite another to utilize "upon information and belief" pleading to try to sustain a three-year period of supposed breaches of fiduciary duty based on illegal acts.

The Trustee's one-line reference to unspecified minutes of Board meetings, which he claims "show[] no concerted effort by Defendants to reform their behavior or to comply with the Consent Judgments," adds nothing in the *Twombly/Iqbal* equation.  The fact that something does not specifically appear in minutes is not probative—minutes are a high-level summary, not a transcript.  In any event, the alleged absence of mention of reformation activities in minutes does not—and cannot—equate to affirmative factual proof that (i) illegal acts were continuing to be committed, and (ii) the fiduciaries failed to stop or reform those practices.

Finally, the Trustee's bald assertion that "upon information and belief" the conduct continued "unabated" until the filing of the petition is all the more implausible considering that the 2015 Consent Decrees enjoined EDMC from violating the law.  The Trustee would have this Court believe that EDMC was continuing to violate the law for an uninterrupted three-year

period after the Consent Decrees, yet neither the federal nor state governments that are parties to those Consent Decrees ever took action to rescind or enforce them.  That is simply not the case.

The Trustee's conclusory and implausible allegations plainly fail to meet *Twombly* and *Iqbal* and must be rejected.

## II.    The Trustee's Argument That The AG Complaint And The Congressional Letters Were "Red Flags" Of Illegal Conduct Must Be Rejected.

In a desperate attempt to conjure up some conduct within the post-2015 Limitations Period, the Trustee points to two supposed "red flags" that he says were raised and "ignored" by Messrs. West and Beekhuizen: a complaint filed by the Massachusetts Attorney General in 2018, and a letter written by several members of Congress to "several university accrediting commissions" dated June 22, 2017.  These so-called "red flags" provide *zero* support for the claims against Messrs. West and Beekhuizen.

First, the Trustee ignores—and does not dispute—that ***these supposed red flags were supposedly waved well after Messrs. West and Beekhuizen had left EDMC***.  Mr. West departed EDMC in August 2015 and Mr. Beekhuizen departed on February 28, 2016.  Thus, even assuming these matters were "red flags" of illegal conduct that should have been heeded (which they were not), they arose years after Messrs. West and Beekhuizen departed EDMC.

Second, these matters do not evidence any illegal conduct and certainly not the type of conduct upon which the Trustee relies in support of his claims (*i.e.*, violations of the FCA).  The AG Complaint alleged that EDMC engaged in unfair or deceptive acts or practices by allegedly misrepresenting placement rates, job search assistance programs, cost of attendance, and

availability of financial aid.  Ex. 17, at ¶ 1; *see* FAC ¶ 133(o).[2]  These allegations—and they

were nothing more than that—are not alleged by the Trustee to have had anything to do with

submitting false claims to a government agency.  The Congressional Letters referenced certain

historical practices of EDMC, but were written to urge the accreditation agencies to "carefully

scrutinize" EDMC's sale of certain schools to the Dream Center.  Ex. 18; *see* FAC ¶ 133(m)-(n).

In short, nothing in the AG Complaint or the Congressional Letters establishes the existence of

any actual violation of law, and they certainly do not establish that any EDMC officer or director

breached his fiduciary duties.

### III.    The Trustee's Opposition Doubles Down On His Impermissible Group Pleading.

In his Opposition, the Trustee doubles down on his group pleading, arguing that his

failure to allege specific acts by each Defendant on behalf of the distinct Debtors is excused

because (i) "all of the Defendants collectively engaged in, or continued, [unlawful] behavior,"

and (ii) EDMC allegedly acted as an "enterprise."  Opp. at 34, 36.  Both of these arguments fail.

#### A.    The Lumping Of Defendants Is Impermissible.

The Trustee makes no attempt to distinguish or even acknowledge the cases Messrs. West

and Beekhuizen cited for the basic proposition that a complaint must plead specific facts against

each Defendant.  *See* Mem. at 13 (citing *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645,

682 (N.D. Tex. 2011) (rejecting group "participation" and "involvement" allegations); *In re

Conex Holdings, LLC*, 514 B.R. 405, 414–15 (Bankr. D. Del. 2014) ("[T]he Trustee has failed to

satisfy the *Twombly* and *Iqbal* pleading standard. . . .  [T]he Trustee lumps all of the Individual

Defendants together . . . without supplying specific facts as to each defendant's wrongdoing. . . .

