**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

CRAIG T. GOLDBLATT
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-3832



August 25, 2025

**VIA CM/ECF**

Re: *Miller v. Nelson, et al.,* Adv. Proc. No. 20-50627

The trustee's motion for leave to amend the complaint that is now before the Court is somewhat unusual. The crux of the dispute is whether the amended complaint adds a new claim about which the defendants were not put on notice by the existing complaint, or simply "fleshes out" the claims already asserted in the existing complaint. What is odd is that to the extent it is the former, the parties agree that the motion must be denied; if it is the latter, they agree that the motion is unnecessary. Otherwise put, the parties essentially agree that the case should go forward based on the claims asserted in the existing second amended complaint. The question on which they disagree is whether the proposed third amended complaint adds anything new.

The Court concludes that the proposed third amended complaint asserts a new and different claim from the ones asserted in the second amended complaint. As such, the amended claim would not relate back to the filing of the original complaint

*Miller v. Nelson, et al.,* Adv. Proc. No. 20-50627
August 25, 2025
Page 2 of 10

and is therefore time barred. The motion for leave to amend will accordingly be denied on the ground that amending the complaint to assert a time-barred claim would be futile.

The basic legal principles are straightforward. Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[1]

Fairly read, the amended complaint seeks to assert a new and different claim, arising from a different "transaction" or "occurrence" from the claims asserted in the second amended complaint. While there are a variety of different legal theories, the basic events that give rise to this lawsuit are as follows. The defendants are former directors and officers of Educational Management Company and/or its affiliates, which ran for-profit colleges. The second amended complaint alleged that the schools misled prospective students about the tuition costs and their job prospects, in violation of the Higher Education Act of 1965. These acts led to a congressional investigation, the filing of a *qui tam* action in which the Justice Department intervened, and an investigation by various state attorneys general. The resolution of these matters cost the company approximately $200 million (in settlement

---

[1] Fed. R. Civ. P. 15(c) (as made applicable to this adversary proceeding under Fed. R. Bankr. P. 7015). *See also Bensel v. Allied Pilots Assoc.*, 387 F.3d 298, (3d Cir. 2004) (a "party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading").

payments and student loan debt forgiveness). The settlements proved unaffordable. The companies were forced to sell their schools at "pennies on the dollar" and ultimately filed chapter 7 bankruptcy cases. Along the way, various executives received bonuses of more than $20 million. On that basis, the complaint sought to recover "an amount in excess of $200 million" as damages for the cost of the settlements (on claims of breach of fiduciary duty, and other legal theories) and the recovery of the bonus payments (which the trustee seeks to recover as, among other things, fraudulent conveyances).[2]

The proposed third amended complaint adds a new set of alleged breaches of fiduciary duty that were not alleged in the second amended complaint. To oversimplify, the new theory is that while the assets were being sold, the companies turned down an offer that would have been better for the company but would have had adverse collateral consequences both for the defendants personally and for KKR & Co., Inc., the company's private equity sponsor. The third amended complaint alleges that the potential sale that the company chose not to pursue would have brought in an additional $150 million for the company. And the third amended complaint accordingly increases the damages sought to $350 million.

Any way you slice it, that is a new and different claim that falls outside of the claims alleged in the second amended complaint. The nub of the trustee's argument is that the second amended complaint alleges that, as a result of the liquidation of

---

[2] D.I. 132 at 47.

the company, creditors ended up recovering only "pennies on the dollar" on their prepetition claims. He says that this allegation is sufficient to put the defendants on notice that the manner in which they liquidated the assets failed to maximize value, and that this therefore includes the claim for turning down the higher offers because of their conflicts of interest.