---

[2] Exhibit citations refer to the exhibits to the Declaration in Support of Defendants West and
Beekhuizen's Reply Memorandum in Support of Their Motion to Dismiss the First Amended
Complaint, filed contemporaneously herewith.

[T]he Trustee has not provided any specific facts as to which transactions a particular defendant authorized. . . . [T]he allegations are 'vague and lack sufficient detail about which officers, if any, knowingly participated.' This is not a close question. Much more specificity is needed here to satisfy the legal standard."); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal. . . . Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed."); and *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 465–66 (Bankr. D Del. 2018) (noting that the plaintiff "must not lump defendants together 'without supplying specific facts as to each defendant's wrongdoings.'" (quoting *Conex*, 514 B.R. at 414))).

Instead, the Trustee mischaracterizes two pre-*Twombly/Iqbal* cases that plainly do not sanction the Trustee's pleading failures. *See* Opp. at 34. In *Buckley v. O'Hanlon*, the court excused the plaintiff's group pleading because "[w]hile not all of [the plaintiff's] allegations name the involved defendants individually, [the plaintiff] did separate the list of defendants into smaller groups who worked together on various committees and boards." No. 04-955GMS, 2007 WL 956947, at *5 (D. Del. Mar. 28, 2007). The court contrasted this subgrouping with the plaintiff's use of the collectively-lumped "Defendants," which, on its own and absent the subgrouping, would not have been sufficient. *Id.* Critically, the court noted that it "accept[ed] that Buckley uses the categories of officers and directors merely as substitutes for listing names, rather than using them as sweeping terms to avoid having to associate specific parties to particularized conduct." *Id.* Thus, *Buckley* provides no support for Trustee's pleading tactics, where he makes no attempt to describe any individual actions of the many Defendants he is suing.

10

Similarly, *In re Genesis Health Ventures, Inc.* does not excuse the Trustee's impermissible lumping of defendants.  In *Genesis*, the court concluded that "collective references to the 'defendants'" did not render the pleadings defective because the plaintiffs provided sufficient other information about the roles of different defendants and made "enough individualized allegations" in "one crucial section of the Complaint" that rendered the pleading proper.  355 B.R. 438, 457 (Bankr. D. Del. 2006).  That is just not the case here, where the Trustee does not make any individualized allegations in any section of the FAC and, instead, refers throughout the FAC to the "Defendants" collectively.

**B.      The Lumping Of Debtors As An "Enterprise" Is Impermissible.**

Nor can the Trustee escape his burden to plead what actions Messrs. West and Beekhuizen took in connection with their roles at the Delaware Holding Companies by describing the EDMC entities as an "enterprise."  It is black letter law that the corporate form must not be disregarded absent circumstances that the Trustee has not pleaded here (such as piercing the corporate veil or an alter ego theory of liability).  *See, e.g.*, *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528–32 (D. Del. 2008) (refusing to disregard the corporate form where sufficient facts not pleaded).  The Trustee never alleges that the EDMC entities were or functioned as an "enterprise"—that word does not even appear in the FAC—and the Trustee cannot now amend his FAC through his Opposition.  *See, e.g.*, *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 948 F. Supp. 338, 344 (D. Del. 1996) ("Packard Bell cannot amend its complaint through its briefs.") (citing *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).  Instead, the Court must analyze the various corporate entities individually.  *See, e.g.*, *In re HH Liquidation, LLC*, 590 B.R. 211, 278 (Bankr.

D. Del. 2018) ("It is necessary to address the individual Defendant's alleged breach of fiduciary duty vis-à-vis each Debtor.").