That contention simply reads the second amended complaint at too high a level of generality. A comparison between the Third Circuit's decision in *Glover v. F.D.I.C.* on the one hand, and *Bensel v. Allied Pilots Association* on the other, demonstrates this point.[3]

In *Bensel*, a class of former TWA pilots sued their union.[4] American Airlines had bought TWA out of bankruptcy.[5] The treatment of TWA union pilots' seniority was a major sticking point in negotiations.[6] The union ultimately waived its seniority protections in exchange for American's assurance that it would "use its reasonable best efforts to ensure a fair seniority integration process."[7] A year after the transaction closed, the union initiated arbitration against American claiming that the airline had not used its reasonable best efforts to protect TWA pilots' seniority.[8]

---

[3] 698 F.3d 139 (3d Cir. 2012); 387 F.3d 298 (3d Cir. 2004).

[4] *Bensel*, 387 F.3d at 301. Trans World Airlines is referred to as "TWA."

[5] *Id.* American Airlines is referred to as "American."

[6] *Id.* at 302.

[7] *Id.*

[8] *Id.* at 303.

The arbitrator found in favor of American.⁹ A few months later the affected pilots initiated a class action against their union.¹⁰ The pilots amended their complaint twice.¹¹ The union challenged the pilots' second amended complaint as time barred because the new allegations did not relate back.¹² The district court dismissed the pilots' complaint in part.¹³ And the Third Circuit reversed in relevant part.¹⁴

The court held the amended complaint *did* relate back because the additional facts in the second amended complaint simply added "further details [to] the factual scenario … that [was] roughly sketched in" the original complaint.¹⁵ For example, the original complaint "outline[ed] in broad terms" all the key events that gave rise to the present litigation. Though the original complaint focused on certain specific violations, it also alleged a general breach by the union of its duties under the collective bargaining agreement.¹⁶ Those allegations were broad enough to "easily be read to encompass the more particularized claim in the Second Amended Restated Complaint."¹⁷ That the new allegations flowed "directly from the factual

---

⁹ *Id.*

¹⁰ *Bensel*, 387 F.3d at 303.

¹¹ *Id.*

¹² *Id.* at 309-310.

¹³ *Id.* at 310-312.

¹⁴ *Id.*

¹⁵ *Id.* at 310.

¹⁶ *Bensel*, 387 F.3d at 310.

¹⁷ *Id.*

Case 20-50627-CTG    Doc 189    Filed 08/25/25    Page 6 of 10

*Miller v. Nelson, et al.,* Adv. Proc. No. 20-50627
August 25, 2025
Page 6 of 10

circumstances" in the original complaint reaffirmed the court's view that the new allegations related back.[18]

*Glover*, however, explains that there comes a point when the gravamen of the amendment is simply too different from the original allegations for it to fall within the same "transaction or occurrence." In *Glover*, the plaintiff, Mary Glover, took out a mortgage from Washington Mutual Bank.[19] Glover eventually fell behind on her payments and was unable to negotiate a workout with the bank.[20] Soon after, a lawyer from Udren Law Offices called Glover and informed her that she owed Washington Mutual the 11 missed mortgage payments.[21] The bank initiated foreclosure proceedings in April 2006.[22] A lawyer from the Udren Law Offices filed the foreclosure complaint.[23]

Before the foreclosure took place, however, Washington Mutual assigned Glover's mortgage to Wells Fargo. Glover and Wells Fargo were able to negotiate a workout that prevented the foreclosure.[24] But the foreclosure complaint was not withdrawn until nearly four years later.[25]

---

[18] *Id.*

[19] *Glover*, 698 F.3d at 142.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 143.

[24] *Id.*

[25] *Glover*, 698 F.3d at 143-144.

*Miller v. Nelson, et al.,* Adv. Proc. No. 20-50627
August 25, 2025
Page 7 of 10

In June 2008, Glover filed a class action against Washington Mutual, Wells Fargo, and the Udren Law Offices.[26] The complaint alleged, among other things, Fair Debt Collection Practices Act violations against Udren.[27] The first amended complaint accused Udren of making an improper phone call and demanding allegedly unlawful attorney's fees in connection with the foreclosure.[28] Glover then sought to file a second amended complaint alleging that Udren violated the FDCPA by failing to withdraw the foreclosure complaint after Glover signed the mortgage workout with Wells Fargo.[29] The district court denied Glover leave to amend because the new Udren allegations did not relate back to the original complaint.[30] Glover appealed and the Third Circuit affirmed.[31]

It found that the original complaint did not put the Udren defendants on notice of the claim relating to the failure to withdraw the foreclosure complaint. The allegation that Udren failed to withdraw that complaint, though factually related, constituted a "factually and legally distinct" violation of the FDCPA that was not referenced in the original complaint.[32] Though there was factual overlap, the court held that a single sentence blaming Washington Mutual and Wells Fargo for the

---

[26] *Id.* at 143.