The Trustee's attempt to distinguish *Lubin v. Skow*, 382 F. App'x 866 (11th Cir. 2010) and *Barnes v. Harris*, No. 2:12-CV-1010 TS, 2013 WL 1982182 (D. Utah May 13, 2013), which squarely held that plaintiffs must allege the specific actions that each defendant took in connection with their roles at each entity, fails. According to the Trustee, "the plaintiffs therein failed to allege how the holding company allegations related to the breaches of fiduciary duty, whereas here the Court has already determined that the Trustee's allegations sufficiently plead breaches of duty and harm as to both EDMC and the Delaware Holding Companies." Opp. at 36–37. However, Messrs. West and Beekhuizen's motion is based on the Trustee's claims *as specifically narrowed by the Opinion*, which now focus **exclusively** on their acts **in connection with their roles at the Delaware Holding Companies**. In bringing the microscope down on the Delaware Holding Companies and looking at the claims and issues in light of the Opinion, it is clear that the Trustee's allegations are insufficient, just as they were in *Lubin* and *Barnes*.

The Trustee further argues that "*Lubin* notes that a failure by holding company officers to 'respond to mismanagement [at the bank] by changing the [b]ank management' may have been sufficient to state a claim." *Id.* at 37. He then says, "Here, beyond mere mismanagement, the Trustee alleges that the Defendants, who were officers and directors of the Delaware Holding Companies, failed to respond to known illegal practices by leaving them in place, failing to reform them, and failing to bring claims against those responsible." *Id.* But again, the Trustee misses the mark. The FAC says **nothing** about Messrs. West's and Beekhuizen's roles and responsibilities **at the Delaware Holding Companies**, much less how they would have had the power to remedy these alleged issues **at the Delaware Holding Company level**. Indeed, even the

12

Trustee's Opposition argues only that Messrs. West and Beekhuizen happened to be directors and officers of the Delaware Holding Companies—***not*** how they could have done anything differently at the Delaware Holding Companies or how their alleged inaction constituted a breach of fiduciary duty to the Delaware Holding Companies.

Lastly, the Trustee's challenge to various recruiting and admissions materials establishing that Education Management Corporation (and not the Delaware Holding Companies) was responsible for implementing and overseeing recruiter compensation practices fails.[3]  The Trustee contends that it is "hardly unusual" that those documents bear Education Management Corporation's name.  But the Trustee misconstrues the import of these documents.  Now that the Court is called upon to examine whether any conduct ***at the Delaware Holding Companies*** constitutes a breach of fiduciary duty, the documents confirm that the supposed "unlawful compensation policies" were not policies of the Delaware Holding Companies, but rather Education Management Corporation.  The Trustee even pled this fact in the FAC: "[T]he compensation system for admissions staff was ***developed at the corporate level*** and ***approved by EDMC Corporate***."  FAC ¶ 110 (emphases added).  Accordingly, these documents and the Trustee's own allegations confirm that the policies at issue were authorized and implemented at the EDMC corporate level—not at the Delaware Holding Company level.

---

[3] The Trustee complains that the Court may not take judicial notice of these documents, but ignores the fact that every single one of the documents cited are exhibits to, and are therefore considered part of, the *Qui Tam* Complaint that the Trustee himself chose to rely on and attach as an exhibit to his own FAC.  Therefore, the Court may consider these documents when deciding Messrs. West and Beekhuizen's motion to dismiss.  *See Clark v. BASF Salaried Employees' Pension Plan*, 329 F. Supp. 2d 694, 697 & n.1 (W.D.N.C. 2004) (taking judicial notice of and considering on a motion to dismiss exhibits attached to a prior related complaint); *see generally Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that courts can consider exhibits attached to a complaint on a motion to dismiss).

IV.     **The Trustee's Argument That He Has Pled Facts Establishing Harm Or Injury To The Delaware Holding Companies During The Limitations Period Is Incorrect.**[4]

In their Opening Memorandum, Messrs. West and Beekhuizen argued that the FAC fails to plead that the Delaware Holding Companies were harmed or injured by any act or conduct within the Limitations Period.  Mem. at 24–25.  In his Opposition, the Trustee argues that "the Delaware Holding Companies were harmed by the misconduct alleged in the FAC because they were subject to fines and penalties imposed on the EDMC Companies . . . and because the value of the EDMC Companies' assets, which they owned, was destroyed."  Opp. at 38.