[27] The Fair Debt Collection Practices Act is referred to as the "FDCPA."

[28] *Glover*, 698 F.3d at 146.

[29] *Id.*

[30] *Id.* at 144.

[31] *Id.* at 144, 148.

[32] *Id.* at 147.

Case 20-50627-CTG    Doc 189    Filed 08/25/25    Page 8 of 10

*Miller v. Nelson, et al.,* Adv. Proc. No. 20-50627
August 25, 2025
Page 8 of 10

failure to withdraw the foreclosure complaint, a count against Udren that incorporated all of the preceding paragraphs and alleged new facts about allegedly deficient notices, were too broad to put the Udren defendants on notice.[33]

The court held that "[t]he absence of any limit" on the relation back doctrine to "such expansive pleadings" could expose the defendants to increased liability and diminish the value of the statute of limitations.[34] Even though the Udren defendants "might have guessed" by "making several inferential leaps" that a claim would be asserted against them, Rule 15 does not require such an undertaking.[35]

This situation is much more like *Glover* than it is like *Bensel*. This Court explained in *Maxus* (where it was dealing with an amendment to a proof of claim, which is at the very least closely analogous to a Rule 15 motion) that when an amended complaint is seeking new and additional damages beyond those sought in the original complaint, it is typically alleging a claim that arises out of a different transaction or occurrence:

> The standard typically applied when considering a motion for leave to amend a proof of claim after the passage of the bar date is to ask whether the proposed amended proof of claim seeks to recover damages that are fairly encompassed within the original proof of claim. Additional facts can be added. To the extent a claim that was otherwise contingent or unliquidated has become concrete, it is appropriate to update the proof of claim to provide that additional factual detail. If the claimant has a new legal

---

[33] *Id.* at 148.

[34] *See Glover*, 698 F.3d at 148.

[35] *Id.*

> theory under which it seeks to recover for the same injury or loss, that can be set forth in an amended proof of claim. But appreciating that the debtor and other parties-in-interest will have relied on the claims register to understand the total claims universe, what a creditor cannot do at this point is amend a proof of claim in a way that seeks to recover damages that were not fairly encompassed in its original proof of claim.
>
> Properly understood, the "transaction or occurrence" test of Rule 15 is doing exactly the same thing. Rule 15(c)(1)(B) enunciates the basic principle that an amendment alleging a claim or defense that arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading will relate back to the original pleading. If however, the plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c)(1)(B) will not authorize relation back.[36]

That is true here. The third amended complaint seeks to recover an additional $150 million in damages arising from different alleged breaches of fiduciary duty that relate to the manner in which the defendants allegedly conducted the sale of the company's assets. Even if one squints at the second amended complaint, one cannot find such an allegation. The third amended complaint accordingly seeks to assert claims arising out of a different transaction or occurrence from what was alleged in the second amended complaint. The allegations accordingly do not relate back under Rule 15. The claim is therefore time barred.

---

[36] *In re Maxus Energy Corp.*, No. 16-11501, 2023 WL 5543612, at *7 (Bankr. D. Del. Aug. 28, 2023) (footnotes and internal quotations omitted).

Case 20-50627-CTG    Doc 189    Filed 08/25/25    Page 10 of 10

*Miller v. Nelson, et al.,* Adv. Proc. No. 20-50627
August 25, 2025
Page 10 of 10

The motion for leave to amend is thus denied on the ground that amendment would be futile. The Court will separately issue an order so providing.

Sincerely,

*[signature]*

Craig T. Goldblatt
United States Bankruptcy Judge