Critically, these alleged "harms" are specifically alleged to have flowed from the 2015 Settlements, pursuant to which EDMC paid $95 million to the government and forgave $100 million in loans.  It is these settlements that the FAC alleges "crippled the Debtors and ultimately led to their demise."  FAC ¶ 3; *see also id.* ¶ 120 ("In short, the 2015 Settlements and the revelation of the Company's illegal practices sent the Company into a downward spiral from which it never recovered.").  But these alleged harms—*i.e.*, the payment of fines/penalties and the consequent loss of value in the Debtors' assets—allegedly resulted from conduct that ***preceded*** the 2015 Settlements and the Limitations Period.[5]

---

[4] The Trustee argues that the Court should not "take judicial notice of LLC Agreements for 3 of the Delaware Holdings Companies, certain Certificates of Formation, and selected pages from certain Debtors' bankruptcy petitions."  Opp. at 38 n.23.  However, the Trustee makes no convincing argument as to why courts may take judicial notice of an exculpation provision, owed duties, and lack of a board of directors as in *Essar Steel*, *Kahn*, and *Lazard Debt Recovery*, but not the pass-through nature of the Delaware Holding Companies here.

[5] The conduct underlying the *Qui Tam* Complaints is plainly outside of the Limitations Period and barred by the statute of limitations.  The Washington Action was filed in 2007 and unsealed in 2011, and the Sobek Action was filed in 2010 and unsealed in 2012.  FAC ¶¶ 61, 65.  The FAC specifically alleges that this litigation challenged conduct "during the period of July 1, 2003 through June 30, 2011."  *Id.* ¶ 63.

14

The FAC does not allege any harm or injury inflicted on the Delaware Holding Companies *after* the 2015 Settlements and during the Limitations Period.  For example, the FAC does not allege that during this time the Delaware Holding Companies became subject to *other* governmental, regulatory, or civil action that resulted in the actual payment of fines or penalties by, or damages to, the Delaware Holding Companies.

Accordingly, because the FAC does not plead—and cannot plead—any concrete harm or injury flowing from an alleged breach of fiduciary duty during the Limitations Period, the claims on behalf of the Delaware Holding Companies must be dismissed.

## V.      The Trustee's Argument That He Has Pled Civil Conspiracy Is Meritless.

In his Opposition, the Trustee argues that because he has stated a claim for breach of fiduciary duty, he has also stated a claim for conspiracy.  First, the Trustee has failed to plead a fiduciary duty claim and for this reason alone his conspiracy claim fails.  Second, his Opposition does not identify a single fact evidencing any agreement or conspiracy between Messrs. West and Beekhuizen and any other person.  He relies *solely* on the conclusory assertion or label of a conspiracy, which, again, fails under *Twombly* and *Iqbal*.  Therefore, the claim fails.

## VI.     The Trustee's Opposition Fails To Save His Claim To Recover The Severance Payment From Mr. Beekhuizen.

As the Trustee concedes, Count VII against Mr. Beekhuizen arising under 11 U.S.C. § 548(a)(1)(B) is time-barred.  *See* Opp. at n.17.  And the other payment claims against Mr. Beekhuizen fail for all of the reasons advanced by the other Defendants.

## <u>CONCLUSION</u>

For all of the foregoing reasons, and as set forth more fully in the Memorandum, Messrs. West and Beekhuizen respectfully request that the Court dismiss the FAC with prejudice.

Dated: June 15, 2022
Wilmington, DE

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

/s/ Marcos A. Ramos

Marcos A. Ramos (No. 4450)
J. Zachary Noble (No. 6689)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
ramos@rlf.com
noble@rlf.com

MORGAN, LEWIS & BOCKIUS LLP
Michael L. Kichline, *pro hac vice*
Jeffrey J. Masters, *pro hac vice*
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
michael.kichline@morganlewis.com
jeffrey.masters@morganlewis.com

Robert H. O'Leary, *pro hac vice*
One Market, Spear Street Tower
28th Floor
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (215) 442-1001
bob.oleary@morganlewis.com

*Counsel for Defendants Edward West and Mick Beekhuizen*